PAMELA A. BAKER V. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 18
## TO MOVANT'S STATEMENT OF MATERIAL FACTS

*LEON LOTT – DEPOSITION EXCERPTS*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
- - -

| | |
|---|---|
| Pamela A. Baker, : | |
|     Plaintiff, : | Civil Action No.: |
| : | 3:24-cv-04303-JDA |
|   vs. : | |
| : | |
| Leon Lott, individually and : | |
| in his official capacity as : | |
| Sheriff of Richland County; : | |
| the Richland County Sheriff's : | |
| Department; and Deputies : | |
| Matthew Smith, Michael Dillard: | |
| and Bryan Hodge, : | |
|     Defendants. : | |

_____
VIDEOTAPED DEPOSITION OF LEON LOTT
_____

DATE TAKEN:       September 4, 2024
TIME BEGAN:       10:03 a.m.
TIME ENDED:       12:30 p.m.
LOCATION:         Burr & Forman
                  1221 Main Street, Suite 1800
                  Columbia, South Carolina
REPORTED BY:      Tami I. Watters, RPR, CRR
                      LEGAL EAGLE
                Post Office Box 5682
          Greenville, South Carolina 29606
       864-467-1373 / depos@legaleagleinc.com

1     A     I guess I read it at some point.
2     Q     Okay.  Do you recall when you read this
3  Section 2323-85?
4     A     No, ma'am.
5     Q     In Section -- in this statutory section,
6  there is a Law Enforcement Training Council.
7           Are you familiar with that council?
8     A     Yes, ma'am.
9     Q     Okay.  Have you ever served as one of the
10 11 members of that council?
11    A     No, ma'am.
12    Q     Have you ever appeared, to your
13 knowledge, in front of that council?
14    A     No, ma'am.
15    Q     What is the purpose --
16          What do you believe the purpose is of
17 Section 2323-85?
18    A     What it stays at the top, establish
19 required minimum standards of all law enforcement
20 agencies.
21    Q     Okay.  With respect to minimum standards,
22 where can one look to locate the minimum standards
23 for the Richland County Sheriff's Department?
24    A     Our policies and procedure.
25    Q     And the policies and procedures, that

Videotaped Deposition of Leon Lott

23

1  would be in a manual; is that correct?
2      A    Yes, ma'am.
3      Q    Okay.
4           MS. GOLDING:  And I don't need to
5      bring that up quite yet.
6  BY MS. GOLDING:
7      Q    But I will give you what has been marked
8  as Exhibit Number 36.  I'll be referring that to
9  you later.  But this Exhibit 36 is a notebook I
10 just handed you that contains the Richland County
11 Sheriff's policies and procedures.
12     A    Okay.
13     Q    Okay?  And when I ask you if the minimum
14 standards that are required by Section 2323-85 can
15 be located, you said the policies and procedures.
16          So my question is, is Exhibit Number 36
17 the policies and procedures which contain the
18 minimum standards for the Richland County Sheriff's
19 Department?
20     A    Yes, ma'am.
21     Q    Thank you.  Who in the Richland County
22 Sheriff's Department has the responsibility to
23 ensure that the minimum standards required by state
24 law are -- are the policies and procedures?
25     A    Our staff attorney.

|    |   |                                                              |
|----|---|--------------------------------------------------------------|
| 1  | Q | Which one's the low-level supervisor?                        |
| 2  | A | Rebecca Smith.                                               |
| 3  | Q | Okay. What's the difference in those two                     |
| 4  |   | reviews, one by the --                                       |
| 5  | A | I don't have that -- a clue.                                 |
| 6  | Q | You need to let me finish my question.                       |
| 7  |   | What's the difference in the reviews, one                    |
| 8  |   | review done by the low level and the review done by          |
| 9  |   | the officer supervisor?                                      |
| 10 | A | I don't know.                                                |
| 11 | Q | Okay. Does the officer supervisor review                     |
| 12 |   | incorporate or can it contain any type of                    |
| 13 |   | recommendations?                                             |
| 14 | A | I don't know.                                                |
| 15 | Q | Does the officer supervisor review, does                     |
| 16 |   | that address any type of violations by deputy                |
| 17 |   | sheriff of any policies and procedures?                      |
| 18 | A | I don't know.                                                |
| 19 | Q | Does the officer supervisor review review                    |
| 20 |   | issues regarding possible disciplinary actions?              |
| 21 | A | I don't know.                                                |
| 22 | Q | Does the officer supervisor review                           |
| 23 |   | encompass any type of possible recommendations for           |
| 24 |   | corrective action?                                           |
| 25 | A | I don't know.                                                |

Videotaped Deposition of Leon Lott

72

| | | |
|---|---|---|
| 1 | Q | Is there any type of documentation in |
| 2 | | existence that relates to the officer supervisor |
| 3 | | review other than Exhibit 10? |
| 4 | A | I don't know. |
| 5 | Q | What does the officer supervisor |
| 6 | | review -- |
| 7 | A | I don't know. |
| 8 | Q | -- contain? |
| 9 | A | I don't know. |
| 10 | Q | Do you know Karen Gillman? |
| 11 | A | Yes, ma'am. |
| 12 | Q | Okay.  And what is her position? |
| 13 | A | From 2021? |
| 14 | Q | 2023. |
| 15 | A | 2023?  I don't know. |
| 16 | Q | Is she still employed? |
| 17 | A | Yes, ma'am. |
| 18 | Q | What is her current position? |
| 19 | A | She's a captain assigned to special |
| 20 | | operations. |
| 21 | Q | Do you know how long she's been a captain |
| 22 | | assigned to special operations? |
| 23 | A | No, ma'am. |
| 24 | Q | What is special operations? |
| 25 | A | Part of the sheriff's department that one |

Videotaped Deposition of Leon Lott

74

1  Q    What does it entail?  What does the
2  commander do when he reviews?
3           MR. GARFIELD:  Objection.
4           THE WITNESS:  I don't know.
5  BY MS. GOLDING:
6  Q    I'm sorry?
7  A    I don't know.
8  Q    Okay.  In this commander's review, it has
9  it dated January 3, 2023, which is a number of days
10 after the incident.
11      Why is there a time period between the
12 incident date of December 2029 and the commander's
13 review on January 3, 2024?
14 A    I don't know.
15 Q    Is there a -- is there any type of
16 timelines that are required for when a officer
17 supervisor conducts a review?
18 A    I don't know.
19 Q    Is there a timeline required when a
20 commander's review is conducted?
21 A    I don't know.
22 Q    Is there a time requirement of the
23 primary officer or the officer making the report
24 following the incident?
25 A    Repeat that question.

Videotaped Deposition of Leon Lott

75

1  Q   I'm sorry.  Officer Smith prepared this
2  report on the date of the incident, December 29th,
3  2023.
4      Is he required to have prepared the
5  incident report on the day of the incident?
6  A   Usually that's what happens.
7  Q   Okay.  Is there some policy or procedure
8  that it has to be done -- the incident report has
9  to be done within a number of hours or days after
10 the incident?
11 A   No, ma'am.
12 Q   In the commander's review, it states
13 that:  Corrective action taken, verbal counseling.
14     What was the corrective action taken?
15 A   I do not know.
16 Q   Where would you go to look to find out
17 the corrective action that was taken?
18 A   I guess with Christopher Duke.
19 Q   What document would be in existence to
20 show what corrective action was taken?
21 A   I don't know.
22 Q   What was the process or procedure
23 undertaken with respect to determining whether
24 corrective action is to be taken?
25 A   I don't know.

Videotaped Deposition of Leon Lott

76

1    Q    It says: Verbal counseling.
2         Who makes the determination that verbal
3    counseling a to be an action taken?
4    A    I don't know.
5    Q    Who undertook the verbal counseling of
6    Officer Matthew Smith?
7    A    I do not know.
8    Q    What was the verbal counseling that was
9    issued?
10   A    I do not know.
11   Q    Okay.  This verbal counseling and
12   corrective action, is that a matter that is
13   reviewed by the Professional Standards Unit?
14   A    I do not know.
15   Q    How would one find out if this incident,
16   this chase or pursuit by Officer Smith was reviewed
17   or considered by the Professional Standards Unit?
18   A    I'd have to ask professional standards.
19   Q    And would there be documentation that the
20   Professional Standards Unit maintains if it
21   reviewed or considered this chase that is
22   identified in Exhibit 10?
23   A    Yes, ma'am, I imagine so.
24   Q    And do you know what that document -- can
25   you describe the documentation that the

Videotaped Deposition of Leon Lott

83

1  as to the first and second policy -- paragraph.
2  Excuse me.
3         Under the third paragraph it states:
4  This policy provides restrictions on certain
5  driving assignments as well as guidelines and
6  directions for the exercise of deputy and
7  supervisory discretion and decision making.
8         It uses the word restrictions.  States:
9  This policy provides restrictions.
10        In your mind, does that mean that these
11 policies dictate the discretion that an officer can
12 use during vehicle operations?
13     A    They're guidelines.
14     Q    Okay.  Then why is the word restrictions
15 used in that sentence?
16     A    I don't know.
17     Q    Okay.  What is your understanding of the
18 word restrictions?
19     A    Restricts you from doing something.
20     Q    How often are the policies in this
21 vehicle operations section reviewed?
22     A    I don't know.
23     Q    Who has the responsibility of reviewing
24 the policies in the vehicle operations?  Within the
25 sheriff's department, who has that responsibility?

1  ahead.
2  THE WITNESS: I don't know.
3  BY MS. GOLDING:
4  Q  Were you present in a pursuit in the
5  calendar year 2017?
6  A  I don't know.
7  MR. GARFIELD: Same objection.
8  BY MS. GOLDING:
9  Q  Do you know of any year in which you were
10 present in a vehicle pursuit?
11 A  I can't recall a year.
12 Q  With respect to the policy 802.3, under 3
13 it says: In deciding whether to initiate or
14 continue a pursuit, the officer shall take the
15 following into consideration. The first is the
16 seriousness of the offense.
17    Did I read that correctly?
18 A  Yes, ma'am.
19 Q  Why is the seriousness of the offense,
20 why does that need to be taken into consideration
21 in whether -- in determining whether to initiate or
22 continue a pursuit?
23 A  I can't answer that.
24 Q  The second factor that the officer has to
25 take into consideration is the known information on

1  the suspect.
2            Why is -- why must an officer take into
3  consideration the known information on the suspect
4  to determine whether to initiate or continue a
5  pursuit?
6       A    I can't answer that.
7       Q    The third item, C, has road
8  configuration; e.g. interstate, divided highway,
9  work zone.
10           Why should an officer take into
11 consideration the road configuration before
12 deciding to initiate or continue a pursuit?
13      A    I can't answer that.
14      Q    The next item is physical location and
15 population density; e.g. residential area, school
16 zone, business district.
17           Why should an officer take into
18 consideration the physical location and population
19 of a density before determining whether to initiate
20 or continue a pursuit?
21      A    I can't answer that.
22      Q    The next item is existence of vehicular
23 and pedestrian traffic.
24           Why should a patrol officer take into
25 consideration the existence of vehicular and

1  pedestrian traffic before deciding whether to
2  initiate or continue a pursuit?
3     A    I can't answer that.
4     Q    The next item is lighting and visibility.
5          Why should an officer take into
6  consideration the lighting and visibility before
7  deciding whether to initiate or continue a pursuit?
8     A    I can't answer that.
9     Q    Sheriff lot, are you required to know the
10 policies and procedures of the Richland County
11 Sheriff's Department?
12    A    Am I required?
13    Q    Yes, sir.
14    A    Yes, ma'am.
15    Q    And do you today know the policies and
16 procedures of the Richland County Sheriff's
17 Department?
18    A    Probably, yes.
19    Q    So why can you not answer these very
20 simple questions I'm asking you since you know the
21 policies and procedures?
22              MR. GARFIELD:  Objection.
23              THE WITNESS:  I can't answer that.
24 BY MS. GOLDING:
25    Q    There is a criteria of officer training

1  and experience.
2         Why should an officer take into
3  consideration his training and experience before --
4     A    Where are you reading that at?
5     Q    I'm sorry.  It's the next, Baker M-330.
6  It's a continuation of the factors of an officer
7  taking into consideration before initiating.
8     A    What page?
9     Q    It's 330.  Bates-stamped 330 at the
10 bottom.
11    A    Okay.  All right.
12    Q    One of the criterias for -- to take into
13 consideration whether initiating or continuing a
14 pursuit is officer training and experience.
15        Why is that a factor that the officer
16 must take into consideration before initiating or
17 continuing a pursuit?
18    A    I still don't see where you're reading.
19            MR. GARFIELD:  You're talking about
20     "I"?
21            MS. GOLDING:  Yes.
22            THE WITNESS:  I can't answer that.
23 BY MS. GOLDING:
24    Q    Okay.  With respect to Officer Smith, or
25 really any officer, if an officer has five

1  months -- if he's at five months out of a
2  probationary period, is that a factor that negates
3  engaging in a pursuit?
4              MR. GARFIELD:  Objection.
5              THE WITNESS:  No.
6  BY MS. GOLDING:
7      Q    Why not?
8      A    Because it doesn't.
9      Q    Why?
10     A    Because it just doesn't.
11     Q    There has to be a reason why not.
12             MR. GARFIELD:  Objection.
13     Argumentative.  Do the best you can.
14             THE WITNESS:  It doesn't negate it.
15 BY MS. GOLDING:
16     Q    Okay.  And what is probationary period?
17 What is that with respect to the training of an
18 officer?
19     A    Doesn't have anything to do with the
20 training.  The probationary period is what the
21 county places on an employee for one year after
22 they've been hired Places.
23     Q    Places -- so probationary period only
24 relates to the time period an employee was with the
25 county?

Videotaped Deposition of Leon Lott

99

1     A     Yes, ma'am.
2     Q     Okay. The one I read, C, says: As a
3 general rule.
4           It uses the word rule. So what does that
5 mean to you?
6     A     That it's a general rule, but it doesn't
7 mean that it's not done.
8     Q     Okay. It says: The deputies should not
9 pursue a vehicle driving the wrong direction.
10    A     As a general rule.
11    Q     Why is it a general rule that deputies
12 should not pursue a vehicle driving the wrong
13 direction on a roadway?
14    A     I can't answer that.
15    Q     You have no idea?
16    A     No, ma'am.
17    Q     Okay. Would you agree that a suspect's
18 action, driving the wrong way on a highway,
19 presents an immediate and significant threat to the
20 lives of uninvolved motorists?
21    A     Yes, ma'am, it can be.
22    Q     And would you agree that, because of a
23 suspect driving the wrong way on a highway, the
24 pursuit should be terminated at that time?
25    A     No, ma'am.

Videotaped Deposition of Leon Lott

103

1  BY MS. GOLDING:
2      Q    It says:  Will be exercised over vehicle
3  pursuits?
4      A    If available.
5      Q    Where does it say "if"?
6      A    Well, it says available.
7      Q    To your knowledge, was there supervisory
8  and management control over Officer Smith during
9  the vehicle pursuit?
10     A    I don't know.
11     Q    To your knowledge, was there supervisory
12 and management control over Officer Hodge in the
13 pursuit?
14     A    I do not know.
15     Q    To your knowledge, was there supervisory
16 and management control over Officer Dillard during
17 the vehicle pursuit?
18     A    I do not know.
19     Q    Okay.  Can a vehicle pursuit be
20 terminated by a supervisor?
21     A    Yes, ma'am.
22     Q    And what would be the basis for
23 terminating a vehicle pursuit?
24     A    I can't answer that.
25     Q    Then on the next page, Baker M-335, do

Videotaped Deposition of Leon Lott

104

1  you see that has "K" on the top?
2      A   Yes, ma'am.
3      Q   It says: Ensuring that all written
4  post-pursuit reports and documentation of the
5  pursuit are completed as required.
6          What post-pursuit reports and
7  documentations are required?
8      A   I don't know.
9      Q   Other than Exhibit 10, the incident
10 report prepared by Officer Smith, have you seen any
11 other post-pursuit reports or documentation
12 relating to this high-speed chase?
13     A   No, ma'am.
14     Q   I've heard the term suicide chase or
15 something to that effect.  Are you familiar with
16 that term?
17     A   Never heard it before?
18     Q   So have you ever heard the term "going
19 suicide" when relating to vehicle pursuits?
20     A   No, ma'am.
21     Q   Would you agree that if there was no
22 violent crime committed before the pursuit
23 initiated, that that is a factor that should have
24 negated a pursuit?
25              MR. GARFIELD:  Object to the form.