PAMELA A. BAKER V. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 19
## TO MOVANT'S STATEMENT OF MATERIAL FACTS

***BRYAN HODGE – DEPOSITION EXCERPTS***

```
              IN THE UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH CAROLINA
                      COLUMBIA DIVISION




PAMELA A. BAKER,

             Plaintiff,

vs.                                  CASE NO.:3:24-CV-04303-JDA


LEON LOTT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
THE SHERIFF OF RICHLAND COUNTY; THE RICHLAND COUNTY
SHERIFF'S DEPARTMENT; AND DEPUTIES MATTHEW SMITH, MICHAEL
DILLARD AND BRYAN HODGE,

             Defendants.



                       D E P O S I T I O N

WITNESS:              BRYAN HODGE

DATE:                 Friday, September 19, 2025

TIME:                 9:34 a.m.

LOCATION:             Burr & Forman
                      1221 Main Street, Suite 1800
                      Columbia, South Carolina  29201

TAKEN BY:             Attorney for the Plaintiff

REPORTED BY:          Robin Dunn
                      South Carolina Court Reporter


                         LEGAL EAGLE

                     Post Office Box 5682

                 Greenville, South Carolina 29606

                         864-467-1373

                    depos@legaleagleinc.com
```

| | | |
|---|---|---|
| 1 | A | This would be -- this would be FTO. |
| 2 | Q | About five rows up, there's vehicle pursuit.  What |
| 3 | | is the vehicle pursuit packet? |
| 4 | A | It's a form that you do after a pursuit. |
| 5 | Q | And, so, where it says, explain and practice |
| 6 | | demonstrated, can you tell me what explain and |
| 7 | | understood would mean? |
| 8 | A | Me speaking just how we are now and understanding |
| 9 | | what it is. |
| 10 | Q | And FTO, would that be Colin Davis? |
| 11 | A | Yes. |
| 12 | Q | He would have explained to you the pursuit packet? |
| 13 | A | Yes. |
| 14 | Q | And you would have understood the pursuit packet? |
| 15 | A | Yes. |
| 16 | Q | Practiced and demonstrated, how did Colin Davis |
| 17 | | practice and demonstrate the pursuit packet? |
| 18 | A | While you're driving around, you just act out as |
| 19 | | if you were calling a police chase, clearing |
| 20 | | intersections, clearing through intersections. |
| 21 | | Just going over what you would be doing during an |
| 22 | | actual pursuit. |
| 23 | Q | When he saying clearing intersections, can you |
| 24 | | explain what you mean? |
| 25 | A | Just looking left, looking right, make sure |

1       not attempt to pass other pursuing vehicles unless
2       the situation indicates otherwise, or they are
3       requested to do so by the pursuing deputy.
4   Q   Okay.  Have you ever seen this policy before
5       December 29, 2023?
6   A   Yes.
7   Q   Were you ever trained on it?
8   A   Yeah.
9   Q   Were you ever retrained on it outside of the
10      yearly in-service training and the revision of the
11      policies and procedures?
12  A   Not that I can remember.
13  Q   Have you ever violated it?
14  A   No.
15  Q   Okay.  Have you ever been told to ignore it?
16  A   No.
17  Q   Okay.  I believe you talked a little bit earlier
18      about getting Mr. Pringle off the road when he was
19      going backwards on the interstate; is that
20      correct?
21  A   Yes.
22  Q   How were you planning on doing that?
23  A   Do what -- what is considered a pit maneuver,
24      which we were not certified for at the time, but
25      we don't exactly call it pits.  But the idea was

| | | |
|---|---|---|
| 1 | | to push his car off the road utilizing mine. |
| 2 | Q | Okay.  So it was your intent once you caught up to |
| 3 | | him to push his car off the road? |
| 4 | A | Yes. |
| 5 | Q | Okay.  Have you -- so at the time, you weren't |
| 6 | | trained on what is commonly referred to as a pit |
| 7 | | maneuver? |
| 8 | A | At the time, no. |
| 9 | Q | When did you get trained on pit maneuvers? |
| 10 | A | This year. |
| 11 | Q | Okay.  Have you performed a pit maneuver without |
| 12 | | being certified and trained to do so? |
| 13 | A | In law enforcement, no. |
| 14 | Q | Okay.  Did you do it in the military? |
| 15 | A | I did do it in the military, yes. |
| 16 | Q | Okay.  Can I ask when you did it in the military? |
| 17 | A | Sure.  We used it all the time, specifically in |
| 18 | | Afghanistan driving on roadways, pushing cars out |
| 19 | | of the way. |
| 20 | Q | Okay.  Can you tell me a little bit about other |
| 21 | | pursuit intervention techniques outside of a pit |
| 22 | | maneuver that you know? |
| 23 | A | Say that one more time for me, please. |
| 24 | Q | What other techniques can you use to -- outside of |
| 25 | | a pit maneuver, to stop a pursuit, a high-speed |

1      reasonable and prudent to do so.  In some
2      instances, however, a decision to terminate a
3      pursuit may be the most appropriate course of
4      action.  Deputies and controlling pursuit
5      supervisors must always balance the need for
6      immediate apprehension with the danger created by
7      the pursuit.  When the need for apprehension does
8      not outweigh the danger created by the pursuit,
9      then the pursuit shall be terminated.
10  Q   Do you believe you should have terminated the
11      pursuit on December 29, 2023?
12  A   No, I do not.
13  Q   Do you believe that the need for apprehension of
14      Mr. Pringle did not outweigh the danger he created
15      in the pursuit?
16          MR. GARFIELD:  Object to the form.
17          THE WITNESS:  I think that we made the right
18      decision in pursuing him.  The cost of
19      apprehending him outweighed the danger of the
20      pursuit.  Yes.
21  BY MR. JENKINS:
22  Q   Okay.  The pursuit that was for his failure to
23      appear in Lexington County.
24          MR. GARFIELD:  Object to the form.
25          THE WITNESS:  I'm not sure -- that's not what

```
 1        the pursuit was for.  The pursuit was for -- we
 2        didn't pursue him because he didn't appear.  We
 3        pursued him because after a traffic stop, he
 4        decided to run.  And our knowledge was that he had
 5        fentanyl warrants and that he's a fentanyl dealer
 6        and he had just left a buy.
 7   BY MR. JENKINS:
 8   Q    Okay.  How do you know he had just left a buy?
 9   A    There was DEA task force who was following him.
10   Q    Okay.  He was just at a buy.  Why didn't you
11        arrest him while he was at the buy?
12   A    Because at the time it would have been more
13        dangerous.
14   Q    Please explain to me how that would have been more
15        dangerous than pursuing him backwards up I26 at
16        70 miles an hour.
17             MR. GARFIELD:  Object to the form.
18             THE WITNESS:  Sure.  Let's say you're a drug
19        dealer, and he is the person buying the drugs.
20        Typically, drug dealers and people buying drugs
21        carry guns.  There's no point in getting in a
22        shoot out where you can't control where the
23        bullets are going, and they could go wherever,
24        versus apprehending somebody during a vehicle
25        pursuit where, for the most part, you can control
```

1      where they go.
2   BY MR. JENKINS:
3   Q   So bullets are a dangerous, lethal weapon.
4   A   Yes.
5   Q   Does Richland County Sheriff's Department policy
6       say that your patrol vehicle is more lethal than a
7       bullet, a 50 caliber bullet?
8   A   That's -- I believe that's what it said, but that
9       doesn't mean we agree with it.
10  Q   When you say we, what do you mean?
11  A   Lethal in general.  People that work as sworn
12      officers of the Richland County Sheriff's
13      Department.  Like I personally, just because I
14      don't agree with the policy doesn't mean that it's
15      not the policy.
16  Q   Okay.  So if you don't agree with the policy, can
17      you just not follow it?
18  A   That's not true.
19  Q   Okay.
20  A   Me and my wife can agree and disagree on what to
21      eat for dinner, but I still eat what's for dinner
22      if she makes it.
23  Q   Because you're a smart man.
24          When you said he had fentanyl warrants,
25      how -- so, how did you know he had fentanyl

```
 1   A   Yes.
 2   Q   Were you retrained on it outside of your yearly
 3       in-service training and the revision of policies
 4       and procedures?
 5   A   Yes.
 6   Q   Okay.  Have you ever been told to ignore it?
 7   A   No.
 8   Q   Could you have terminated the pursuit on
 9       December 29, 2023?
10   A   I don't believe so.
11   Q   Why not?
12   A   Because once he entered the highway where he had
13       no avenue to get off of said highway, there was at
14       that point a greater risk to the public if we
15       didn't try to forcibly remove his vehicle from the
16       roadway and then letting him continue to drive the
17       wrong way.
18   Q   Sorry.  Go ahead.
19   A   Suspects, just because you stop chasing them, they
20       don't slow down in speed.  They don't -- they
21       continue driving the same erratic behavior and as
22       fast as they typically can.
23   Q   Do you think that -- well, what do you base that
24       on?
25   A   Training and experience.
```

```
 1                    (Audio playing.)
 2   Q    Is that you?
 3   A    Yes.
 4                    (Audio playing.)
 5   Q    Is that your supervisor?
 6   A    That is one -- one of the supervisors.
 7   Q    Is that the supervisor that was working that day?
 8   A    Yes.
 9   Q    What is their name?
10   A    Sergeant Blanding.
11   Q    Christopher Blanding?
12   A    I believe that's his first name.
13   Q    And he just said to take him out?
14   A    Correct.
15   Q    What does take him out mean to you?
16   A    Using the forcible vehicle impact to take him off
17        the road.
18   Q    Okay.  Does take him out also -- is that also
19        referred to as a pit maneuver?
20   A    No.
21                    (Audio playing.)
22   Q    So Deputy Smith says he's driving real reckless.
23        Would you agree that he was driving real
24        reckless -- Mr. Pringle was driving real reckless.
25   A    Mr. Pringle was driving real reckless, yes.
```