PAMELA A. BAKER v. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 22
## TO MOVANT'S STATEMENT OF MATERIAL FACTS

*30(B)(6) DEPOSITION OF RICHLAND COUNTY SHERIFF'S DEPARTMENT (JOANNA MCDUFFIE) – DEPOSITION EXCERPTS*

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF SOUTH CAROLINA
                      COLUMBIA DIVISION
                 C.A. No.: 3:24-cv-04303-JDA


PAMELA BAKER,

              PLAINTIFF,

vs.


LEON LOTT, individually and in his official
capacity as the Sheriff of Richland County;
THE RICHLAND COUNTY SHERIFF'S DEPARTMENT;
and DEPUTIES MATTHEW SMITH, MICHAEL DILLARD,
and BRYAN HODGE,

              DEFENDANTS.




              30(b)(6)  D E P O S I T I O N



WITNESS:         JOANNA MCDUFFIE
DATE:            NOVEMBER 20, 2025
TIME:            1:56 P.M.
LOCATION:        BURR & FORMAN, LLP
                 1221 MAIN STREET, SUITE 1800
                 COLUMBIA, SOUTH CAROLINA 29201

REPORTED BY:     AMBER SOMERO
```

                         LEGAL EAGLE
                     Post Office Box 5682
                Greenville, South Carolina 29606
                         864-467-1373
                     depos@legaleagleinc.com

1  STIPULATIONS:

2  It is agreed by and between the Counsel for the parties as

3  follows:

4  1.   That this deposition is being taken pursuant to the

5       Federal Rules of Civil Procedure;

6  2.   That the deponent reserved the right to read and sign

7       the deposition transcript.

8  Whereupon,

9                      JOANNA MCDUFFIE,

10 first being duly sworn, was examined and testified as

11 follows:

12                    DIRECT EXAMINATION

13 BY MS. JONES:

14 Q.   Would you state your full name and title for the record,

15      please.

16 A.   Joanna McDuffie, my title is deputy chief.

17 Q.   And which division are you the deputy chief of?

18 A.   Legal affairs.

19 Q.   And to whom do you report, Ms. McDuffie?

20 A.   Sheriff's office.

21 Q.   I handed you the 30(b)(6) notice, Exhibit 54, and if you

22      could please -- well, did you have an opportunity to

23      review the areas to which I am informed you have been

24      designated to testify and are they correctly delineated

25      on that document?

```
 1   A.   Yes, ma'am.  I struck through the one that was on this
 2        paper.
 3   Q.   And that was on item 31, and you were only addressing
 4        page 106, line 14 through 25, not the other part of page
 5        106, correct?
 6   A.   Yes, ma'am.
 7   Q.   Is that right?
 8   A.   Yes, ma'am.
 9   Q.   Okay.  If you would please, would you tell me briefly
10        your educational background and work history?
11   A.   Yes, ma'am.  I have a bachelor of science degree in
12        social work and then my law degree from the University
13        of South Carolina.  After graduating law school, I was
14        employed by the Fifth Circuit Solicitor's Office.
15        Started out as a regular prosecutor and then became a
16        team leader in violent crimes and death penalty
17        prosecutor.  And then I left the Fifth Circuit
18        Solicitor's Office in the end of 2018 to become Sheriff
19        Lott's counsel.
20   Q.   And when did you finish law school?
21   A.   2007.
22   Q.   And you went directly there to work for the solicitor's
23        office?
24   A.   Correct.
25   Q.   And have you taken any bar other than the South Carolina
```

1  Q.  I'm just asking you if you're aware of any.
2  A.  Yes, ma'am.  I mean, there's -- you know, there's
3      state-created -- state-created danger, things of that
4      nature.
5  Q.  What?  Say that again, please.
6  A.  So there's case law and things of that nature that when
7      we, you know -- I'll give you an example.  So there was
8      a case where the Lexington County, I believe it was
9      Lexington County, subpoenaed a witness to testify in
10     domestic violence court against the accuser.
11         There was no courtroom security, and she, I
12     believe, was injured, and they said, you know, that
13     there was a duty owed.  Well, normally there's not a
14     duty owed to the public, and that instance there was.
15 Q.  Do you know of any other specially-created duties like
16     that one?
17 A.  I mean, off the top of my head, no.  I mean, I -- no.
18 Q.  And what is the Richland County Sheriff's Department
19     opinion, position, or belief regarding the
20     responsibility of the deputies to abide by the policies
21     and procedures set forth in Exhibit 36?
22 A.  Since the department doesn't have a position, it depends
23     on exactly what portion of the policy or procedure we're
24     talking about.  Some of it is guidelines, some of it's
25     general recommendations, some of it is -- is commentary,