f IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Pamela A. Baker, | ) | Civil Action No.: 3:24-cv-04303-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Leon Lott, individually and in his official | ) | |
| capacity as the Sheriff of Richland County; the | ) | |
| Richland County Sheriff's Department; and | ) | |
| Deputies Matthew Smith, Michael Dillard and | ) | |
| Bryan Hodge, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER FED. R. CIV. P. 37 MOTION FOR SANCTIONS INCLUDING BUT NOT LIMITED TO STRIKING DEFENDANTS' ANSWER AND AWARDING PLAINTIFF ATTORNEY'S FEES</u>**

## <u>TABLE OF CONTENTS</u>

Background ...................................................................................................................1

Standard ......................................................................................................................5

    I. Failure to Comply with this Court's Order................................................................5

    II.  Failure to Participate in Discovery and Rule 37 ......................................................6

Argument ....................................................................................................................7

    I. Defendants' Failure to Produce Documentation as Ordered by this Court .................7

        (A) Training Materials (RFP 1) ..........................................................................7

        (B) Professional Standards Records (RFP 1, 3, and 6).........................................8

        (C) High Speed Vehicle Pursuit Records (RFP 3, 6, and 7)..............................9

        (D) Individual Defendants' Discipline and Complaints (RFP 6)....................10

        (E) Defendants' Willful Failure to Produce Electronic Records ....................11

    II. Intentional Discovery Abuse  .................................................................................12

        (A) Defendant Lott's Failure to be Fully Deposed...........................................12

        (B) Defendants' Failure to Produce Records Regarding Pringle ...................13

        (C) Interference with Depositions ...................................................................18

            (1)  Designee Pritchett...........................................................................20

            (2)  Designee Pagano.............................................................................21

            (3) Designee Spurrier  ...........................................................................21

            (4) Designee Gilman .............................................................................23

            (5) Designee McDuffie..........................................................................26

    III. Defendants' False Representation and Delay Tactics throughout Discovery.............26

    IV.  Application of the *Wilson* Factors ........................................................................28

        (A)  Bad Faith ...................................................................................................29

        (B)  Prejudice Incurred by Plaintiff ..................................................................30

(C) Deterrence of Future Actions by Defendants ............................................30

(D) Less Drastic Sanctions Lack the Teeth Necessary to Punish this Behavior ....................................................................................................31

Conclusion ........................................................................................................31

65130951 v4

Plaintiff, Pamela A. Baker ("Plaintiff"), hereby respectfully submits her Memorandum of Law in Support of her Rule 37 Motion for Sanctions. Plaintiff seeks to have this Court strike the Defendants Leon Lott, individually and in his official capacity as the Sheriff of Richland County ("Lott"), Richland County Sheriff's Department ("RCSD"), Deputy Matthew Smith ("Smith"), Deputy Michael Dillard's ("Dillard"), and Deputy Bryan Hodge ("Hodge"), (collectively, "Defendants") Answer and award Plaintiff all attorney's fees and costs incurred in undertaking discovery and bringing this Motion and Plaintiff's prior Motion to Compel.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed this action in South Carolina state court on June 27, 2024.[1] Defendants were served with the Summons and Complaint as well as Plaintiff's First Set of Interrogatories and Requests for Production ("Plaintiff's First Set of Discovery Requests") on July 5, 2024. Defendants removed the action to this Court on August 5, 2024. (ECF No. 1). Plaintiff re-served her First Set of Discovery Requests on September 23, 2024.[2]

On October 28, 2024, Defendants requested an extension of twenty-one (21) days to respond to Plaintiff's First Set of Discovery Requests, one hundred fifteen (115) days following the initial service on Defendants, and thirty-five (35) days following the re-service of her First Set of Discovery Requests. Defendants provided their initial responses on November 15, 2024, one hundred thirty-three (133) days after Plaintiff served her First Set of Discovery Requests.

Defendants' answers were vastly incomplete. Defendants failed to produce the document containing RCSD's Policies and Procedures, which Plaintiff requested in Request for Production

---

[1] Plaintiff sent a letter to RCSD on February 6, 2024, for purposes of notifying RCSD to preserve all evidence that "may pertain to" the incident at issue in this lawsuit. (Ex. 1).

[2] Plaintiff's First Requests for Production of Documents included specific instructions & definitions regarding the production of documents to which Defendants did not offer any objection.

1

No. 1. (*See* Ex. 2, p. 7, Resp. to ¶ 1).  Defendants also failed to produce any documentation relating to any high-speed pursuits. Defendants asserted the following in their response:

> "By way of explanation, there exists no internal classification or organization system which would permit universal information tracking or to allow for field searches of those complaints or claims relating to vehicle pursuits."

(Ex. 2, p. 8, Resp. to ¶ 3). This response was false. Plaintiff's independent research revealed that the RCSD Professional Standards Division annual reports which summarize use of force and pursuits, were readily available and prepared by RCSD for years.  Plaintiff obtained some of these reports through her own research, in spite of Defendants' failure to disclose them.  Defendants' response was proven to be undisputedly false when Plaintiff – through her own independent research – discovered an email response from RCSD to a WIS TV FOIA request.  In that FOIA response, RCSD provided WIS TV with specific statistics on vehicle pursuits in the year 2023 where RCSD tracks: (1) the number of pursuits that ended in a collision; (2) the number of pursuits that ended in injury or death; (3) the number of pursuits that ended in arrest; and (4) the number of pursuits that were for misdemeanors and felonies. (Ex. 32). This email to WIS explicitly establishes that RCSD tracks and maintains specific statistical data pertaining to vehicle pursuits.

In addition, Plaintiff's Request for Production No. 5 sought all documents in Defendants' possession that related to the deceased individual, Byron L. Pringle ("Pringle"), to which Defendants responded "Upon information and belief, all RCSD documents for Byron Pringle are being produced as Bates nos. BAKER-B-001 to 102." (Ex. 2, Resp. p. 9, to ¶ 5).  After months of independent research, subpoenas to the Alvin S. Glenn Detention Center ("ASGDC") and Prisma Health, and depositions of deputies, Plaintiff has established that Defendants withheld, and continue to withhold, records related to Pringle, including his critically relevant arrest on December 20, 2023, ("Arrest") nine (9) days before the pursuit that caused Plaintiff's injuries.

Further, despite a December 18, 2024 meet-and-confer and follow-up communications, Defendants did not provide any supplemental answers, responses, or documentation. Accordingly, one hundred ninety-two (192) days after Plaintiff's First Set of Discovery Requests was served, Plaintiff filed a motion to compel. Per the Court's text order (ECF No. 15), the parties conferred on the motion but were unsuccessful. Plaintiff filed a supplemental memorandum in support on January 31, 2025. Defendants failed to respond to the Motion to Compel or to Plaintiff's subsequent Memorandum in Support.[3]

On February 13, 2025, this Court granted Plaintiff's Motion to Compel and instructed Defendants to "provide full and complete responses to Plaintiff's Requests for Production Numbers 1, 3, 6, and 7" by March 6, 2025. (ECF No. 19). Plaintiff's Requests for Production 1, 3, 6, and 7 requested the following:

RFP 1.    All documents and materials related to the training policies or practices of the Defendants related to high speed chases.

RFP 3.    All documents of any complaints against any Defendant related to any high speed chase or any alleged violation of a constitutional right.

RFP 6.    All documents related to high speed chases involving Defendants for the last five (5) years.

RFP 7.    All lawsuits and/or claims made against Defendants for the last five (5) years related to high speed chases, tort claims, negligence claims, and/or § 1983 actions/claims.

---

[3] Defendants supplemented their responses on February 7, 2025, with Smith, Dillard, and Hodge's training records, vehicle pursuit reports, and noted that they anticipated further supplementing their response with the applicable Vehicle Pursuit Policy at a later date, despite the fact that Defendants had been served with Plaintiff's First Set of Discovery Requests two hundred seventeen (217) days before. (Ex. 3).

Defendants, after failing to respond to the Motion to Compel and Supplemental Memorandum in Support, filed a procedurally improper Motion to Alter or Amend under Fed. R. Civ. P. 59(e) on February 26, 2025. (ECF No. 20). Plaintiff filed a Memorandum in Opposition on March 5, 2025 (ECF No. 21) and Defendants filed a Reply on March 12, 2025 (ECF No. 22). Pertinently, Defendants stated in their Reply that there had been as many as one thousand five hundred (1,500) police pursuits during the last five (5) year timeframe for which Plaintiff requested documents. (ECF No. 22).

On April 4, 2025, this Court issued its Order denying Defendants' Rule 59(e) Motion to Alter or Amend, holding that: (1) the Motion should have been brought under Rule 54(b); (2) Defendants failed to establish any basis on which the Court should reconsider or revise its ruling; and (3) that Defendants were to provide **full responses** as ordered in the Court's original order by May 5, 2025. (ECF No. 32)(emphasis added).

Since the April 4, 2025 Order, Plaintiff has learned during the course of depositions of Lott, Smith, K9 Specialist Zaid Abdullah ("Abdullah"), Hodge, Dillard, and RCSD's 30(b)(6) deposition, and through her independent research that the Defendants have utterly failed to comply with the Orders and the Federal Rules of Civil Procedure and continue to withhold responsive documents. Defendants' continued misleading of the Plaintiff and this Court necessitates the imposition of sanctions.  Indeed, Defendants admitted this failure to produce documents in an email mere days before the filing of this motion. (Ex. 33). On March 5, 2026, six hundred and seventeen (617) days after Plaintiff served her discovery, Defendants emailed Plaintiff seeking to supplement the record. (Ex. 33). Defendants sought to supplement the record with arrest warrants for Pringle from 2023, as well as information pertaining to his incarceration at Alvin S. Glenn Detention Center ("ASGDC"). (Ex. 33). This request from Defendants directly contradicts

Defendants' prior representations that they did not have control over those records. *See infra*. (Ex. 14).

## **LEGAL STANDARD**

### **I.     Failure to Comply with this Court's Orders**

Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). A court, on motion and after giving opportunity to be heard, may issue the following remedies for a party failing to comply with a Court's Order: (1) order payment of the reasonable expenses, including attorney's fees, caused by the failure; (2) inform the jury of the party's failure; and (3) impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Those listed sanctions include striking a pleading.[4] *Koppers Performance Chemicals, Inc. v. Travelers Indem. Co.*, 593 F. Supp. 3d 247, 251 (D.S.C. 2022)(citing *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003)).

If a party fails to obey an order, Rule 37 authorizes a court to impose sanctions, including default judgement. *Smith v. Devine*, 126 F.4th 331, 342 (4th Cir. 2025)(citing Fed. R. Civ. P. 37(b)(2)(A). The draconian sanction is appropriate in flagrant cases, when a party's noncompliance with the Court's orders not only jeopardizes the opposing party's case, but the

---

[4] Fed. R. Civ. P. Rule 37(b)(2)(A)(i)-(vi) allows for the Court to employ the following remedies: (i.) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii.) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii.) striking pleadings in whole or in part; (iv.) staying further proceedings until the order is obeyed; (v.) dismissing the action or proceeding in whole or in part; (vi.) rendering a default judgment against the disobedient party; or (vii.) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

party's ignoring of the district court's power would encourage other litigants to trifle with similar misconduct. *Id.,* citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, (1976). Courts are not required to issue an explicit warning about the possibility of default. *Mey v. Phillips*, 71 F.4th 203, 218 (4th Cir. 2023). Circumstances exist "where the entry of default against a defendant for systemic discovery violations is the natural next step in the litigation, even without an explicit prior warning from the court." *Id.* Courts are entitled to impose a default judgement when a party has engaged in repeated misconduct that is never wholly remedied. *Id.*

## II.   Failure to Participate in Discovery and Rule 37

Courts have broad discretion to manage discovery, including the authority to impose sanctions for discovery abuses, as a part of their case management responsibilities. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005)). The basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to the opposing party. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). In cases of flagrant abuse, striking a pleading may be the only effective sanction.

Striking of a pleading requires the application of a four-part test recognized in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978). The *Wilson* test asks "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989), citing *Wilson* at

503-06. This evaluation insures that the most flagrant cases will result in the extreme sanction of dismissal or judgment by default. *Mut. Fed. Sav.* at 92.

A party that exhibits bad faith causes the opposing party prejudice. *PVD Plast Mould Indus., Ltd. v. Polymer Grp., Inc.*, 31 F. App'x 210, 211 (4th Cir. 2002). When lesser sanctions are ineffective to motivate compliance by the offending party, more severe sanctions may be undertaken. *See id.*

## ARGUMENT

Defendants' misconduct in discovery in this case is voluminous. Defendants have employed every tactic to disobey the Court's Orders and to delay and/or deny Plaintiff information to which she is entitled. Plaintiff's ability to develop and present her case is prejudiced by Defendants' withholding, delaying production of, and misrepresenting discovery materials.

## I.    Defendants' Failure to Produce Documentation as Ordered by this Court

### A.    Training Materials (RFP No. 1).

Plaintiff's Request for Production No. 1 sought "All documents and materials related to the training policies or practices of the Defendants related to high speed chases." (Ex. 2, p. 7, Resp. to ¶ 1).  Defendants, after being ordered by this Court, produced a copy of a PowerPoint used by RCSD to train its deputies, *inter alia*, on pursuit driving. Included within the PowerPoint are links to various instructional videos related to the dangers of pursuit driving, including the dangers to civilians not involved in the pursuit who ultimately are injured, as Plaintiff was here. Defendants have failed, despite being ordered by this Court, to provide these videos or any others, related to their training policies and practices. This failure to produce the actual videos continues to prejudice the Plaintiff to the date of this filing.

B.  <u>Professional Standards Records (RFP Nos. 1, 3, & 6)</u>.

As addressed *supra*, Defendants' initial discovery responses: (1) were late and (2) omitted relevant information, including but not limited to RCSD's Professional Standards Records. After Defendants failed to produce these records as ordered in the February and April 2025 Orders, Plaintiff sent Defendants a deficiency letter on June 12, 2025. (<u>Ex. 4</u>).  Plaintiff specifically noted Defendants' failure to produce documentation responsive to RFP Nos. 1 and 6 from RCSD's Professional Standards Division pertaining to high-speed chases over the past five (5) years. These records were ordered to be produced by this Court's Orders (ECF Nos. 19 and 32).  On June 24, 2025, months after this Court ordered such documents to be produced, and after Plaintiff independently learned of the existence of the annual reports, Defendants produced the summary documents compiled by RCSD's Professional Standards Division at the end of each calendar year. However, the actual documents and underlying data utilized to compile the summary reports have not been produced.

Defendant Lott acknowledged that RCSD's Professional Standards Division compiles and publicly issues annual reports addressing "complaints, defensive actions, traffic collisions, [and] assaults on deputies." (<u>Ex. 5</u>, Lott Dep. 29:15-30:1).

Deputy Smith also testified: "The system that we use [to] write reports is called TriTech." (<u>Ex. 6</u>, Smith Dep. 41:9-10).  He further confirmed that deputies "create incident reports and upload them for supervisor approval and retention" through the records management system on their patrol-car computers. (*Id.* at 41:1-8; *see also* RCSD's Policy 300 ("Incident report forms are found within the records management system." (<u>Ex. 31</u>, Baker-M-050).  "Deput[ies] shall use the records management system to create incident reports and upload them for supervisor approval and retention.") (<u>Ex. 6</u>, Smith Dep. 40:25-41:2)).  Recently, through her own further independent

investigation, Plaintiff has further discovered that this data used to compile the Professional Standards Reports exists somewhere within RCSD. *See infra*, p. 10. The underlying documents and data used to compile and create the Professional Standards Reports have never been produced in this litigation.

    C.  <u>High Speed Vehicle Pursuit Records (RFP Nos. 3, 6, & 7)</u>.

Plaintiff's Requests for Production Nos. 3, 6 and 7 requested "all documents related to complaints and claims related to high speed chases involving Defendants for the last five (5) years." After Defendants refused to provide the requested documentation, this Court ordered Defendants to fully respond to these requests. Defendants responded by sending three (3) banker boxes full of paper documents. However, Defendants have not produced these in electronic format, nor have they produced documents pertaining to the discipline of their officers for engaging in high speed pursuits.

Defendants have produced only six (6) pursuit reports for Smith, Dillard, and Hodge, despite the fact that: (1) Smith testified he was involved in ten (10) pursuits while he worked for RCSD; (2) Hodge testified he has filled out somewhere between fifty (50) and one hundred fifty (150) post-pursuit reports on pursuits while he has worked for RCSD; and (3) Dillard testified he was involved in twenty to thirty (20-30) pursuits while he worked for RCSD. (<u>Ex. 6</u>, Smith Dep. 66:20-24), (<u>Ex. 7</u>, Hodge Dep. 96:13-25), (<u>Ex. 8</u>, Dillard Dep. 29:3-6). Plaintiff's rough math based upon the aforementioned testimony would yield, at minimum, eighty (80) pursuits, with a maximum of one hundred fifty (150) involving Smith, Hodge, and Dillard.

Further documentation pertaining to high speed pursuits has not been produced, including but not limited to the following categories: (1) documents utilized by the Professional Standards Division to analyze pursuits each year, in accordance with Policy 802.13 "Post Pursuit

9

Evaluation"; (2) use of force reports; and (3) documentation showing officer discipline for engaging in improper high speed pursuits. Direct evidence of Defendants' failure has been discovered through Plaintiff's own research. In 2024, when working on a story on RCSD tendency to engage in high speed pursuits, a WISTV employee sent a Freedom of Information Act ("FOIA") request to RCSD, seeking the following from 2023: (1) number of pursuits terminated; (2) number of pursuits that ended in a collision; (3) number of pursuits that ended in injury or death for deputies, suspects, and civilians; (4) number of pursuits that ended in arrest; and (5) whether the pursuit was for a misdemeanor or a felony. (Ex. 32). RCSD 30(b)(6) designee Jennifer Spurrier provided specific statistics in her response to a few of the topics, but specifically noted that the number of pursuits terminated and the number of pursuits that ended in injury or death of a civilian were "not tracked." *See* further discussion, *infra*. (Ex. 32). This is <u>direct evidence</u> that RCSD tracks specific statistics for vehicle pursuits and stores them in a database. This is also <u>direct evidence</u> that Defendants intentionally chose not to produce this information to Plaintiff but have no issue with providing it to a local media source. Defendants' failure to produce these statistics and documentation that contains these statistics is deliberate defiance of this Court's orders.

  D.  <u>Individual Defendants' Discipline and Complaints (RFP No. 6)</u>.

  Defendants have also failed to produce documents related to the discipline of Smith, Dillard, and Hodge, as requested by Plaintiff's Requests for Production No. 6. During Smith's deposition, he testified prior claims had been made against him for his actions as a RCSD Deputy. (Ex. 6, Smith Dep. 175:11 – 176:8).  Despite Smith's testimony that he has had multiple prior claims made against him – which are related to his discipline – Plaintiff has not received any such records. These claims pertaining to Smith are both relevant and discoverable and Plaintiff continues to be prejudiced by the lack of production by Defendants.

E.  <u>Defendants' willful failure to produce records in electronic format</u>.

On May 5, 2025, Defendants provided their Third Supplemental Response to Plaintiff's First Requests for Production at 4:02 P.M. (<u>Ex. 9</u>).  That day, after 4:00 P.M., Plaintiff received three banker boxes from NOVA Copying Services ("NOVA") at her office containing approximately eight thousand eight hundred sixty-three (8,863) pieces of paper in response to this Court's Order compelling Defendants to fully and completely respond to Plaintiff's Requests for Production 1, 3, 6 and 7.

The next day, Plaintiff contacted NOVA because many of the printed copies of documents were illegible/too faint to be read.  NOVA informed counsel of the existence of electronic copies of the 8,863 pages that Defendants had transmitted electronically to NOVA for printing and production to Plaintiff. (<u>Ex. 10</u>).  For reasons that Plaintiff cannot fathom, Defendants instructed NOVA in the early afternoon of Friday May 2, 2025 to print the documents in black and white and to not deliver them to Plaintiff until after 4 P.M. on Monday May 5, 2025. (<u>Ex. 10</u>).

Plaintiff sent a letter on May 6, 2025, requesting that Defendants produce the 8,863 pages in electronic format.  Plaintiff also notified Defendants they would move for sanctions, costs, and attorney's fees for Defendants' failure to comply with this Court's Order. (<u>Ex. 11</u>).

Plaintiff and Defense counsel then engaged in a consultation phone call regarding the production and letter.  Defense counsel stated that: (1) the documents were only kept in paper format at the "Annex"; (2) the paper was hand delivered to Defense counsel and they had to scan the paper into electronic format; and (3) if Plaintiff wanted the documents in electronic format that they would have to pay Defendants for the time spent on putting them into electronic format.

However, Abdullah testified that reports are submitted electronically to supervisors "on that program called TriTech," where they are stored. (<u>Ex. 12</u>, Abdullah Dep. 77:19-78:3).  This

admission, combined with deputies' further testimony that RCSD regularly disseminates: (1) policy changes; (2) Desk Sergeant Reports; and (3) Deputy Advisory Committee ("DAC") meeting minutes and updates by email, underscore that responsive Professional Standards materials exist and are maintained electronically. (*Id.* at 23:1-12; 32:4-10). In fact the records were provided to Defendants' expert witness, John J. Ryan, in native format prior to October 2025. *See* <u>Ex. 13</u> (Schedule D to Defs.' Expert Report). This is conclusive evidence of Defendants' continued false representations in their efforts to thwart discovery.

Likewise, Defendants have yet to produce the desk sergeant reports for December 20 and 21, 2023 (dates of Pringle's arrest and subsequent release from hospital) or December 29, 2023 (date of vehicular pursuit that ended with the collision involving Plaintiff). Additionally, Defendants have yet to produce minutes from any DAC meetings in 2022 or 2023, nor have they produced any documents from the DAC meetings in 2022 or 2023.

Defendants instructing a vendor to withhold delivery until later business hours and to produce unreadable hard copies in black and white, while withholding the electronic files, is not a mere oversight – it was a targeted strategy to obstruct discovery in defiance of this Court's orders and the Rules of Civil Procedure.

## II.     <u>Intentional Discovery Abuses</u>

A.  <u>Defendant Lott's Failure to be Fully Deposed</u>.

After months of difficulty in scheduling depositions, Plaintiff was finally able to obtain Lott's availability on September 4, 2025. Plaintiff requested to start the deposition at 9:30 A.M., but Lott represented he was not available until 10:00 A.M. A review of the RCSD's Facebook Page reveals that Defendant Lott was "not available" until 10:00 A.M. because he was appearing on "100.7 The Point" for a radio show. Richland County Sheriff's Department, Facebook (Sept.

4, 2025, 8:00 A.M.), https://www.facebook.com/RichlandCountySheriffsDepartment/posts/at-830-am-sheriff-lott-will-be-live-on-air-with-keven-cohen-and-the-point-radio-/123676546470961/.

Lott's deposition began a little after 10:00 A.M.  Approximately two and a half (2.5) hours into the deposition, defense counsel stated that it had "come to [Defendant Lott's counsel's] attention that the sheriff is needed back at the Richland County Sheriff's Department headquarters." (Ex. 5, Lott Dep. 109:8-11). Upon review of RCSD's Facebook page, Plaintiff discovered Lott left the deposition to host a press conference.  Facebook, Richland County Sheriff's Department (Sept. 4, 2025), https://www.facebook.com/reel/1472265987332143.  Lott leaving the deposition on the pretext that he was "needed" at headquarters was false.  Plaintiff submits this conduct was deliberate and another act of defiance by the Defendants in this action.

B.  Defendants' Failure to Produce Records Regarding Pringle.

Defendants have failed to produce all relevant, discoverable information "related to Byron L. Pringle." (Ex. 2, p. 9, Resp. to ¶ 5). Defendants have slowly produced information regarding Pringle only when prompted by Plaintiff. They also continue to withhold highly relevant information related to the Arrest and decision to release Pringle to go home.

On April 25, 2025, Plaintiff notified Defendants of the deficiencies in production of documents pertaining to the Arrest and subsequent booking on December 20, 2023, of Pringle. (Ex. 14, Consultation email). Defendants responded and stated that Defendants were not in possession of responsive documentation, and that Plaintiff would need to reach out to Richland County. *See id.* Plaintiff's request for this missing information was highly relevant, as Defendants' conscious choices nine (9) days prior to the Pursuit were the catalyst for Plaintiff's catastrophic injuries.

Just nine (9) days before Defendants engaged in the pursuit of Pringle into oncoming traffic down I-126, Abdullah arrested Pringle near Monticello Road and Knightner Street in Richland County. (Ex. 15, 12/20/23 Incident Report). Defendants produced the incident report from the Arrest, but failed to provide: (1) a tow slip Pringle's vehicle; (2) any information that addresses why Pringle was released from Prisma Health Richland Hospital to return "Home," rather than being taken to ASGDC; and (3) documentation regarding the facts related to Defendants' disregard for the Bench Warrant that was outstanding on December 20, 2023.  Further, RCSD's 30(b)(6) designee could not answer any questions regarding RCSD's release of Pringle on December 20, 2023 stating, "I don't know." (Ex. 16, RCSD 30(b)(6) Dep. Designee Spurrier, 29:7-15).

Pertinently, in Smith's deposition, he testified that Abdullah would have had to fill out (1) a tow slip to have Pringle's vehicle towed and (2) warrant affidavit and arrest document. (Ex. 6, Smith Dep. 188:10 – 189:15).  Furthermore, Smith testified that Pringle would have been taken to jail at ASGDC, as his arrest was in Richland County. (Id. at 189:16-25). Concurrently, Smith testified that when a RCSD Officer arrests and takes an individual to ASGDC, that Officer has to fill out a booking report electronically, which stays on the server at the RCSD, and is also taken to ASGDC in printed form. (Id. at 28:20 – 29:23). None of these documents were provided before the depositions.

Moreover, when Plaintiff requested the booking report from Defendants, Defendants' counsel responded, "The jail is run by Richland County and not the Sheriff, so you would have to ask the County for any documents relating to his booking, fingerprints, photographs, jail intake, jail release, property release, etc." (Ex. 14, Consultation email).  Plaintiff later discovered from third parties that Pringle was never taken to the jail after the Arrest.

However, based on Defendants' representations, Plaintiff sent a subpoena to ASGDC for Pringle's arrest and booking records. On May 9, 2025, Plaintiff received correspondence from Richland County Attorney Christopher Zeigler. Mr. Zeigler noted that Richland County/ASGDC did not have any records responsive to Plaintiff's request and directed Plaintiff to reach out to RCSD to obtain the information regarding Pringle's Arrest. (Ex. 17, Zeigler Email). Defendants were blatantly stonewalling Plaintiff's discovery efforts.[5]

Plaintiff's subsequent research and deposition of Abdullah, addressed *infra*, revealed the fact that RCSD did not take Pringle to ASGDC, but rather released him to the Prisma Health Richland Hospital for treatment and then to be released to go "Home". *See* Ex. 18, Pringle Medical Records at 7, 42, 199. Defendants misleadingly represented to Plaintiff that the County had the needed records when in fact Pringle was released by Defendants and never taken to ASGDC.

Pertinently, RCSD policies confirm supervisory involvement and documentation when an arrestee is admitted to a medical facility. As Abdullah read into the record, "When a prisoner is transported to a medical facility and is admitted by the attending physician, the officer will immediately notify the shift supervisor. The supervisor will, in turn, use the following procedures to ensure control of the prisoner." (Ex. 12, Abdullah Dep. 107:17-25). Abdullah also testified that such release decisions should be made by experienced command staff "anyone that is above the ranking of a lieutenant," typically with "anywhere between 15, 20 years of law enforcement

---

[5] Plaintiff's counsel also further exhausted the following resources to determine when Pringle was released from ASGDC: (1) visiting the Criminal Records division at the Richland County Courthouse in person; (2) phone and email correspondence with the Richland County Bond Court; (3) phone correspondence with the ASGDC Jail Records Division; (4) phone correspondence with the Clerk of Court's Administrative office; (5) phone correspondence with numerous bail bond companies; and (6) phone correspondence with the Richland County Public Defender's Office. Despite these efforts, there is no documentation pertaining to Pringle's booking and release following his Arrest.

experience." (*Id.* at 111:23-112:1). Yet Defendants have refused to produce records reflecting who authorized Pringle's release "Home," and are withholding records and documents related to this Arrest and release.

On April 29, 2025, Plaintiff specifically requested the body camera footage of Pringle's Arrest. (Ex. 19, Request for Body Worn Camera). Defendants represented that they would determine whether Defendants had this footage. *Id.*  On June 24, 2025, Defendants finally produced the body camera footage, despite it being requested by Plaintiff's initial discovery requests, nearly a year prior.

Additionally, after Plaintiff conducted the depositions of four separate deputies/former deputies and Lott, Defendants, on October 6, 2025, produced a document that purports to show a Bench Warrant for Failure to Appear for which Defendants allegedly were engaging in the Pursuit. (Ex. 20, Bench Warrant). October 6, 2025 was the first time Plaintiff saw this alleged Bench Warrant. At the November 20, 2025 30(b)(6) deposition of Defendant, designee Spurrier easily located the tow slip for Pringle's car after the Arrest (which had never been produced) by simply searching Pringle's name on her laptop. (Ex. 16, Spurrier Dep., 28:5-25; Ex. 21, Tow Slip).

Defendants are asserting that the pursuit up the interstate the wrong way was necessary because Pringle was a danger to the community. Defendants further assert that their chase and intent to crash him while engaging in the pursuit driving the wrong way into traffic on the interstate was proper for this same reason. This is the Defendants' defense to the total disregard for the public's safety in the pursuit of Pringle that ended in life-altering injuries to Plaintiff, and the death of Pringle. However, despite Plaintiff's litigation preservation of evidence letter mailed to RCSD thirty-nine (39) days after the incident, the key information that Smith and Abdullah have testified should exist is nowhere to be found.

16

Plaintiff has, through months of her own investigation, discovered why Defendants were so deceptive in their discovery responses – Defendants released Pringle to go "Home" from the hospital following his Arrest. (Ex. 18 at 7, 42, 199). Defendants have not yet produced any documentation that pertains to: (1) who made the determination to release Pringle to go Home; (2) when that decision was made; and (3) why that decision was made. Any reasonable citizen, reasonable policies, prudent law enforcement procedures, etc., would dictate that an individual who was "an extremely dangerous fleeing felon" (Ex. 7, Hodge Dep. 85:1-14) would have paperwork and/or documentation pertaining to why Pringle was released from the hospital to go "Home" eight (8) days prior to the pursuit that catastrophically harmed Plaintiff.

Lastly, on March 5, 2026, Defendants perfectly encapsulated their own failures to produce all documentation related to Pringle in an email to Plaintiff. (Ex. 33). Defendants emailed Plaintiff, seeking to supplement the record, with: (1) four different arrest warrants from 2023 for Pringle and (2) Pringle's 2023 ASGDC history. (Ex. 33). Defendants sent this information to Plaintiff: (1) 617 days after Plaintiff initially served Defendants discovery and (2) after discovery in this case has concluded. This intentionally delayed production is yet another example of Defendants' callous disregard and brazen indifference for this Court's authority, Plaintiff's right to develop her case, and the Federal Rules of Civil Procedure. The provision of this information also directly contradicts Defendants' previous representations to Plaintiff that "The jail is run by Richland County and not the Sheriff, so you would have to ask the County for any documents relating to his booking, fingerprints, photographs, jail intake, jail release, property release, etc." (Ex. 14). Defendants, by their own statements and actions, have proven that they have and will continue to make false statements and misrepresentations to Plaintiff. This Court should not permit this behavior to continue.

The regularly maintained RCSD information/documentation related to Pringle and the December 20, 2023 arrest has seemingly been altered, hidden, and/or destroyed.  It is highly pertinent to Plaintiff's case, and the fact that it has not been produced by Defendants despite testimony that it should exist is highly prejudicial to Plaintiff and her case. (Ex. 12, Abdullah Dep. 21:23 – 22:8, 99:3-7; Ex. 16, Designee Spurrier Depo. 14:7-25; Ex. 31, RCSD Policy No. 803(9)(a) BAKER-M-352). All instances of information being withheld by the Defendants is highly improper, but this is the most egregious and stifling. This Court should not allow it to stand.

    C.  <u>Interference with Depositions</u>.

Despite the Court having previously ordered the Defendants to provide full and complete responses to discovery, Defendants' counsel throughout the course of the six (6) depositions taken by Plaintiff, objected continuously, withheld discoverable documents, and instructed witnesses not to answer, interrupting, impeding and attempting to help the witnesses to formulate answers.  This is not proper advocacy, but is instead, a violation of the rules of Civil Procedure and the Rules of Professional Conduct.  *In re Anonymous*, 346 S.C. 177, 189-91, 552 S.E.2d 10, 15-17 (2001), citing *Hall*, *infra*. Similarly, it is impermissible for counsel to interrupt the orderly flow of the deposition by interjecting and questioning the meaning of the deposing attorney's questions when the witness has given no indication that the question is unclear.  *Wright v. Firestone*, 93 F.R.D. 491, 493 (W.D. Ky. 1982); *Ralston v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977).  A deposition proceeds as it would at trial under the Federal Rules of Evidence. Fed. R. Civ. P. 30(c)(1). Objections are to be stated in a concise, non-argumentative, and **non-suggestive** manner. Fed. R. Civ. P. 30(c)(2) (emphasis added). All phases of the examination are subject to the control of the Court.  *See*, 8 Charles A. Wright & Miller, Federal Practice §§ 2113, 2116 (1971).  Once a deposition has begun, the witness is on their own. *Hall v. Clifton*, 150 F.R.D. 525, 529 (1993).

Should a party impede, delay, or frustrate the fair examination of a deponent, a court may impose appropriate sanctions. Fed. R. Civ. P. 30(d)(2).

Exhibit 22 hereto lists the depositions taken by Plaintiff and the number of objections entered in each deposition by Defendants' counsel. (Ex. 22). These sheer numbers demonstrate the impropriety of counsel's conduct. Defendants' counsel's speaking objections, when paired with the deponents' and designees' non-answers that regurgitated the objection indicate witness coaching, which is prohibited by Fed. R. Civ. P. 30(c)(1).

To illustrate, in the deposition of Abdullah, counsel objected thirty-one (31) times stating, "objection, relevance, . . .  it's irrelevant, . . . it's vague, . . . vagueness, . . . asked and answered, . . . compound,  . . . misstates the testimony, . . . it's vague and confusing, . . . lack of foundation." (*See generally*, Ex. 12, Abdullah Dep.).

In the deposition of Smith, defense counsel further engaged in improper speaking objections and coaching of answers, lodging a total of twenty-seven (27) objections that frequently included suggestive commentary rather than concise, non-argumentative grounds. Counsel interposed form objections coupled with explanatory narratives that rephrased the questions, thereby disrupting the flow of testimony and influencing the witness's answers.

In the 30(b)(6) deposition of RCSD, five individuals were presented as designees to testify on behalf of RCSD. Counsel: (1) objected approximately forty-eight (48) times, improperly asserting questions were outside the scope of the notice; (2) refused to turn over discoverable documents used by the witness to testify; and (3) instructed the witness not to answer questions from Plaintiff's counsel. As referenced, *supra*, Exhibit 22 contains a full accounting of the objections throughout Defendant RCSD's 30(b)(6) deposition.

### 1. Designee Pritchett.

Designee Pritchett, who is the Captain over the Professional Standards Division ("PSD") of RCSD, testified he is responsible for investigation of all complaints, and reviews of all use of force and all pursuits. (Ex. 23, 30(b)(6) Dep. Designee Pritchett 5:10-21). Pritchett was designated to testify regarding post-pursuit reports and the investigation into the Pursuit that injured the Plaintiff. (Ex. 24, email from Defendants' Counsel on Nov. 19, 2025 listing topic designees for 30(b)(6) deposition of RCSD). Pritchett admitted all the incident reports, pursuit reports, defensive action reports, witness statements, body cam and dash cam footage are entered into RCSD's AIMS or Benchmark databases by the deputy on the scene. (Ex. 23, at 8:25 – 10:9). All of these records are maintained electronically, however none were produced in the native format, nor electronic format by the Defendants and no records were provided at the 30(b)(6) deposition by any of the six (6) designees. Pritchett's statements directly contradict Defense Counsel's representation to Plaintiff that the three (3) banker boxes of paper, discussed *infra*, were only maintained in paper format. *See infra*, at 31.

Pritchett testified that despite the PSD duties to investigate all vehicle pursuits, Pritchett could not recall what verbal counseling was given to Smith regarding the pursuit that killed Pringle and severely harmed Plaintiff. (*Id.* at 19:9-24). Furthermore, Pritchett made no investigation to prepare for the deposition to determine what verbal counseling of Smith occurred regarding the Dec. 29, 2023 pursuit. Pritchett merely summarily testified that the PSD agreed with the "discipline." (*Id.* at 19:3-6). Pritchett: (1) could not explain anything pertinent regarding the discipline; (2) did not question Officer Duke who actually verbally counseled Smith; and (3) testified he had "no idea" if the PSD made any disciplinary decisions regarding any of the Defendants regarding their actions in the Pursuit. (Ex. 23, at 19:1-25, 25:18 – 26:8, 22:12-20). The

failure to adequately prepare Pritchett to respond to designations 1, 4, 5 and 6 as they relate to the Pursuit and improperly objecting continuously to coach the designee is sanctionable conduct.

### 2. Designee Pagano.

Designee Pagano is a Major over the RCSD Operations (Ex. 25, 30(b)(6) Dep. Designee Pagano, 7:8-25) who reports to Chief Polis and Lott. He was the Commander over the Training Division from 2013 until 2024 (*Id*. at 8:13-19). During this designee's testimony, Defendants' counsel entered the lengthy and improper objections set forth in Exhibit 22 hereto. Further, counsel engaged in improper objections to coach the witness on important matters. (*Id.* at 22:6 – 23:25).

Mr. Pagano admitted that the RCSD has internal policies that are different from the RCSD written Policies and Procedures (*Id.* at 41:4-8), and Lott decides if violating the written Policies and Procedures has any consequences. (*Id.*, 42:1-10; 42:25 – 43:6). Defendants' counsel continued improperly objecting. (Ex. 25, 30(b)(6) Pagano Dep., 48:10 – 50:14, 57:17 – 58:3).

### 3. Designee Spurrier.

Ms. Spurrier is the accreditation manager at the RCSD whose job it is to make sure RCSD's policies and procedures meet state standards of the South Carolina Law Enforcement Accreditation ("SCLEA") (Ex. 16, Spurrier Dep., 4:16 – 5:4). She was designated to identify and explain all records related to Pringle and all records related to Plaintiff's collision, as well as the content of the records. Counsel improperly objected/interfered as follows:

Page 8
```
15    Q.     Items 23 and 24. So the first item is the records
16    related to Byron Pringle.
17    What records does the Richland County Sheriff's
18    Department have related to Byron Pringle?
19    MR. SPREEUWERS: Objection. Vague. Go ahead.
20    BY MS. JONES:
21    A.      Records related to Byron Pringle, his name can be found
22    in the jail. It can be found in the ACES system. It
23    can be found in TriTech.
```

24    Q.    Anywhere else?
25    A.    Those are the systems that I have access to, that I have
Page 9
1     found.
2     Q.    Are they anywhere else?
3     A.    They would be in NCIC or the DMV.
Page 12
12    Q.    And what records did you find on the jail record system
13    related to Mr. Pringle?
14    MR. SPREEUWERS: Objection. It's outside the
15    scope. Vague. You can answer.

(Ex. 16).

Ms. Spurrier did not provide any records from NCIC, the DMV, or the jail despite the RCSD having access to those. (*Id.* at 8:21 – 9:11). Those records are available to all deputies and the RCSD records department (*Id.* at 10:1-6), but apparently not to designee Spurrier (*Id.* at 13:20-21). Spurrier intentionally only reviewed records within her scope and did not gather records from, nor meet with the Records Department Supervisor Mann to prepare to testify, nor with anyone else. (*Id.* at 14:16 – 15:17). She could not answer questions regarding Pringle's records available at the RCSD that she personally did not have access to. Counsel further instructed designee Spurrier to not answer questions regarding their off the record conversation that occurred after the deposition had started. (Ex. 16, Spurrier Depo, 16:4 – 17:25).

Spurrier admitted that the RCSD was not accredited by anyone prior to December of 2024 (*Id.* at 21:8-15) and Defendants' counsel inserted the following improper objection and interfered by challenging and questioning counsel for the Plaintiff:

Page 21
13    Q.    Was the Richland County Sheriff's Department accredited
14    by anyone prior to December of 2024?
15    A. No.
16    Q.    Why did the Richland County Sheriff's Department decide
17    to get accredited in December of 2024?
18    MR. SPREEUWERS: Objection. This continues to be
19    outside the scope. Do we have any idea when we're going
20    to get back to the topics for which she was designated,

21      Celeste? Because at some point, when you continue to
22      ask a long line of questions that are outside the scope,
23      that's going to turn into harassing and annoying and
24      wasting the time of this witness.    So I'd just like an
25      answer to that question.

(Ex. 16, Spurrier Dep). Ms. Spurrier also testified that all the accreditation data is electronically uploaded and available. (Ex. 16, Spurrier Dep., 23:16 – 24:4). Yet none has been provided to Plaintiff. Moreover, all deputies in the field have access to the NCIC data as part of the CAD reports (Id., at 27:1-10) but Spurrier does not and therefore could not answer questions regarding these records.

As to Pringle's December 20, 2023 arrest, RCSD had the tow slip which Ms. Spurrier accessed during her portion of the deposition (Id. at 28:1-17). At that time the tow slip had never been produced by Defendants. Ms. Spurrier had no explanation for the lack of records related to Pringle's transport to the hospital on December 20, 2023, nor RCSD's decision to release Pringle from custody on December 20, 2023 (Id. at 29:7-25). In fact, Defendants' counsel specifically entered an improper objection to signal to the witness to state the information asked was "outside of my scope." (Id. at 29:7 – 30:13).

The improper gamesmanship by counsel in: (1) coaching the witness; (2) purposefully providing witnesses who were not prepared to answer questions regarding the areas designated; and (3) habitually misleading counsel and this Court is prohibited and should be sanctioned.

### 4. Designee Gilman.

Major Karen Gilman ("Gilman"), newly promoted to Major in RCSD's Operations Division in approximately November 2025, was designated to testify regarding all required reports related to the death of a fleeing suspect, injuries to civilians, and the entirety of the contents of Ex.

10 to Lott's deposition, and to explain the supervisor review of the Pursuit that injured the Plaintiff. (Ex. 26, Dec. 29, 2023 Incident Report).

Part of Defendants' fashioned defense in the case is the assertion that "In regards to this specific situation, a civilian was involved in injuring another civilian . . . ." (Ex. 27, 30(b)(6) Dep. Designee Gilman, 16:4-17). However, Gilman admitted that if the deputy had been involved in injuring a civilian, a defensive action report would have been required to be completed. (*Id*. at 16:12-15). She testified that if a deputy caused the death of a fleeing suspect in an officer-involved shooting the investigation would be referred to the Solicitor (*Id*. 17:9-24), but she did not know if a death caused by a vehicle pursuit is referred to the Solicitor (*Id*. 18:5 – 19:4).

When Gilman was questioned about her discussion and meeting with Smith regarding the Pursuit review and about Gilman's discussion with Captain Duke, counsel yet again improperly objected. (*Id*. at 26:8 – 27:10). Likewise, counsel signaled the witness with an improper objection when designee Gilman was asked about the corrective action taken (verbal counseling) against Smith regarding the incident.

> Page 29
> 9    Q.    Were you the person who issued the discipline, the
> 10   verbal counseling to Deputy Smith concerning this
> 11   incident?
> 12   MR. GARFIELD: Object to the form. You got this.
> 13   BY MS. JONES:
> 14   A.    Okay. Verbal counseling is not necessarily a
> 15   discipline, but a discussion.   Like I said, there's
> 16   always a training opportunity. Discipline, if any is
> 17   determined to be necessary, is done after the pursuit
> 18   packet is sent up to our Professional Standards
> 19   Division. We don't -- we don't make those
> 20   determinations.
> 21   Q.    So you nor Mr. Duke would have made any disciplinary
> 22   determination; is that correct?
> 23   A. Correct.
> 24   Q.    This incident report and these documents would have been
> 25   sent to the Professional Standards Division for that

Page 30
```
1        determination?
2        Yes. So in the reporting system, it automatically goes
3        there.
```

(Ex. 27, Gilman Dep.)

The defense has fashioned two false narratives and improperly objected to advance these:

1) Plaintiff was injured by a fleeing felon (and not due to the actions of the Defendants and deputies) such that the RCSD policies requiring reports to the Solicitor's office for an independent review when a death occurs are avoided; and

2) The "Corrective Action" and "verbal counseling" are not discipline such that Defendants' utter failures to require compliance with the minimum standards mandated by statute can knowingly continue and be covered up by Lott and RCSD.

When questioned regarding the designee's actual knowledge of the corrective action taken by Captain Chris Duke against Smith, the designee admitted she never discussed with anyone (other than defense counsel in preparation to be deposed as the 30(b)(6) designee), and then falsely testified Captain Duke "retired."

Page 30
```
20    Q.    Is Christopher Duke still with the sheriff's department?
21    A.    No.
22    Q.    When did he leave?
23    A.    A couple months ago.
24    Q.    Did he retire?
25    A.    Yes.
```

(Ex. 27, Gilman Dep., 30:20-25). Upon information and belief, Christopher Duke was fired in October 2025 after being arrested and charged with DUI. Brooke Ashton, Richland County deputy fire after DUI arrest, WIS 10, Jan. 20, 2026 https://www.wistv.com/2025/10/06/richland-county-deputy-fired-after-dui-arrest/ (Ex. 28). The lack of preparation of the witness, the improper

coaching, and the false testimony are all sanctionable conduct and this Court should sanction Defendants to prevent future abuse of the discovery process.

### 5. Designee McDuffie.

Joanne McDuffie, Deputy Chief for Legal Affairs, was designated to testify regarding the RCSD's Policy and Procedure Manual and claims against the RCSD. Notably she admitted she emails all lawsuits filed and claims to the Richland County Attorney's Office and to the Richland County Attorney, Patrick Wright, with copies to Brittney Terry and Christa Sheehan, who then decide whether to hire outside counsel to defend the claims or to handle the matters in-house (Ex. 29, 30(b)(6) Dep. Designee McDuffie 9:1-25).  She further testified that even though she keeps these emails she did not access them to respond to discovery in this case.  (*Id*. at 24:1-25 – 25:2). This sworn testimony belies the representations made to the Plaintiff and to the Court regarding the availability of responsive electronic documents to RFP No. 7 and the litany of misrepresentations related to the bad faith 8,863 page document dump on May 5, 2025.  This blatant misrepresentation is staggering given the fact that one search of McDuffie's emails would have provided the records in a readable and electronic format. The continued refusal of Defendants to answer opinion questions and Defendants' admissions of their failures to provide discovery materials coupled with the objections and witness coaching has further thwarted Plaintiff's attempts to fully develop her case.

## III.   **Defendants' False Representations and Delay Tactics throughout Discovery**

As addressed herein, Defense Counsel has made false representations to Plaintiff throughout the entire discovery process regarding the existence of responsive documents in Defendants' possession or control. First and foremost, when Defendants produced three (3) banker boxes of paper documents, Defense Counsel represented that the documents were only kept in

paper format and had to be scanned in by Defense Counsel themselves. This is directly contradicted by Defendants' vendor NOVA who forwarded to Plaintiff an electronic link to the documents. Defense Counsel's representation is further contradicted by the Defendants. (*See* <u>Ex. 6</u>, Smith Dep. 41:3-13; <u>Ex. 23</u>, RCSD 30(b)(6) Dep. Designee Pritchett at 8:25 – 10:9). Abdullah, Hodge, Smith, and Dillard testified that this information would be available on TriTech and/or on RCSD's system. (<u>Ex. 8</u>, Dillard Dep. 27:20 – 28:5), (<u>Ex. 6</u>, Smith Dep. 41:7 – 42:1), (<u>Ex. 7</u>, Hodge Dep. 96:17 – 97:22), (<u>Ex. 12</u>, Abdullah Dep. 77:3 – 78:4). This is also contradicted by Spurrier's email to WIS TV providing specific, granular statistics pertaining to pursuits in 2023 (<u>Ex. 32</u>) and RCSD 30(b)(6) designees Pritchett and McDuffie's testimony discussed *supra*.

Furthermore, RCSD's own social media praised their records department, stating: "Meet our Records Division team! Each day they are busy managing, editing and entering **every single report** that is written. This is roughly 100 incident reports each day!" Richland County Sheriff's Department,                                                                                                                          Facebook, https://www.facebook.com/RichlandCountySheriffsDepartment/photos/meet-our-records-division-team-each-day-they-are-busy-managing-editing-and-enter/785276853644268/?_rdr (last visited Nov. 4, 2025)(emphasis added) (<u>Ex. 30</u>). The fact that Defendants so callously and blatantly misrepresented the existence of electronic records to Plaintiff when contradictory information exists – on social media of all places – is shocking. These misrepresentations, contradicted by Dillard, Hodge, Smith, Abdullah, and RCSD's own social media department – along with Defendants' other false and misleading representations discussed above – warrant striking Defendants' Answer and entering default in favor of Plaintiff.

65130951 v4

Defendants' tactics and goals in discovery are clear: delay as long as possible, irrespective of the Federal Rules of Civil Procedure and directives of this Court, in an attempt to hide the truth and prejudice Plaintiff.

The clearest example of Defendants' bad-faith actions in discovery pertains to their production of the last five (5) years of vehicle pursuits in Richland County. Plaintiff originally requested this information in Request for Production No. 6, on June 27, 2024. After: (1) filing a Motion to Compel; (2) this Court granting the Motion to Compel; (3) Defendants filing an improper motion to reconsider; and (4) this Court re-affirming its Order in granting the Motion to Compel, Plaintiff received these documents on paper on May 5, 2025 in three banker boxes.

The production of 8,863 pages in paper form was an intentional "poke in the eye" to Plaintiff and this Court. Defendants intentionally instructed NOVA to delay delivery until after 4:00 PM on the day the production was due (May 5, 2025), despite Defendants sending them to NOVA early in the afternoon of May 2, 2025. To put the proverbial cherry on top, one of Defendants' Counsel had the audacity to chuckle during the deposition of Lott when Lott was questioned about the production of paper documents in three banker boxes.

It is blatantly clear Defendants have attempted to delay and deny Plaintiff relevant information at every turn of this lawsuit and violate this Court's prior Orders. These tactics have prevented Plaintiff from obtaining the necessary information to develop her case and question witnesses.

## IV.    **Application of the *Wilson* Factors**

Four factors must be considered when a Court makes the determination as to whether a pleading should be struck: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into

the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Wilson v. Volkswagen of America*, Inc., 561 F.2d 494, 503-04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). Defendants' actions in the discovery of this lawsuit fit neatly within these four factors, and their answer should be struck by this Court.

    A.   <u>Bad Faith</u>.

Defendants' bad faith is apparent. Defendants' conduct reflects a calculated strategy to obstruct discovery. After this Court's Order compelled production, Defendants orchestrated an eleventh-hour "paper dump" of 8,863 mostly illegible pages while withholding the electronic files. Defendants persisted in claiming responsive materials were only in paper form even though Smith and RCSD 30(b)(6) designees testified that incident, pursuit, and booking records are created, approved, and stored electronically in RCSD's systems. Defendants also made these representations despite the fact that RCSD had provided WIS TV specific pursuit statistics pertaining to 2023 pursuits, further exhibiting that these statistics are tracked and maintained in database at RCSD. (<u>Ex. 32</u>). Defendants also delayed producing Professional Standards materials for months and revealed a bench warrant only after key depositions had been taken. Further, Defendants intentionally waited to provide key information on Pringle until discovery had closed and only a few days prior to the motions deadline. (<u>Ex. 33</u>). Defendants engaged in other delay tactics and apparent failures to produce documents that clearly are within their possession and are relevant to the claims and defenses in this lawsuit. Defendants continue to withhold the records regarding Pringle's Arrest, as well as the Annual Reports, desk reports and training videos, etc. as set forth above. Plaintiff has no way of knowing what information has been withheld from her, and Defendants' behavior in strategically withholding and delaying the release of key information

has prevented Plaintiff from being able to develop her case. Any attempt by Defendants to correct nearly two years of discovery misdeeds is too little, too late. This behavior throughout this prolonged litigation is definitive "bad faith."

      B.    <u>Prejudice Incurred by Plaintiff.</u>

The prejudice is concrete and case-dispositive. Core training and Professional Standards materials, pursuit packets, and use-of-force/discipline records remain incomplete or late; routine towing documentation tied to Pringle was missing until the 30(b)(6) deposition of RCSD. (<u>Ex. 12</u>, Abdullah Dep. 77:19-78:3, 91:1-7; 92:21-25). Furthermore, Defendants willingly withheld the bench warrant, that purportedly supports their decision to pursue Pringle, until after the depositions of Smith, Hodge, Dillard, and Lott. Further withholding of Pringle's information has continued until mere days before the filing of this motion. The withholding of RCSD's vehicle pursuit statistics continues to this day. These gaps in Defendants' document productions impair Plaintiff's ability to test Defendants' denials and to present expert analysis on policy compliance, causation, and punitive damages. Furthermore, no: (1) desk sergeant reports; (2) DAC meeting minutes; or (3) records indicating why Pringle was released from the hospital to go home eight (8) days before the pursuit that catastrophically harmed Plaintiff have been produced at this point. This information is clearly relevant and the fact that Plaintiff was denied and/or delayed this information until after key depositions were taken is highly prejudicial.

      C.    <u>Deterrence of Future Actions by Defendants.</u>

The litany of evidence referenced throughout this Memorandum demonstrates Defendants': (1) failure to comply with Court Orders; (2) misleading responses to discovery requests; (3) failure to produce discoverable information; (4) intentional delay of producing relevant, and discoverable information; and (5) improperly coaching witnesses during depositions.

When a sophisticated law enforcement agency flouts discovery orders by weaponizing format and timing, it sends a message that compliance is optional. Defendants apparently believe they are above the law and the dominion of this Court. Deterrence is necessary to protect the integrity of and respect for this Court's orders and to ensure future litigants receive full and honest discovery responses and timely, usable electronically stored information when dealing with RCSD.

      D.    <u>Less Drastic Sanctions Lack the Teeth Necessary to Punish this Behavior</u>.

The Orders from this Court and repeated meet-and-confers did not secure compliance. Defendants delayed, withheld the existence of electronically stored information, and intentionally produced thousands of paper pages, while withholding native files in an attempt to delay Plaintiff's pursuit of relevant, discoverable evidence. The same conduct persisted even after depositions confirmed the location and nature of responsive electronic records. Following two (2) Orders to provide full and complete responses, Defendants failed to comply. Defendants continue to strategically delay and withhold production of information highly relevant to Plaintiff's claims.

The foregoing demonstrates Defendants' responses cannot be trusted. At this stage only striking the Answer, awarding Plaintiff's costs and attorneys' fees, and entering robust remedial measures will cure the prejudice and compel respect for the Court's authority.

<b><u>CONCLUSION</u></b>

Defendants have failed to meaningfully participate in this discovery process. Furthermore, Defendants have: (1) failed to produce relevant, discoverable documentation; (2) failed to comply with this Court's Orders; (3) intentionally delayed Plaintiff's discovery efforts; and (4) intentionally derailed depositions.

Defendants' discovery responses cannot be reconciled. Plaintiff now knows that Defendants have failed to produce all relevant, discoverable information in this case despite

Defendants' contrary assertions. Defendants have ignored this Court's Orders by delaying production of responsive documents and clearly waited to produce the Bench Warrant for Pringle until after the depositions of Defendants have concluded. These actions demonstrate clearly and unequivocally that Defendants never intended to properly participate in discovery in this case: (1) as ordered by this Court; (2) as required by the Federal Rules of Civil Procedure; or (3) in good faith. Information that is relevant, discoverable, and highly prejudicial to Defendants has been and is currently being withheld. Defendants have denied Plaintiff the opportunity to properly prove her case, which is a right guaranteed to her by the Federal Rules of Civil Procedure and case law.

Should this Court find that Defendants deserve the ability to remediate their shortcomings, in lieu of striking Defendants' Answer, Plaintiff would request that the Court instruct the jury that: (1) Defendants failed to produce responsive documents; (2) Defendants failed to comply with the Court's Orders; (3) Defendants failed to provide information requested during the 30(b)(6) Deposition of RCSD; (4) all inferences related to those failures should be construed in favor of the Plaintiff; and (5) all such responses would have been harmful to Defendants. Further, Plaintiff would request that this Court Order Defendant to pay Plaintiff's attorneys' fees associated with Defendants' discovery malfeasance throughout this litigation.

Based on the foregoing, Plaintiff respectfully requests that this Court grant her Motion for Sanctions by striking Defendants' Answer, awarding attorney's fees and costs incurred in bringing this motion, as well as any other relief that this Court deems just.

I certify that no consultation was required with opposing counsel on this motion as this motion is dispositive in nature.

[*signature page to follow*]

32

Respectfully submitted,

BURR & FORMAN, LLP

s/ *Celeste T. Jones*
Celeste T. Jones, Fed. ID #2225
ctjones@burr.com
Benjamin R. Jenkins, IV, Fed. ID #14138
bjenkins@burr.com
Burr & Forman, LLP
P.O. Box 11390
Columbia, South Carolina 29211
803-799-9800
803-753-3278 (Fax)

Michael K. K. Choy (*pro hac vice*)
mchoy@burr.com
Burr & Forman, LLP
420 20th St. N #3400
Birmingham, Alabama 35203
(205) 251-3000
(205) 458-5100 (fax)

Columbia, South Carolina
March 10, 2026

*Attorneys for Plaintiff*

65130951 v4