Pamela A. Baker v. Leon Lott, in his official capacity as the Sheriff of Richland County Sheriff's Office, et al.
Case No. 3:24-cv-04303-JDA

# Exhibit 7
## to Plaintiff's Memorandum in Support of her Fed. R. Civ. P. 37 Motion for Sanctions including but not limited to Striking Defendants' Answer and Awarding Plaintiff Attorney's Fees

*Deposition Excerpts of Bryan Hodge*

```
             IN THE UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH CAROLINA
                      COLUMBIA DIVISION



PAMELA A. BAKER,

          Plaintiff,

vs.                              CASE NO.:3:24-CV-04303-JDA


LEON LOTT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
THE SHERIFF OF RICHLAND COUNTY; THE RICHLAND COUNTY
SHERIFF'S DEPARTMENT; AND DEPUTIES MATTHEW SMITH, MICHAEL
DILLARD AND BRYAN HODGE,

          Defendants.



                      D E P O S I T I O N

WITNESS:             BRYAN HODGE

DATE:                Friday, September 19, 2025

TIME:                9:34 a.m.

LOCATION:            Burr & Forman
                     1221 Main Street, Suite 1800
                     Columbia, South Carolina  29201

TAKEN BY:            Attorney for the Plaintiff

REPORTED BY:         Robin Dunn
                     South Carolina Court Reporter


                       LEGAL EAGLE

                   Post Office Box 5682

              Greenville, South Carolina 29606

                      864-467-1373

                  depos@legaleagleinc.com
```

 1   A   There was, in fact, a supervisor that got on the
 2       radio and told me that it was authorized.
 3   Q   Okay.  Why do you think Mr. Pringle was a known
 4       and extremely dangerous fleeing felon?
 5   A   Well, the first one, the reason we attempted to
 6       get out with Mr. Pringle to begin with, is that
 7       fact that he's a fentanyl dealer.  Fentanyl, as I
 8       hope everybody in here knows, that Fentanyl is a
 9       very dangerous, very potent drug.  And there has
10       been quite -- quite a bit of deaths from that,
11       because people don't understand it.  That in
12       itself makes him a danger to society if he
13       continues.  Who knows how many people he could
14       kill.
15   Q   So you believe Mr. Pringle should have been in
16       jail.
17   A   Do I believe he should have been in jail?
18   Q   Yes, sir.
19           MR. GARFIELD:  Object to the form.
20           THE WITNESS:  Yes.  If he's a felon, yes.
21   BY MR. JENKINS:
22   Q   Okay.  Can you read -- go to 336, under
23       Subparagraph B, intervention standards, and read
24       the second sentence starting with, certain
25       applications.

| | | |
|---|---|---|
| 1 | | initiating officer -- a post-pursuit police |
| 2 | | pursuit report as the initiating officer? |
| 3 | A | If I was the initiating officer, we always fill |
| 4 | | out pursuit reports. |
| 5 | Q | So have you? |
| 6 | A | Yes. |
| 7 | Q | Okay.  Do you know how many times you have? |
| 8 | A | From like now until -- |
| 9 | Q | Since you started. |
| 10 | A | There's -- I have no number.  I'm assuming it's |
| 11 | | pretty high. |
| 12 | Q | In the hundreds? |
| 13 | A | I couldn't give you an exact number.  It's |
| 14 | | definitely over -- I'd say it's probably over 50. |
| 15 | Q | Okay. |
| 16 | A | Under 150.  That's my educated guess. |
| 17 | Q | Okay.  That you've been the lead on -- or I'm |
| 18 | | sorry -- initiating.  Okay.  So there would be 50 |
| 19 | | to -- somewhere between 50 and 150 post-pursuit |
| 20 | | reports that you have filled out. |
| 21 | A | More than likely, yes. |
| 22 | Q | How do you fill those out? |
| 23 | A | Through Tri-Tech.  And we also have a different |
| 24 | | system called Benchmark that we use for now.  That |
| 25 | | is a new thing now. |

| | | |
|---|---|---|
| 1 | Q | When did Benchmark start? |
| 2 | A | Like the end of last year, beginning of this year. |
| 3 | Q | Okay.  So -- but back at this time you would have |
| 4 | | used Tri-Tech. |
| 5 | A | Would have been -- at that time it probably would |
| 6 | | have been Tri-Tech, yes. |
| 7 | Q | Okay.  And is Tri-Tech on your -- your patrol car? |
| 8 | A | Yes. |
| 9 | Q | Sorry.  That was a terrible question.  Is it on |
| 10 | | the computer in your patrol car? |
| 11 | A | Yes.  It's on the computer. |
| 12 | Q | And is it just an application, you go in and fill |
| 13 | | out the information? |
| 14 | A | It is -- I don't know if you would call it an |
| 15 | | application.  It's a website that law enforcement |
| 16 | | uses. |
| 17 | Q | Okay.  And once you fill it out -- when you submit |
| 18 | | it, where does it go? |
| 19 | A | It goes up different parts of the chain of |
| 20 | | command, whether it's your immediate supervisor to |
| 21 | | your sergeant, to lieutenant, to IA.  It goes to |
| 22 | | those people. |
| 23 | Q | Is IA and professional standards the same thing, |
| 24 | | or, no? |
| 25 | A | I -- I believe it is.  It's just a different word. |