PAMELA A. BAKER v. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND
COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 16

## TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER FED. R. CIV. P. 37 MOTION FOR SANCTIONS INCLUDING BUT NOT LIMITED TO STRIKING DEFENDANTS' ANSWER AND AWARDING PLAINTIFF ATTORNEY'S FEES

*30(B)(6) RCSD DEP. DESIGNEE SPURRIER DEPOSITION EXCERPTS*

                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
                            COLUMBIA DIVISION
                      C.A. No.: 3:24-cv-04303-JDA


PAMELA BAKER,

              PLAINTIFF,

vs.


LEON LOTT, individually and in his official
capacity as the Sheriff of Richland County;
THE RICHLAND COUNTY SHERIFF'S DEPARTMENT;
and DEPUTIES MATTHEW SMITH, MICHAEL DILLARD,
and BRYAN HODGE,

              DEFENDANTS.



           30(b)(6)  D E P O S I T I O N



WITNESS:       JENNIFER SPURRIER
DATE:          NOVEMBER 20, 2025
TIME:          9:59 A.M.
LOCATION:      BURR & FORMAN, LLP
               1221 MAIN STREET, SUITE 1800
               COLUMBIA, SOUTH CAROLINA 29201

REPORTED BY:   AMBER SOMERO










                         LEGAL EAGLE
                    Post Office Box 5682
               Greenville, South Carolina 29606
                        864-467-1373
                   depos@legaleagleinc.com

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                                    4

```
 1   STIPULATIONS:

 2   It is agreed by and between the Counsel for the parties as

 3   follows:

 4   1.   That this deposition is being taken pursuant to the

 5        Federal Rules of Civil Procedure;

 6   2.   That the deponent reserved the right to read and sign

 7        the deposition transcript.

 8   Whereupon,

 9                       JENNIFER SPURRIER,

10   first being duly sworn, was examined and testified as

11   follows:

12                       DIRECT EXAMINATION

13   BY MS. JONES:

14   Q.   Could you state your full name and position for the

15        record, please.

16   A.   Sure.  Jennifer Spurrier.  My title is accreditation

17        manager at the Richland County Sheriff's Department.

18   Q.   And Ms. Spurrier, what are your duties and

19        responsibilities as the accreditation manager for the

20        Richland County Sheriff's Department?

21   A.   I make sure that all of our policies and procedures meet

22        state standards.  And I show proof through incident

23        reports and different things that we are following our

24        policies and procedures and meeting those state

25        standards.
```

1  Q.   And what state standards are you referring to?

2  A.   The SCLEA standards.

3  Q.   And what does SCLEA stand for?

4  A.   The South Carolina Law Enforcement Accreditation.

5  Q.   And why do you provide that information to the State

6       standards, the SCLEA standards?

7           MR. SPREEUWERS:  Objection.  That's outside the

8       scope.  You can answer.

9  BY MS. JONES:

10 A.   The sheriff's department maintains our accreditation so

11      that we can show that we are an accredited agency and

12      that we meet the standards that the State requires and

13      that our policies and procedures meet the higher level

14      standards.

15 Q.   What do you mean, higher level standards?

16 A.   The State -- the South Carolina Criminal Justice Academy

17      has nine standards that they are -- required law

18      enforcement agencies to meet.  SCLEA has more than that.

19      And our sheriff's department meets those standards.

20 Q.   How many does SCLEA have?

21 A.   Well over 200.

22 Q.   What is briefly your educational and work history

23      background?

24 A.   I have a master's degree in criminal justice, and I have

25      worked in this position for three years.

 1   Q.   And then you moved into your position as the

 2        accreditation manager?

 3   A.   Yes.

 4   Q.   My understanding from the attorneys is that you've been

 5        designated as the witness, 30(b)(6) witness, for the

 6        sheriff's department in regards to items 23 and 24 in

 7        the notice, which is marked as Plaintiff's Exhibit 54,

 8        and I would ask you to review that and confirm that that

 9        is correct.

10   A.   Twenty-three and twenty-four, yes.  It has my name

11        written next to 24 and 25.

12   Q.   Okay.  Sorry.  We'll fix that.  All right.  And now

13        would you confirm that that is correct?

14   A.   Yes.

15   Q.   Items 23 and 24.  So the first item is the records

16        related to Byron Pringle.

17             What records does the Richland County Sheriff's

18        Department have related to Byron Pringle?

19             MR. SPREEUWERS:  Objection.  Vague.  Go ahead.

20   BY MS. JONES:

21   A.   Records related to Byron Pringle, his name can be found

22        in the jail.  It can be found in the ACES system.  It

23        can be found in TriTech.

24   Q.   Anywhere else?

25   A.   Those are the systems that I have access to, that I have

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    9

```
 1        found.

 2   Q.   Are they anywhere else?

 3   A.   They would be in NCIC or the DMV.

 4   Q.   Anywhere else?

 5   A.   No, ma'am.

 6   Q.   What is the jail?

 7   A.   The jail would be the Alvin S. Glenn Detention Center

 8        database.

 9   Q.   And does the Richland County Sheriff's Department have

10        access to the Alvin S. Glenn Detention Center database?

11   A.   Yes.

12   Q.   And is it utilized on a regular and ongoing basis?

13   A.   Yes.

14   Q.   And who all at the Richland County Sheriff's Department

15        has access to the jail records?

16   A.   I do not know who all has access to them.

17   Q.   Who do you know that has access to them?

18   A.   I know I do.  I know that public information officers do

19        and investigations.

20   Q.   And what is the ACES system?

21   A.   The ACES system is where evidence records are housed.

22   Q.   And what is TriTech?

23   A.   TriTech is the records management system.

24   Q.   Do you know who has access to the records management

25        system?
```

```
 1   A.   Yes.  All deputies, and records workers, our records

 2        ladies.

 3   Q.   And who's in charge of the records department?

 4   A.   The records supervisor.

 5   Q.   And who is that?

 6   A.   Olivia Mann.

 7   Q.   How many folks work in the records department, if you

 8        know?

 9   A.   I don't know.

10   Q.   Where is your office physically located?

11   A.   In the headquarters building.

12   Q.   And where is that?

13   A.   5623 Two Notch Road.

14   Q.   Is the records department also located there?

15   A.   Yes.

16   Q.   Is the ACES evidence records system located there?

17   A.   The -- that's a web-based system.

18   Q.   Okay.  Is the ACES system, evidence records web-based

19        system, available to the personnel at the sheriff's

20        department?

21   A.   If they have access.

22   Q.   And who determines if they have access?

23   A.   I don't know.

24   Q.   Do you have access?

25   A.   Yes.
```

```
 1   Q.   By Olivia Mann and her team, correct?

 2   A.   Yes.

 3   Q.   Okay.  And in preparation for testifying in regards to

 4        items 23 and 24, what preparation and review did you

 5        undertake?

 6   A.   I was able to, in the databases that I have access to,

 7        look up Mr. Pringle's name.

 8   Q.   But you don't have access to the DMV?

 9   A.   I do not.

10   Q.   So you didn't look those up?

11   A.   I did not.

12   Q.   And what records did you find on the jail record system

13        related to Mr. Pringle?

14            MR. SPREEUWERS:  Objection.  It's outside the

15        scope.  Vague.  You can answer.

16   BY MS. JONES:

17   A.   That database provides all of his arrest information

18        between the City of Columbia Police Department and any

19        time that he was housed in the Alvin S. Glenn Detention

20        Center.

21   Q.   And how far back did those records go on Mr. Pringle?

22   A.   I don't recall off the top of my head.

23   Q.   And what records concerning Mr. Pringle did you find in

24        the ACES system?

25   A.   The ACES system housed drug information that was found
```

```
 1      on his person.

 2  Q.  And that's the testing that was done on substances?

 3      What do you mean when you say drug information?

 4  A.  It was evidence that was turned in that was found on his

 5      person by the officers.  And it may not have been tested

 6      at this time.  I didn't go in.  It's broken down by

 7      different evidence labels.

 8  Q.  What are the different evidence labels?

 9  A.  How the deputy turned it in and classified it.  It might

10      be orange pill bottles.  Until it's tested, they don't

11      know what it is.  They can't definitively say.

12  Q.  When you say different evidence labels, what do you mean

13      by that?

14  A.  We have evidence labels and evidence bags.  We have a

15      system that the deputies follow when they turn in

16      evidence.

17  Q.  And for drugs, how many different evidence labels are

18      there?

19  A.  I don't know.

20  Q.  Did you find license tag information for Mr. Pringle?

21  A.  I do not have access to NCIC.

22  Q.  Did you find documents related to his December 20th

23      arrest?

24  A.  Yes.

25  Q.  And what records did you find related to the December
```

```
 1        20th arrest?

 2   A.   I found the incident report.

 3   Q.   What else?

 4   A.   The tow slip.

 5   Q.   What else?

 6   A.   That was it from that day.

 7   Q.   Did you find any record related to him being transported

 8        to the hospital?

 9   A.   No.

10   Q.   Did you find any record related to the decision to

11        release him to home?

12   A.   No.

13   Q.   Did you find any other records related to the December

14        20th arrest?

15   A.   No.

16   Q.   Do you believe that you made a complete search of all

17        the records that are within the possession or control of

18        the Richland County Sheriff's Department related to

19        Mr. Pringle?

20   A.   Within my scope.

21   Q.   Explain that to me.  What do you mean within your scope?

22   A.   That I have access to.  Like I said, I don't have access

23        to NCIC or DMV.  So within my scope of what I could look

24        up, yes, ma'am, I believe that I looked up everything

25        that I have access to.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                                    15

```
 1   Q.   But you don't have access to the DMV records?

 2   A.   I do not.

 3   Q.   But the records department, Ms. Olivia Mann and her

 4        personnel, have access to the DMV?

 5   A.   Yes.

 6   Q.   Do they also have access to the NCIC?

 7   A.   I do not know.

 8   Q.   Do they have access to TriTech?

 9   A.   Yes.

10   Q.   Do they have access to ACES?

11   A.   I don't know.

12   Q.   Do they have access to the jail?

13   A.   I don't know.

14   Q.   Did you meet with Ms. Mann or discuss records related to

15        Byron Pringle in preparation for testifying on behalf of

16        the department?

17   A.   No.

18   Q.   Did you meet with anybody?

19   A.   I met with my attorney.

20   Q.   When did you meet with your attorney?

21   A.   Yesterday.

22   Q.   Any other time?

23   A.   Not that I know of.

24   Q.   Did you meet with him today?

25   A.   Yes.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    16

```
 1   Q.   Did you meet with him following the deposition of

 2        Captain Pritchett?

 3   A.   Yes.

 4   Q.   And were you here for part of Captain Pritchett's

 5        testimony?

 6   A.   Yes.

 7   Q.   And after that, did you meet with the attorneys and

 8        discuss the substance of your testimony?

 9             MR. SPREEUWERS:  Objection.  That's specifically

10        requesting the substance of the communication with her

11        attorneys.  So I will instruct her not to answer that

12        question.

13   BY MS. JONES:

14   Q.   I just want to know if you did discuss it with them.

15             MR. SPREEUWERS:  Don't answer that question.

16             MS. JONES:  The deposition has begun.  The rule is

17        if you discuss things with your attorney during the

18        course of the deposition, it is discoverable.  And I'm

19        asking her to tell me if she did have such discussions.

20             MR. SPREEUWERS:  This witness's deposition had not

21        begun at the time of any communication, so I'm going to

22        instruct her not to answer the question.

23             MS. JONES:  This is a 30(b)(6) deposition.  It

24        began yesterday.  And it continues until it's completed.

25             MR. SPREEUWERS:  I've instructed her not to answer.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                  17

```
 1          You can move on or you can keep arguing about it.

 2   BY MS. JONES:

 3   Q.   Other than yesterday and today, what other times have

 4        you met with the attorneys, if any?

 5   A.   Regarding this case?

 6   Q.   Yes, ma'am.

 7   A.   Yesterday.

 8   Q.   Just yesterday?

 9   A.   Yes.

10   Q.   And how long did you meet yesterday?

11   A.   Five hours.

12   Q.   And who, other than the attorneys, was present for this

13        meeting yesterday?

14   A.   Other people that were going to be deposed.

15   Q.   Chief Ashe?

16   A.   Yes.

17   Q.   Major Gilman?

18   A.   Yes.

19   Q.   Chief Joanne McDuffie?

20   A.   Yes.

21   Q.   And Captain Michael Pritchett?

22   A.   Yes.

23   Q.   So you met five hours yesterday, and then how long did

24        you meet with them today?

25   A.   Five minutes.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    21

```
 1        outside the scope.  You can answer.

 2   BY MS. JONES:

 3   A.   For your initial accreditation year, it's -- it's your

 4        first year.  Once you're accredited, it happens three

 5        years after that.

 6   Q.   It was every three years?

 7   A.   Yes.

 8   Q.   When was the Richland County Sheriff's Department

 9        originally accredited?

10   A.   It was accredited in December of 2024.

11   Q.   That was the first time?

12   A.   Yes.

13   Q.   Was the Richland County Sheriff's Department accredited

14        by anyone prior to December of 2024?

15   A.   No.

16   Q.   Why did the Richland County Sheriff's Department decide

17        to get accredited in December of 2024?

18            MR. SPREEUWERS:  Objection.  This continues to be

19        outside the scope.  Do we have any idea when we're going

20        to get back to the topics for which she was designated,

21        Celeste?  Because at some point, when you continue to

22        ask a long line of questions that are outside the scope,

23        that's going to turn into harassing and annoying and

24        wasting the time of this witness.  So I'd just like an

25        answer to that question.
```

```
 1   A.   There is no current auditor because we're in our three

 2        year reaccreditation period.

 3   Q.   Who did the accreditation, if you know, in 2024?

 4   A.   Billy Albert and Helen Westmoreland.

 5   Q.   Did you meet with those people?

 6   A.   Yes.

 7   Q.   How many times did you meet with Mr. Albert and

 8        Ms. Westmoreland?

 9   A.   Regarding the audit?

10   Q.   The accreditation and audit.

11   A.   They were in town for two days to do the audit.

12   Q.   And did you provide them with information?

13   A.   Information on what?

14   Q.   On the Richland County Sheriff's Department.

15   A.   Yes.

16   Q.   What information did you provide to them?

17   A.   Anything and everything they could possibly ask for on

18        the 200 standards of the accreditation.

19   Q.   And did they ask for this information to be provided to

20        them in electronic format?

21   A.   Yes.

22   Q.   And did you provide it to them in electronic format?

23   A.   Yes.

24   Q.   Did they send you an email requesting this information,

25        or how did they request it?
```

```
 1   A.   The CAD report would be automatically generated.

 2   Q.   Okay.  Explain to me how it's automatically generated.

 3   A.   I don't know how that's done at the 911 Center.  I don't

 4        know how that goes.

 5   Q.   And the NCIC pages, Baker A0018 through 21, is that part

 6        of the CAD report?

 7   A.   Yes.

 8   Q.   Do the deputies out in the field have access to the CAD

 9        reports?

10   A.   Yes.

11   Q.   What other reports are created -- or records -- when

12        there is an incident involving a death?

13   A.   Just an incident report.  An incident report would be

14        created.

15   Q.   Anything else?

16   A.   It would depend on the situation.

17   Q.   Can you give me a list of what other reports might be

18        prepared in the case of a death in an incident?

19   A.   Like I said, it would depend on the situation and what

20        occurred.  If it was -- if -- a pursuit packet may be

21        created or a defensive action report, depending on what

22        had occurred.

23   Q.   Anything else?  Any others on that potential list, the

24        pursuit package, the defense action report, any others?

25   A.   Not that I'm aware of, no.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    28

```
 1   Q.   In your search for records related to Byron Pringle, did

 2        you find any record of his incarceration from the

 3        December 20, 2023, arrest?

 4   A.   I did not.

 5   Q.   But you found a tow slip?

 6   A.   Yes, ma'am.

 7   Q.   And who filled out the tow slip?

 8   A.   I would have to look back at that.

 9   Q.   Please look at it.  So you're looking that up on your

10        office computer?

11   A.   Yes.

12   Q.   Okay.

13   A.   That was prepared by Evan Aragon.

14   Q.   What's his last name?

15   A.   Aragon.

16   Q.   How do you spell that?

17   A.   A-r-a-g-o-n.

18   Q.   And where was the car towed to?

19   A.   It was towed -- that's not on the slip.

20   Q.   So is the slip incomplete?

21   A.   I don't know if it's incomplete, but where it was towed

22        to is not on the report.

23   Q.   Is there an area on the report that could be filled in

24        as to where the vehicle was towed to?

25   A.   No.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    29

```
 1   Q.   What fields are on it?

 2   A.   Event, owner information, offense, vehicle, officer.

 3   Q.   And the only officer listed is Evan Aragon?

 4   A.   Yes.

 5   Q.   And what is his position?

 6   A.   Deputy.

 7   Q.   And you have no records concerning the transportation of

 8        Mr. Pringle to the hospital on December the 20th?

 9   A.   No.

10   Q.   And you have no records related to the decision and his

11        release to go home on the 20th of December?

12   A.   No.

13   Q.   Why?

14   A.   I can't speak to that.  I don't know why there's no

15        record.

16   Q.   When there's supposed to be a record and there is no

17        record, what action, if any, is taken?

18             MR. SPREEUWERS:  Objection.  Misstates the

19        testimony, outside the scope of the answer.  You can

20        answer.

21   BY MS. JONES:

22   A.   That is outside of my scope.  I don't know.  I can -- I

23        can only attest to where to find the records.

24   Q.   Okay.  Only where to find them?

25   A.   Yes.
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Spurrier, Jennifer 11/20/2025                                    30

```
 1   Q.   And that's the extent of your knowledge in regards to

 2        items 23 and 24 in the deposition notice.

 3             MR. SPREEUWERS:  Objection.  Misstates the

 4        testimony.  You can answer.

 5   BY MS. JONES:

 6   A.   I can't attest to what disciplinary actions are taken if

 7        someone doesn't provide a record.

 8   Q.   My question was the limit of your knowledge is only

 9        where to find the records related to Byron Pringle?

10             MR. SPREEUWERS:  Objection.  Misstates the

11        testimony.  You can answer.

12   BY MS. JONES:

13   A.   Yes.

14             MS. JONES:  That's all the questions I have.  Thank

15        you so much, Ms. Spurrier.

16             MR. SPREEUWERS:  And we're just going to take a

17        break.  We'll find out if I have questions for her.

18             THE COURT REPORTER:  Okay.

19                      (OFF THE RECORD)

20             MR. SPREEUWERS:  No questions.

21             THE COURT REPORTER:  And would you like a copy?

22             MR. SPREEUWERS:  Yes, PDF.

23   (THERE BEING NO FURTHER QUESTIONS, THIS DEPOSITION CONCLUDED

24   AT 10:41 A.M.)

25
```