Pamela A. Baker v. Leon Lott, in his official capacity as the Sheriff of Richland County Sheriff's Office, et al.
Case No. 3:24-cv-04303-JDA

# Exhibit 23
## to Plaintiff's Memorandum in Support of her Fed. R. Civ. P. 37 Motion for Sanctions including but not limited to Striking Defendants' Answer and Awarding Plaintiff Attorney's Fees

*30(b)(6) Dep. Designee Pritchett Deposition Excerpts*

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF SOUTH CAROLINA
                        COLUMBIA DIVISION
                   C.A. No.: 3:24-cv-04303-JDA
```

PAMELA BAKER,

        PLAINTIFF,

vs.

LEON LOTT, individually and in his official
capacity as the Sheriff of Richland County;
THE RICHLAND COUNTY SHERIFF'S DEPARTMENT;
and DEPUTIES MATTHEW SMITH, MICHAEL DILLARD,
and BRYAN HODGE,

        DEFENDANTS.

        30(b)(6) D E P O S I T I O N

| | |
|---|---|
| WITNESS: | MICHAEL E. PRITCHETT |
| DATE: | NOVEMBER 20, 2025 |
| TIME: | 9:09 A.M. |
| LOCATION: | BURR & FORMAN, LLP |
| | 1221 MAIN STREET, SUITE 1800 |
| | COLUMBIA, SOUTH CAROLINA 29201 |
| REPORTED BY: | AMBER SOMERO |

```
                        LEGAL EAGLE
                    Post Office Box 5682
              Greenville, South Carolina 29606
                        864-467-1373
                  depos@legaleagleinc.com
```

| | | |
|---|---|---|
| 1 | Q. | Okay.  Thank you.  Would you briefly tell me your |
| 2 | | educational and work history background? |
| 3 | A. | Grew up in Chicago, Illinois.  Joined the Army when I |
| 4 | | was 17.  Ended up doing twenty-two and a half years in |
| 5 | | the military.  Retired in 1993.  Taught junior ROTC at |
| 6 | | Birchwood High School for two years, and got the |
| 7 | | opportunity to join the Richland County Sheriff's |
| 8 | | Department in 1995, where I am still currently at. |
| 9 | Q. | Okay.  And let me ask you a couple of questions about |
| 10 | | what your duties and responsibilities are at present at |
| 11 | | the sheriff's department. |
| 12 | A. | My duties are, as a captain assigned to the Professional |
| 13 | | Standards Division, I investigate all complaints on |
| 14 | | deputies.  I review all use of force actions that |
| 15 | | deputies use on incidents.  I review all pursuit |
| 16 | | policies.  Investigate all complaints on deputies. |
| 17 | | Pretty much it. |
| 18 | Q. | Do you prepare or do you oversee the preparation of the |
| 19 | | professional standards report issued each year by the |
| 20 | | Richland County Sheriff's Department? |
| 21 | A. | Yes, I do. |
| 22 | Q. | Okay.  And how is that report prepared? |
| 23 | A. | That report is -- the data is gathered from our analysts |
| 24 | | in the sheriff's department.  They look at all our |
| 25 | | incidents, characteristics of the reports, the numbers |

```
 1       Division before you?
 2  A.   I want to say Captain Stubblefield.
 3  Q.   Is he still employed by the department?
 4  A.   No, ma'am.  He's retired.
 5  Q.   Let me back up a minute and ask you what you did to
 6       prepare to give your testimony today in this action.
 7  A.   Well, in reference to this incident, I did review the
 8       footage of what happened.  We reviewed the incident
 9       forms.
10  Q.   This Exhibit 10?
11  A.   Yes.  We reviewed that body cam footage and the car
12       camera footage from the incident.  We made our
13       determination from that.
14  Q.   And did you review any other documents in preparation
15       for your testimony on behalf of the department?
16  A.   No more than just going over our policies and
17       procedures.
18  Q.   Anything else?
19  A.   No, ma'am.
20  Q.   Okay.  Did you talk to, was it Captain Stubblefield?
21       What did you say the gentleman's name was?
22  A.   Stubblefield?  Have I talked to him?
23  Q.   Yes, sir.
24  A.   No, ma'am.
25  Q.   Okay.  All right.  And in the AIMS database, all
```

 1        incident reports are maintained in that; is that
 2        correct?
 3   A.   All the defensive actions and pursuit actions are in the
 4        AIMS.  We now use a Benchmark system, which everything
 5        goes into that now.
 6   Q.   When you say all the defensive actions are maintained in
 7        the AIMS system, what documents are in the AIMS system?
 8   A.   Incident -- I'm sorry.
 9            MR. SPREEUWERS:  I'm going to object.  This is
10        outside the scope.  Go ahead.  You can answer.
11   BY MS. JONES:
12   A.   Okay.  Incident reports, body cam footage, any other
13        reports that would go along with the incident.
14   Q.   Are there separate documents that are created and
15        maintained related to the investigations?
16   A.   I'm not sure what you mean by separate documents.
17   Q.   Maybe I misunderstood you, but I thought you said that
18        the Professional Standards Division investigates all the
19        complaints filed against any of the officers; is that
20        correct?
21   A.   That is correct.
22   Q.   Are there separate documents that are created related to
23        the investigations that are not contained within the
24        incident reports?
25   A.   No more than witness statements, statements from

 1       deputies.
 2   Q.  Anything else?
 3   A.  That would be it.
 4   Q.  Would those investigative witness statements also be
 5       maintained within the AIMS system?
 6   A.  Yes.
 7   Q.  And so that information is available to you when the
 8       professional standards reports are created each year?
 9   A.  Yes.
10   Q.  Okay.  There's too many documents in this notebook.
11           So, you know, one of the areas, number 4, the data,
12       explain all the data the Professional Standards Division
13       uses to review all police vehicular pursuits.
14           And have you told me the list of all the data that
15       the Professional Standards Division uses to review
16       police vehicular pursuits?
17   A.  Yes.
18           MR. SPREEUWERS:  Object to the form.  Go ahead.
19   BY MS. JONES:
20   Q.  And that would be the incident reports and the
21       investigative witness statements?
22   A.  Yes.  Car camera footage, body camera footage.
23   Q.  Okay.  Anything else?
24   A.  That's it.
25   Q.  Okay.  Did you undergo any particular certification

```
 1        involved in any recommendations concerning the
 2        discipline of Officer Smith?
 3             MR. SPREEUWERS:  Objection.  That's outside the
 4        scope.  You can answer.
 5   BY MS. JONES:
 6   A.   We agree with what discipline it -- took place.
 7   Q.   And what was that?
 8   A.   Counseling.
 9   Q.   What kind of counseling?
10   A.   I want to recall verbal counseling.
11   Q.   What verbal counseling occurred?
12   A.   I do not recall.
13   Q.   What records are there to explain the discipline
14        counseling and verbal counseling related to the
15        investigation into the December 29th pursuit of Byron
16        Pringle?
17             MR. SPREEUWERS:  Objection.  Misstates the
18        testimony, outside the scope.  You can answer.
19   BY MS. JONES:
20   A.   As far as records kept in reference to the deputy being
21        counseled?
22   Q.   Yes, sir.
23   A.   That would probably be kept in his personal file, his
24        201 file.
25   Q.   And what would that document look like?
```

```
 1        level?
 2   A.   Depends on the incident.  If the incident requires
 3        immediate counseling from that deputy's chain of
 4        command, it stays at the region.  Any official
 5        reprimand, goes into the 201 file.
 6   Q.   And who has the ultimate authority to decide if it stays
 7        at the region or goes in the 201 file?
 8            MR. SPREEUWERS:  Objection.  It's still outside the
 9        scope.  You can answer.
10   BY MS. JONES:
11   A.   Command staff makes that decision.
12   Q.   Did command staff make any decision regarding Officer
13        Smith, Hodge, or Dillard concerning the December 29,
14        2023, pursuit of Byron Pringle?
15            MR. SPREEUWERS:  Objection.  It's outside the
16        scope.  You can answer.
17   BY MS. JONES:
18   A.   I have no idea.
19   Q.   So there's none that you know of?
20   A.   I have no idea.
21   Q.   Why do you say you have no idea if you're in charge of
22        the professional standards reports?
23            MR. SPREEUWERS:  Objection.  It's argumentative.
24        It's outside the scope.
25   BY MS. JONES:
```

PAMELA A. BAKER vs LEON LOTT, ET AL.
30(b)(6) Pritchett, Michael E. 11/20/2025                                                25

```
 1   A.   Probably in the AIMS system.
 2             MR. SPREEUWERS:  You have it as part of Exhibit 10.
 3   BY MS. JONES:
 4   Q.   I'm going to take this one out.  Here's Exhibit 10.
 5        Captain, show me where it is in Exhibit 10.
 6   A.   On page 3 it says, Commanders Review.  It was reviewed
 7        and corrective action taken verbally by Major Duke.
 8             MR. SPREEUWERS:  Can you read that page number
 9        that's down at the bottom, the Bates?
10             THE WITNESS:  Baker A007.
11   BY MS. JONES:
12   Q.   And show me what you're talking about.
13   A.   Commanders Review.
14   Q.   That's it?
15   A.   Yes.
16   Q.   And it says, verbal counseling.  And who is the person
17        that did that?
18   A.   Major Duke.
19   Q.   What was the reason for the verbal counseling?
20             MR. SPREEUWERS:  Objection.  It's outside of the
21        scope.  You can answer.
22   BY MS. JONES:
23   A.   When he reviewed the incident, he probably found some
24        things that he wanted to discuss with the deputies
25        involved, and they sat down and talked about it.
```

1  Q.  But you don't know what those are?

2  A.  Not offhand, no.

3  Q.  And you didn't review any records or talk to him to find

4      out what they are?

5  A.  I cannot recall if I did or not.

6  Q.  And you didn't talk to him in preparation for giving

7      your testimony today?

8  A.  No.

9  Q.  Okay. All right. Once the professional standard report

10     is finalized each year, to whom, if anyone, are those

11     reports disseminated?

12 A.  The final end-of-year report?

13 Q.  Yes, sir.

14 A.  It's on the website. The public has access to that, and

15     they can review it, and they can call if they had any

16     questions about it.

17 Q.  Is it disseminated to anyone else except for on the

18     public website?

19 A.  That, I'm not sure of. When you mean disseminated, is

20     it passed out to everybody?

21 Q.  Is it filed with any agency? Is it provided? I want to

22     know who it's disseminated to.

23 A.  That, I cannot say.

24 Q.  Who would know that?

25 A.  Command staff, deputy chief.