IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Pamela A. Baker, | ) | C/A No.: 3:24-cv-04303-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Leon Lott, individually and in his official capacity as the Sheriff of Richland County; the Richland County Sheriff's Department; and Deputies Matthew Smith, Michael Dillard and Bryan Hodge, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JOHN J. RYAN, AS TO LAW ENFORCEMENT AND VEHICULAR PURSUIT STANDARDS**

Plaintiff, Pamela Baker ("Baker"), submits this memorandum in support of her Motion to Exclude the Report and Testimony of John J. Ryan ("Ryan") as to law enforcement standards and vehicular pursuit standards. Ryan's opinions, as set out in the Expert Report of John J. Ryan, ¶¶ 88-110 (Ex. 1), should be excluded because they merely summarize testimony and documents selected by Defendants' counsel. Ryan's opinions include no expert analysis, and therefore are not the product of a reliable methodology or industry standard. In addition, even if Ryan proffered expert opinions, which he does not, they are not relevant or helpful to the trier of fact. As such, Ryan's opinions should be excluded pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

### INTRODUCTION

The fundamental problem with Ryan's opinions is they are not expert opinions. His qualifications are also deficient, as Ryan has not been a sworn law enforcement officer for nearly

65513888 v3

twenty-five (25) years.[1] Furthermore, he admitted that the basis of his opinion is that there are no recognized, uniform standards for pursuit practices of law enforcement.[2] Admissible expert testimony must be based on the application of a reliable methodology and published standards, and it must help the trier of fact understand the evidence. Generic observations by an educated person are insufficient, and that is all Ryan offers. In fact, nearly all of his so called "opinions" are mere comments on the law and reported cases, which are the province of the judge, not a witness.

Sworn officers in South Carolina are required to abide by "minimum" standards of conduct. This requirement has been repeatedly recognized in law enforcement as the standard and as a best practice. The RCSD policy and procedure manual establishes responsibilities for deputies while engaged in a vehicle pursuit. The policy provides restrictions and includes factors to be considered in balancing the need to apprehend a suspect and the danger to the public. Ex. 2, (Policy and Procedure Manual, 802.1, 802.2).

> The decision to initiate pursuit should be based on the pursuing officer's conclusion that the immediate danger to the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large.

Ex. 2, (802.3(A)(1)). Ryan agrees this risk-based approach is applicable, but testifies Defendants are not required to abide by these standards and that the written minimum standards can be ignored and even violated by the Defendant Deputies at their discretion. Ryan summarizes documents,

---

[1] Ryan last served as a sworn officer in 2002. (Ex. 3, Ryan Dep. 19:1-10).

[2] Ryan is one of the several hundred "independent contractors" that works with a for-profit corporation "LLRMI" that provides training and other services to municipalities and law enforcement agencies. (Ex. 3, Ryan Dep., 8:5 – 13:19). Most significantly, Ryan retired from the Providence, RI police department in 2002 and stopped working as a sworn officer. (Id. 19:1-10).

Since 2002 Ryan has worked as a hired litigation expert in numerous cases. (Id. 21:6 - 23:13). Following his retirement from the Providence, RI police department, he was involved in a FBI/DOJ investigation into the Providence, RI police department. Ryan offered testimony under a formal proffer agreement with the U.S. Attorney's Office related to that prosecution (Id. 28:6-30:3), but was not indicted nor charged in the prosecution.

cherry-picked by him and Defendants' counsel, and concludes Defendants' actions were consistent with "industry standards in law enforcement," despite opining that there is no industry standard of care for law enforcement or vehicular pursuits.

To be admissible, Ryan's opinions must provide the jury with something Defendants' counsel and lay witnesses cannot. Here, however, Ryan simply adds his imprimatur to arguments Defendants' counsel is sure to make. Thus, Ryan's opinions, if admitted, would only serve to confuse the jury.

Finally, Ryan's opinions go to the ultimate question for the jury and are irrelevant. Put simply, merits questions are for the jury. Because Ryan's opinions fall well short of the standards laid out in Rule 702 and *Daubert*, they should be excluded.

## BACKGROUND

I.   **Summary of Ryan's opinions**.

Ryan's opinions related to Defendants' law enforcement actions are contained in ¶¶ 88-110 of his Report. (Ex. 1).

First, Ryan relies entirely on a 2019 International Association of Chiefs of Police "IACP" statement that outlines the steps a law enforcement agency should follow when developing a vehicular pursuit policy and purportedly summarizes a survey of the then existing practices from a sample of law enforcement agencies from around the United States. (*Id.*, ¶¶ 89-91, 94).

Ryan next concludes that the Defendant, Richland County Sheriff's Department ("RCSD"), "has a restrictive pursuit policy" and quotes selected sections from the RCSD written policies (Ex. 1 ¶ 92) and summarizes selected bits of hearsay regarding the evidence in this case. He then adds his personal characterization and his view of the evidence, which is

sheer inadmissible speculation and hearsay. (*Id.*, ¶¶ 92-93). Ryan adds his interpretation of the RCSD policies (*Id.*, ¶¶ 94-96), compares them to New Jersey's purported policies and opines on selected dicta from a few reported case decisions (*Id.*, ¶¶ 98-100), and one isolated section of the S.C. Code of Laws. (*Id.*, ¶ 106).

Ryan concludes based on his interpretation of South Carolina law, case dicta, and the 2019 IACP Survey, the following:

(A)     Defendant Smith had sufficient training to engage in a pursuit because he had completed basic two (2) weeks training at the S.C. Criminal Justice Academy. (Ex. 1, ¶¶ 107-08).

(B)     The increase in the number of pursuits at the RCSD from 2019-2023 is "consistent with national trends" (citing no authority). (*Id.*, ¶ 109).

(C)     Defendants' decision to pursue Byron Pringle ("Pringle") was consistent with "generally accepted industry standards" (which Ryan testified do not exist) and Ryan's personal interpretation of the "discretionary" policy of the RCSD. (*Id.*, ¶¶ 88, 93).

(D)     Defendant Hodge's passing other officers in pursuit was "consistent" with RCSD practice because he had a K-9 in his vehicle. (*Id.*, ¶¶ 101-03).

(E)     The supervisor on the radio was consistent with standards applicable to supervisors because he told the officers to "take out" Pringle to end the chase. (*Id.*, ¶¶ 104-05.

(F)     Ryan offers a legal opinion that S.C. Code § 56-7-760 authorizes law enforcement to disregard the traffic laws and drive into traffic up the interstate the wrong way as the Defendants did in this case. (Ex. 1, ¶ 106).

(G)     There were no deviations from any standard by any of the Defendants because there are no recognized minimum standards and Ryan's interpretation of the law and

RCSD policies do not prohibit any of the actions taken by the Defendants in the pursuit of Pringle that chased him up the interstate the wrong way into Pamela Baker's car. (*Id.*, ¶ 110).

(H) Finally, Ryan criticizes Plaintiff's expert, Dr. Taylor, and argues that Taylor failed to consider the Defendants were verbally told during the middle of the chase that Pringle was wanted for selling drugs (*Id.*, ¶ 94) and that opioids caused more deaths in 2021 and 2022 than vehicular pursuits did in 2023. (*Id.*, ¶ 97).

None of these "opinions" come close to meeting the standards of expert testimony and are merely arguments for counsel to make and comments on the law and facts. Ryan's "expert" testimony has been excluded in numerous cases in the last several years. *See* Ex. 4, hereto, (LexisNexis Overall Challenges Outcome Analysis). Just as in these numerous cases, Ryan's opinions are fraught with testimony about what the law is and mere summaries of testimony and documents.

Ryan's opinions are replete with his interpretation of the events and summaries of documents and testimony. *Id.* Ryan's deposition testimony confirms he did nothing more than review RCSD's documents and a few depositions. Ryan does not cite to and completely *failed to consider the South Carolina minimum standards requirements in place at the time of the pursuit*, a startling omission given that he has been put forth as a purported expert.

In sum, Ryan failed to review, consider, or even ask for information necessary to proffer expert opinions related to Defendants' pursuit actions.

## LEGAL STANDARD

To be admissible, expert testimony must satisfy four conjunctive criteria: (1) the testimony must be "based on sufficient facts or data"; (2) the testimony must be "the product of reliable principles and methods"; (3) the witness must have "applied the principles and methods reliably

to the facts of the case"; and (4) the witness must be "qualified as an expert by knowledge, skill, experience, training, or education" with respect to the testimony given, which must be "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 requires the Court to "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702 advisory committee's notes to the 2000 amendment. "Any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Id.*

The Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), further instructed district courts to play "a gatekeeping role" when considering the admissibility of expert testimony or evidence. *Id.* at 595. As such, "[t]he trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 589); *see also Williams v. APAC Atl. Inc.*, No. 3:08-3432-JFA, 2010 U.S. Dist. LEXIS 12724, at *19 (D.S.C. Feb. 11, 2010) (finding plaintiff failed to demonstrate its expert's testimony was "the product of reliable principles and methods" where expert's conclusions were "plausible" but not based on "sufficient facts or data") *aff'd* 384 F. App'x 264 (4th Cir. 2010).

Expert testimony is subject to a standard that far exceeds "it is so if an expert says it is so." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) (citation omitted). Indeed:

> In its gatekeeper role, the district court analyzes the proposed expert testimony using several factors, including whether the expert opinion can be tested and whether it has been subjected to peer review, the rate of error of the methods employed by the expert, the existence and maintenance of standards used in the expert's methods, and whether the expert's methods and conclusions have been generally accepted by his or her respective community.

*Beard v. Palmetto Health*, No. 3:17-cv-00727-JFA, 2020 U.S. Dist. LEXIS 150493, at *5 (D.S.C.

July 27, 2020) (citations omitted). The proponents of expert testimony—here, Defendants—have the burden of establishing its admissibility by a preponderance of evidence. *Daubert*, 509 U.S. at 592 n.10.

## ARGUMENT

### I. Ryan's Pursuit Opinions should be excluded under Rule 702.

Ryan's proffered testimony will not assist the trier of fact because he merely testifies as to legal standards and puts his own spin on documents and comments on the ultimate issue trying to instruct the jury on how to decide the facts. He knows Defendants violated the RCSD policy minimum standards, but does not apply them, nor does he consider numerous highly relevant facts. His opinions do not reveal "some specialized knowledge or skill or education that is not in the possession of the jurors," as expert testimony must, *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (citation omitted), and his freeform approach to assessing Defendants' pursuit actions is fundamentally at odds with an expert's responsibilities under Rule 702.

Ryan routinely includes and offers to testify to legal opinions, motives of officers involved in police force matters, and the weight of evidence. These opinions are routinely excluded. *Gillispie v. City of Miami Twp*, 2022 U.S. Dist. LEXIS 195490; 2022 WL 14758379. (Ex. 5 hereto). In *Gillispie*, Ryan sought to testify regarding the existence of evidence with the Court holding:

> Ryan cannot testify "no exculpatory evidence exists. Ryan's testimony goes beyond an opinion that 'suggest[s]' the answer to the ultimate issue' and simply instructs the jury on how to resolve a key issue of fact . . . . The existence of these reports is a fact issue that must be determined by the jury.
>
> Moreover, Ryan states several more opinions that simply tell the jury how to decide the ultimate issues in this case. For instance, Ryan opines in two separate paragraphs that there is no evidence to suggest the policy destroyed hair samples or that there was a failure to turn over evidence to the defense. Again, these opinions stray too far beyond the acceptable bounds and invade the jury's role as the ultimate trier of fact.

> . . . . Ryan then goes on state a lengthy factual recitation of what Detectives Fritz and Bailey did during and after the investigation. (*Id.*) This testimony cuts too close to the ultimate issue in this case, i.e. whether the supplemental reports existed. Ryan is barred from presenting such testimony, but he may testify to the police's role in providing Brady material to the prosecutor as part of their general duties during an investigation.

Again, in *Sterusky v. Cooper*, 2024 U.S. Dist. LEXIS 155967; 2024 WL 4009668 (August 30, 2024), the Court excluded all of Ryan's testimony conveying legal standards and those that constituted a statement of law. The Court held:

> Allowing an expert to convey legal standards "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law." . . . . Therefore, Ryan is precluded from offering testimony about when an officer may use deadly force . . . .

*Id.* p. 8 of 20. Also see *Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986). In *Adalman*, the Fourth Circuit addressed the extent to which a party may call expert witnesses to testify about the meaning of, and requirement imposed by, applicable law. The Fourth Circuit held that a witness cannot testify about the meaning of laws nor their application to the facts in a case. 807 F2d at 368.

Ryan was further disqualified from testifying in *Mote v. Moody*, 2019 U.S. Dist. LEXIS 195364; 2019 WL 5681198 (N.D. Ala., June 11, 2019) regarding Ryan's own version of the facts or testimony about the law. Ryan was disqualified in *Provost v. Crockett County*, 2018 U.S. Dist. LEXIS 245952; 2018 WL 11416133 (W.D. Tenn., July 23, 2018), from testifying as to legal conclusions on matters of law or legal standards, including whether any specific action is 'objectively reasonable' under the U.S. Constitution.

In *Sanders v. City of Chi. Heights*, 2016 U.S. Dist. LEXIS 110551; 2016 WL 4417257 (N. D. Ill, August 19, 2016, the court held:

> Ryan's opinion about the corruption in the Chicago Heights Police Department lacks a sufficient basis — which speaks to the reliability requirement under *Daubert* and *Rule 703*. *See Stuhlmacher, 774 F.3d at 409* ("Expert testimony is admissible at trial if the testimony is relevant to a fact

in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied."); *see also Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) ("*Rule 703* requires the expert to rely on 'facts or data,' as opposed to subjective impressions").

In *M.H. v. County of Alameda*, the court held that Ryan and other witnesses may testify that there were no video cameras at the jail, but may not testify that it is common at other facilities to have video cameras or that the lack of cameras contributed to the injuries in this case.

In *Sisneros v. Fisher*, 2010 U.S. Dist. LEXIS 1549111 2010 WL 11684399, (D.N.M. Feb. 17, 2010, the Plaintiff's Motion to Preclude Certain Expert Opinion Testimony of Ryan was granted.

Most importantly, Ryan's fundamental opinion is that there are no recognized standards on policy pursuits, "policies are all over the map. IACP recognizes 4 basic types . . . [and] even under restrictive policies, there's a wide variation . . . ." (Ex. 3, Ryan Dep. 30:4-12). The single source of this opinion is an old 2019 survey by IACP of the then existing practices in various law enforcement agencies. (Ex. 3, Ryan Dep. 34:9-35:5); (Ex. 1, ¶¶ 91 & 94). Ryan testified the IACP does not set any standards "[s]o really, the generally accepted practice comes from agencies themselves." (Ex. 3, Ryan Dep. 35:3-5). "The generally accepted practice is that you can have a discretionary policy that leaves it completely to the officer." (*Id*. 35: 6-13). No one type of policy is "proper" according to Ryan. (Ex. 3, Ryan Dep. 44:4-6).

Most importantly, Ryan opines that even where, as in the present case, the officers violate the agency's written policies that set forth specific requirements as to pursuits, the adopted written standards are not "determinative." Ryan cites (as the basis of this "anything goes standard"), his interpretation of *Scott v. Harris* to support this "opinion" and testified, "that is in fact the case as a matter of law." (*Id.*, 52:15-16). Ryan testified "but that doesn't mean a pursuit can't be consistent

with generally accepted policies nationwide even if it does violate their own policies." (*Id.*, 52:19-22). Again, Ryan cites *Scott v. Harris*. (*Id.*, 53:1-4).

This purported opinion testimony is wholly improper. It is based on the old 2019 IACP survey of then existing practices and his personal legal opinion that an officer can disregard the agency's written policies. None of this misleading/junk testimony will be of any assistance to the jury. None of Ryan's opinions will assist the jury in assessing whether Defendants' conduct complied with SC law and the "<u>minimum</u>" standards <u>requirements</u> under S.C. Code § 23-23-85.

In stark contrast to the offering of Ryan as an "expert" stands South Carolina Code § 23-23-85, mandating minimum standards of all law enforcement agencies in South Carolina. These standards apply to the Richland County Sheriff's Department and all sworn officers in the state. *Id.*

Moreover, Defendant Lott testified that the RCSD is accredited by the State of South Carolina and that the state "set standards that you follow," . . . . "standards in everything." (<u>Ex. 6</u>, Lott Dep. 17:4-7). He further testified that S.C. Code § 23-23-85 established the "required minimum standards of all law enforcement agencies [in S.C.]" and the RCSD minimum standards are contained in the RCSD policies and procedures. *Id.* 23:13-20:

```
13     Q Okay? And when I ask you if the minimum
14     standards that are required by Section 2323-85 can
15     be located, you said the policies and procedures.
16     So my question is, is Exhibit Number 36
17     the policies and procedures which contain the
18     minimum standards for the Richland County Sheriff's
19     Department?
20     A     Yes, ma'am.
```

Finally, Sheriff Lott testified conclusively as to the applicable standards for this case and admitted that the required minimum standards are required to be met.

```
3     Q     Okay. Now, this Section 23-23-85 states
4     at the very beginning: shall establish required
5     minimum standards.
6     Do you believe that minimum standards
```

```
            7      are required to be met?
            8      A    Yes, ma'am.
```

(*Id.*, 28:3-8):

South Carolina law requires all law enforcement agencies in the state to establish required minimum standards. § 23-23-85. That section provides specifically:

> (A) The council shall establish required minimum standards for all law enforcement agencies. The standards must include, but are not limited to, policies regarding:
> 
> (1) the use of force and response to resistance by law enforcement officers. The policy must establish standards limiting officers to force that is objectively reasonable based on the totality of the circumstances involved. The policy must prohibit the use of chokeholds and carotid restraints as less lethal force options;
> 
> (2) uniform vehicle pursuit standards and the use of lethal options during pursuit;
> 
> (3) an officer's duty to intervene in the actions of other observed officers;
> 
> . . .
> 
> (D) Nothing in this section shall be construed to prevent or prohibit law enforcement agencies from adopting policies that exceed the minimum standards adopted by the council.

Ryan, however, intends to testify and offer his "expert opinion" that these minimum standards are merely guidelines that can be disregarded by the Defendants, despite the legal requirements in § 23-23-85 and the conclusive testimony by Defendant Lott. These opinions are wholly improper and simply seek to instruct the jury on the law and how to resolve key issues of fact in this case. It is demonstrably not expert testimony based upon reliable scientific or other expert methods and not based upon any uniform standards.

To allow any such testimony or opinion violates Rule 702, 703 and 704, as well as S.C. Code § 23-23-85 and should be entirely excluded. Furthermore, his opinions about the meaning of applicability of South Carolina law are manifestly improper and inadmissible. Testimony on those

legal issues is not a proper subject of expert testimony because it would invade the province of the court. *Adalman*, 807 F2d at 368.

### A. Ryan's summary of documents and testimony does not require specialized knowledge, skill, or education and will not help the trier of fact to understand the evidence or to determine a fact.

The opinion portion of Ryan's report is nothing more than a summary of documents and testimony selected by Defendants' counsel and includes no expert analysis. Thus, it should be excluded.

While "an expert may testify about his review of internal corporate documents *solely for the purpose of explaining the basis for his or her expert opinions*," he "may not offer testimony that is solely a conduit for corporate information" or otherwise "parrot facts found[] in corporate documents and the like." *Gardner v. Ethicon, Inc.*, No. 4:20-cv-00067-SAL, 2020 U.S. Dist. LEXIS 263032, at *15 (D.S.C. Sept. 14, 2020) (emphasis added) (citations omitted). Here, Ryan ignored fundamental principles of minimum standard requirements and did not apply any independent analysis in forming his opinions. Ryan's document review does not lay a foundation for subsequent analysis; document review *is* his "analysis."

Ryan failed to consider the standards set forth in: (1) RCSD written policies; (2) S.C. Code § 23-23-85; and (3) the 2023 Police Enforcement Research Forum (PERF) Standards commissioned by the U.S. Department of Justice. (Ex. 3, Ryan Dep. 33:8-17).

Similarly, when asked whether he is actually a sworn officer, Ryan responded that he has not been a sworn officer since 2002. (*Id.*, 19:1-10). This matters because, at a high level, a sworn officer in South Carolina is responsible for protecting the public and is not authorized to work in law enforcement in South Carolina unless he has been certified as qualified by the South Carolina Law Enforcement Training Council pursuant to S.C. Code § 23-23-40.

Absent any industry standards, Ryan's opinions are not admissible *expert* opinions. Simply summarizing documents and testimony does not require "some specialized knowledge or skill or education that is not in the possession of the jurors," as expert testimony must. *Sinkovich*, 232 F.3d at 203; *see also In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D. W. Va. 2013) ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded.") (citation omitted); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (excluding expert report because the expert "does not analyze the facts" but just "regurgitates them and reaches conclusory opinions that are purportedly based on these facts"); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 U.S. Dist. LEXIS 251415, at *25–26 (E.D. Va. Aug. 16, 2021).

**B.     Ryan's conclusions that only Pringle is liable for causing Plaintiff's injuries are based on his factual and legal opinions and are not reliable or proper expert opinion testimony.**

An expert opinion must "be sufficiently reliable. Reliability is a 'flexible' inquiry that focuses on 'the principles and methodology' employed by the expert." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Daubert*, 509 U.S. at 594–95). Among the factors used to determine reliability are "whether the expert opinion . . . has been subjected to peer review, the rate of error of the methods employed by the expert, . . . and whether the expert's methods and conclusions have been generally accepted by his or her respective community." *Beard*, 2020 U.S. Dist. LEXIS 150493, at *5 (citations omitted).

Here, rather than South Carolina minimum standards codified by the State of South Carolina in 2022 and adopted by the RCSD, Ryan would testify based solely on a 2019 survey repudiated by the 2023 PERF published Standards and the General Assembly's codification of minimum standards in 2022. This expert interpretation is emphatically *not* a "generally accepted" guideline in Defendants' "respective community"—it is Ryan's own creation and, if implemented, would have

detrimental effects to the public and violate S.C. Minimum Standard Requirements. At bottom, Ryan's opinions are old, antiquated "belief or speculation," not "scientific technical, or other specialized knowledge," as a reliable expert opinion must be. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

The jury does not need expert testimony to understand the RCSD policies, S.C. Code § 23-23-85, Minimum Standard Requirements or the facts of this pursuit. Ryan's testimony "would not be helpful and would in fact confuse the jury." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 962 (4th Cir. 2020). *Daubert* "demands . . . reliable methodologies reliably applied." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 637 (4th Cir. 2018). Ryan's opinions fall well short of this standard and should be excluded. And to the extent the meaning of Section 23-23-85 is an issue, it is for the Court, not a witness, to explain the legal requirements to the jury. *Adalman*.

## II.   To the extent Ryan offers any expert opinions, they are not relevant or helpful and should therefore be excluded.

Even if Ryan was proffering proper expert opinions—which he is not—they should nevertheless be excluded. Ryan's version of the facts related to the pursuit is irrelevant and unhelpful to the jury's decision as to whether the Defendants acted with deliberate indifference or actual malice under the totality of the circumstances rule. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 865 (1989).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court exclude the Report and testimony of Defendants' expert John Ryan as to law enforcement pursuit practices.

*[Signature on following page]*

                                              Respectfully submitted,

                                              BURR & FORMAN, LLP

                                              *s/Celeste T. Jones*
Celeste T. Jones, Fed. ID #2225
ctjones@burr.com
Benjamin R. Jenkins, IV, Fed. ID #14138
bjenkins@burr.com
Burr & Forman, LLP
P.O. Box 11390
Columbia, South Carolina 29211
803-799-9800
803-753-3278 (Fax)

Michael K. Choy (*pro hac vice*)
mchoy@burr.com
Burr & Forman, LLP
420 20th St. N #3400
Birmingham, Alabama 35203
(205) 251-3000
(205) 458-5100 (fax)

*Attorneys for Plaintiff*

Columbia, South Carolina
March 10, 2026