Pamela A. Baker v. Leon Lott, in his official capacity as the Sheriff of Richland County Sheriff's Office, et al.
Case No. 3:24-cv-04303-JDA

# Exhibit 1
## TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JOHN J. RYAN, AS TO LAW ENFORCEMENT AND VEHICULAR PURSUIT STANDARDS

*Expert Report of John J. Ryan*

```
              IN THE UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH CAROLINA
                      COLUMBIA DIVISION



    PAMELA A. BAKER,

                    Plaintiff,

    vs.                          CASE NO.:3:24-CV-04303-JDA


    LEON LOTT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
    THE SHERIFF OF RICHLAND COUNTY; THE RICHLAND COUNTY
    SHERIFF'S DEPARTMENT; AND DEPUTIES MATTHEW SMITH, MICHAEL
    DILLARD AND BRYAN HODGE,

                    Defendants.
```

## **Expert Report of John J. Ryan**

1. My name is John Ryan. I have been actively involved in police practices and law enforcement since 1981. I was an active police officer for twenty years in Providence, Rhode Island. In the final year of my active career and since my retirement in June of 2002 from police services, I have been involved in police and law enforcement practices as a private consultant regarding law enforcement issues.

2. My education includes a Bachelor of Science Degree in the Administration of Justice from Roger Williams University in Bristol, Rhode Island; a Master of Science Degree in the Administration of Justice from Salve Regina University in Newport, Rhode Island and; a Juris Doctor Degree from Suffolk University Law School.

3. From 1993 until 2002 I served as an adjunct faculty member in the graduate Administration of Justice Program at Salve Regina University in Newport, Rhode Island. In that capacity I was responsible for graduate courses on Constitutional Issues in Law Enforcement; Police Misconduct/Civil Liability;

Managing Police Organizations; Contemporary Issues in the Justice Field; Juvenile Justice; Mental Health Law; and Business Crime.

4.   I am currently the co-director of the Legal and Liability Risk Management Institute along with James Alsup, and Lou Reiter.  In that capacity I author and edit the institute's legal update service for law enforcement.  This update service and an archive of all articles that I have written can be found at and www.llrmi.com.  Additionally, I provide multiple on-line video roll-call trainings annually for both the road and jail operations. This on-line roll-call series is a subscription service offered by the Legal & Liability Risk Management Institute.

5.   As part of the Legal and Liability Risk Management Institute I also conduct policy, training and operations reviews for law enforcement agencies and jails throughout the United States.  These reviews focus on the manner in which agencies treat the critical tasks in law enforcement and jail operations.  As part of these reviews I assist agencies in identifying areas in policy, training and operations that may be improved upon to bring the agency within the legal mandates and generally accepted practices in law enforcement and jail operations.

6.   Since 1993, I have conducted numerous training sessions for public employees.  Participants in this training have included law enforcement officials, school officials, attorneys and judges.  Training I have provided are detailed in my CV.

7.   I am a former police Captain of the Providence Police Department in Providence, Rhode Island where I served for twenty years before retiring in 2002.  During my tenure as a police officer I served in the following capacities: patrol officer in both the Patrol Division and the Tactical Unit; a detective in the Detective Bureau; a sergeant in the Patrol Division; a lieutenant in the Patrol Division; Director of Training; Director of the Department's Office of Public Affairs and; Director of the Department's

2

Administrative Staff.  During most of my career I also took an active role in researching and authoring department policy.

8. Since my retirement in June of 2002, I have taught numerous courses on police policy and procedure, arrest, search and seizure, use of force, police pursuits, dealing with the mentally ill, emotionally disturbed, and suicidal, domestic violence, law enforcement's response to autism, law and best practices in the internal affairs process, civil liability for law enforcement agencies, and specialized courses for narcotics officers, SWAT commanders, and internal affairs officers.   Participants in these courses have come from thousands of law enforcement agencies around the United States.  Officers in attendance have come from departments with under ten sworn officers and departments with sworn officers numbering in the thousands.   These programs are conducted numerous times annually throughout the United States and also include on-line courses on these topics for law enforcement.

9. The course on policy and procedure focuses on critical tasks in law enforcement and includes, inter alia, policy issues relating to use of force; police pursuits; domestic violence; sexual harassment and external sexual misconduct; off-duty conduct; hiring & retention issues; internal affairs; supervisory practices; search and seizure; property and evidence; care, custody and transport of prisoners as well as training issues relating to critical tasks in law enforcement.

10. The programs on High Risk Critical Tasks/Best Practices in Law Enforcement includes instruction on Use of Force including inter alia: dealing with individuals of diminished capacity i.e. emotionally disturbed, mentally impaired; and suicidal, excited delirium, as well as persons with disabilities and use of electronic control devices; Search-Seizure and Arrest; Pursuit and Emergency Vehicle Operation; Care, Custody, Control, and Restraint of Prisoners; Domestic Violence; Off-Duty Conduct; Sexual Harassment, Discrimination, and Misconduct; Selection and Hiring; Internal Affairs; Special Operations; and Property and Evidence.

3

11. In 2021 I wrote a program for certifying use of force instructors and use of force investigators/analysts which has been delivered throughout the United States. I am the lead instructor in this program which has been attended/certified close to a thousand officers nationwide as use of force instructors and analysts. This course has been approved by numerous states under the POST (Peace Officer Standards and Training) who are responsible for approving and accrediting law enforcement's continuing education.

12. As a co-director of the Legal & Liability Risk Management Institute I regularly research and draft policies for law enforcement agencies and jails relating to high-risk critical tasks including use of force, arrest-search & seizure, pursuit, emergency vehicle operation, special operations, internal affairs, hiring and selection-retention of officers, care-custody-control & restraint of prisoners, sexual harassment-discrimination & sexual misconduct, domestic violence, arrest procedures, care, custody, and control of persons with disabilities, and dealing with the mentally ill. In addition, I write, record, produce, and distribute on-line training videos for law enforcement nationwide.

13. Since 2002, I have been involved in the auditing of law enforcement operations throughout the United States conducting several audits annually based on either a need or as a proactive measure of agency performance in the high liability areas of the road and jail operation. I have been involved in assisting dozens of departments nationally through these audits in developing policy, training, and enhancing operations for law enforcement services.

14. My experience, training and background are more fully described in the attached curriculum vitae, which I incorporate by reference to this report.

15. I have reviewed the following materials to date regarding this case: See Schedule D

16. This expert report is based upon the materials provided to this date. The opinions presented in this report are based upon my specialized experience, training and knowledge of police practices as well

4

as my continued research and work with law enforcement nationally. This work includes conducting training for law enforcement around the United States as well as auditing the policies and operations of law enforcement agencies around the United States. My opinions are provided with a reasonable degree of certainty within the fields of law enforcement, police activity and police administration and supervision. I am familiar with police civil litigation and know the normal phases of discovery. I recognize that there may be additional documentation as the case progresses. If additional material is produced, I shall be prepared to supplement this report. If new materials or information is provided, I reserve the right to amend my opinions outlined in this report.

17. My methodology in preparing a report includes a review of all provided documents, testimony, reports, statements, audio and video and developing a sense of the underlying facts as reported by all parties and witnesses without making credibility determinations with respect to statements and testimony. To the extent that existing video clearly contradicts statements or testimony, such contradictions are noted. I then apply my nearly 45 years of law enforcement training, experience, specialized background, education as well as my auditing, authoring, researching and consulting on law enforcement practices nationwide to the developed facts. In doing so I specifically avoid applying legal standards that are outside the purview of a law enforcement practices expert and are left to the court. In reaching my opinions, I note that there is a large body of literature which is generally accepted in the law enforcement community as well as generally accepted training, and policy that is consistent throughout the United States. I apply these generally accepted policies, practices, training and industry standards to the applicable facts in arriving at my opinions. I would note that I train thousands of officers annually on the generally accepted policies and practices in law enforcement to include the appropriate law enforcement practices in arrest, search and seizure as well as use of force and the other high-risk critical tasks that law enforcement faces on a frequent basis.

18. At the outset it is important to note that this report is based upon the facts as presented by the material and specifically avoids drawing conclusions based upon credibility issues of the parties.

Deposition of Matthew Smith

19. Smith testified about his training, stating, "For every law enforcement officer in the state of South Carolina, we have to do eight weeks at South Carolina Criminal Justice Academy over off of Broad River. So that's eight weeks on top of the in-house training that we get with the department on the municipality that you join. So I did eight weeks at the academy and then a couple of months in-house training with the sheriff's department. And then after you graduate, you do two months of training with an officer in the field." (7-8).

20. Smith testified about training on high-speed pursuits, "We had the week of training at the Criminal Justice Academy, and then we had -- I think it was about a day with the sheriff's department at the McIntyre Air Force Base . . . It was a high-speed course. They had some lane changing, three-point turns, cross traffic, just pretty much a course to -- for your proficiency." (20-21).

21. Smith testified about if he's seen a GSC bench warrant on Pringle for trafficking heroin, "I have not seen a GSC bench warrant for Mr. Pringle." (98).

22. Smith testified about if he's ever seen a charge for Pringle for trafficking heroin, "I have not seen any charge." (98).

23. Smith testified about whether there was a supervisor for this incident, "There was no supervisor in the actual pursuit, but there are supervisors monitoring the channel." (103).

24. Smith stated the following: "So my process, as soon as I see that he's a -- he's driving the wrong direction, my plan is I need to catch up to him and use a proper procedure to disable his vehicle . . . I would use my vehicle, do a pit maneuver or use my vehicle to disable his to get him off the roadway." (104).

25. Smith testified about when he observed Pringle, "Yes, ma'am. He was driving recklessly from the moment -- the initial part of the chase." (107).

26. Smith testified about when he lost sight of Pringle, "I lost sight of Mr. Pringle as he crest this, I guess, hill on this turn." (122).

27. Smith stated the following: "I don't know exactly what happened in the collision because I didn't witness the collision." (125).

28. Smith testified about Baker's demeanor when he spoke to her, "When I first spoke to her, Ms. Baker -- of course she was in distress. She was crying. And she just stated -- when I asked her what was hurting, and she said her back." (141).

29. Smith testified that Pringle was pronounced dead by Richland County EMS at 2:41. (143).

30. Smith testified about why the pursuit of Pringle continued onto the interstate into oncoming traffic, "Because he was a lethal driver . . . A lethal driver due to him going the wrong way into traffic. He puts himself and especially the public at a higher risk that someone is going to get seriously injured or hurt." (205).

31. Smith stated the following about if he knew it was Pringle from the start of the pursuit, "At the time, from the information I got from the Lexington County sheriff's deputies, that Pringle -- they had eyes on Mr. Pringle and he was driving that vehicle." (206).

32. Smith testified that he did not use any force against Baker. (221).

<u>Officer Matthew Smith Report</u>

33. On 12/29/2023 I was enroute to my special assignment/ off duty when an undercover Lexington Sheriffs Deputy came over onto Tac 4 requesting a marked unit for a known wanted individual traveling toward Richland County on Bush River Rd. Lexington Deputies gave the description of the vehicle bearing SCTAG MKD362 as a Black Nissan Sentra, the driver occupying the vehicle is Byron

7

Pringle (DOB:09/21/1975) who is wanted out of Lexington County (NIC:W353958585) and license is suspended. I located the vehicle on Bush River Road crossing I-126 towards Broad River Road located in Richland County. I initiated a suspicious vehicle stop and the driver failed to yield and evaded at a high rate of speed. The vehicle began to drive in the opposite lane of travel on Greystone Blvd before taking the on-ramp to I-126 inbound to downtown Columbia. The vehicle hopped the median and began driving into oncoming traffic on I-126. The vehicle was estimated to be traveling about 70 to 80 miles an hour in the number one lane in opposite way of travel. R/O lost eyes on the vehicle as it crest the hill, as units came over the hill the suspect vehicle had collided head on with another vehicle at approx. 14:25. K9 handler Hodge deployed K9 Kobe and both Hodge and I drew and pointed our service pistols at the suspect. The suspect was entrapped and pinned in the dash. EMS and Fire were requested and Hodge and I holstered our service weapons and proceeded to render first aid. The vehicle that Byron collided head on with was a Mercedes bearing SCTAG:P0204ZJ driven by Pamela Baker (DOB:09/13/1967) her phone number is (803) 917-2626) Pamela complained of mostly back pain but sustained minor injuries. She was transported to Richland Memorial. Byron also sideswiped a car bearing SCTAG WVW185 containing Karine Cobb (DOB: /1970) phone number 893 404-1189, who was driving and passenger Gerard Guyot (DOB: /1942). Byron also blew up some debris on the roadway which struck Nicole Boyle vehicle, her phone number is (803) 920-8708. Nicole left the scene prior to SCHP arrival and called into to dispatch for a report. RCEMS unit S159 declared Byron deceased at 14:41 and RCCO and SCHP responded to the scene. Upon RCCO removing Byron from the vehicle. 2 small bags containing a white powdery substance believed to be fentanyl was collected from Byron's clinched hand. A vehicle searched was conducted and another small bag believed to be containing fentanyl was collected by Deputy Stern. All evidence was collected and submitted by me at RCSD HQ. Desk Sgt Parrish was notified and took Byron out of NCIC, Major

8

Gonzalez responded to the scene and Chief Mcduffie was contacted. Scene was transferred over to SCHP who will investigate all car accidents involved (SCHP Report Number: DPSB23CAD514939)."

<u>Deposition of Zaid Abdullah</u>

34. Abdullah testified about when he was first made aware of the pursuit that occurred on December 29, 2023, "I guess whenever I came in to work. There's usually a -- an email that's sent out that pretty much gives all of the -- it's called a Desk Sergeant Report, which, basically, puts all the major incidents that have happened within the county. So I possibly read it off of that or something, so. I don't really remember exactly." (18-19).

35. Abdullah was involved in a prior pursuit of Pringle which led to his arrest on December 20. 2023.

36. Abdullah testified about what he remembered about the traffic stop, "An investigator saw a hand-to-hand. And while I was behind the vehicle, about to conduct a traffic stop on the vehicle, the vehicle was driving in a very reckless manner." (51-52).

37. Abdullah testified about what Pringle was doing when Abdullah got up to him, "Just cutting in between cars on I-20, and stopping quickly and then going fast or -- just cutting in and out of vehicles, basically." (55).

38. Abdullah testified about what Pringle did when Abdullah turned his blue lights on, "He starts to flee from me. He tries to run. He tries -- he does a U-turn and tries to take off on me. But then he drives up onto the sidewalk, rendering his vehicle immobile, destroyed the front axle of the vehicle." (56).

39. Abdullah stated the following about how long Pringle tried to flee, "It wasn't a very long distance. But he increased speed and -- and -- and tried to evade me. And whenever he rendered his vehicle immobile, then he took off on foot." (57).

40. Abdullah testified about what occurred next, "Mr. Pringle jumps out of the vehicle, putting his hands like in his pockets, in his waistband area. I drew down my gun on him just because he's reaching in

9

his waistband. He takes off on foot. I start to -- I give chase, chase him. He's -- as I'm chasing him, he's throwing down like a baggie of narcotics. He rounds the back side of this dark, abandoned home. In his hand, he's holding something black and metallic. At the time, I didn't know what it was. Later on, I found out that it was his cell phone. He falls to the ground. I administer two strikes to him. I get his hands behind his back, put cuffs on him. I'm by myself at this point. My radio has changed to like seven different channels at this point. Get him in cuffs. And then, I believe, everyone sees the vehicle -- my vehicle with the blue lights, his vehicle immobilized -- and then they start just trying to figure out where I was at. And I walk out to I believe Monticello Road and turned him over to another deputy and started the investigation, at that point." (62-63).

41. Abdullah testified about Pringle's behavior when he was in handcuffs, "He was not fully -- he was compliant, but he was just kind of just mouthy and just -- just saying just nonsense. I don't remember exactly what he said, but it was just what -- usually what anyone else says: Oh, what's wrong? What did I do? You know, things of – of -- of that – nature." (66).

42. Abdullah testified about what point he figured out that Abdullah had swallowed narcotics, "I believe whenever I was -- because he mentioned like -- I think when EMS got on scene, because he was being checked out for the -- the -- the -- the collision. I believe he might have made mention that he had swallowed some narcotics or something. But again, I -- I -- I don't know if -- this is all third party; it's not -- not myself." (84).

43. Abdullah testified that he was not involved in the decision to release Pringle from the hospital. (113).

44. Abdullah testified that he had no interaction with Pringle after December 20, 2023. (116).

45. Abdullah testified that he was not involved in the pursuit that resulted in Pringle's death on December 29, 2023. (116).

<u>Deposition of Bryan Hodge</u>

10

46. Hodge testified about his prior knowledge of Pringle, "He was known in the area. One of our K-9 officers had chased him." (32).

47. Hodge testified about the moving force behind his decision to continue the pursuit, "The moving force, the hazards if he got away, was one of the big ones. The way he was driving. He was under the influence of narcotics." (44).

48. Hodge testified about what events Pringle was wanted for when Hodge was pursuing him, "There was a lot of offenses. But to my knowledge, the first one, the reason we decided to stop him to begin with, was, he had felony warrants for trafficking narcotics." (58).

49. Hodge testified about Pringle's speed, "I could approximate. Probably 70 miles an hour, because I think I was going like 50, and he was pulling away from me." (68).

50. Hodge testified about having someone else in the vehicle during this incident, "Well, during this incident that you're referencing, I had an explorer in the vehicle . . . He was not a regular civilian rider." (70-71).

51. Hodge testified about whether the pursuit was for Pringle's failure to appear in Lexington County, "I'm not sure – that's not what the pursuit was for. The pursuit was for – we didn't pursue him because he didn't appear. We pursued him because after a traffic stop, he decided to run. And our knowledge was that he had fentanyl warrants and that he's a fentanyl dealer and he had just left a buy." (87-88).

52. Hodge testified about how he knew that Pringle had just left a buy, "There was DEA task force who was following him." (88).

53. Hodge testified about if he could have terminated the pursuit on December 29, 2023, "I don't believe so . . . Because once he entered the highway where he had no avenue to get off of said highway, there was at that point a greater risk to the public if we didn't try to forcibly remove his vehicle from the roadway and then letting him continue to drive the wrong way . . . Suspects, just because you stop

11

chasing them, they don't slow down in speed. They don't – they continue driving the same erratic behavior and as fast as they typically can." (91).

54. Hodge stated the following about what he knew of Pringle's December 20, 2023, arrest, "I'm not 100 percent sure. I didn't know he was arrested. I just remember there being a pursuit, and they knew it was him. I don't know if they arrested him, but they caught the guy." (106).

55. Hodge testified about why he needed to become the second car in the pursuit, "So the goal is -- our -- our policy as K-9 is, you will go from the lead in the vehicle pursuit when it's safe to do so. That way, if it comes to like an incident where the person bush bonds, that we could use our dog to apprehend the person if it comes to that." (132).

56. Hodge testified about how fast he believes he was going, "I don't believe I was going over 50." (135).

57. Hodge testified about the speed limit on that stretch of road, "It should be 60 miles per hour." (135).

58. Hodge testified that he is not sure if there was a gun found in Pringle's vehicle after the crash. (195).

<u>Deposition of Michael Dillard</u>

59. Dillard testified about whether he downgraded the code response in the pursuit of Pringle on December 29, 2023, "Well, I did downgrade . . . So, when I was taking place of -- when the K-9 jumped to me to be number two, I fell back intentionally and basically followed them. And the only reason I followed them is if he crashed or got out of the car and ran, I would be close by to help run him down, but I was not in the high pursuit. So, I downgraded from being in the high pursuit to being back farther. So, that was a downgrade." (46-47).

60. Dillard testified about if his lights and siren were still on when he downgraded, "They were, but my speed dropped." (47).

61. Dillard testified about what information was available to him when the pursuit was initiated, "Yes. So, I was pulling up, I was at Bush River, over the -- going over the bridge of, say, 26, approaching the

Hawthorne Hotel, and as I was approaching, it was going out over the radio, that he was -- he had multiple warrants -- felony warrants, and then that he had ran from law enforcement previously." (49).

62. Dillard testified that he does not know anything about Pringle's arrest on December 20, 2023, outside of the conversations he had with his lawyer. (63).

<u>Deposition of Leon Lott</u>

63. Lott testified about if he took any action with respect to the increase in vehicle pursuits from 2018 to 2021, "No, ma'am." (48).

64. Lott does not recall how he became aware of the incident that occurred on December 29, 2023. (55).

65. Lott does not recall having a conversation with Officer Matthew Smith after Smith engaged in the pursuit. (55).

66. Lott testified about who makes the determination that verbal counseling of Officer Smith was to done, "I don't know." (76).

67. Lott testified about who undertook the counseling of Officer Smith, "I do not know." (76).

68. Lott testified about who has the responsibility of reviewing the policies in vehicle operations, "Staff attorney. Staff attorney, Joanna McDuffie." (84).

69. Lott testified about his role in making changes to the policies regarding vehicle operations, "None." (84).

70. Lott testified about whether there was an immediate danger to the public in the pursuit undertaken by Officer Smith, "I don't know . . . Because I don't know. I wasn't there. Didn't participate in it." (87).

71. Lott testified about why he does not know the fact of the incident that occurred in December of 2023 where Baker was injured, "Because I was not involved in it and I have people that handle that." (97).

72. Lott stated the following about the policy for terminating a pursuit, "That is left to the discretion of the supervisors and the people involved in the chase." (98).

13

Vehicle Pursuit Policy 802

73. The philosophy of the Richland County Sheriff's Office with respect to vehicle pursuits is set forth in the agency policy statement and notes that "deputies shall act as professional and operate motor vehicles in accordance with South Carolina Law, official policy, and with due regard for the safety of all persons." The policy statement recognizes that, "Sworn deputies of the Richland County Sheriff's Department are expected to make reasonable efforts to apprehend violators who flee or otherwise attempt to elude; however, the Department recognizes the value and sanctity of human life. The emergency operation of a vehicle and the pursuit of a fleeing vehicle may present a risk to the general public, the deputy, and the suspect; therefore, it is the policy of the Richland County Sheriff's Department to prevent or end all pursuits as quickly and safely as possible."

74. Policy 802 provides deputies with directives on when a pursuit may be initiated, specifically noting:

75. A. Initiation of a Pursuit 1. The decision to initiate pursuit should be based on the pursuing officer's conclusion that the immediate danger to the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large. 2. Any department officer in an authorized department vehicle may initiate a vehicular pursuit when the following criteria are met: a. The suspect exhibits the intention to avoid arrest by using a vehicle to flee apprehension for an alleged felony or misdemeanor that would normally require a full custody arrest. b. The suspect operating the vehicle refuses to stop at the direction of the officer. c. The suspect, if allowed to flee, would present a danger to human life or cause serious injury.3. In deciding whether to initiate or continue a pursuit, the officer shall take the following into consideration: a. The seriousness of the offense; b. Known information on the suspect; c. Road configuration (e.g. interstate, divided highway, work zone); d. Physical location and population density (e.g. residential area, school zone, business district); e. Existence of vehicular and pedestrian traffic; f. Lighting and visibility; g. Weather and environmental

14

conditions; h. The relative performance capabilities of the pursuit vehicle and the vehicle being pursued; i. Officer training and experience; j. Available equipment; k. Speed and evasive tactics employed by the suspect; I. The presence of other persons in the police and suspect vehicle; m. Any other condition or situation that would create an unreasonable risk. 4. No officer with a civilian rider in his vehicle will participate in any high-speed pursuit.

76. After noting that pursuits shall be conducted following South Carolina law, the policy outlines the applicable South Carolina law on authorizations given to law enforcement, noting "1. S.C. Code§ 56-5-760 authorizes drivers of police vehicles, while responding to an emergency call or when in pursuit of an actual or suspected law violator, to: a. Park or stop in prohibited areas. b. Exceed the maximum speed limit if he does not endanger life or property. c. Disregard regulations governing direction of movement or turning in specified directions. d. Proceed through a red traffic signal or stop sign, but only after slowing and clearing as may be necessary for safe operation. 2. S.C. Code§ 56-5-760 does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons. C. Upon undertaking a pursuit, the pursuing deputy shall activate emergency lights, sirens, and they shall remain activated for the duration of the pursuit."

77. The policy notes that: "C. As a general rule, deputies should not pursue a vehicle driving the wrong direction on a roadway, highway, or freeway. In the event the pursued vehicle does so, the following tactics should be considered: 1. Request assistance from available air support. 2. Maintain visual contact with the pursued vehicle by paralleling the vehicle while driving on the correct side of the roadway. 3. Request other deputies to observe exits available to the suspect. 4. Notify the South Carolina Highway Patrol and any other law enforcement agency if it appears that the pursuit may enter its jurisdiction."

78. The policy further notes, "D. Deputies involved in a pursuit should not attempt to pass other pursuing vehicles unless the situation indicates otherwise, or they are requested to do so by the pursuing deputy. Prior to attempting to pass there must be a clear understanding of the maneuver process between the involved deputies."

### Radio Traffic Hodge Exhibit 1

79. As reported, an officer can be heard coming over TAC-4 indicating that they have eyes on Byron Pringle who had fled from police a week before. The officer noted that Pringle was in the area of Bush and Hawthorne in a Black Nissan Versa. It was noted that Pringle was active in NCIC. A K-9 officer, presumably Hodge broadcast that he was coming from River.

80. An officer announced that the Nissan Versa just exited Sunoco, took a left on Bush, and was going across the interstate. The license plate, MKD362 was broadcast and locations continued to be broadcast. An officer broadcast a speed of about 50 mph.

81. It is noted that a K-9 officer, presumably Hodge comes over the radio stating that he is the 3rd car back and is going to move up as he has the dog and will be closest if Pringle were to bail out on foot. An officer announces that Pringle has warrants for trafficking heroin and GSC warrants.

82. An officer announces that they were on Graystone passing Lindsford, followed by Greystone passing Stone Ridge. The officer then announced that it looked like they were getting on 26, inbound on 26.

83. Dispatch made clear that "Aviation's not available due to wind." It was announced that Pringle has gone into oncoming traffic. An officer came over the radio (supervisor) authorizing officers to use force to take Pringle out. An officer announces that he has lost Pringle and then announces that Pringle is a 10-50 (crash).

### Smith Dash-Cam

16

84. Smith activated his emergency equipment at approximately 36 seconds into the video as he travels behind the Nissan Versa. It is noted that the 10-50 (crash) is announced at 3 minutes and 52 seconds into the video. A law enforcement vehicle can be seen traveling in the opposite direction of the Nissan Versa and Smith.  As the Versa continues without yielding, Smith can be heard announcing a speed of about 50.  It is noted that the road can be seen with two lanes in each direction and a turn lane in the middle. The video shows the road is largely a commercial district with light traffic. The video shows no adverse weather condition. A deputy, Hodge can be heard on the radio indicating that he is the third car but will move up in case Pringle bush bonds, as he has the K-9 to apprehend Pringle.  The Nissan can be seen picking up speed and maneuvering around other vehicles. An officer can be heard directing that whoever is in the Taurus, they should move out of the way. The Nissan can be seen traveling in the turn lane while fleeing and at times reducing speed.  The Nissan can be seen braking an turning onto 26.

85. The Nisan jumped the median within seconds of turning onto 26 while still on the entrance/exit ramp. It is noted that because 26 is a divided highway there was no way for the officers to enter the highway in the right direction and parallel the Nissan.

86. A police vehicle, Hodges, can be seen passing Smith as was previously broadcast. An officer (supervisor) can be heard authorizing force to take Pringle out before someone gets hurt.

87. The crash was broadcast at approximately 3 minutes and 52 seconds into the video, thus the time of the pursuit from the activation of Smith's emergency equipment was until the officer's announced the crash was slightly over three minutes.

<u>Opinions</u>

88. It is my opinion, based upon my specialized background, education, training and experience as well as my continued research, authoring, auditing, consulting and training on law enforcement practices

17

nationwide, that decision to initiate and continue the pursuit of Pringle was consistent with generally accepted policies, practices, training and industry standards.

89. Law enforcement throughout the United States has two predominant types of pursuit policy, specifically a "discretionary" type which provides the officers with basic guidance to include a balancing test with various considerations, and then leaves the decision to the officer and second, a "restrictive" policy, which limits pursuits to particular crimes or requires a particular level of danger prior to pursuit. A review of policy from agencies around the United States shows little consistency between agencies and even within the two types, restrictive and discretionary, there is a wide range of deviation. A third type is sometimes seen, a prohibitive policy, which does not allow for any pursuits under any circumstances. The prohibitive type policy is utilized by very few agencies and even when adopted in writing is not necessarily followed.

90. A review of policy from around the United States also leads to the conclusion that many agencies still adopt a "discretionary" type pursuit policy. These policies generally require the officer to balance the need for the pursuit against the dangerousness of continuing to pursue. It should be noted that even under a restrictive pursuit policies there is often a provision for officers to pursue a dangerous driver who is threatening public safety by their driving conduct.

91. It is noted that in 2019, the International Association of Chiefs of Police recognized that no one type of policy is proper and rather it is the decision of the leadership of the agency that must decide what type of policy should be utilized by the agency. The IACP wrote: "Overall Pursuit Philosophy The first step an agency should take when developing its vehicular pursuit policy is to clearly outline the overall pursuit philosophy that will be adopted. This overarching philosophy should outline when officers are authorized to pursue and should take into account a variety of factors, to include relevant jurisdictional law; the environment in which the agency operates, such as an urban or rural locale; and

community expectations. This philosophy will largely dictate the procedures and tactics to be used during a pursuit. Options include Discretionary - the officer is provided with the discretion to determine whether to engage in and/or continue the pursuit. Permitted – Supervisory Review – pursuits are subject to supervisory approval and/or review. Restricted – officers may engage in pursuits only in specific situations, such as when the suspect has committed a violent felony. Prohibited – pursuits are not allowed under any circumstance."[1]

92. The Richland County Sheriff's Office has a restrictive pursuit policy based on limitations to felonies or misdemeanors that would normally require a custodial arrest.  As such the RCSO is more restrictive than agencies that adopt a straight discretionary policy. The RCSO policy notes, "A. Initiation of a Pursuit 1. The decision to initiate pursuit should be based on the pursuing officer's conclusion that the immediate danger to the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large. 2. Any department officer in an authorized department vehicle may initiate a vehicular pursuit when the following criteria are met: a. The suspect exhibits the intention to avoid arrest by using a vehicle to flee apprehension for an alleged felony or misdemeanor that would normally require a full custody arrest. b. The suspect operating the vehicle refuses to stop at the direction of the officer. c. The suspect, if allowed to flee, would present a danger to human life or cause serious injury." Here there were clear indications that Pringle had active warrants and had on a recent prior occasion, had fled from law enforcement.  Additionally, it is clear that Pringle's driving conduct, especially after he suddenly jumped the median while entering 26 posed a danger to human life or would cause serious injury.

---

[1] "Vehicular Pursuits" Law Enforcement Policy Center, International Association of Chiefs of Police, December 2019.

93. In accord with industry standards and the International Association of Chiefs of Police, a discretionary policy with no restrictions allows for pursuits. Here, the officers were being provided with information that Pringle was wanted for a high level drug offense, specifically trafficking in heroin.

94. I note that Mr. Taylor only considered the justification for the pursuit to be a misdemeanor warrant for failure to appear. In doing so, he has disregarded the information that the officers were receiving in real time, specifically the radio traffic concerning Pringle being wanted for heroin trafficking. All law enforcement is trained that their action will be judged by the information known to the officers at the time and not with 20/20 hindsight even if the information known at the time turns out to be incorrect. That said, Mr. Taylor also disregards training officers receive that directs them that they are duty-bound to act on arrest warrants. Finally, while Taylor opines that because officers knew Pringle's identity that somehow precluded vehicular pursuit and vaguely cites to the IACP, but leaves out what the IACP model actually says in indicating that agencies should have "**GUIDELINES** for when the pursuit **SHOULD** be terminated. For example, agencies **MAY** require termination of a pursuit when the following are true: …The suspect's identity has been determined." (emphasis added). Mr. Taylor's cite to this model shows a complete failure to recognize that Guidelines are not mandated directives or policy and that "should" and "may" are discretionary. Thus, even the IACP, which does not set a mandated standard for any law enforcement agency, does not endorse a mandatory requirement that once a person identity is known, a pursuit must be terminated.

95. In balancing the need for the pursuit against the danger to the public by the pursuit officers throughout the United States are guided by several variables. In considering the initiation and continuation of pursuits, officers are trained to consider various environmental factors that include the type of roadway, weather conditions, area type, traffic conditions, sight impediments, officer ability, vehicle ability, speed, nature of offense and how these factors impact the danger of the pursuit. It must be

20

recognized that this is a totality of circumstances approach to balancing the need for the pursuit versus the risk to others. Thus, while all factors are considered, a single factor, such as speed, is not determinative. This type of balancing test is found in all of the various types of policies.

96. The RCSO policy, consistent with industry standard includes a balancing test noting. "In deciding whether to initiate or continue a pursuit, the officer shall take the following into consideration: a. The seriousness of the offense; b. Known information on the suspect; c. Road configuration (e.g. interstate, divided highway, work zone); d. Physical location and population density (e.g. residential area, school zone, business district); e. Existence of vehicular and pedestrian traffic; f. Lighting and visibility; g. Weather and environmental conditions; h. The relative performance capabilities of the pursuit vehicle and the vehicle being pursued; i. Officer training and experience; j. Available equipment; k. Speed and evasive tactics employed by the suspect; I. The presence of other persons in the police and suspect vehicle; m. Any other condition or situation that would create an unreasonable risk. 4. No officer with a civilian rider in his vehicle will participate in any high-speed pursuit."

97. Here the officers were aware of a serious offense, narcotics trafficking which, in light of the opioid epidemic where nearly 80,000 people died due to Opioids in 2023.[2] The average number of pursuit fatalities to include suspects and officers has generally been about 365 persons per year although there are estimates that 2021 and 2022 saw increases in this average. Thus, the seriousness of trafficking in opioids (heroin) is clear. The known information on Pringle was that when law enforcement attempted to stop him days earlier, he fled in a vehicle thus establishing his ongoing dangerousness to the community if not apprehended. While to road configuration escalated the danger as Pringle jumped the median and began traveling the wrong way on the highway, the officers were left with no pursuit alternative because the highway was divided thus leaving them with alternatives of continuing after

---

[2] https://www.cdc.gov/overdose-prevention/about/understanding-the-opioid-overdose-epidemic.html

Pringle or getting on the right side of the highway and traveling in the opposite direction while Pringle continued as an escalated threat to motorists who would neither be warned of the oncoming threat or protected by law enforcement that had authorization to get Pringle stopped by force. While traveling in the commercial area before getting on 26, the traffic, per the video was light and little or no pedestrian traffic was evident near the roadway. There were no adverse lighting, visibility, or weather issues evident in the video provided. There was no indication of performance issues with the law enforcement vehicles or the suspect vehicle. All of the officers were trained and certified and as noted in documented training and testimony, they had received emergency vehicle operation training. While available equipment would have included air support, it is clear that during the pursuit this resource was not available due to wind. It did appear based on the video that the suspect reached high speeds and clearly took reckless actions particularly once on 26. There was no indication in any broadcast of Pringle having passengers and while Hodge had an Police Explorer in his vehicle, an Explorer is not considered the same as a civilian when riding with an officer as part of their educational and volunteer program.

98. An example of proper law enforcement policy that would allow for the pursuit of traffic violators when their conduct poses a threat is demonstrated by the statewide guidelines from New Jersey that direct, "Authorization to Pursue A police officer may only pursue a. When the officer reasonably believes that the violator has committed an offense of the first or second degree, or an offense enumerated in Appendix A of this policy, **_OR_** When a police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers. Pursuit for motor vehicle offenses is not authorized under the above criteria unless the violator's vehicle is being operated so as to pose an immediate threat to the safety of another person." (emphasis added).[3]

---

[3] https://www.nj.gov/lps/dcj/agguide/vehpurs.pdf

99. Officers throughout the United States receive training and policy derived from decisions by the United States Supreme Court, which impact law enforcement operations. Well-trained officers are familiar with the United States Supreme Court's recognition of the danger created by fleeing motorists and the need for a law enforcement response. It should also be noted that many law enforcement agencies throughout the United States have reviewed and amended their pursuit policy and training provisions in light of the holding of the United States Supreme Court in *Scott v. Harris*[4] in which the Court asserted: "But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. Whereas Scott's action—ramming [Harris] off the road—was certain to eliminate the risk that [Harris] posed to the public, ceasing pursuit was not. First, there would have been no way to convey convincingly to respondent that the chase was off, and that he was free to go. Had [Harris] looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea whether they were truly letting him get away, or simply devising a new strategy for capture. Perhaps the police knew a shortcut he did not know, and would reappear down the road to intercept him; or perhaps they were setting up a roadblock in his path. Given such uncertainty, [Harris] might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow." "Second, we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness." I would

---

[4] *Scott v. Harris*, ___U.S.___, 127 S.Ct. 1769 (2007).

note that in a footnote, the United States Supreme Court noted it's rejection of studies that predict what a fleeing subject would do if law enforcement terminated the pursuit asserting: "Contrary to Justice Stevens' assertions, we do not "assum[e] that dangers caused by flight from a police pursuit will continue after the pursuit ends," nor do we make any "factual assumptions," , with respect to what would have happened if the police had gone home. We simply point out the *uncertainties* regarding what would have happened, in response to *respondent's* factual assumption that the high-speed flight would have ended."

100. While not offering legal opinions I would note that Justice Kavanagh in a recent concurrence in *Felix v. Barnes*[5] articulated what has been discussed in law enforcement training and policy discussions for more than a decade when he wrote: "A driver speeding away from a traffic stop could easily endanger bystanders and other drivers—especially if the fleeing driver is under the influence of alcohol or drugs, as might well be the case when a driver flees. Moreover, the very 'fact that a suspect flees when suspected of a minor offense," such as speeding or a failure to pay tolls, "could well be indicative of a larger danger.' Fleeing from the traffic stop could suggest that the driver is preparing to commit or has committed a more serious crime—and is attempting to evade detection or arrest. The driver may have illegal drugs or an illegal gun in the car. Or the driver may be unlawfully in the country and fear removal if apprehended. He might have a warrant out for his arrest. He could have an abducted child in the car. The possibilities are many. But the key point is a commonsense one: A driver who speeds away from a traffic stop can pose significant dangers to both the officer and the surrounding community. The question when a driver flees, therefore, is not merely whether the underlying **[*18] traffic** violation "presents risks to public safety"—it is also "whether *flight*," and what that flight might

---

[5] *Felix v. Barnes*, 605 U.S. ___, No. 23-1239 (2025).

24

indicate or enable, "does so." *Lange, 594 U. S., at 331* (ROBERTS, C. J., concurring in judgment). In those circumstances, in other words, it is not only the "severity of the crime" that prompted the stop that is relevant to the "totality of the circumstances" inquiry. *Graham v. Connor, 490 U. S. 386, 396 (1989)* (quotation marks omitted). The Fourth Amendment analysis must also take account of the suspect's attempt "to evade" the officer "by flight." *Ibid*. What should the officer do when a driver flees from a traffic stop? There are no easy or risk-free answers. Every feasible option poses some potential danger to the officer, the driver, or the public at large—and often to all three. And an officer in that situation must make a split-second choice among those various dangerous options. *First*, the officer could simply let the driver go. But because the fleeing driver might be a threat to the community, letting the driver go may exacerbate the dangers, rather than mitigate them. Encouraging officers to stand back and allow drivers to take off would also create "perverse incentives" for those who are stopped by the police. *Scott v. Harris, 550 U. S. 372, 385 (2007)*. If doing nothing in response to a fleeing driver became a known and regular practice among police officers, that would presumably embolden some drivers who otherwise might have thought twice about taking off. Of course, the officer could let the driver go in the moment **[*19]** but then attempt to catch the driver by, for example, tracking the car's license plate or reviewing surveillance footage. See Tr. of Oral Arg. 8. But after letting the driver go, the police may not be able to later track down the car or the driver of the car. Even if the police are able to do so, the escaped driver may pose a serious risk to the public in the interim. And given that the driver has already shown a propensity to evade law enforcement by fleeing a traffic stop, attempting to execute an arrest upon finding the driver could itself be dangerous for the police and others. *Second*, the officer could get back in his police car and give chase, or could radio other officers to pursue the driver. But a high-speed chase likewise can be exceptionally dangerous to the officer, the driver, and others on the road. "Vehicular pursuits" are "often catastrophic." *Lange,*

25

*594 U. S., at 324* (ROBERTS, C. J., concurring in judgment). Many real-world examples demonstrate as much. *Plumhoff* v. *Rickard* involved a "'dangerous car chase'" in which the driver "tried to outrun as many as six police cruisers at speeds sometimes exceeding 100 miles per hour," ending in the "fatal shooting" of the driver. *Ante*, at 6 (quoting *572 U. S. 765, 768 (2014)*). In *Scott* v. *Harris*, multiple police cars "with blue lights flashing and sirens blaring" chased the driver "for nearly 10 miles" while "he ignored their warning to stop," culminating in an officer ramming the driver off the road. *550 U. S., at 384*. Moreover, a recent study concluded that a significant percentage of those killed in police chases are not the fleeing drivers but rather are passengers or bystanders. From 2017 through 2022, more than 500 bystanders were reportedly killed as a result of police chases. *Third*, the officer might try to shoot out the tires of the fleeing car, or otherwise try to hinder the car's movement, in order to bring it to a stop. But shooting at a car, especially its tires, can be "dangerous" and is often "ineffective." Even if the officer manages to hit the tires, the driver could lose control and crash into others on the road. That course of action also poses the risk **[*20]** of the officer accidentally shooting the driver or innocent passengers. *Fourth*, as happened here, the officer could attempt to stop the fleeing driver at the outset by jumping on or reaching into the car. The dangerousness of that option is readily apparent. Perhaps the driver will hit the brakes once he realizes an officer is clinging to the car or attempting to reach through the window. But if the driver does not slow down, then the officer may suffer serious and perhaps fatal injuries. The officer could try to fire his weapon to incapacitate the driver and bring the car safely to a stop. But the car may be just as likely to go careening into traffic, thereby threatening the safety of the officer, other drivers, passengers, pedestrians, and more. I could go on. The point here is that when a driver abruptly pulls away during a traffic stop, an officer has no particularly good or safe options. None of the options available to the officer avoids danger to the

26

community, and all of them require life-or-death decisions that must be made in a few seconds in highly stressful and unpredictable circumstances."

101. It is my opinion, based upon my specialized background, education, training, and experience as well as my continued research, authoring, auditing, consulting and training on law enforcement practices nationwide that the decision of Deputy Hodge to pass other law enforcement vehicles was consistent with the RCSO policy which qualifies that "generally" there should be no passing but allows for passing when requested. Hodge's action was also consistent with generally accepted policies, practices, training, and industry standards.

102. The purpose of moving the K-9 team to the primary or secondary position in a pursuit, consistent with the testimony of Hodge is so that the K-9 is in a position to apprehend or track the suspect if the suspect flees from the vehicle as commonly happens. Agencies throughout the United States have provisions in policy with respect to encouraging the use of K-9 teams in vehicle pursuits as a strategic tactic.[6]

103. Thus, in the case of a K-9 team, industry standard as well as generally accepted policy and practice, direct that K-9's be strategically positioned and used during pursuits.

104. It is my opinion, based upon my specialized background, education, training and experience as well as my continued research, authoring, auditing, consulting and training on law enforcement practices nationwide, that the supervisory practice in this pursuit was consistent with the RCSO policy as well as the generally accepted policies, practices, training, and industry standards.

---

[6] See e.g., https://www.pwcva.gov/assets/2021-06/36.01%20Pursuit%20Policy%20General%20Guidelines.pdf
"Unless otherwise directed by the controlling supervisor, no more than two police vehicles, exclusive of a K-9 Unit, will become involved in the active pursuit of the suspected vehicle. The responsibility of the second unit shall be to serve as a back-up and, when practicable, update the dispatcher with current pursuit information (location, direction, speed, etc.), thereby allowing the primary unit to focus full attention on the suspect vehicle. Other members shall be alert to theprogress and location of the pursuit.

105. Supervisory monitoring in a vehicle pursuit does not require the supervisor to be constantly talking in the radio or terminating the pursuit. Anyone who has actually been in pursuits or supervised pursuits recognizes the need for the primary or secondary officer to have significant control of the radio so locations and other important information can be relayed to other officers. Supervisors know there jurisdictions and know their officers as well as the equipment. Supervisors know the weather conditions as well as the road and traffic conditions in their jurisdiction. As such, there is a greater need for listening or monitoring than there is for affirmatively speaking. It is noted that in the radio traffic an officer can be heard authorizing force to protect the public once Pringle crossed the median and was driving in the wrong direction on the highway. This is the type of direction a supervisor should be given when monitoring a pursuit.

106. While Mr. Taylor opines that a supervisor should have terminated the pursuit upon hearing that Pringle was driving the wrong way on the highway he completely disregards the fact that deputies, by policy and law are granted privileges to do just that when in pursuit. As noted in the RCSO policy: "1. S.C. Code§ 56-5-760 authorizes drivers of police vehicles, while responding to an emergency call or when in pursuit of an actual or suspected law violator, to: a. Park or stop in prohibited areas. b. Exceed the maximum speed limit if he does not endanger life or property. c. Disregard regulations governing direction of movement or turning in specified directions. d. Proceed through a red traffic signal or stop sign, but only after slowing and clearing as may be necessary for safe operation. 2. S.C. Code§ 56-5-760 does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons. C. Upon undertaking a pursuit, the pursuing deputy shall activate emergency lights, sirens, and they shall remain activated for the duration of the pursuit." Thus, the deputies' actions were not only consistent with policy, but the actions were also consistent with law.

28

107. It is my opinion, based upon my specialized background, education, training, and experience as well as my continued research, authoring, auditing, consulting, and training on law enforcement practices nationwide that Deputy Smith, a fully certified officer, with recent training on emergency vehicle operation was sufficiently experienced for conducting pursuits.

108. I would note that Mr. Taylor's opinion concerning a lack of experience of Smith disregards the practical realities of law enforcement. Law enforcement throughout the United States generally gives officers full authority once they have completed basic training and participated in a field training program. More than 30 states allow new officers to work up to a year without even attending an academy. Smith testified about his training, stating, "For every law enforcement officer in the state of South Carolina, we have to do eight weeks at South Carolina Criminal Justice Academy over off of Broad River. So that's eight weeks on top of the in-house training that we get with the department on the municipality that you join. So I did eight weeks at the academy and then a couple of months in-house training with the sheriff's department. And then after you graduate, you do two months of training with an officer in the field." (7-8). Thus, Smith was a fully trained officer who would be expected, once through field training to fulfill all of the functions of a police officer. I know of no per se requirement that an officer have a certain degree of experience before they are allowed to initiate or continue a pursuit. Such a standard would mean that no officer could ever gain experience in this task. That said, having actually supervised hundreds of pursuits during my sworn career, I always considered the particular officer's abilities while monitoring pursuits, however these abilities were never directly related to their time as a law enforcement officer.

29

109. While Mr. Taylor has included a draft in his report showing that the RCSO showing an increase in pursuits from 2019 to 2023 and a decrease in 2024, it is unclear why he included this graph. I would note that any RCSO increase in pursuits is consistent with the national trend in law enforcement.[7]

110. Based on all of the foregoing, it is my opinion that the actions of Deputy Smith, Deputy Hodge, and the all other deputies involved in the pursuit of Pringle were consistent with generally accepted policies, practices, training, and the industry standards in law enforcement. Additionally, it is my opinion, after reviewing multiple reports involving pursuits, as well as the policies and training of the RCSO that there is no evidence of any deficiency on the part of Sheriff Lott or the Richland County Sheriff's Office in the material provided to date.

111. At this stage of my review, I do not know if I may be asked to review additional documents. Should I be asked to review any additional documents, I will be prepared to render additional opinions or supplement the opinions stated within this report.

112. At this point in the development of this case, I do not know whether I will be using any demonstrative aids during my testimony. Should I decide to use any such tool; I will assure that they are made available for review, if requested, prior to their use.

113. My fees for these professional services are outlined in the attached retainer agreement.

This report is signed under penalty of perjury on this 23rd day of October 2025, in Greenville, R.I.

s/John J. Ryan
John J. Ryan

---

[7] https://abc7.com/post/new-data-shows-number-lapd-chases-surged-2024/16124493/ "A record 1,116 pursuits happened on L.A. streets in 2024. That's the most chases since at least 2018." https://abc7ny.com/post/police-pursuits-by-the-nypd-are-up-more-than-644-percent-from-fiscal-year-2022-to-2023-costing-taxpayers-millions-in-crash-claims/14845874/ "NYPD Pursuits up 644%.

# SCHEDULE A

## John "Jack" Ryan

700 N. Carr Rd, #595
Plainfield, Indiana 46168
Office (317) 386-8325
Cellular Phone: (401) 692-1555
FAX (317) 386-8228
Email:  jackryan2@cox.net

### EDUCATION

| | |
|---|---|
| 1990-1994 | Juris Doctorate, Cum Laude, Suffolk University Law School |
| 1986-1990 | Master of Science, Administration of Justice, Salve Regina University |
| 1981-1986 | Bachelor of Science, Administration of Justice, Roger Williams University |

### EMPLOYMENT

| | |
|---|---|
| 2002- | Police Practices Consultant, Trainer, Auditor |
| 2003- | Co-Director, Legal Liability Risk Management Institute |
| 1993-2002 | Adjunct Professor, Salve Regina University |
| | Administration of Justice Graduate Program |
| | Courses: |

        Constitutional Issues in Law Enforcement
        Police Civil Liability
        Juvenile Justice
        Mental Health Law
        Managing Police Organizations
        Business Crime
        Contemporary Issues in the Administration of

| | |
|---|---|
| Justice 1982-2002 | Police Officer, Providence Police Department |
| 1982-1985 | Patrol Officer, Patrol Division |
| 1985-1987 | Patrol Officer, Tactical Division |
| 1986- 1997 | SWAT Team, as Patrol Officers, Sergeant, and Lieutenant (1 of 4 Team Commanders) |
| 1987-1988 | Detective, Detective Division |
| 1988-1992 | Sergeant, Patrol Division |
| 1992-1995 | Lieutenant, Patrol Division |
| 1995-2000 | Director of Training |
| 1995-2001 | Department Public Information Officer |
| 1997-2001 | Captain, Administrative Staff Division |
| 1998-2001 | Director of Administration |
| 2001-2002 | Research and Policy |

    * As Director of Administration for the Providence Police Department-Supervisory
    Responsibilities included:

- Administrative Staff
- Advisor to Chief of Police and Internal Affairs
- Fleet Operations
- Human Resource Bureau
- MIS
- Property/Evidence
- Prosecution Bureau

# SCHEDULE A

- Public Information Office
- Record Bureau
- Training Division

1981-1982 Private Security/Retail

- Uniformed Security
- Retail Store Detective
- Night Supervisor overseeing uniform security as well as store detectives

## CERTIFICATIONS:

2009      Certified with TASER by the Muncie Indiana Police Department

## AWARDS:

1999      Salve Regina University, Alumnus, Distinguished Service Award
1994      American Jurisprudence Award, Trial Practice
1992      American Jurisprudence Award, Constitutional Law
1991      Moot Court Outstanding Performance Award

## LAW ENFORCEMENT ACHIEVEMENT AWARDS:

1996      Chief's Award, Off-Duty Shooting in Progress Arrest
1987      City Council Award, Off-Duty Breaking and Entering Arrest
1986      Rhea Archambault (Officer of the Year) Award
1982-2002  Over 35 Letters of Commendation

## PROFESSIONAL AFFILIATIONS:

Rhode Island Bar Association Fraternal
Order of Police Providence Police
Association
International Municipal Lawyers Association

## ADMITTED TO PRACTICE OF LAW:

State of Rhode Island, November 1994
District of Rhode Island Federal Court, June 1995

## VOLUNTEER ORGANIZATIONS:

Northern Rhode Island Vikings Junior Hockey Association, President 2002-2004 Northern
Rhode Island Vikings Junior Hockey Association, Board Member 1998-2003

## DEPOSITIONS AND TESTIMONIES:

January 2014: Jenny Rebecka Royal v. City of Blythe, Superior Court of Richmond County,
Georgia, Civil Action File No: 2012RCCV735 (Deposed 2/24/17) (Defense) August 2014:
Johnathan Rose et al, v. County of Sacramento, et al, U.S. District Court Eastern District of
California, Case No. 2:13-cv-01339-TLN-EFB (Testimony 9/22/17) (Plaintiff)
June 2015: Nathan Felts v. Valencia County, et al., U.S. District Court for the District of New
Mexico, No: 1:13-cv-1094 MCA/RHS, (Testimony 10/17/17) (Defense)
December 2015: Estate of Dillon McGee v. Madison County, Tennessee, et al., U.S. District,
U.S. District Court for the Western District of Tennessee Eastern Division, No.: 1:15-1069,
(Deposed 7/31/17) (Defense)
September 2016: Sacchetti, Manganelli, et al. v. Gallaudet University, et al., U.S. District Court
for the District of Colombia. Case No.: 1:15-cv-455-RBW (Deposed 6/19/17)(Plaintiff)

# SCHEDULE A

November 2016: Estate of Brunette, et al. v. City of Burlington, U.S. District Court of Vermont, No.: 2:15-cv-61. (Deposed 7/26/17)(Defense)

December 2016: Katherine Elizabeth Sikes, individually and as Administrator of the Estate of Gary Thomas Latimer v. City of Douglasville, a municipal Corporation of the State of Georgia; Chief Chris Womack, Mayor Harvey Persons, Damon Partin, and Officer Michael McDonald, U.S. District Court for the Northern District of Georgia, Atlanta Division. Civil Action No.: 1:15-cv-03111. (Deposed 5/10/17)(Defense) February 2017: Estate of Marquez Smart by Randall Smart & Brenda Bryant as Administrators of the Estate and Heirs of Deceased v. The City of Wichita, Wichita PD, Officers Lee Froese & Aaron Chaffee. U.S. District Court for the District of Kansas. No.: 2:14-cv-02111-EFM-JPO. (Deposed 8/29/17)(Defense)

March 2017: Sureshbhai Patel v. City of Madison, et al. U.S. District Court for the Northern District of Alabama. No. 5:15-cv-00253-VEH. (Deposed 7/28/17)(Defense) May 2017: Stephen Horn v. City of Covington, et al. U.S. District Court, Eastern District of KY-Covington. No.: 2:14-cv-73-DLB (Deposed 8/30/17)(Defense)

June 2017: Tyrone Zwiegart v. Clinton County, et al. U.S. District Court for the Southern District of Illinois. No.: 3:16-cv-01182-MJR-RJD. (Deposed 9/16/17)(Defense)

July 2017: Sandra Harris, Special Administrator of the Estate of David Harris, Deceased, v. Village of Calumet Park, et al. Circuit Court of Cook County, IL, County Department, Law Division. No.: 2014-L-009643. (Deposed 9/07/17)(Defense)

June 2017: Maria Touchet, Personal Representative for Estate of Rudy Baca v. Valencia County and Seth Chavez. New Mexico Thirteenth Judicial District Court. No.: D-1314- cv-201501125. (Deposed 10/30/17)(Defense)

July 2017: Chaundraya Goodwin, Admx. V. Ohio State Highway Patrol. No.: 2016- 00864. Court of Claims of Ohio. (Deposed 10/31/17)(Defense)

October 2017: Baltimore PD v. Officer Caesar Goodson. Trial Board (Employment Disciplinary Hearing). (Testimony 11/6/17)(Defense)

August 2016: Jamie Nelson, et al. v. City of Elizabethtown, et al., U.S. District Court, Western District of KY at Louisville, Case No.: 3:16-CV-429-DJH. (Deposed 12/4/17)(Defense)

April 2017: Megan McGuire v. Douglas County, et al. U.S. District Court-District of Nebraska. No.: 8:16CV4. (Deposed 2/1/18)(Defense)

November 2017: Derrick Wynn v. City of Griffin, et al. U.S. District Court for the Northern District of Georgia, Newnan Division. No. 3:16-cv-94-TCB. (Deposed 2/13/18)(Defense)

August 2017: Neuroth v. Mendocino County, et al. U.S. District Court – Northern District California. No.: 3:15-cv-03226-RS. (Deposed 3/12/18)(Plaintiff)

July 2017: Estate of John Livingston, Tyrone Bethune, Christine Broom, Michael Cardwell, Ryan Holloway, and Wesley Wright v. Kehagias. U.S. District Court, Eastern District of North Carolina. No.: 5:16-cv-906. (Deposed 4/12/18)(Defense)

March 2018: Moses Stryker v. The City of Homewood; Chief Jim Roberson; Jason Davis; Brian Waid; and Frederick Blake. U.S. District Court, Northern District of Alabama, Southern Division. No.: 2:16-cv-00832-VEH. (Deposed 4/17/18)(Defense) January 2018: Jon Luer, et al. v. St. Louis County, MO. U.S. District Court, Eastern District of Missouri. Case No.: 4:17-cv-767 NAB. (Deposed 5/22/18) (Defense) February 2017: Darren A. Dickerson v. County of Camden, et al., U.S. District Court, District of New Jersey. No.: 1:14-cv-06905. (Deposed 6/13/18)(Defense)

December 2017: Francois Severe v. City of Miami and Antonio Vicente Torres, IV. District Court for the Southern District of FL. No. 17-cv-22153-DPG. (Deposed 7/2/18)(Defense)

December 2016: Joshua Skinner v. Alexander Tower, Eric Shepard, Brian Claffy, and Michael DeFiore. U.S. District Court for the District of Vermont. Civil Case No.: 2:16- cv-127. (Deposed 7/23/18)(Defense)

February 2017: Thomas Pryor v. County of Camden, et al., Superior Court of New Jersey, Law Division, Civil Part. No.: L-2767-15. (Testimony 7/27/18)(Defense)

# SCHEDULE A

May 2016: Sheila Brawley, Mother and Next Friend of Rhaykeem D. Samuels, a minor, v. City of Madison, et al., Circuit Court Third Judicial Circuit Madison County, Illinois, Case No.:15-L-1505 (Deposed 8/15/18)(Defense)

January 2016: Clark v. Village of Grayslake, et al., Circuit Court of Lake County, (Deposed 8/17/18) (Defense)

May 2016: Robert Bryant v. Camden County Police Department, Jose Gonzalez, and Officer Jacob Levy, Superior Court of New Jersey, Law Division, Docket No.: L-3505-15. (Testimony 9/6/18) (Defense)

April 2018: Anthony Wilson and Kimberly Wilson, the parents of Martez Wilson, and the Estate of Martez Wilson v. Douglasville, Officer Coylee Danley, Officer Andrew Smith, Sgt. Caldwell, EMT Sean Flack and paramedic Brian Porterfield. U.S. District Court, Northern District of Georgia. CAFN 1:17-cv-00634-ELR. (Deposed 9/7/18)(Defense)

May 2018: Angela Ainley v. City of South Lake Tahoe, et al. Federal Court Eastern District of California. No. 2:16-cv-00049-TLN-CKD. (Deposed 9/12/18) (Plaintiff) January 2018: Cajun Snorton as administrator of the estate of Nicolas Thomas v. Smyrna Police Lt. Kenneth Owens, et al. U.S. District Court, Northern District of Georgia. No.: CAFN 1:17-cv-01036-RWS. (Deposed 9/14/18) (Defense)

May 2018: Estate of Tashi S.Farmer, et al. v. LVMPD, et al. U.S. District Court, District of Nevada. No. 2:17-cv-01946-JCM-PAL. (Deposed 10/19/18) (Defense)

October 2018: John Hernandez, et al. v. City of Sacramento, et al. Eastern District of California. No. 2:17-cv-02311-JAM-DB (Deposed 11/30/18) (Plaintiff)

October 2018: Carolyn Giummo, et al. v. Robert Olsen, et al. U.S. District Court for the Northern District of Georgia. Civ. A. No. 1:15-cv-03928-TCB. (Deposed 12/7/18) (Defense)

November 2018: Bill Stanley, Administrator of The Estate of Brandon Stanley v. Bobby Joe Smith and David Westerfield. U.S. District Court, Eastern District of Kentucky, London Division. No.: 6:16-cv-00264-REW-HAI. (Deposed 12/20/18) (Defense)

July 2016: Tad Woods v. Geraldine Martinez, Twelfth Judicial District Court, State of New Mexico, Case No.: D-1215-CV-2013-00689. (Testimony 1/16/19) (Defense)

July 2016: Bethany Anderson, et al. v. City of Westlake, OH, et al. Court of Common Pleas, Lorain County, OH. No.: 18-CV-194655. (Deposed 1/25/19) (Defense)

December 2018: Smith v. County of Santa Cruz, CA. No. 17-6594 LHK, S.S. v. County of Santa Cruz, CA. No. 17-5095 LHK. U.S. District Court – ND California. (Deposed 3/8/19) (Plaintiff)

July 2014: Fraternal Order of Police v. City of Camden, et al., U.S. District Court for the District of New Jersey, Civil Action No.:1:10-cv-01502 (Testimony 3/18/19) (Defense)

September 2018: Jamie Ann Cox, individually and as successor in interest for Humberto Rosario Martinez, Deceased, et al. v. City of Pittsburg, et al. U.S. District of N.D. Cal. No.: 3:17-cv-04246-RS. (Deposed 3/25/19) (Plaintiff)

October 2017: Mario Alberto Madero, Jr., et al. v. City of Prairie Village, Kansas, et al. District Court of Johnson County, Kansas. No.: 18-CV140 (Testimony 4/16/19) (Defense)

December 2018: Amanda Hoskins/Jonathan Taylor v. Knox County, et al. U.S. District Court, Eastern Kentucky Division. No.: 17-cv-84. (Deposed 5/21/19) (Defense)

December 2017: State of New Jersey v. P.O. Joseph P. Reiman. Superior Court of N.J., Criminal Division. Criminal Complaint # 1201-W-2017-000360 (Testimony 5/22/19) (Defense)

March 2019: United States of America v. Nicholas Romantino. District Court of New Jersey, Camden Vicinage. Crim. No. 18-673 (RBK) (Testimony 6/7/19 and 9/10/19) (Defense)

February 2018: Yvonne Mote, as Personal Representative of the Estate of Shane Watkins, deceased v. Steven Moody, et al. U.S. District Court for the Northern District of Alabama; Northwest Division. No.: 3:17-cv-00406-AKK. (Testimony 6/27/19) (Defense)

May 2018: Rashawn Quaneece Middleton, as Personal Representative of the Estate of Roy Howard Middleton, SR., deceased v. Sheriff David Morgan (Escambia), et al. U.S. District Court, Northern District of Florida, Pensacola Division. No. 3:17-cv-00346- MCR-GRJ. (Deposed 7/8/19) (Defense)

May 2018: Velvet Clowers v. Union City and John Does 1 through 4. Superior Court of Fulton County, GA. No.: 2017CV298022. (Deposed 8/14/19) (Defense)

February 2019: Roger Dean Gillispie v. City of Miami Township, et al. U.S. District Court, Southern District of Ohio, Western Division. No. 3:13-cv-00416-TMR-MRM. (Deposed 9/4/19) (Defense)

# SCHEDULE A

November 2018: Tiffany Washington, et al. v. Crystal Marlowe, et al. Jefferson Circuit Court, Kentucky. No.: 10-CI-001183. (Testimony 10/1/19) (Defense)

June 2018: Celia Sanchez and Oscar Salas, Statutory Death Beneficiaries of Erik Emmanuel Salas-Sanchez v. Mando Kenneth Gomez, Alberto Rivera, Pamela Smith and the City of El Paso, TX. U.S. District Court, Western District of Texas, El Paso Division. No. 3:17-cv-00133-PR. (Deposed 9/13/19) (Defense)

April 2019: Lisa G. Finch v. City of Wichita, Kansas. U.S. District Court for the District of Kansas. No.: 18-cv-1018-JWB-KGS. (Deposed 10/2/19) (Defense)

May 2018 Trinita Farmer v. Las Vegas Metropolitan Police Department, US District Court for the District of Nevada, Case No. 2:18-cv-00860-GMN-VCF (Deposed 10/25/19) (Defense)

August 2018 Fleming v. Albuquerque, Second Judicial District Court Bernalillo County, New Mexico, Case No. D-202-CV-2014-5954 (Testimony 11/8/19) (Defense)

September 2018 Charles Mills v. William Clogston, III, Individually and in his Official Capacity as Scott County Deputy Sheriff, et al., Case No. 5:18-cv-00025-DCR (Deposed 1/22/20) (Defense)

March 2019 Joey Brockman v. City of Falmouth, Case No. 18-CI-00012 (Deposed 2/5/20) (Defense)

February 2020 Garrett Collick, et al., v. William Paterson University, et al., Case No. 2:16-cv-00471 (KM-JBC)(Deposed 2/6/20) (Defense)

June 2019 Patrick Cornely v. Camden County Corrections, Docket No. CAM-L-4671-17 (Testimony 2/25/20) (Plaintiff)

July 2019 Hurtado v. Cobb County, GA. Case No. 18-A-963-3 (Deposed 3/9/20)(Defense)

November 2019 Finley v. Loggains, City of Jonesboro. Case No. 3:18-cv-55-DPM (Deposed 4/30/20)(Defense)

January 2020 Nakiya Moran v. Calumet City, et al., Case No. 1:17-cv-02027 (Deposed 5/11/20 & 6/12/2020)(Defense)

December 2019 James Griffin v. Donald Wright, II, et al., Civil Action No. CV-2018- 903480 (Deposed 5/13/20)(Defense)

April 2020 Arterburn v. Eddy's Chevrolet Cadillac, LLC, Case No. 2018 CV 000683 (Deposed 6/8/20)(Plaintiff)

December 2019 Murrietta v. City of Fresno, Case No. 1:18-at-00152 (Deposed 6/29/20)(Plaintiff)

January 2020 Lankford v. Plumerville, Case No. 4:19-cv-00619-JM (Deposed 7/14/20)(Defense)

March 2020 Ghaisar v. U.S., Case No. 1:19cv1224 (Deposed 7/29/20)(Defense)

October 2018 Rudavsky v. City of South Burlington, Case No. 2:18-cv-25 wks (Deposed 8/27/20)(Defense)

February 2019 Herndon v. Henderson Police Department, et al., Case No. 2:19-cv-00018- GMN-NJK (Deposed 9/16/20)(Defense)

September 2020 Martin, et al. v. City of San Jose, et al., Case No. 3:19-cv-01227-EMC (Deposed 9/28/20)(Plaintiff)

March 2019 Estate of Marco Gomez v. Village of Forest Park, et al., Case No. 18 CV 910 (Deposed 11/20/20)(Defense)

January 2020 McLemore v. Columbus Consolidated Gov't, et al., Case No. 4:19-cv- 00090-CDL (Deposed 12/4/2020)(Defense)

December 2020 Moore v. City and County of San Francisco, Case No. 3:18-cv-00634-SI (Deposed 12/22/20)(Plaintiff)

October 2020 Mobley v. Underwood, Case No. 0:19-cv-03223-JFA-SVH (Deposed 1/14/21)(Defense)

February 2020 Jok v. City of Burlington, Civil Action No. 2:19-CV-70 (Deposed 1/21/21)(Defense)

September 2020 Virgil v. City of Newport, Case No. 16-CV-222 (Deposed 2/24/21)(Defense)

March 2021 Ramos - FCMS #200815-09122 (Testimony 4/8/21)(Defense)

April 2021 Anderson v Lyon County, Case No. 3:20-cv-00435-LRH-WGC (Deposed 4/20/21)(Defense)

October 2019 Lobato v LVMPD, Case No. 2:19-cv-01273-RFB-EJY (Deposed 4/27/21)(Defense)

July 2020 Andy Martin v City of San Jose, Northern District of California, Case No. 3:19-cv-01227-EMC (Testimony 5/18/21)(Plaintiff)

May 2021 Antwon Rafael Gallmon, Jr. v Forest Acres Police Department, Case No. 3:17-cv-00059-TLW-PJG (Deposed 5/26/21)(Defense)

January 2020 Meli v City of Burlington, Civil Action No. 2:19-cv-71 (Deposed 6/2/21)(Defense)

August 2020 O'Kelley v Pickens County, Civil Action No. 2:17-CV-0215-RWS (Deposed 8/10/21)(Defense)

# SCHEDULE A

May 2020 Crowe v Steward, Case No. 5:20-cv-00203-REW-MAS (Deposed 8/26/21)(Defense)

May 2021 Lucas v County of Fresno, Case No. 1:18-cv-01488-DAD-EPG (Deposed 10/01/21)(Plaintiff)

March 2021 Pizer v City of Rock Hill, Case No. 0:20-cv-03620-JMC-SVH (Deposed 10/27/21)(Defense)

February 2021 Estate of Napouk v LVMPD, Case No. 2:20-cv-01859-JCM-BNW (Deposed 11/3/21)(Defense)

July 2021 Estate of Soheil Antonio Mojarrad v. William Brett Edwards and City of Raleigh, NC, Civil Action No. 5:20-cv-397-FL (Deposed 11/8/21)(Defense) August 2021 Latimer v William Patterson University, Docket No. PAS-L-421_20 (Deposed 11/22/21)(Defense)

November 2020 Daniel Shaham, Dec. v California Highway Patrol, 2:17-cv-01075-TLN- JDP3 (Deposed 11/23/21)(Plaintiff)

February 2020 Tate v City of Chicago, No. 18 CV 07439 (Deposed 11/29/21)(Plaintiff)

March 2019 Haines v Frank, Civil Action-Law December Term, 2017 No. 2017 (Testimony 12/1/21)(Defense)

March 2017 Pollard v Columbus Consolidated Government, et al., Civil Action File No: SC-19-CV-1150 (Deposed 12/15/21)(Defense)

December 2021 Steffel, et al. v The City of Jefferson, Missouri, et al., Case No. 20AC-CC00145 (Deposed 12/16/21/(Defense)

November 2020 Randall Johnson, Dec. v City of Redding, Case No. 2:19-cv-01722-JAM-DB (Deposed 12/20/21)(Plaintiff)

April 2021 Travis Scott King, et al. v Ronald Davis, et al., Case No. 3:19-cv-07722 VC (Deposed 1/3/22)(Plaintiff)

November 2021 Katie Whitworth v Mark Kling, et al., Case No. 4:21CV-00025 LPR (Deposed 1/10/22)(Defense)

October 2020 McCree v Chester Police Department, et al., Case No. 0:20-cv-00867- MGL- PJG (Deposed 2/14/22)(Defense)

April 2015: Ingram v. Camden County, et al., U.S. District Court, District of New Jersey, Civil Case No. 1:14-cv-05519 (Deposed 6/13/18)(Testimony 3/22/22)(Defense)

December 2020: Darnel Banks v. Cortez Maxwell and Country Club Hills, Case No. 19-cv-542 (Deposed 3/25/22)(Defense)

September 2021: Ahmad Norwood v. Calumet City, Case No.: 2018 L 010991 (Deposed 3/30/22)(Defense)

September 2021: Ryan Thomas v. Calumet City, Case No.: 2018 L 010798 (Deposed 3/30/22)(Defense)

December 2021: Tapia v. City of Albuquerque, Case No.: D-202-CV-2019-06610 (Deposed 3/31/22)(Defense)

May 2021: Pope, et al. v. Hill, et al., Civil Action No.: STSV2021000286 (Deposed 4/12/22)(Defense)

December 2021: Gomez v LVMPD, et al., Case No.: 2:20-cv-1589-RFB (Deposed 4/18/22)(Defense)

January 2021: Ford v Glasgow, Civil Action No. 20-CI-89 (Deposed 4/9/21)(Testimony 4/19/22)(Defense)

October 2021: Estate of Hale v Justin Swope, et al., Case No.: 5:20-CV-178-TBR (Deposed 5/23/22)(Defense)

September 2020: Ethan Marks v Minneapolis Police Officers, Case No.: 20-CV-01913 (Deposed 6/15/22)(Plaintiff)

March 2022: Eric Lurry v. City of Joliet, Case No.: 20-CV-4545 (Deposed 6/21/22) (defense)

August 2021: Tuggle (Cuevas) v City of Tulare, Case No.: 1:19-cv-01525-NONE-SAB (Deposed 7/19/22)(Plaintiff)

June 2019: AJA Seats, et al. v. Village of Dolton, et al. Circuit Court of Cook County, IL. No.: 2016-L-010353. (Deposed 8/20/19) (Testimony 8/2/22) (Defense)

January 2022: Thomas Barbosa, Dec. v. Shasta County, Case No.: 2:20-cv-02298-JAM-DMC (Deposed 8/18/22)(Plaintiff)

March 2021: Clark and Hardin v. Meade County, KY, Civil Action No.: 3:17-CV-00419-DJH (Deposed 8/23/22)(Defense)

May 2018: Estate of Luke Stewart v. City of Euclid, et al., Case No. 1:17-cv-02122 (Deposed 9/9/22)(Testimony 10/31/22)(Defense)

# SCHEDULE A

November 2021: State of Washington v Burbank; Collins and Rankine, Case Nos.: 21-1-01286-6; 21-1-01287-4; and 21-1-01288-2 (Testimony 11/23/22)(Plaintiff)

October 2022: Bruce Washington, et al. v Randy Smith, et al., Civil Action No.: 2:22-CV-632 (Deposed 11/28/22)(Defense)

March 2022: The Estate of Eric Lurry, Jr. v City of Joliet, Case No.: 20-CV-4545 (Testimony 11/30/22)(Defense)

August 2022: Ariel Hill & Jamal Wood v City of Chicago, Case No.: 2017-L-7368 (Deposition 12/12/22)(Defense)

May 2022: Epps v Anderson County Sheriff's Office, Case No.: 8:22-cv-00934-TMC-KFM (Deposition 12/14/22)(Defense)

July 2022: Jaddo v City of Stamford, Case No.: 3:21-cv-00350 (Deposition 12/20/22)(Defense)

December 2021: Fair v LVMPD, et al, Case No.: 2:20-cv-01841-JCM-BNW (Deposition 1/19/23)(Defense)

June 2021: Coequyt v. Holien and City of Redwood, Case No.: 0:20-cv-01178-PJS-TNL (Testimony 1/25/23)(Plaintiff)

July 2022: Timothy Ellis v City of Providence, William Dukes, Jr. and Dustin Winstead, Case No.: 4:17-cv-00042-JHM-HBB (Deposition 1/27/23) (Defense)

November 2021: Estate of Byron Williams, et al. v LVMPD, et al., Case No.: 2:21-cv-01346 (Deposition 2/6/23) (Defense)

December 2022: James v City of Chicago, et al., Case No.: 21-cv-6750 (Deposition 2/10/23)(Plaintiff)

April 2021: Jeffrey Lilley v Wood County, et al., Case No.: 22-CV-08 (Deposition 2/14/23)(Plaintiff)

May 2019: Johnny Banks v. Shelby Hawkins and City of Shannon Hills. U.S. District Court Eastern District of Arkansas. No.: 2:18-cv-00039-BSM. (Deposed 7/29/19)(Testimony 3/16/23)(Defense)

July 2022: Richter, et al. v City of Norwich, et al. Case No.: KNL-CV16-6032558-S (Deposition 3/21/23)(Defense)

February 2023: Tully v Lynch and Tully v Bloomfield. Case No.: USDC 1:22-CV-233 and NMDC D-1116-CV-202200176 (Deposition 3/27/23)(Defense)

January 2023: Pacheco v City of Stockton. Case No.: 2:20-CV-01404-TLN-KJN (Deposition 3/28/23)(Plaintiff)

September 2022: Ramona Colon v City of Easton, et al. Case No.: 21-3337 (Testimony 4/13/23) (Defense)

March 2023: Leonard v Shelton. Case No.: 1:22-cv-01345-RLY-DLP (Deposition 5/18/23)(Defense)

April 2021: Legette v Officer Sean Rollins, Columbia PD. Case No.: 3:20-cv-02439-JMC-PJG (Deposition 5/25/23)(Defense)

May 2023: Estate of George Herrera v Village of Angle Fire. Case No.: 1:21-cv-465-SCY-LF (Deposition 6/12/23)(Defense)

May 2023: McDermid v City of Duquesne, et al. Case No.: 22AO-CC00129 (Deposition 6/26/23)(Defense)

December 2022: Tenell Coleman and Andrew Gates v Village of Forest Park. Case No.: 2021-L-007302 (Deposition 6/27/23)(Defense)

April 2023: Redding v City of Chicago. Case No.: 20 L 4141 (Deposition 7/19/23)(Defense)

March 2023: Adam Christian Gabriel v. County of Sonoma, et al. Case No.: 3:22-cv-00781-JD (Deposition 7/24/23)(Plaintiff)

February 2021: Robert Anderson v William Vanden Avond. Case No.: 20-cv-1147-DWF-LIB (Testimony 8/4/23)(Plaintiff)

May 2023: Quinto-Collins v City of Antioch, et al. Case No.: 3:21-cv-06094-AMO (Deposition 8/16/23)(Plaintiff)

May 2021: Mario Gonzalez, et al. v City of Alameda, et al. Case No.: 4:21-cv-09733-DMR (Deposition 9/6/2023)(Plaintiff)

October 2021: Hearing to Overturn Conviction. Testimony on Behalf of Whitehead, Shelby County Criminal Court, Division 2 (Testimony 9/7/2023)

March 2021: Stephen Syms v County of Camden and George Lewis, III, US District Count for the District of New Jersey, Case No.: 1:20-cv-02073-NLH-AMD (Testimony 10/3/2023)(Defense)

June 2023: Estate of Trevon L. Mitchell v Benjamin Sullivan. Case No.: 21-CI-004780 (Deposition 10/19/2023)(Defense)

March 2023: Nathan Jones, et al. v City of Chicago, et al. Case No.: 2022 L 1735 (Deposition 10/30/2023)(Defense)

# SCHEDULE A

August 2023: Betty Jean and Latoya James v Camden County Sheriff's Office, et al. Case No.: 2:22-cv-00078-LGW-BWC (Deposition 11/1/2023)(Defense)

May 2022: Songer v Bledsoe County Government. Case No.: 1:22-CV-00022 (Deposition 11/2/2023)(Defense)

November 2021: State of Washington v Rankine, Collins, Burbank. Case Nos.: 21-1-01286-6; 21-1-01287-4; and 21-1-01288-2 (Testimony 11/6/2023)(Prosecution)

October 2022: Christopher Sterusky v David Cooper. Case No.: 3:22-CV-218-GNS-LLK (Deposition 11/9/2023) (Defense)

March 2023: Almir O'Neal v Officer Corey Williams, et al. Case No.: 220102078 (Testimony 11/15/2023)(Defense)

March 2023: Estate of Cedric Lofton v City of Wichita, Kansas. Case No.: 22:CV-01134-EFM-ADM (Deposition 11/17/2023)(Defense)

September 2023: Brandon Adams v Henry County. Case No.: STSV2022002131 (Deposition 11/20/2023)(Defense)

February 2023. Estate of Angle McIntyre v Collingdale Borough and Darby Borough, et al. Case No.: 22-1965 (11/22/2023)(Defense)

May 2023. Latoya Ratlieff v City of Fort Lauderdale, et la. Case No.: 0:22-cv-61029 (11/30/23)(Defense)

September 2023: Eddie Banks, Jr. v City of Chicago. Case No.: 2021L 009966 (12/7/2023)(Defense)

September 2021 Haidon v Danaher, Case Action No.: 3:19-cv-00119 (SRU) (Deposed 2/25/22) (Testimony 12/11/2)(Defense)

June 2021: Danny Ojeda v Tucson Police Department, Case No.: C20202521 (Deposed 11/29/22)(Defense)(Testimony 12/18/23)

April 2022: Gilbert v City of Minneapolis, Case No.: 21-2350 (NEB/LIB) (Deposed 12/20/23)(Plaintiff)

November 2022: Anderson v Town of Sandwich, et al. Case No.: 1:20-cv-12203-RWZ (Testimony 12/21/23)(Defense)

September 2023: Kelly Wayne Patterson v LVMPD, Officer S. Salazar, Case No.: 2:23-cv-00539-RFB-DJA (Deposed 12/27/23)(Defense)

December 2023: Jonathan Strickland v City of Las Cruces, et al., Case No. CIV-23-00116 KG/KRS (Deposed 1/9/24)(Defense)

July 2020: Piper Partridge, et al. v City of Benton, et al., Case No.: 4:17-cv-00460-BSM (Testimony 2/2/24)(Defense)

August 2023: Rivera v City of Chicago, Case No.: 2020 L 5842 (Deposed 2/13/24)(Defense)

February 2023: Patricia Porter, Special Administrator of the Estate of Lakisel Thomas v City of Chicago, Case No.: 2021 L 5510 (Deposed 2/14/24)(Defense)

January 2023: Shiflett v. City of San Leandro, Case No.: 3:21-CV-07802-LB (Deposed 2/27/24)(Plaintiff)

July 2023: Jawone Robinson v Orlando Jiles, Edgar DeSanto and City of Fairburn, GA, Case No.: 1:23-CV-02034 (Deposed 4/23/24)(Defense)

November 2023: Murphy, Dennis (PR) for the Estate of Daniel Humphrey and Lorraine Ware as the PR of the Estate of Sonia Tenorio and Cynthia Humphrey v City of Albuquerque, et al., Case No.: D-202-CV-2022-06680 (Deposed 4/26/24)(Defense)

January 2022: Perkins v Hart, et al. Case No.: 2:21-CV-00879 (Testimony 5/1/24)(Defense)

June 2023: Henley v State of Tennessee, Case No.: 0546-AL-21-0300333-001, 0546-AL-21-0300333-003 & 0546-AL-21-0300333-004 (Testimony 5/21/24)(Defense)

May 2017: Keith Childress, Sr., et al. v. LVMPD, et al. U.S. District Court, District of Nevada. No.: 2:16-cv-03039-JCM-NJK. (Deposed 4/18/19)(Testimony 6/21/24) (Defense)

November 2022: Montijo-Sequeiro, Luis v City of Torrington, Case No.: HHB-CV21-6069742-S (Deposed 8/22/24)(Defense)

April 2024: Archie v City of Chicago, et al., Case No.: 19-CV-4838 (Deposed 9/3/24)(Plaintiff)

January 2024: Estate of Reiner Shawn Sommer, et al. v LVMPD, et al., Case No.: 2:23-CV-01682-GMN-NJK (Deposed 9/16/2024)(Defense)

July 2024: Andros v Tinsley, Case No.: 7:23-CV-135 (Deposed 9/18/2024 and 10/23/2024)(Defense)

May 2024: Anthony Camarca v City of Covington, et al., Case No.: 2:22-CV-00128 (Deposed 9/20/2024)(Defense)

# SCHEDULE A

July 2024: Chris Hambric, as administrator of Estate of Greg Hambric v Twilley and Smith, Case No.: 6:23-CV-00748 (Deposed 9/24/2024)(Defense)

July 2024: Houff v City of Sacramento, et al., Case No.: 2:22-CV-01150-MCE-JDP (Deposed 9/30/2024)(Plaintiff)

April 2024: Samuel Scott Minton v. City of Tennessee, Case No.: 93-395 (Testimony 10/10/24)(Defense)

June 2024: Graff v City of Vallejo, et al., Case No.: 3:23-cv-02820-AGT (Deposed 10/29/24)(Plaintiff)

April 2024: Peter J. Spakosky v. McMinn County, Joe Guy, Caleb Latham, Jeremy Harrison, and Brad Johnston, Case No.: USDC No. 1:23-cv-70 (Deposed 10/31/24)(Defense)

June 2024: Estate of Joella Coca v. City of Santa Fe, Case No.: D-101-CV-2023-00172 (Deposed 11/07/24)(Defense)

September 2024: Patricia White v. Donald Taylor and Justin Wells, Case No.: 1:24-CV-00054 (Deposed 11/26/24)(Defense)

July 2021: Miguelina Peña/Estate of Richardo Muñoz v City of Lancaster, Civil Action No.: 21-00590 (Deposed 12/17/24)(Defense)

August 2024: Kady Deese v Deputy Ryan Powell, et al., Case No.: 5:24-cv-00061 (Deposed 1/2/25)(Defense)

May 2021: Juan Garcia, et al. v County of Napa, et al., Case No.: 4:21-cv-03519-HSG (Deposed 3/11/25)(Plaintiff)

December 2024: Paige Hannah Molina v Town of Johnston and Officer Mark Warchol, Case No.: 8:23-cv-04572-TMC (Deposed 3/19/25)(Defense)

June 2024: Estate of Deborah Burge, et al. v Jerry Jones, et al., Case No.: 22-CI-00565 (Deposed 3/25/25)(Defense)

November 2021: Clifton Dilley v State of Louisiana, et al., Civil No.: 3:19-cv-391-BAJ-EWD (Deposed 3/31/25)(Plaintiff)

February 2020 Mendez v City of Chicago, Case No. 1:18-cv-05560 (Deposed 3/18/21) (Testimony 4/29/25) (Plaintiff)

April 2021 Lance Downes-Covington, et al. v LVMPD, et al., Case No.: 2:20-CV-01790 (Deposed 5/20/25)(Defense)

June 2024 Tanisha Smith v. St. Clair County, et al., Case No.: 23-LA-0765 (Deposed 6/12/25)(Defense)

May 2025 Shelby Ross v Tipton County and Jeremy Finney, Case No.: 2:24-02313 (Deposed 6/13/25)(Defense)

November 2024 Elijah Riche deceased, PR Keith Riche v. Bernalillo County, et al. Case No.: D-202-CV-2023-09027 (Deposed 6/19/25)(Defense)

June 2024 Vision Bank v Chance Avery, et al., Case No.: Western District of OK -22-cv-602-R; Oklahoma County CJ-2022-452 (Deposed 7/1/25)(Defense)

March 2025 Malikah Asante-Chioke v. Nicholas Dowdle, et al., Case No.: 22-4587, USDC Eastern District of Louisiana (Deposed 7/2/25)(Defense)

August 2024 Sandra Schulze, et al. v Douglas County and Matt Sampson, Case No.: 3:23-cv-00567-LRH-CLB (Deposed 7/15/25)(Defense)

March 2025 Elizabeth Johnson-Neher v City of Mishawaka, Indiana, Case No.: 71C01-2210-CT-000406 (Deposed 7/28/25)(Testimony 8/21/25)(Defense)

February 2025 Pamela Holmes, as Administrator of the Estate of Normiez N. Reeves, et al. v. Jonathan C. Dennis, et al., Case Number: 1:24-cv-02546-SEG (Deposed 7/30/25)(Defense)

January 2025 Estrella v. City of Modesto, Case No.: 1:22-cv-00921 (Deposed 8/14/25)(Plaintiff)

May 2025 Ahmed Alneel v. City of Chicago and William Wolf, Case No.: 2024L005735 (Deposed 8/15/25)(Defense)

March 2021 A.K., a minor, et al. v Nicholas Hibbs, et al., Case No.: 21-CI-00341 (Deposed 8/20/25)(Defense)

February 2025 Jared Thomas Kennedy v Aaron Acree, Gary Hicks, Micah Kaminski, Civil Action No.: 5:21-cv-00134-GNS-LLK (Deposed 8/25/25)(Defense)

April 2025 Mackenzie Hawkins v Etowah County Sheriff Jonathan Horton, and, Deputy Robin Grant, Case No.: 4:23-CV-01406-RDP (Deposed 8/27/25)(Defense)

June 2025 Ebner v Abington, Case No.: 23-CV-00542 (Deposed 9/18/25)(Defense)

May 2025 Rodney Saint Felix v Anderson County Sheriff's Office, et al., Case No.: 8:24-03160-TMC-BM (Deposed 9/19/25)(Defense)

June 2025 David Rafailov v Skokie Police Officer Demosthenes Nikolopoulos, et al., Case No.: 24-CV-92 (Deposed 10/20/25)(Defense)

# SCHEDULE A

July 2025 Eric Mendonca and Yvette Mendonca v. City of Espanola, et al., Case No.: D-117-CV-2024-00016 (Deposed 10/21/25)(Defense)

July 2025 Estates Alexia Rae Rael et al. v Board of County Commissioners for the County of Bernalillo et al., Case  No.: D-202-CV-2024-05332 (Deposed 10/23/25)(Defense)

**SCHEDULE B**

## John "Jack" Ryan

700 N. Carr Rd, #595
Plainfield, Indiana  46168
Office (317) 386-8325
Cellular Phone: (401) 692-1555
FAX (317) 386-8228
Email:   jackryan2@cox.net

**PUBLICATIONS:**

- Standards & Training Director Magazine, What Are Officers Being Trained and How Will It Impact Agency Liability –The Need to Audit Training. Vol 4, Number 1 (2024)
- Law and Best Practices for Successful Police Operations, 12 High Risk Critical Tasks That Impact Law Enforcement Operations and Create Exposure to Liability Litigation (2007, 2010, 2013, 2016, 2018 and 2021 editions)
- Legal and Liability Risk Management Manual Guide -The Law and Best Practices of Successful Jail/corrections Operations (2009 and 2016 editions)
- Recent Developments in the Use of Force, Excessive Force by Law Enforcement, Touro Law Review, Vol. 24, Number 3 (2008)
- 25th Annual Section 1983 Civil Litigation, by Practicing Law Institute Video/Audio-The Unbiased Witnesses in Law Enforcement Litigation. Vol. 1, Section 8 (2008)
- Legal & Liability Issues in SWAT, Emergency Response and Special Operations (2006)
- Public Safety Media Relations (Manual and Guide) (2005)
- School Legal Update (2005)
- Critical Tasks in Law Enforcement, A Legal Guide for Officers and Supervisors (2005) (Annual)
- Arrest, Search & Seizure (2005) (Annual)
- Legal & Liability Issues for Hostage Negotiators (2005)
- Use of Force (2005)
- Administrative Investigations in Law Enforcement Agencies (2004)
- Law Enforcement Legal/Liability Update (2004)
- Civil Liability and Risk Management for Law Enforcement Agencies (2003)
- Case Law on Critical Tasks in Law Enforcement (2003)
- Legal Guide to Administrative Investigations (2003)
- Policy Development for Public Safety Agencies (2002)
- Legal and Liability Issues in Public Schools (2001)
- Rhode Island Law Enforcement Officers' Guide to Criminal Procedure (2000)
- Rhode Island Law Enforcement Officers' Bill of Rights, A Guide to Investigations and Hearings (2000)

**PUBLISHED ARTICLES:**

- Standards & Training Director Magazine, "Use of Force – United States Supreme Court – Barnes v Felix" IADLEST June (2025)
- What Are Officers Being Training and How Will It Impact Agency Liability "The Need to Audit Training" (2023)
- Qualified Immunity, Suffolk Law Alumni Magazine, Suffolk University, Boston (2022)
- United State Court of Appeals for the Ninth Circuit Holds, Pre-Trial Detainees have Due Process Right to Adequate Safety Checks Video Monitoring is Insufficient-Direct View Safety Checks Required (2022)
- Neck Restraints, Choke Holds/Carotid Holds, What Law Enforcement Policy/Training Tells Us, The Medical/Scientific Debate, What the Cases Tell Us (2020)

1

# SCHEDULE B

- Law Enforcement Response to Unlawful Assemblies Protests and Riots (2020)
- Duty to Intervene Duty to Render Aid (2020)
- Prone/Restraint/Positional Asphyxia/Compression Asphyxia (2020)
- Law Enforcement Practices During a Pandemic (2020)
- NYMIR Law Enforcement Newsletter, a publication of the New York Municipal Insurance Reciprocal. "Understanding Exculpatory Evidence and How it May Impact Convictions – The U.S. Supreme Court Provides Further Explanation of Brady v. Maryland," pp. 2, 6-7 (2018)
- 2006  Legal and Liability Risk Management Manual Guide – The Law and Best Practices of Successful Jail/Corrections Operations (2009 and 2016)
- Public Risk, published by the Public Risk Management Association, January 2006, Vol. 21, No. 2, "A Continuing Story Taser™ Policies for Police Departments Continue to Evolve," pp. 14-17 (2006)
- Public Risk, published by the Public Risk Management Association, March 2006, Vol. 21, No. 3, "Freeze" Off-Duty Firearms and Intervention: Avoiding Tragedy and Liability," pp. 16-18 (2006)
- Public Safety Media Relations (Manual and Guide) (2005)
- Administrative Investigations in Law Enforcement Agencies (2004)
- Crime and Justice International May/June Vol. 20, No. 80, "High Speed Vehicle Pursuit," pp. 30-34; "Developing Trends in Stop & Frisk" p. 35; "Fighting Words Directed at a Police Officer: Viability and Liability," pp. 36-37 (2004)
- Crime and Justice International July/August Vol. 20, No. 81, "Law Enforcement Liability Issues-Agency or Individual Officer's Response to Misconduct by Others May Create Agency or Individual Liability," pp. 29-30 (2004)
- Public Risk, published by the Public Risk Management Association, July 2004, Vol. 19, No. 6, "Handcuffs: How to Manage the Risk," pp. 14-17 (2004)
- The Law Enforcement Trainer published by American Society of Law Enforcement Trainers, Vol. 19, No. 3, May/June, "Training Liability in The Use of Deadly Force" pp. 24-28 (2003)

**2025 Legal Updates Archive**
- U.S. Supreme Court Update: Barnes v Felix, No. 23-1239 (May 2025)
- U.S. Supreme Court Update: Barnes v Felix, No. 23-1239 (January 2025)

**2024 Legal Updates Archive**
- U.S. Supreme Court Update: Chiaverini v City of Napoleon, Ohio, No. 23-50 (June 2024)

**2022 Legal Updates Archive**
- U.S. Supreme Court Update: Vega v Tekoh, No. 21-499 (June 2022)

**2021 Legal Updates Archive**
- U.S. Supreme Court Update: Rivas-Villegas v Cortesluna, No. 20-1539 (October 2021)
- U.S. Supreme Court Update: Bond v City of Tahlequah, No. 20-1668, Per Curiam Decision (October 2021)
- U.S. Supreme Court Update: Bond v City of Tahlequah, No. 20-1668, Petition for Certiorari (September 2021)
- U.S. Supreme Court Update: Torres v Madrid, No. 19-292 (March 2021)
- U.S. Supreme Court Update: Caniglia v Storm, No. 20-157 (May 2021)

**2020 Legal Updates Archive**
- U.S. Supreme Court Update: Kansas v. Glover, No. 18-566 (April 2020)
- U.S. Supreme Court Update: Ybarra v. City of Chicago, No. 946 F.3d 975 (7th Circuit 2020) (May 2020)

**2019 Legal Updates Archive**
- U.S. Supreme Court Update: DUI Blood Draw on Unconscious Driver (July 2019)
- U.S. Supreme Court Update: The Existence of Probable Cause to Arrest May Defeat a First Amendment Claim as a Matter of Law (June 2019)

# SCHEDULE B

**2018 Legal Updates Archive**
- An Unarmed Individual Has Been Shot – Is the Officer Always Wrong? (July 2018)
- United States Supreme Court: *Sause v. Bauer*, 138 S. Ct. 2561 (July 2018)
- The United States Supreme Court Decides Privacy Issues Related to Cellular Phone Records (June 2018)
- United States Supreme Court Decides that an Arrest with Probable Cause Can Still Violate the Arrestee's First Amendment Rights (June 2018)
- United States Supreme Court: The Automobile Exception Does Not Permit the Warrantless Entry of a Home or its Curtilage in Order to Search a Vehicle Therein (May 2018)
- United States Supreme Court: Possessor of Rental Car has Right to Privacy Even When No on Rental Agreement (May 2018)
- United States Supreme Court Grants Qualified Immunity in Case of Woman with Mental Impairment Shot by Officer (April 2018)
- The United State Supreme Court Grants Summary Judgment and Qualified Immunity to D.C. Officers in False Arrest Case (January 2018)

**2017 Legal Updates Archive**
- Understanding Exculpatory Evidence and How It May Impact Convictions: The United States Supreme Court Provides Further Explanation of Brady v. Maryland (2017)
- United States Supreme Court Rejects 9th Circuit Provocation Theory in Deadly Force Confrontation (2017)
- Using Force on Persons in Medical Emergencies: United States Court of Appeals for the 6th Circuit in a Published Decision Applies New Analysis (2017)
- U.S. Supreme Court Grants Appeal in Arrest Lawsuit (2017)
- U.S. Supreme Court Clarifies "Clearly Established Law" for Qualified Immunity in Deadly Force (2017)
- U.S. Court of Appeals for Fourth Circuit Finds Police Department Social Media Policy Unconstitutional & Punishment of Two Officers Under That Policy to be Unconstitutional (2017)
- U.S. Supreme Court to Examine Provocation Theory in Law Enforcement Shootings (2017)

**2016 Legal Updates Archive**
- Private Health Care Contractors May Also Be Liable for a Civil Rights Violation (2016)
- Reasonableness of Entry as Force When There Is a Use of Flash Bangs As Part of Entry (2016)
- Use of Restraint Chairs (2016)
- United States Court of Appeals for the 4th Circuit Decides Limitations on TASER™ Use (2016)
- US Supreme Court Finds Child's Statements to Teachers May Sometimes be Used Against Abuser Even Though Child is Unavailable for Cross-Examination (2016)
- US Supreme Court Finds That Evidence Seized During Unconstitutional Stop May Not Be Excluded (2016)
- US Supreme Court Distinguishes Breath Test from Blood Test under Implied Consent Statutes that Criminalize a Refusal-Warrantless Blood Test Violates Fourth Amendment (2016)
- US Court of Appeals Distinguishes Use of Force (TASER™) on Persons of Diminished Capacity (2016)
- US Supreme Court Finds That Electronic Control Weapons Are Protected Under the Second Amendment's Right to Bear Arms (2016)
- Mail Policy in Jails (2016)
- Jail Staff Not Deliberately Indifferent to Pre-Trial Detainee Medical Needs (2016)
- Post-TASER™ Confession: Is a Waiver Knowing and Voluntary? (2016)
- US Court of Appeals for the 4th Circuit Decides Limitations on TASER™ Use and Announces Use of Force Analysis When Dealing with Persons of Diminished Capacity (2016)

**2015 Legal Updates Archive**
- US Supreme Court: Shooting at Fleeing Vehicles (2015)

# SCHEDULE B

- US Supreme Court: Use of Force on Pretrial Detainees Judged by Objective Reasonableness Standard (2015)
- US Supreme Court: No Answer to Whether ADA Applies When Officers are Dealing with a Mentally Impaired, Violent and Armed Subject (2015)
- US Supreme Court: Absent Reasonable Suspicion Police Extension of a Traffic Stop in Order to Conduct a Dog Sniff Violates the Constitution's Shield Against Unreasonable Seizures (2015)

**2014 Legal Updates Archive**
- US Supreme Court: Are Knock and Talks Restricted to the Front Door of a Residence? (2014)

# SCHEDULE B

- US Supreme Court: Officers Must Act Reasonably Not Perfectly (2014)
- US Supreme Court: Cellular Device Search Incident to Arrest (2014)
- US Supreme Court: Shooting at Vehicle & 4th Amendment (2014)
- US Supreme Court: Summary Judgment in Use of Force Cases (2014)
- US Supreme Court: When Does an Anonymous Report Amount to Reasonable Suspicion? (2014)
- US Supreme Court Clarifies Consent and Co-Occupants (2014)

**2013 Legal Updates Archive**
- US Supreme Court: Can Officer Pursue Fleeing Misdemeanor Suspect into Home or Residential Curtilage (2013)
- US Supreme Court: Pre-Custody and Un-Mirandized Silence to Questions by Law Enforcement May Be Commented on by the Prosecutor at Trial (2013)
- Forced Blood Draw for DUI (2013)
- US Supreme Court: Narcotics Sniffing Dog & 4th Amendment Search (2013)
- US Supreme Court: K-9 Alert Establishes Probable Cause to Search Vehicle (2013)

**2012 Legal Updates Archive**
- US Supreme Court: Exigent Entry Based on Belief of Imminent Violence (2012)
- US Supreme Court: Intentional Violation of Miranda Rule and the Impact on Subsequent Warned Confession (2012)
- Taser™ Used to Subdue Non-Compliant 73-Year-Old (2012)
- US Supreme Court: Visual Strip Searches at Jail Intake of Persons Being Placed in General Population Need Not Be Supported by Reasonable Suspicion (2012)
- Facebook© and the First Amendment Rights of Police Officers (2012)
- US Supreme Court: A Convicted Prisoner May Not be in Custody for Miranda Purposes (2012)
- US Supreme Court: A Determination of Probable Cause by a Magistrate Will Generally Protect Officers/Investigators from Liability (2012)
- Fourth Amendment Protection Applies to Placing GPS on Vehicle (2012)
- How Eyewitness Identification Will Be Reviewed When There is No Improper Conduct by Law Enforcement (2012)

**2011 Legal Updates Archive**
- Federal Liability for Pursuit (2011)
- Court Applies Graham in Deciding that Use of the TASER® was Unconstitutional (2011)
- Officers Being Recorded by Citizens While Working (2011)
- TASER® Probe Mode, Secondary Impact and Liability (2011)
- US Supreme Court: Prosecution Must Present Actual Forensic Analyst in Court (2011)
- US Supreme Court Clarifies Miranda Warnings and Juveniles (2011)
- US Supreme Court: Exclusionary Rule (2011)
- Fleeing from Law Enforcement in a Vehicle is a Violent Crime (2011)
- Indiana Supreme Court: A Person Cannot Resist Officer (2011)
- U.S. Supreme Court Clarifies Destruction of Evidence Exigency (2011)
- Picketing Funerals and the First Amendment (2011)
- Statements Taken During On-Going Emergency are Admissible at Trial (2011)

**2010 Legal Updates Archive**
- Use of Taser™ in Drive-Stun Mode on Protestors: Objectively Reasonable in 2nd Circuit (2010)
- 9th Circuit TASER® Case Re-visited (2010)
- Use of Force: Pre-Shooting Conduct and Suicide by Cop Cases (2010)
- US Supreme Ct: Search of Officer's Text Messages from Department Issued Pager Was Reasonable (2010) (Co-Authored with Lou Reiter)

**2009 Legal Updates Archive**
- US Court of Appeals for the Ninth Circuit Restricts the Use of TASER™ (2009)

# SCHEDULE B

- Michigan v Fisher: U.S. Supreme Court Clarifies Exigent Home Entries (2009)
- TASER™, the Target Zone, Policy & Training (2009)
- TASER™ International, Inc. Warns Against Targeting the Chest with Electronic Control Devices (2009)
- Taser® On Non-Compliant Arrestee (2009)
- Exam Violated Rights of White and Hispanic Firefighters (2009)
- Three 2009 U.S. Supreme Court Cases Impacting Law Enforcement (2009)
- Ashcroft v. Iqbal and Law Enforcement Supervisory Liability (2009)
- AZ v. Gant: Inventory Searches of Motor Vehicles (2009)
- AZ v. Gant: Commentary & Misinterpretations (2009)
- AZ v. Gant: Final Case Judgment & What It Means to Law Enforcement (2009)
- An Unreasonable Delay in Bringing a Suspect to Court May Render the Suspect's Confession Inadmissible (2009)
- US Supreme Court Changes Qualified Immunity Rules for Civil Rights Lawsuits Against Law Enforcement (2009)
- U.S. Supreme Court Further Diminishes Reach of Exclusionary Rule (2009)

**2008 Legal Updates Archive**
- Summary of Arguments: U.S. v. Herring, AZ v. Gant (2008)
- Preview of 2008-2009 U.S. Supreme Court Cases Impacting Law Enforcement (2008)
- Hostages & The Legal Duty to Protect (2008)
- Negotiator Liability (2008)
- Hostages & the Legal Duty to Protect (2008)
- An Investigator's Road Map to Out of Court Statements (2008)
- Managing Law Enforcement Liability Risk (2008)
- Handcuffing as Excessive Force (2008)
- Vehicle Checkpoints (2008)
- Supreme Court Decides Incident to Arrest –Vehicle Case (2008)
- Covert Video Surveillance (2008)
- Compelled Substance Abuse Testing (2008)
- Liability Exposure in Special Operations (2008)
- Sexual Misconduct, Sexual Harassment and Sexual Discrimination Series with Lou Reiter: Part 1: Introduction to Sexual Misconduct & Agency Liability (2008)
- Sexual Misconduct, Sexual Harassment and Sexual Discrimination Series with Lou Reiter: Part 2: Policy v. Custom / Operational Policy & Failure to Have a Policy (2008)
- Sexual Misconduct, Sexual Harassment and Sexual Discrimination Series with Lou Reiter: Part 3: Failure to Train & Failure to Supervise (2008)
- Sexual Misconduct, Sexual Harassment and Sexual Discrimination Series with Lou Reiter: Part 4: The Need for Policy and Training, and Avoiding Deliberate Indifference (2008)

**2007 Legal Updates Archive**
- Garrity Issues in Law Enforcement Series: Part 1: Garrity and the Administrative Interview (2007)
- Garrity Issues in Law Enforcement Series: Part 2: Immunity Granted Under Garrity (2007)
- Garrity Issues in Law Enforcement Series: Part 3: Compulsion as the Triggering Mechanism (2007)
- Garrity Issues in Law Enforcement Series: Part 4: Civilian Review Boards and Garrity (2007)
- Garrity Issues in Law Enforcement Series: Part 5: Are Off-Duty Incidents within the Scope of Garrity? (2007)
- Garrity Issues in Law Enforcement Series: Part 6: Once Immunized, Officer Must Tell the Truth (2007)
- What Happens When the Plaintiff Cannot Identify Which Officer Beat Him? (2007)
- Training Liability in Use of Deadly Force (2007)
- Supreme Court to Hear Incident to Arrest –Vehicle Case (2007)
- Cellular Phones/Digital Devices and Search Incident to Arrest (2007)

## SCHEDULE B

- Vehicle Stops: Does a Motorist Have a Privacy Interest in Their License Plate? (2007)
- Model Policy: Off-Duty Action (2007)
- U.S. Supreme Court Decides Passenger Privacy Case (2007)
- No Liability in Search Warrant Execution (2007)
- Persons with Disabilities (2007)
- Off-Duty Murder Not Under "Color of Law" Thus, No Agency Liability (2007)
- Georgia v. Randolph: Police Cannot Use the Consent of a Co-Occupant to Make Entry in Order to Search for Evidence to be used Against the Opposing Occupant Who Is Present and Objects to the Entry (2007)
- U.S. Supreme Court Decides on Scott v. Harris - Vehicle Pursuit Implications (2007)
- U.S. Supreme Court to Decide Privacy Interests of Passenger (2007)
- Court Dismisses Lawsuit Based Upon Death of Emotionally Disturbed Person (2007)
- Anticipatory Search Warrant: United States v. Grubbs (2007)
- Anonymous Calls and Reasonable Suspicion Standard (2007)
- Scott v. Harris: Summary of Oral Arguments (2007)
- Municipal Insurance Pool Not Liable: Robbery and Murder by Police Trainee (2007)
- Cocaine Discovered in Auto Leads to Probable Cause to Arrest All Occupants (2007)
- LEO's Duty to Protect Persons from 3rd Party Harm (2007)
- Ramming During Pursuit Viewed as Deadly Force (2007)
- Companion with Gun May Provide Reasonable Suspicion for Pat-Down (2007)

**2006 Legal Updates Archive**
- Duty of Officer's to Intervene when Observing an Excessive Use of Force (2006)
- The Law of Citizen Contacts and Stop and Frisk (2006)
- Positional Asphyxia (2006)
- Seizure at Gunpoint (2006)
- Pepper Spray (2006)
- Beanbag Rounds (2006)
- U.S. Supreme Court Upholds Canine Sniffs of Vehicles (2006)
- Liability Based on Agency or Individual Failure to Intervene (2006)
- Legal/Liability Issues in the Training Function (2006)
- Overview of Police Liability (2006)
- Deadly Force to Prevent the Escape of a Violent Felon (2006)
- Bite and Hold Canines: Warning Required Before Release (2006)
- Reasonableness of Handcuffing during a valid "Terry Stop" (2006)
- Focus on Liability Reduction and Better Performance (2006)
- Dealing with the Mentally Ill and Emotionally Disturbed in the Use of Force (2006)
- Use of Deadly Force: Pre-Shooting Conduct and the 21 Foot Rule (2006)
- Consent Searches of Motor Vehicles (2006)

**Other Articles**
- US Supreme Court Places New Restrictions on Search Incident to arrest in Vehicles (2009)
- "Use of Force-Policy and Training Considerations" (2004)

**From the LLRMI Jail/Corrections Article Archive**
- 8th Cir: A Foreseeable Suicide May Create Liability (2010)
- The United States Court of Appeals for the Ninth Circuit Upholds the Blanket Strip Search Policy of San Francisco County (2010)
- Strip Searches for Institutional Security in a Jail or Lock-up Setting (2009)
- 1st Cir: Strip Search in Jails / Detention Centers (2009)
- 2nd Cir: Strip Search in Jails / Detention Centers (2009)
- 3rd Cir: Strip Search in Jails / Detention Centers (2009)
- 4th Cir: Strip Search in Jails / Detention Centers (2009)

## SCHEDULE B

- 5th Cir: Strip Search in Jails / Detention Centers (2009)
- 6th Cir: Strip Search in Jails / Detention Centers (2009)
- 7th Cir: Strip Search in Jails / Detention Centers (2009)
- 8th Cir: Strip Search in Jails / Detention Centers (2009)
- 9th Cir: Strip Search in Jails / Detention Centers (2009)
- 10th Cir: Strip Search in Jails / Detention Centers (2009)
- 11th Cir: Strip Search in Jails / Detention Centers (2009)
- 9th Cir: Dental Care in Jails / Detention Centers (2009)
- 9th Cir: Jail (Officer) Failure to Follow Doctor's Orders (2009)
- 9th Cir: Strip Search and Self Surrender (2009)
- Classification of Arrestees Upon Entry into a Jail (2009)
- Duty to Protect Prisoners from Assault (2009)
- Handling Grievances in a Jail / Detention Setting (2009)
- Identity Verification (2009)
- Failure to Provide Medication in Jail / Detention Setting (2009)
- Inmate Mail – PLRA and Allegations of Rights Violations (2009)
- 9th Cir References 8th Amendment and Nutrition Requirements for Inmates (2009)
- Inmates and Freedom of Religion (2009)
- Strip Search Substitute / Subterfuge (2009)
- Use of Force in Jails / Detention Centers (2009)

**From the LLRMI Law Enforcement Model Policy Electronic Control Devices website**
- Model Policy - Electronic Control Devices (multiple years)
- In-Custody Deaths and Excited Delirium (2007)

**From LLRMI Legal Questions Answered website**
- Can Pointing a gun be considered a use of force? (2010)
- Off-Duty Carry by Reserve Officers (2009)
- Agency and Personal liability in failure to provide shooting training (2009)
- Involuntary Transport to Station for Identification (2008)
- Questioning a passenger during a traffic stop (2008)
- Bingo Hunting and Privacy Interests in License Plate (2008)
- Using Dog Sniff's for Probable Cause to Obtain Search Warrant (2008)
- Garrity application with EMS (2008)
- Truant Officer Questioning Student - at request of Superintendent (2007)
- Dorm Room Searches. Response at school-training.com (2007)
- "Fruits of the Poisonous Tree" - A Miranda Example (2007)
- Releasing Mug Shots to the Media (2007)
- Joint Liability in Multi-Agency Operations (2007)
- Miranda after confession given during non-custody interview (2007)
- No-Knock clause in search warrants (2007)
- Court requirements for police training on EDP's (2007)
- Responding to an Open House Party (2007)
- Officer with search warrant gets door shut in face... OK to enter? (2007)
- Miranda and Detention during Search Warrant Execution (2007)
- Creating a Use of Force Report (2007)
- Failure to Protect (2007)
- Interviewing/Interrogating Students on Campus (2007)
- Probable Cause, and taking a person to police stations (2007)
- Vehicle Search Consent (2007)
- Need for search warrant for vehicle towed to private lot (2007)
- Reasonable expectation of privacy in information supplied to a third party (2007)
- First Appearance Hearings & the 48/72 Hour Window - City & Officer Liability (2007)

# SCHEDULE B

- Citizen Complaint Recordings (2007)
- Hiring and the Probationary Period (2007)
- Permission to search during stop & Robinette decision (2007)


\*\*\* Note: articles published electronically on a weekly basis and archived- available at [www.patc.com](http://www.patc.com) and [www.llrmi.com](http://www.llrmi.com)

# SCHEDULE C

## John "Jack" Ryan

700 N. Carr Rd, #595
Plainfield, Indiana 46168
Office (317) 386-8325
Cellular Phone: (401) 692-1555
FAX (317) 386-8228
Email:  jackryan2@cox.net

**CONFERENCE PRESENTATIONS/TRAINING SESSIONS:**

2025     LLRMI "Emerging Litigation Trends" Deer Park, TX, October

2025     Local Government Risk Management Services, "Law Enforcement Liability and Legal Developments" Lagrange, GA, September

2025     Canon City Police Department, "Culture and Climate and How They Directly Affect Risk Management" September

2025     Northwest Illinois Criminal Justice -MTU 1, "Arrest, Search and Seizure: Constitutional Issues Impacting Law Enforcement" Freeport, IL, September

2025     Government Entity Mutual (GEM) Webinar "Emerging Liability Issues Facing Law Enforcement" September

2025     Maryland Police Chiefs Association, Aspiring Leaders Program, Ocean City, MD, September

2025     APOSTC Law Enforcement Academy, "Emerging Legal Trends for Supervisors and Law Enforcement Officers" Stapleton, AL, August

2025     CRL Law Enforcement Symposium, "Proactive Protection: Mastering Prevention in Law Enforcement Liability" St. Louis, MO, July

2025     Government Entities Mutal (GEM) "Ten High Liability Areas" Laconia, NH, June

2025     Vermont League of Cities and Towns "Current Areas of Liability Affecting Law Enforcement" June

2025     LLRMI "Arrest, Search and Seizure: Constitutional Issues Impacting Law Enforcement Operations" Jacksonville, IL, May

2025     IMLA Mid-Year Seminar "The Need to Audit Training, Internally and Externally & Policy and the Implications on Municipal Liability" Washington DC, April

2025     Local Government Insurance Trust, Maryland Municipal League Police Executive Association Conference "Managing and Supervising Legal Issues for Protests, Demonstrations and Civil Unrest" Ocean City, MD. April

2025     South Dakota Sheriffs Association Spring Conference, Deadwood, SD "Emerging Law Enforcement Legal Trends" April

# SCHEDULE C

2025    LLRMI Internal Affairs Training and Certification, "Garrity and Compelled Statements", Fort Myers, TX, April

2025    LLRMI "Emerging Legal Trends & Liability Management for Tactical, SWAT & Emergency Response Operations" Columbia, SC, April

2025    LLRMI Online Webinar Training "Legal Issues in Use of Force", February

2025    LLRMI Law Enforcement Liability and Risk Management Conference. San Antonio, TX "Emerging Litigation Trends", February

2025    Alabama Association of Chiefs of Police. Montgomery, AL "Emerging Trends in Law Enforcement Liability and Risk Management", February

2024    LLRMI Tactical, SWAT & Emergency Response Operations. Las Vegas, NV. "Why Are We Getting Sued", December

2024    LLRMI National Internal Affairs Training and Certification. Las Vegas, NV. "Compelled Statements and Giglio Issues", December

2024    LLRMI Use of Force Conference and Certification. Las Vegas, NV. "Training Officers, Lesson Plans, Policy Development, Officer Safety and Community Expectations Reducing and Influencing Agency Liability", December

2024    Georgia Sheriff's Association, "Emerging Legal & Liability Trends "What Every Sheriff Needs to Know", November

2024    Tennessee Trainers Conference, "Liability Management for Tactical, SWAT & Emergency Response Operations", November

2024    St. Louis County & Municipal Police, "Arrest, Search and Seizure: Constitutional Issues Impacting Law Enforcement Operations", November

2024    Illinois Mobile Team Unit 1, "Arrest, Search and Seizure: Constitutional Issues Impacting Law Enforcement Operations", October

2024    LLRMI Online Webinar Training "Motor Vehicle Searches", September

2024    Maryland Police Chief & Sheriffs Conference, Ocean City, MD "Aspiring Leaders" September

2024    Kentucky Sheriff's Association, Bowling Green, KY "Emerging Legal & Liability Trends-What Every Sheriff Needs to Know" September

2024    LLRMI Online Webinar Training "Today's Convictions May Be Tomorrow's Wrongful Conviction", August

2024    Arkansas County Association, Little Rock, AR "Emerging Legal Trends for Jails" August

2024    LLRMI Online Webinar Training "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations", June

# SCHEDULE C

2024    LLRMI "Legal Issues in Use of Force" Brownsville, TX May

2024    LLRMI Online Webinar Training- "Policing in 2024-Why Are We Getting Sued?" May

2024    New Jersey State Association of Chiefs of Police, "Emerging Law Enforcement Legal Trends" East Windsor, NJ May

2024    LLRMI Law Enforcement Liability and Risk Management Conference "Nuclear Settlements" Franklin, TN April

2024    LLRMI Law Enforcement Liability and Risk Management Conference "Emerging Legal Trends" Franklin, TN April

2024    LLRMI Law Enforcement Liability and Risk Management Conference "What's Driving Law Enforcement Liability" Franklin, TN April

2024    IMLA Mid-Year Seminar "The Need to Audit Training, Internally and Externally & Policy and the Implications on Municipal Liability" Washington DC, April

2024    Local Government Insurance Trust, Maryland Municipal League Police Executive Association Conference "Nuclear Police Settlements Impact on Police Chiefs and Police Agencies" Ocean City, MD. April

2024    LLRMI "5 Day Use of Force Certification" Las Cruces, NM. April

2024    LLRMI Online Webinar Training- "Legal Issues in Use of Force "What Every Officer, Supervisor and Training Officer Should Know" March

2024    Eighth Judicial District Court Marshal Division. Las Vegas, NV. "Legal Issues in the Use of Force, Laws of Arrest, and Best Law Enforcement Practices." March

2024    LLRMI 5 Day Use of Deadly Force and Officer Involved Shooting. Las Vegas, NV. "Deeper Dive into Bifuricated Investigations." March

2024    LLRMI Supervising, Managing and Legal Issues for Protests, Demonstrations and Civil Unrest Operations. Las Vegas, NV. "Best Practices in Acceptable Use of Force Standards." March

2024    LLRMI Jail/Correction Liability & Risk Management and Legal Issues Conference. Las Vegas, NV. "Emerging Legal Trends for Jails." March

2024    LLRMI Use of Force Conference and Certification. Las Vegas, NV. "The Law and Best Practices with Respect to Law Enforcement Use of Force?" November

2024    LLRMI "Legal Issues in Officer Involved Shootings and Use of Force" Hanover, VA. February

2024    LLRMI 5 Day Use of Deadly Force and Officer Involved Shooting. New Braunfels, TX. January

2023    LLRMI Use of Force Conference and Certification. Las Vegas, NV. "Documentation, Review Process and Complaints" December

3

# SCHEDULE C

2023    LLRMI New Detective and New Criminal Investigator. Las Vegas, NV. "Legal Issues: 4th Amendment Considerations and 5th & 6th Amendment Legal Issues" December

2023    LLRMI National Internal Affairs Training & Certification. Las Vegas, NV. "How Routine and Consistent Audits Can Reduce Liability and Employee Disciplinary Issues" December

2023    LLRMI National Internal Affairs Training & Certification. Las Vegas, NV. "Understanding Garrity and Giglio and How These Cases Can Affect the Agency and Police Employee" December

2023    Tennessee Prima Annual Conference. Nashville, TN "Public Risk Management as an Integral Part of Public Safety" November

2023    Tennessee Law Enforcement Training Officer Association. Gatlinburg, TN "Instructor Liability Certification" November

2023    County Risk Sharing Authority, Ohio. "Law Enforcement Legal Update" October

2023    LLRMI "Emerging Legal Trends for Supervisors and Law Enforcement" October

2023    CRL Conference "Pursuit Cases, Federal Court, Ministerial Duty-Based Policy and Defensibility" September

2023    Arkansas County Association, Little Rock, AR "Use of Force -Take Downs & Choke Holds and OC Spray/Taser in Jails" August

2023    Tennessee Sheriff's Association, Sevierville, TN "Failure to Train and Liability" July

2023    ACCG/GMA Defense Counsel Summit, Atlanta, GA "Law Enforcement Emerging Litigation Trends" July

2023    New Hampshire Public Risk Management Exchange, Concord, NH "Why Are We Getting Sued for Law Enforcement and Jails" June

2023    Municipal Association of South Carolina, Columbia, SC "The Law and Best Practices with Respect to Law Enforcement, Use of Force and Protests" May

2023    Idaho Sheriff's Association, Sun Valley, ID "Current Use of Force Updates" May

2023    South Dakota Public Assurance Alliance and Safety Benefits, Inc. "Law Enforcement Liability Risk Management Conference" Deadwood, SD May

2023    LLRMI "Use of Force Conference and Certification", Clermont, FL April

2023    International Municipal Lawyers Association, Washington D.C. "Section 1983: Recruiting, Hiring, Retention. How the Current State of Law Enforcement has Impacted Hiring and Will Lead to Increased Civil Liability" April

2023    LLRMI Tennessee Law Enforcement Training Officers Association. Franklin, TN. "Jail/Correction Liability, Risk Management and Legal Issues" April

4

# SCHEDULE C

2023    LLRMI "Jail Operations and Best Legal Practices" Anchorage, AK April

2023    LLRMI 5 Day "Use of Deadly Force and Officer Involved Shooting" LaPlace, LA March

2023    Constitutional Review of the Griffin Police Department, Griffin, GA March

2023    Conway Police Department Training, Conway, SC. "Emerging Legal Trends &
         Liability Management for Tactical, SWAT & Emergency Response Operations" March

2023    Kentucky League of Cities, Frankfort, KY. "12 High Risk Critical Task" February

2023    Kentucky Association of Counties and Kentucky League of Cities, Frankfort, KY.
         "Emerging Legal Trends & Liability Management for Tactical, SWAT & Emergency
         Response Operations" February

2023    Michigan Chief of Police Conference, Grand Rapids, MI. "Managing Risk in Today's
          Environment" February

2022    Kentucky Jailers Conference, Lexington, KY. "Understanding Response to Resistance from an
          Administrative Standpoint" December

2022    Kentucky Sheriff's Association Conference. Owensboro, KY. "Current Law and Best
         Practices for a Profession Sheriff's Office" December

2022    Tennessee Law Enforcement Training Officers Association. Gatlinburg, TN. "Emerging
          Legal Trends & Liability Management for Tactical, SWAT & Emergency Response
          Operations" November

2022    LLRMI Use of Force Conference and Certification. Las Vegas, NV. "The Law and Best
         Practices with Respect to Law Enforcement Use of Force?" November

2022    LLRMI Jail/Correction Liability, Risk Management, and Legal Issues. Las Vegas, NV.
         "Emerging Legal Trends" November

2022    LLRMI Supervising, Managing, and Legal Issues for Protests, Demonstrations, and Civil
         Unrest Operations. Las Vegas, NV. "First Amendment Rights of Protestors Fourth
         Amendment Rights" November

2022    LLRMI National Internal Affairs Training & Certification. Las Vegas, NV. "Compelled
         Garrity Statements" November

2022    Georgia Local Government Risk Management Services – "Emerging Legal Trends" October

2022    Tennessee County Services Association Conference – "Entity Liability – How Policies, Custom,
         Training and Supervision Impacts Your Entity" October

2022    Clearwater Florida National Internal Affairs Conference – "Legal Updates in Internal Affairs
         Investigations" September

2022    Minot North Dakota Police Seminar – "Use of Force" September

2022    FBINAA Leadership Seminar – "Mastering Leadership, Supervisor Liability" August

2022    United Counties Council of Illinois Conference – "Emerging Legal Trends" July

5

# SCHEDULE C

2022    Tennessee Association of Chiefs of Police – "Emerging Legal Trends" July

2022    Vermont League of Cities and Towns – "Law Enforcement Independent Civilian Oversight"

2022    Maryland Municipal League Police Executive Association – "Decision Making" April

2022    International Municipal Lawyers Association – "The Law Enforcement Response to Assemblies/Protests/Unlawful Assemblies/Riots" April

2022    LLRMI Use of Force Conference and Certification "Training Officers, Lesson Plans, Policy Development, Officer Safety and Community Expectations Reducing and Influencing Agency Liability" – April

2022    LLRMI National Internal Affairs Training and Certification Conference. Franklin, TN "Compelled (Garrity) Statements" April

2022    Legal and Liability Risk Management Institute Online Virtual Training – "Use of Force" March

2022    Springdale Police Department Training "Use of Force/De-Escalation" February

2022    Southern Illinois Criminal Justice Summit "Policing Demonstrations, Protests, and Civil Unrest" February

2022    Georgia Sheriffs' Association "New Sheriff's Conference", February

2021    LLRMI National Internal Affairs Training & Certification. Las Vegas, NV. "Investigating Citizen Complaints for Field Supervisors" December

2021    LLRMI 5 Day Mastering Performance Supervision, Leadership and Management. Las Vegas, NV. "What Police Reform and Accountability Means to Supervisors" December

2021    CRL Conference "Staying Ahead of the Losses: Policies, Training and Supervision that Stays Ahead of the Risks" November

2021    CRL Conference "The Changing Environment of Law Enforcement and How It Impacts Coverage, Claims and Risk Control" November

2021    Alabama Municipal Attorney Association, Gulf Shores, AL. "Use of Force Training Policy in the Reform Movement" October

2021    Law Enforcement Liability Risk Management Conference, Franklin, Tennessee, "Staying Ahead of Liability: Policing in the Reform Movement" October

2021    Platte County Sheriff's Office. Kansas City, MO. "Emerging Law Enforcement Legal Trends: Policing in the Reform Movement" October

2021    Local Government Insurance Trust, Maryland, "The Law and Best Practices of a Successful Police Operations" September

2021    Illinois Mobile Team Unit 9, "Implicit Bias – De-Escalation – Procedural Justice: A Call for Change in Law Enforcement Training and Operations" June

6

# SCHEDULE C

2021    Arkansas City Attorney's Association Virtual CLE: - "Analyzing the Derek Chauvin Trail" June

2021    Legal and Liability Risk Management Institute Online Virtual Training – "Policing in Police Reform Times" June

2021    Kentucky Jailers Association. Bowling Green, KY. "Legal Update for Law Enforcement and Jails" June

2021    CRL Conference "De-Escalation: Training, Policy and How De-Escalation is Impacting Use of Force" May

2021    LLRMI Tactical, SWAT & Emergency Response Operations Seminar. St. Louis, MO. "Emerging Legal Trends & Liability Management for Tactical, SWAT & Emergency Response Operations" May

2021    LLRMI National Internal Affairs Training and Certification Conference. Smyrna, TN. "Garrity in Today's Changing Environment" April

2021    LLRMI Jail/Correction Risk Management, Liability and Loss Control Conference. Smyrna, TN. "Emerging Legal Trends for Jails and Correction" April

2021    LLRMI Tactical, SWAT & Emergency Response Operations Conference. Smyrna, TN. "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" April

2021    West Michigan Tactical Officers Association "SWAT Liability" March

2021    CRL Conference "Current State of Law Enforcement Reform Post- George Floyd" March

2021    Southern Illinois Criminal Justice Training Program. Effingham, IL. "Implicit Bias" March

2021    Central Illinois Police Training Center. Peoria, IL. "Implicit Bias" March

2021    Southwestern Illinois Law Enforcement Commission. Belleville, IL. "Policing Demonstrations, Protest and Civil Unrest" March

2021    Kentucky Sheriff's Association Annual Conference. Bowling Green, KY. "Emerging Legal Trends and Best Law Enforcement Practices" February

2021    Legal and Liability Risk Management Institute Online Virtual Training – "Procedural Justice and Legitimacy of Authority" January

2021    Legal and Liability Risk Management Institute Online Virtual Training – "Managing Demonstrations, Protests, Civil Disobedience, Legal and Liability Issues" January (1.5 hours)

2020    Legal and Liability Risk Management Institute Online Virtual Training – "De-Escalation – Reducing Intensity" December (1.5 hours)

2020    Georgia Sheriffs' Association Emerging Legal and Liability Trends "What Every Sheriff Needs to Know" December

# SCHEDULE C

2020    Tennessee Trainers Association Conference, "Current Issues Impacting Law Enforcement" November

2020    Madison Police Department Legal Update Training November

2020    CRL Risk Control Conference "Political Unrest, Cultural Movement" October

2020    Practising Law Institute- "Use of Force" October

2020    SWAT Training, Providence Police Department September

2020    CRL Conference "Police Reform, Implicit Bias, Procedural Justice, De-Escalation and Legislative Action on Police Reform" September

2020    VRSA Duty to Intervene in Unreasonable Force/Duty to Render Aid During a Use of Force Event Webinar August (1 hour)

2020    IMPG Online Presentation- "How Current Events are Impacting and Shaping Law Enforcement" August (1 hour)

2020    Legal and Liability Risk Management Institute Online Webinar Training- "How Current Events are Impacting and Shaping Law Enforcement" August (2 hours)

2020    Legal and Liability Risk Management Institute Online Webinar Training- "Law Enforcement Personnel and Implicit Bias During Interactions with Citizens and Suspects" July (1.5 hours)

2020    VRSA Carotid Restraint Webinar July (1.5 hours)

2020    TML: How Current Events Are Affecting Police Tactics and Policies Webinar July (1.5 hours)

2020    VRSA Arrestee Restraint Webinar July (1.5 hours)

2020    Nampa, Idaho. "Emerging Legal Trends & Liability Management for Tactical, SWAT & Emergency Response Operations" June

2020    Policing Demonstrations, Protest and Civil Unrest Webinar Training June (2 hours)

2020    TML: Crowd Control Webinar June (1 hour)

2020    SWAT Training, Providence Police Department June (2 hours)

2020    CLM, A Member of the Institutes Online Webinar Training – "Covid-19 & Correctional Facilities: Mitigating both Transmission and Liability" April (1 hour)

2020    Legal and Liability Risk Management Institute Online Webinar Training- "Covid-19 Law Enforcement Operations in the Midst of a Pandemic" April (1 hour)

2020    Legal and Liability Risk Management Institute Online Webinar Training- "Use of Force: Moving Forward" April (1 hour)

2020    Lexington, South Carolina. "SWAT & Emergency Response Operations" March

8

# SCHEDULE C

2020    Smithfield, Rhode Island. "Arrest, Search and Seizure" February

2020    Danville, Virginia. "Arrest, Search and Seizure" February

2020    Champaign, Illinois. "Emerging Legal Trends & Liability Management for Tactical, SWAT & Emergency Response Operations" February

2020    Champaign, Illinois. "ILEAS Policing Demonstrations, Protest and Civil Unrest" February

2020    San Diego, California. Civil Rights & Governmental Tort Liability Seminar. "Litigation Skills Workshop" January

2019    Dawsonville, Georgia. "Emerging Legal Trend & Liability Management for Tactical, SWAT & Emergency Response Operations" December

2019    Charlotte, North Carolina. County Reinsurance Annual Conference. "Emerging Issues Related to Law Enforcement Liability and Risk Management" November

2019    Sandy, Utah. LLRMI Tactical, SWAT & Emergency Response Operations Seminar. November

2019    Las Vegas, Nevada. "Supervision Leadership" October

2019    Las Vegas, Nevada. "Lost Control Risk Management" October

2019    Las Vegas, Nevada. "Advanced Internal Affairs" October

2019    Lafayette County Sheriff's Office, Missouri. "Emerging Legal Trends for Law Enforcement" & "Legal Update for Law Enforcement and Jails" October

2019    County Risk Sharing Authority, Ohio. "Legal Update: Emerging Trends in Law Enforcement" October

2019    Arkansas Association of Chiefs of Police Conference, Rogers, AR. "Emerging Legal Trends and Best Law Enforcement Practices" September

2019    Kentucky Sheriff's Association Annual Conference. Bowling Green, KY. "Emerging Legal Trends and Best Law Enforcement Practices" September

2019    Texas Association of Counties, multiple locations "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" August

2019    Kentucky Association Chiefs of Police Annual Conference. Owensboro, KY. "Law and Best Practices Update" July

2019    LLRMI Tactical, SWAT & Emergency Response Operations Seminar. Franklin, TN. "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" July

2019    SPIAA Training Conference, Kansas City, MO. "Law and Best Practices Update and the Impact of Liability on Officer Wellness." July

2019    LLRMI Liability Management for Tactical, SWAT & Emergency Response Operations Training Seminar. Fort Worth, TX. "SWAT Legal and Best Practices" July

# SCHEDULE C

2019    Rhode Island Bar Association Annual Meeting "Section 1983 Litigation" June

2019    Local Government Insurance Trust, Maryland. "Emerging Legal Trends and Best Law Enforcement Practices" June

2019    Michigan Municipal Risk Management Authority. Livonia, MI. "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" May

2019    Tennessee Trainers Association Conference, Franklin, TN. "Emerging Legal Trends and Best Law Enforcement Practices" May

2019    LLRMI Risk Management and Loss Control for Law Enforcement Conference, Cape Coral, FL "Law Enforcement Litigation and Legal Trends" May

2019    LLRMI Tactical, SWAT & Emergency Response Operations Seminar. Cape Coral, FL. "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" May

2019    Missouri Public Risk "Law and Best Practices for Patrol" and "Law and Best Practices for Investigative Operations" April

2019    Georgia Sheriff's Association "Mastering Supervisor and Liability Management" April

2019    New Jersey Police Chiefs Association "Legal Update and Contemporary Best Practices in Law Enforcement" April

2019    IMLA Mid-Year Seminar, Washington D.C. "Section 1983: Trending Issues and Hot Topics" March

2019    University of Georgia, Athens, GA "Law and Best Practices Update" March

2019    LLRMI Jail/Correction Risk Management, Liability and Loss Control Conference. Las Vegas, NV. "Emerging Legal Trends for Jails and Correction" February

2019    LLRMI Tactical, SWAT & Emergency Response Operations Seminar. Las Vegas, NV. "Emerging Legal Trends and Liability Management for Tactical, SWAT and Emergency Response Operations" February

2019    IMLA Online Webinar "Use of Body Worn Camera Video at Trial" February

2018    LLRMI Liability Management for Tactical, SWAT & Emergency Response Operations Training Seminar. Grand Prairie, TX. "SWAT Legal and Best Practices" December

2018    KLC Instructor Simulator Conference "All Use of Force Training and Use of Force Shoot, Don't Shoot Decision Making" November

2018    Missouri Public Risk "Emerging Legal Trends and Best Law Enforcement Practices" November

2018    TN PRIMA "Legal Update" November

2018    Cookeville Police Department, TN "Supervisor Liability" November

# SCHEDULE C

2018    Virginia "The Law and Best Practices of SWAT Operations and Tactical Command" October

2018    Georgia Local Government Risk Management Services – Georgia Law Enforcement Training "Law and Best Practices of the High-Risk Critical Tasks in Law Enforcement Including Use of Force, Deadly Force, Dealing with Person of Diminished Capacity, Pursuits, and Special Operations" October

2018    Texas Commission on Law Enforcement Annual Conference "Emerging Legal Trends – Impact on Police Operations" October

2018    Midwest Public Risk Fall Conference, MO. "Emerging Legal Trends – Impact on Law Enforcement" October

2018    Kentucky Association of Counties "Emerging Legal Trends for Attorneys" October

2018    Manassas Park Police Department, VA. "Emerging Legal Trends in Law Enforcement" October

2018    Arkansas Association of Chiefs of Police- "Emerging Legal Trends in Law Enforcement" September

2018    International Municipal Lawyers Association Webinar Training- "Officer Involved Shootings" August

2018    Twin River Management Group, Lincoln, RI. Casino Security Staff Training- "Active Shooter and Other Critical Incidents, Use of Force, Self-Defense, Citizen's Arrest, and Law and Best Practices." July

2018    LLRMI Emerging Legal Trends and Liability Management for Tactical, SWAT & Emergency Response Operations Training Seminar, Georgetown, TX. "SWAT Legal and Best Practices" July

2018    Michigan Association of Chiefs of Police- "Emerging Legal Trends in Law Enforcement" June

2018    RI Bar Association Annual Meeting "Officer Involved Shootings and Pursuits: Law, Litigation and Best Practices" June

2018    VML Insurance Programs, Virginia "Policing Demonstrations, Protest, and Civil Unrest" Legal, Liability Issues, First and Fourth Amendment Protections. May

2018    FBINAA Louisiana Chapter, "Legal Update: Emerging Trends in Law Enforcement". April

2018    South Dakota Police Chief's Association Joint Training Conference, Deadwood, SD. "Legal Update: Case Law Impacting Law Enforcement and Jail Operations". April

2018    LLRMI Risk Management and Loss Control for Law Enforcement Conference, Cape Coral, FL "Emerging Legal Updates Impacting Liability, Lawsuits, Policies and Procedures". April

2018    MCLE New England, Boston, MA. "Police Misconduct Litigation" March

# SCHEDULE C

2018    VML Insurance Programs, Virginia "Policing Demonstrations, Protest, and Civil Unrest" Legal, Liability Issues, First and Fourth Amendment Protections. March

2018    Hanover County Sheriff's Office, Hanover, VA "Legal Update: Emerging Trends in Law Enforcement" March

2018    Palm Beach Police Department, Palm Beach FL "Policing Demonstrations, Protest, and Civil Unrest" Legal, Liability Issues, First and Fourth Amendment Protections. March

2018    Alabama Association of Chiefs of Police Conference, Montgomery, AL "Legal Update: Emerging Trends in Law Enforcement" February

2018    VML Insurance Programs, Virginia "Policing Demonstrations, Protest, and Civil Unrest" Legal, Liability Issues, First and Fourth Amendment Protections. February

2018    "Law of Use of Force" University of Arkansas School of Law, Fayetteville, AR. February

2018    "Law Enforcement in the Current Environment of Protests, Video, and Lawsuits" Salve Regina University, Newport, RI. February

2018    Alabama Sheriffs Association "Emerging Legal Trends and Best Law Enforcement Practices" Montgomery, AL, January (8 hours)

2018    Legal and Liability Risk Management Institute Online Webinar Training- "Demonstrations, Mass Protests, and the Occupy Movement" January (1 hour)

2017    Legal and Liability Risk Management Institute Online Webinar Training- "Use of Force: Moving Forward" December (1 hour)

2017    Tennessee Association of Chiefs of Police- "Protest and Demonstrations: The Interplay Between First and Fourth Amendment Rights" December (6 hours)

2017    County Reassurance Conference- "Emerging Trends and Law Enforcement Liability" Phoenix, AZ, November (2 hours)

2017    International Municipal Lawyers Association- "Law and Best Practices in the Use and Implementation of Body Worn Cameras" October, Niagara Falls, NY (2 hours)

2017    Legal and Liability Risk Management Institute Jail/Correction Risk Management, Liability and Loss Control Conference- "Emerging Litigation and Legal Trends" October, Cape Coral, FL (5 hours)

2017    Vermont League of Cities Annual Conference -  "Emerging Legal Trends" October (2 hours)

2017    Virginia Association of Chiefs of Police- "Emerging Trends in Law Enforcement"

2017    Kentucky Sheriffs Conference- "Emerging Trends in Law Enforcement"

2017    Kentucky Council on Crime & Delinquency- "Emerging Trends in Jails and Corrections"

# SCHEDULE C

2017    Twin River Management Group, R.I. – Security staff training. June (8 hours)

2016    Defense Research Institute, Austin, Texas

2015    International Municipal Lawyer's Association. Officer Involved in Shootings and Qualified Immunity Post Plumhoff

2015    IADLEST, International Association of Director of Law Enforcement Standards and Training. "Training Liability" and "Emergency Liability Trends"

2015    Georgia Jail Association's Annual Conference -High Risk Critical Task in the Jail Operation, Savannah Georgia

2015    Arkansas Association of Chiefs of Police Annual Meeting -Law and Best Practices for Policing in Trying Times.

2015    South Carolina Municipal Association's Annual Meeting for Elected Officials – Law Enforcement for Trying Times

2015    Texas Commission on Law Enforcement, training for 750 Law Enforcement trainers

2015    National Internal Affairs Investigators' Annual Conference – Law Enforcement Liability and the Interplay on the Internal Affairs

2013    Suffolk University Law School, "Policy in Trying Times" Boston Massachusetts

2013    Police K-9 Magazine, National Handler Instructor Training Seminar and Annual Conference for K-9

2013    Practising Law Institute- Annual Conference Section 1983 Civil Rights Litigation Program

2012    Developed a Training Program for Law Enforcement and attorneys dealing with Use of Force; Electronic Control Devices; and Sudden Custody Death.

2012    National Internal Affairs Investigation Association Annual Conference- Use of Force and Sudden in Custody Death

2012    Sheriff's Association New Sheriff's Conference Legal Update and Best Practices for Sheriffs

2012    Texas Commission Law Enforcement Officer on Standards and Education annual conference for Texas Trainers/ "Legal Issues for Law Enforcement Trainers"

2012    Practising Law Institute- "Mass Protest" 29th Annual Conference Section 1983 Civil Rights Litigation Program

2010    PRIMA, Law Enforcement Risk Management Program

2010    National Internal Affairs Investigators Association Annual Conference, Indianapolis, IN

2010    Annual Conference of the National Council of County Association Executives 2009 Utah Highway Patrol – Law Enforcement Pursuit Operations

# SCHEDULE C

2009     Practising Law Institute- Annual Conference Section 1983 Civil Rights Litigation Program

2009     National Conference for Public Risk Managers.

2009     Continued training programs for Public Agency Training Council throughout the United States to include, Policy Development and Implementation, Arrest Search & Seizure, Use of Force, Civil Liability Issues, Liability Issues for Narcotics Officers, Legal Issues for Tactical Operations, Liability Issues in Public Schools and Internal Affairs

2009     Georgetown Law Center/Civil Rights Litigation, Session 1 "Strip Searches in Jails," Session 2 "Tasers"

2008     Practising Law Institute- Annual Conference Section 1983 Civil Rights Litigation Program

2008     Texas Commission on Law Enforcement Standards and Education "Liability Management for Law Enforcement Trainers

2008     Association of American Law Schools Annual Conference- "Law Enforcement Policy and Training/Use of Force & Pursuit in the Aftermath of Scott v. Harris"

2007     Continued training programs for Public Agency Training Council throughout the United States to include, Policy Development and Implementation, Arrest Search & Seizure, Use of Force, Civil Liability Issues, Liability Issues for Narcotics Officers, Legal Issues for Tactical Operations, Liability Issues in Public Schools and Internal Affairs

2007     Georgetown Law Center/Civil Rights Litigation: Session 1 "Law Enforcement Policy and Training in Use of Force"; Session 2: "Law Enforcement- the ADA and Persons of Diminished Capacity."

2007     South Dakota Annual Conference for Chiefs and Sheriffs- "Legal Update on High Liability Issues in Law Enforcement"

2007     Pennsylvania Chiefs of Police- "Legal Update on High Liability Issues in Law Enforcement"

2007     International Municipal Lawyer's Association Annual Conference- "Garrity and the Administrative Interview"

2007     Practising Law Institute- "Use of Force" 24th Annual Conference Section 1983 Civil Rights Litigation Program

2007     25th Annual Section 1983 Civil Litigation, by Practising Law Institute Video/Audio-The Unbiased Witnesses in Law Enforcement Litigation. Vol. 1, Section 8

2006     Continued training programs for Public Agency Training Council throughout the United States to include, Policy Development and Implementation, Arrest Search & Seizure, Use of Force, Civil Liability Issues, Liability Issues for Narcotics Officers, Legal Issues for Tactical Operations, Liability Issues in Public Schools and Internal Affairs

2006     Georgetown Law Center/Civil Rights Litigation "Police Misconduct" §1983

14

# SCHEDULE C

2006     National Internal Affairs Investigators Association Annual Conference, Gatlinburg Tennessee "Use of Force and the Internal Affairs Process"

2006     Georgia Bar Association "ICLE", Atlanta Georgia "Evaluating Police Liability Claims"

2005     Legal and Policy Issues in the Use of Force- throughout United States

2005     Georgetown Law Center/ Civil Rights Litigation "Less-Lethal Force"

2005     Arrest, Search & Seizure, and Questioning-throughout United States

2005     Civil Liability and Risk Management in Law Enforcement-throughout United States

2005     Internal Affairs/Administrative Investigations- throughout United States

2005     PRIMA National Conference-Milwaukee "Use of Force" and "Critical Tasks in Law Enforcement"

2005     National Sheriff's Association Annual Conference-Louisville "Legal Issues in Administrative Investigations"

2005     National Leagues of Cities and Towns (Risk Consortium)-Seattle "Identifying Contemporary Risks in Law Enforcement Liability"

2004     Legal and Liability Issues in Public Schools, throughout United States

2004     Policy Development for Law Enforcement Agencies, throughout United States

2004     Civil Liability and Risk Management for Law Enforcement Agencies, throughout United States

2004     Legal Issues in Narcotics Operations, throughout United States

2004     Critical Legal Tasks for Patrol Officers, Illinois Mobile Training Unit

2004     Georgetown Law Center/Civil Rights Litigation-§ 1983

2004     Rhode Island Bar Association Annual Conference- "Stop in the Name of the Law"

2004     Oklahoma Attorney General's Annual Conference "Policy Summit" Policy session for Police Executives

2004     Texas Commission Law Enforcement Officer on Standards and Education annual conference for Texas Trainers/ "Legal Issues for Law Enforcement Trainers"

2003     Legal and Liability Issues in Public Schools, throughout United States

2003     Policy Development for Law Enforcement Agencies, throughout United States

2003     Civil Liability and Risk Management for Law Enforcement Agencies, throughout United States

2003     Advanced Internal Affairs, Myrtle Beach, SC, Las Vegas, NV.

2003     Georgetown Law Center/Civil Rights Litigation-§1983

## SCHEDULE C

2003    Georgia Internal Affairs Investigators Annual Conference

2003    Tennessee Chiefs' Association Conference Training

2003    Alaska Chiefs' Association/FBINAA Executive Development Conference

2003    Office of Corporation Counsel/Metropolitan Police, Washington D.C.

2003    International Law Enforcement Educators and Trainers Association Annual Conference/Chicago "Trainers and Use of Force Liability"

2002    Legal and Liability Issues in Public Schools, throughout the United States

2002    Policy Development for Public Safety Agencies, throughout the United States

2002    International Association of Law Enforcement Planners National Conference, Long Beach, California

2002    National Internal Affairs Investigators Association National Conference, Tampa, Florida

2001    Legal Issues in Use of Force Seminar, Salve Regina University

2001    Advanced Internal Affairs Seminar, Las Vegas

2000    Police Misconduct/Racial Profiling, Georgetown University Law Center

2000    International Crime Prevention, University of Warwick, UK.

2000    Criminal Procedure Update Seminar, Salve Regina University

1999    Law Enforcement Officers' Bill of Rights Seminar, Salve Regina University

1998    Police Media Relations Seminar, Salve Regina University

1997    Police Civil Liability Seminar, Salve Regina University

1995    Basic Training for Detectives, Rhode Island State Police

1993    Search and Seizure in Schools, Rhode Island Legal/Educational Partnership

**CURRICULUM DEVELOPMENT:**

2004    Jail Liability Issues

2005    Arrest, Search & Seizure, and Questioning

2004    Legal Issues/ Case Law Update for Narcotics Investigators

2004    Legal and Liability Issues for Tactical Commanders

2004    Investigation of Officer Involved Shootings

2003    Legal Issues in Administrative Investigations

## SCHEDULE C

2003 Civil Liability and Risk Management for Law Enforcement Agencies

2002 Policy and Procedure for Law Enforcement Agencies

2002 Legal and Liability Issues in Public Schools

1993 Graduate Course, Police Civil Liability

1993 Providence Police Academy Entry-Level, 22 Week Program Revamp

# SCHEDULE D

.

John "Jack" Ryan

700 N. Carr Rd, #595
Plainfield, Indiana 46168
Office (317) 386-8325
Cellular Phone: (401) 692-1555
FAX (317) 386-8228
Email:  jackryan2@cox.net

**Baker v Lott Material Reviewed**

1. **Pleadings**
   a. Amended Complaint
   b. Answer to Amended Complaint
   c. Consent Confidentiality Order
2. **Discovery**
   a. *Plaintiff's*
      i. Responses to Defendants' 1st Interrogatories Supplemental Responses
      ii. Responses to Defendants' 1st Requests for Production Supplemental Responses
   b. *Defendants'*
      i. Responses to Plaintiff's 1st Interrogatories
      ii. Responses to Plaintiff's 1st Requests for Production Supplemental Responses
      iii. 2nd Supplemental Responses
      iv. 3rd Supplemental Responses
      v. 3rd (4th) Supplemental Responses
3. **Bates Documents Produced by Plaintiff**
   a. 0000432 News clip regarding pursuits
   b. 0000846-0000953 RCSD Professional Standards annual reports
   c. 0000954-0000980 Other lawsuits
   d. 0000001-0000928 MAIT file
   e. Bates K-179 (Pringle Bench Warrant).pdf
   f. Bates Q-001 to 107 (RCSD Office of Professional Standards Annual Reports.pdf
   g. Pringle Medical Subp. Resp. (Prisma)_0000001 to 0000207.pdf
4. **Produced by Defendants**
   a. A 001-024 Incident reports
   b. B 001-102 Docs on Byron Pringle
   c. C 001-006 TOC-policies
   d. D 001-046 Personnel-Matthew Smith
   e. E 001-101 Personnel-Michael Dillard
   f. F 001-103 Personnel-Bryan Hodge
   g. G 001-153 Training-Matthew Smith
   h. H 001-140 Training-Michael Dillard
   i. I 001-164 Training-Bryan Hodge
   j. J 001-002 Accident report
   k. K 001-178 LCSD docs on Byron Pringle
   l. L 001-029 Pursuit docs for individual Defendants
   m. M 001-879 RCSD P&P manual (as of 03/06/25)
   n. N 001-374 Training materials re: driving
   o. *Folder of native files*
      i. O 0001-7441 Pursuit packets (2018-2023)

1

# SCHEDULE D

      ii.   P 0001-1422 Lawsuits (09-23-19 to 09-23-24)

**5. Videos**
- a. *Dillard*
  - i. BWC
  - ii. Dashcam
- b. *Hodge*
  - i. BWC
  - ii. Dashcam
- c. *Smith*
  - i. BWC
  - ii. Dashcam
- d. *Stern*
  - i. BWC
  - ii. Dashcam
- e. *Stokes*
  - i. BWC
- f. Monticello_and_Knightner_St_.mp4

**6. Depositions**
- **a. *Matthew Smith***
  - i. Full-size transcript
  - ii. Folder of exhibits
- **b. *Leon Lott***
  - i. Depo-Leon Lott (full).pdf
  - ii. Exhibits-Lott
  - iii. Ex. 10 - BAKER-A-001.PDF
  - iv. Ex. 36a - Scope of Handbook .pdf
  - v. Ex. 36b - Mission Statement .pdf
  - vi. Ex. 36c -Rules and Regulations.pdf
  - vii. Ex. 36d - Driving Course Operations.pdf
  - viii. Ex. 36e - Vehicle Operations.pdf
  - ix. Ex. 36f - Emergency Vehicle Operations.pdf
  - x. Ex. 36g -Vehicle Pursuits.pdf
  - xi. Ex. 36h - Use of Body Worn Cameras.pdf
  - xii. Ex. 36i -  Department Ride-Along.pdf
  - xiii. Ex. 43 - Baker_0000927.pdf
  - xiv. Ex. 45 - Baker_0000900.pdf
  - xv. Ex. 53 - 23-23-85 Establishment of required minimum standards for all law enforcement agencies punitive ac.pdf
- **c. *Abdullah, Zaid***
  - i. Depo-Zaid Abdullah (full).pdf
  - ii. *Exhibits-Zaid Abdullah*
    1. Abdullah Plt. Exhibit 36 - Bates M (Baker).pdf
    2. Abdullah Plt. Exhibit 41 - BAKER-B-001.PDF
    3. Abdullah Plt. Exhibit 50 - Prisma_0000001 - Pringle Records.pdf
    4. Abdullah Plt. Exhibit 51 - Monticello_and_Knightner_St_.mp4
    5. Abdullah Plt. Exhibit 51 - SLIP SHEET.pdf
- **d. *Bryan Hodge***
  - i. Depo-Bryan Hodge (full).pdf
  - ii. *Exhbits*
    1. Hodge Ex. 01 - SCDPS_Subp-0000097.WAV
    2. Hodge Ex. 01 - SLIP SHEET.pdf
    3. Hodge Ex. 02 - DefendantsTemp-0000013.MP4
    4. Hodge Ex. 02 - SLIP SHEET.pdf
    5. Hodge Ex. 05 - DefendantsTemp-0000012.MP4
    6. Hodge Ex. 05 - SLIP SHEET.pdf

# SCHEDULE D

    7. Hodge Ex. 06 - DefendantsTemp-0000010.MP4
    8. Hodge Ex. 06 - SLIP SHEET.pdf
    9. Hodge Ex. 08 - SCDPS_Subp-0000228.MOV
    10. Hodge Ex. 08 -SLIP SHEET.pdf
    11. Hodge Ex. 10 - BAKER-A-001.PDF
    12. Hodge Ex. 29 - Baker L - 1-19.pdf
    13. Hodge Ex. 31 - Bates I - 1-143.pdf
    14. Hodge Ex. 36 - Bates M (Baker).pdf
    15. Hodge Ex. 37 - Bates N (Baker) CONFIDENTIAL.pdf
    16. Hodge Ex. 38 - Baker_0000432.MP4
    17. Hodge Ex. 38 - SLIP SHEET.pdf
    18. Hodge Ex. 50 - Prisma_0000001 - Pringle Records.pdf

    *e.* ***Michael Dillard***
        i. Depo-Michael Dillard (full).pdf
        ii. *Exhibits-Michael Dillard*
            1. Ex. 10 - BAKER-A-001.PDF
            2. Ex. 21 - Bates H-092 to 140 (Baker).pdf
            3. Ex. 36a - Scope of Handbook .pdf
            4. Ex. 36d - Driving Course Operations (1).pdf
            5. Ex. 36e - Vehicle Operations.pdf
            6. Ex. 36f - Emergency Vehicle Operations.pdf
            7. Ex. 36g -Vehicle Pursuits.pdf
            8. Ex. 37a.  PowerPoint Honoring the Fallen.pdf
            9. Ex. 37b. PowerPoint Honoring the Fallen.pdf
            10. Ex. 37c.  Pursuit Driving .pdf
            11. Ex. 43 - Baker_0000927.pdf

**7. Plaintiff's Expert Report**
    a. 2025.09.26 Taylor Expert Report.pdf

3

# Legal and Liability Risk Management Institute

division of : Law Enforcement Risk Management Group

James R. Alsup. Director

John "Jack" Ryan Attorney
Co-Director

Lou Reiter
Co-Director

## FEE SCHEDULE

**Expert Witness Services**

**Jack Ryan, Expert**

**Flat Rate: $12,000**

**Hourly Rate: $300 with $6,000 non-refundable deposit to begin work**

**Expedited Fee: $2,500 if report is due within two weeks of being retained**

**Deposition: $2,500 Per Day or any part of day**

**Testimony: $2,500 Per Day or any part of day**

**Travel: $1,000 Per Day**

**Air, Car, Meals, Hotel Service: At Cost**

**ALL FEES ARE DUE PRIOR TO SERVICE**