PAMELA A. BAKER v. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 5
**TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JOHN J. RYAN, AS TO LAW ENFORCEMENT AND VEHICULAR PURSUIT STANDARDS**

*GILLISPIE V. CITY OF MIAMI TWP*


Neutral
As of: March 3, 2026 3:22 PM Z

## *Gillispie v. City of Miami Twp.*

United States District Court for the Southern District of Ohio, Western Division

October 26, 2022, Decided; October 26, 2022, Filed

Case No. 3:13-cv-416

**Reporter**
2022 U.S. Dist. LEXIS 195490 *; 2022 WL 14758379

ROGER DEAN GILLISPIE, Plaintiff, v. THE CITY OF MIAMI TOWNSHIP, et al., Defendants.

**Prior History:** *Gillispie v. City of Miami Twp., 2014 U.S. Dist. LEXIS 63850 (S.D. Ohio, May 1, 2014)*

### Core Terms

in limine, argues, identification, expert testimony, testifying, reliable, credibility, opines, cumulative, References, suppression, lineup, eyewitness identification, ultimate issue, police policy, witnesses, expert report, photo lineup, expertise, practices, Rebuttal, Courts, legal conclusion, police officer, trier of fact, photo array, contamination, eyewitness, gatekeeper, principles

**Counsel:** [*1] For Roger Dean Gillispie, Plaintiff: David B. Owens, LEAD ATTORNEY PRO HAC VICE, Loevy & Loevy, Chicago, IL; Michael Kanovitz, PRO HAC VICE, Chicago, IL; Michele L. Berry, Cincinnati, OH.

For Matthew Scott Moore, Defendant: John T McLandrich, LEAD ATTORNEY, Mazanec, Raskin & Ryder Co., LPA, Cleveland, OH; David J Sipusic, Mazanec, Raskin & Ryder LPA, Solon, OH; Frank H Scialdone, Terence Lee Williams, Cleveland, OH; Jeffrey T Kay, Mazanec, Raskin & Ryder Co., L.P.A., Cleveland, OH.

For Unidentified Employees of the Miami Valley Regional Crime Lab, Defendant: Laura G Mariani, LEAD ATTORNEY, Montgomery County Prosecutor's Office, Dayton, OH.

For Mathias H Heck, Jr, Intervenor: Joseph D. Saks, LEAD ATTORNEY, Montgomery County Prosecutor's Office, Dayton, OH.

**Judges:** THOMAS M. ROSE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** THOMAS M. ROSE

### Opinion

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MATTHEW SCOTT MOORE'S MOTION IN LIMINE NO. 1 — TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT JENNIFER DYSART (DOC. NO. 324); GRANTING PLAINTIFF'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE REFERENCES TO THE TRIAL COURT'S RULINGS IN THE CRIMINAL CASE (DOC. NO. 339); GRANTING PLAINTIFF'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE CERTAIN [*2] TESTIMONY FROM REBUTTAL EXPERT JOHN WIXTED (DOC. NO. 341); GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE CERTAIN TESTIMONY FROM DEFENSE EXPERT ANTHONY MONHEIM (DOC. NO. 342); AND, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN TESTIMONY FROM DEFENSE EXPERT JOHN RYAN (DOC. NO. 375)**

Pending before the Court are Defendant Matthew Scott Moore's ("Moore") Motion in Limine No. 1 — to Exclude Testimony of Plaintiff's Expert Jennifer Dysart (Doc. No. 324) and four motions from Plaintiff Roger Dean Gillispie ("Gillispie"): Plaintiff's Motion *in Limine* No. 5 to Exclude References to the Trial Court's Rulings in the Criminal Case (Doc. No. 339); Plaintiff's Motion *in Limine* No. 7 to Exclude Certain Testimony from Rebuttal Expert John Wixted (Doc. No. 341); Plaintiff's Motion *in Limine* No. 8 to Exclude Certain Testimony from Defense Expert Anthony Monheim (Doc. No. 342); and, Plaintiff's Motion *in Limine* No. 9 to Exclude Certain Testimony from Defense Expert John Ryan (Doc. No. 375).

For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion in Limine No. 1 — to Exclude Testimony of Plaintiff's **[*3]** Expert Jennifer Dysart; Plaintiff's Motion *in Limine* No. 8 to Exclude Certain Testimony from Defense Expert Anthony Monheim (Doc. No. 342); and, Plaintiff's Motion *in Limine* No. 9 to Exclude Certain Testimony from Defense Expert John Ryan (Doc. No. 375). The Court **GRANTS** Plaintiff's Motion *in Limine* No. 5 to Exclude References to the Trial Court's Rulings in the Criminal Case (Doc. No. 339) and Plaintiff's Motion *in Limine* No. 7 to Exclude Certain Testimony from Rebuttal Expert John Wixted (Doc. No. 341).

## I. BACKGROUND

The Court assumes that the parties are familiar with the general background of this case and will not delve into its extensive history.

## II. OVERARCHING STANDARD FOR ADMISSION OF EXPERT TESTIMONY

Under *Federal Rule of Evidence 702*, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if four requirements are met:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably **[*4]** applied the principles and methods to the facts of the case.

*Fed. R. Evid. 702*.

The Court plays a "gatekeeping" role with respect to expert testimony regarding scientific, technical or other specialized knowledge. *Kumho Tire v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)*; *Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)*. "As gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms, Inc., 535 F. App'x 448, 453 (6th Cir. 2013)* (internal quotation marks and citation omitted). Put simply, for expert testimony to be admissible, the court must find: (1) the expert is qualified; (2) the testimony is relevant; and (3) the testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*; *In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529 (6th Cir. 2008)*. The party offering the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000)*; *Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001)*.

Relevant to the motions at hand, "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Fed. R. Evid. 704(a)*. The Sixth Circuit has explained, "there is a 'subtle,' but 'nonetheless important' distinction between

'opin[ing] on the ultimate question of liability' (impermissible), and 'stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue' (permissible)." Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 317 (6th Cir. 2019) (quoting [*5] Berry v. City of Detroit, 25 F.3d 1342, 1353 (6th Cir. 1994)).

### a. Qualifications

To qualify as an expert under Rule 702, a witness must first establish their expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; Pride, 218 F.3d at 577. Moreover, the expert's training and qualifications must relate to the subject matter of the proposed testimony. Smelser v. Norfolk Southern Railway Co., 105 F.3d 299, 303 (6th Cir. 1997), cert. denied, 522 U.S. 817, 118 S. Ct. 67, 139 L. Ed. 2d 29 (1997); U.S. Diamond & Gold v. Julius Klein Diamonds LLC, No. C-3-06-371, 2008 U.S. Dist. LEXIS 116112, at *7, 2008 WL 4116090 (S.D. Ohio Aug. 28, 2008).

### b. Relevance

Expert testimony must be relevant, meaning that it will "'help the trier of fact to understand the evidence or to determine a fact in issue.'" Bradley v. Ameristep, Inc., 800 F.3d 205, 208 (6th Cir. 2015) (quoting United States v. Freeman, 730 F.3d 590, 599-600 (6th Cir. 2013)); Fed. R. Evid. 702(a). An expert's testimony is not relevant if it does not relate to any issue in the case. Daubert, 509 U.S. at 591; Johns v. CR Bard, No. 2:18-MD-2846, 2021 U.S. Dist. LEXIS 119665, at *54 (S.D. Ohio June 28, 2021).

In determining whether an expert's testimony is relevant, "'a consideration of Rule 403 is included in the Daubert analysis.'" United States v. Lavictor, 848 F.3d 428, 444 (6th Cir. 2017) (quoting United States v. Semrau, 693 F.3d 510, 522 (6th Cir. 2012)). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Notes. Evidence is not unfairly prejudicial merely because it has [*6] an adverse effect on a party; unfair prejudice occurs only when "the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable." United States v. Savinovich, 845 F.2d 834, 837 (9th Cir. 1988). The district court's role in applying Rule 403 to expert testimony is significant as "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." Daubert, 509 U.S. at 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound, 138 F.R.D. 631, 632 (1991)).

### c. Reliability

As to the final prong of the Court's inquiry as gatekeeper, "[a] district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012) (quoting Daubert, 509 U.S. at 597). The Supreme Court, in Daubert, identified several factors that bear on reliability (509 U.S. at 593-94); however, those factors are neither definitive nor exhaustive. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006); Newell Rubbermaid, 676 F.3d at 527. In certain cases, an expert's experience may provide a reliable basis for their testimony. Fed. R. Evid. 702; see also Nestor v. Everlast Roofing, Inc.,

*No. 3:17-CV-93, 2018 U.S. Dist. LEXIS 171513, at *4, 2018 WL 4784554 (S.D. Ohio Oct. 4, 2018)*. The Sixth Circuit has instructed:

> [A]n expert's opinion ... should be supported by good grounds, based on what is known. The expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions. An expert's opinion, where **[*7]** based on assumed facts, must find some support for those assumptions in the record. However, mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.

*McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800-01 (6th Cir. 2000)* (internal quotations and citations omitted); *Nestor, 2018 U.S. Dist. LEXIS 171513, at *4-5*. "An expert need not consider every possible factor to render a 'reliable opinion'; rather the expert need only consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court." *In re GM OnStar Litig., No. 2:07-MDL-01867, 2011 U.S. Dist. LEXIS 16139, at *36, 2011 WL 679510 (E.D. Mich. Jan. 12, 2011)* (internal citation and quotation omitted), *report and recommendation adopted by* *2011 U.S. Dist. LEXIS 15671, 2011 WL 674727 (E.D. Mich. Feb. 16, 2011)*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert, 509 U.S. at 595*.

## III. ANALYSIS

### a. Dysart's Expert Report

Dr. Jennifer Dysart ("Dysart") is an associate professor of psychology at the City University of New York and obtained her Ph.D. from Queen's University in Canada. (Doc. No. 230-10 at PageID 6132.) Dysart opines that "the likelihood of three victims separately and independently identifying an innocent suspect, Mr. Gillispie, is extraordinarily low unless there was suggestion in the photo **[*8]** array procedure conducted by Detective Moore or Mr. Gillispie happened to look very similar to the actual perpetrator." (*Id.* at PageID 6156.) Dysart further opines that this is implausible because Gillispie had been eliminated as a suspect by the prior detectives working the case given that he did not match the description of the assailant provided by the victims. (*Id.*) Additionally, Dysart states: "improper suggestion resulting from a suggestive photo array and post-identification feedback are highly likely to cause subsequent identifications of the same individual, whether innocent or guilty. Thus, any identification of the defendant at pretrial hearings or at trial are of no value with respect to assessing witness reliability." (*Id.*) Dysart's opinion goes on to evaluate the various issues with the victims' abilities to observe and identify the assailant, with the composite sketch, with pre-identification and post-identification contamination, and with bias in the photo lineup used in this case. (*Id.* at PageID 6159-80.)

Moore objects to Dr. Dysart testifying on the grounds that she is biased, lacks credibility, and her opinions are beyond the scope of her expertise. (Doc. No. 324.) **[*9]** Moore first argues that an eyewitness identification expert is "generally excluded" and that testimony on these issues are within the understanding of the jurors. (Doc. No. 324 at PageID 11354.) Moore argues that the photo lineup guidelines Dysart relies on are irrelevant because they were published after the investigation in this case took place. (*Id.* at PageID 11358.) He further argues that the studies Dysart cites in support of her opinions rely on studies where individuals were exonerated based on DNA evidence. (*Id.*) Moore also argues that Dysart's opinions go beyond her expertise and, therefore, her opinions on Moore's investigatory process should be excluded. (*Id.* at PageID 11362-65.) Finally, Moore argues that Dysart's opinions should be excluded to the extent she opines on the

credibility and motivations of witness. (*Id.* at PageID 11365.)

Regarding the expert qualification inquiry, Dr. Dysart holds advanced degrees in psychology and has been published dozens of times over, including on the subject of lineup identifications. Indeed, her opinions are supported by citations to published authority. If Moore takes issue with the posture from which Dr. Dysart began her review or the **[*10]** fact that the misidentification cases she cites involve DNA exonerations, then he is welcome to cross examine Dr. Dysart on those issues.

Regarding Moore's objection on the grounds that an eyewitness identification expert is "generally excluded" and that testimony on these issues are within the understanding of the jurors (Doc. No. 324 at PageID 11354), the Sixth Circuit has repeatedly recognized the scientific validity of the study of eyewitness identifications and the aid such expert testimony provides to the trier of fact. *See, e.g., [United States v. Smithers, 212 F.3d 306, 315 (6th Cir. 2000)](#)*; *[Ferensic v. Birkett, 501 F.3d 469, 482 (6th Cir. 2007)](#)*; *[Jackson v. Bradshaw, 681 F.3d 753, 762 (6th Cir. 2012)](#)*. However, the Sixth Circuit has identified factors that may weigh against admissibility, such as: "whether this type of testimony touched on the 'ultimate issue' in the case and therefore usurped the jury's role; whether there was other evidence against the defendant; and whether the jury could more properly evaluate the reliability of eyewitness testimony through cross-examination." *[Smithers, 212 F.3d at 314](#)*.

Dysart opines on a number of topics related to witness identification that generally fall into two categories. The first category includes the factors that affect the witness' ability to perceive or remember the event, such as a limited opportunity to observe their **[*11]** assailant, the stress imposed on the witness, and the delay between the event and the identification. Into this category also fall issues such as the accuracy of the descriptions given by victims and the negative effects composite sketches can have on witness' recollections. The second category is the contamination of a witness' identification after the fact. In this instance, Dysart identifies line up filler bias, pre-identification instruction bias, non-blind administration of photo arrays, and post-identification feedback. All of these issues generally involve actions by third parties, whether intentional or inadvertent, that effect the witnesses' identification.

Given that eyewitness identifications were seemingly an integral part of Gillispie's criminal trials, the amount of time that elapsed between the assaults and the identifications both before and at the criminal trials, and the allegations that Moore intentionally took steps that may have contaminated the witnesses' recollections of the assaults, Dr. Dysart's expertise would aid the jury in understanding the potential pitfalls of eyewitness identifications and how such identifications could become tainted by the actions of **[*12]** others. *See, e.g., [Smithers, 212 F.3d at 315](#)*; *[Ferensic, 501 F.3d at 482](#)*; *[Jackson, 681 F.3d at 762](#)*.

The Court will allow Dr. Dysart to testify as to the general principles of eyewitness identifications and contamination by third parties. However, she will not be allowed to testify to the specific facts of this case. For instance, Dr. Dysart may testify to the general principles and scientific findings involved in post-event and co-witness contamination, but she may not testify to opinions such as "[t]he suggestion made by Detective Moore has permeated B.W.'s testimony and further solidified her confidence in her identification. . . ." (Doc. No. 230-10 at PageID 6164.) Such testimony would violate the established precedent that expert witness testimony concerning the credibility of a fact witness is improper. *[Greenwell v. Boatwright, 184 F.3d 492, 496 (6th Cir. 1999)](#)* (holding that expert witness testimony regarding credibility of eyewitness testimony is improper); *[MAR Oil Co. v. Korpan, 973 F. Supp. 2d 775, 787 (N.D. Ohio 2013)](#)* (holding that an expert report that comments

on the credibility of witnesses is improper*);* Hobart Corp. v. Dayton Power & Light Co., No. 3:13-cv-115, 2019 U.S. Dist. LEXIS 162467, at *79-80 (S.D. Ohio Sept. 23, 2019) ("[i]t is clearly established that expert witness testimony concerning the credibility of a fact witness is improper").

Moreover, Dr. Dysart may testify to the psychological impact of line up filler bias, pre-identification instruction bias, non-blind administration **[*13]** of photo arrays, and post-identification feedback on a witness' ability to identify an assailant. Dr. Dysart is barred from testifying as to the best practices of police or appropriate policy or procedure with regard to conducting a lineup. While it is clear that Dr. Dysart has studied eyewitness accuracy rates in police lineups and other biases related to different types of lineup procedures, Gillispie has not shown that Dr. Dysart has studied police policies and procedures in detail or whether she understands what the accepted police policies and procedures are now or would have been in 1990.

Dr. Dysart will also be barred from testifying to the specific facts of this case as they relate to the lineups. It is impossible for Dr. Dysart to intertwine her opinions with an analysis of the witnesses' identifications without inevitably commenting on the credibility of the witnesses themselves and testifying to the ultimate issue. For instance, Dysart states, "the question remains as to whether Mr. Gillispie was identified at trial by the three victims merely because he has previously been selected from a suggestive photo array." (Doc. No. 230-10 at PageID 6178.) The Court will not permit **[*14]** this. Those opinions, and any similar opinions contained within her report are barred.

These limitations do not prevent Dr. Dysart from addressing hypothetical questions. United States v. Coffman, 574 F. App'x 541, 553 (6th Cir. 2014) (citing United States v. Collins, 78 F.3d 1021, 1037 (6th Cir. 1996)). "Hypothetical questions should be 'an accurate summation of the evidence already presented in the record and can neither add nor distract from that evidence.'" In re Nat'l Prescription Opiate Litig., No. 1:17-md-2804, 2019 U.S. Dist. LEXIS 141124, at *76, 2019 WL 3934470 (N.D. Ohio Aug. 20, 2019) (citing Myers v. Weinberger, 514 F.2d. 293, 294 (6th Cir. 1975)). Moreover, "[i]f the party positing the hypothetical fails to independently prove the facts assumed, the jury is free to disregard the conclusion of the witness." In re Nat'l Prescription Opiate Litig., 2019 U.S. Dist. LEXIS 141124, at *76 (citing United States v. McCafferty, 801 F.Supp. 2d 605, 621 (N.D. Ohio 2011)). Thus, guided by the strictures above, Dr. Dysart can testify to a hypothetical that reflects the proven facts of the case, but she may not testify to the facts themselves.

Therefore, Defendant Matthew Scott Moore's Motion in Limine No. 1 — to Exclude Testimony of Plaintiff's Expert Jennifer Dysart (Doc. No. 324) is **GRANTED IN PART** and **DENIED IN PART**.

b. Wixted's Expert Report

Dr. John Wixted ("Wixted") is a professor at the University of California, San Diego and received his Ph.D. in clinical psychology from Emory University. (Doc. No. 333-1 at PageID 12347.) Dr. Wixted opines that Dr. Dysart's analysis is predicated on a misunderstanding of what the research on eyewitness **[*15]** identification indicates. (*Id.* at PageID 12349.) He further states that the police guidelines Dr. Dysart relies on were not in place in 1990, when these identifications took place, and, as social scientists, his and Dr. Dysart's expertise is not in police policy and procedure. (*Id.*) Dr. Wixted also opines that Dr. Dysart's opinions have "no relevance to the central issue at hand, which concerns the propriety of Detective Moore's conduct related to the eyewitness evidence during his investigation of Roger Gillispie." (*Id.*)

Gillispie does not seek to prevent Dr. Wixted from testifying; instead he is moving to limit Dr. Wixted's testimony under *Federal Rule of Evidence 702*.[1] (Doc. No. 341 at PageID 12453-55.) Specifically, Gillispie seeks to limit Dr. Wixted from testifying about what is relevant to the claims alleged against Moore. (*Id.* at PageID 12456.) Moore does not address this concern in his response.

It is the role of the court, not an adverse expert, to evaluate the relevance of an expert's testimony. *See Surles v. Greyhound Lines, Inc., 474 F.3d 288, 295 (6th Cir. 2007)* ("*Daubert* and its progeny have placed the district courts in the role of 'gatekeeper,' charging them with evaluating the relevance and reliability of proffered expert testimony). It would both impinge on this Court's **[*16]** gatekeeping function under *Daubert* and confuse the jury to allow an expert witness to opine on the relevance of another witness' testimony. Therefore, Dr. Wixted is barred from testifying as to the relevance of Dr. Dysart's opinions and testimony.

Additionally, Dr. Wixted's testimony will be limited to the same extent as Dr. Dysart. Dr. Wixted may testify to any difference in understanding or opinion on the general principles of witness identification, but he may not testify to credibility of any witness or to the specific facts of this case. For instance, Dr. Wixted may not testify that "the eyewitness evidence in this case is impossible to dismiss as being obviously unreliable." (Doc. No. 333-1 at PageID 12356.) Additionally, since Dr. Dysart has been barred from discussing police policies and procedure, Dr. Wixted, as a rebuttal expert to Dr. Dysart, will also be barred from addressing the topic.

Therefore, Plaintiff's Motion *in Limine* No. 7 to Exclude Certain Testimony from Rebuttal Expert John Wixted (Doc. No. 341) is **GRANTED**.

---

[1] Moore seems to have missed this point entirely and spends his entire opposition brief attacking Dr. Dysart and discussing how Dr. Wixted's report is necessary to rebut Dr. Dysart's report.

### c. Monheim's Testimony

Anthony Monheim ("Monheim") is a former police officer, who spent 30 years with the Miami-Dade Police Department. (Doc. No. 342-1 at PageID **[*17]** 12472-73.) Monheim currently runs a company that trains homicide investigators. (*Id.* at PageID 12474.) Monheim generally opines:

> It is my opinion that the photographic line-ups and the identification procedures used by Detective Moore were appropriate, legally sufficient, properly conducted, and consistent with all generally accepted and established investigative practices in place in 1990.
> It is also my opinion that there is no justification to contend that the named officers engaged in any type of malicious conspiracy to falsely arrest Mr. Gillispie.

(Doc. No. 342-1 at PageID 12483.) More broadly, Monheim's opinions touch on a number of subjects, including pronouncements of law from various federal and state courts, the fact that the prosecutor introduced (and the judge allowed) the photo lineup in the original criminal trials, and various other matters regarding police policy and procedure and the application of those matters to this case. (*Id.* at PageID 12483-501.)

Gillispie objects to portions of Monheim's testimony on several grounds. First, Gillispie argues that portions of Monheim's testimony consist of legal determinations and explanations of case law. (Doc. No. 342 at PageID **[*18]** 12464-66.) Second, Gillispie argues that Monheim's commentary on the criminal justice system is inappropriate. (*Id.* at PageID 12466-67.) Third, Gillispie argues that Monheim's testimony should be excluded to the extent he testifies to the credibility of other witnesses. (*Id.* at PageID 12468-69.) Fourth, Gillispie argues that Monheim's testimony is cumulative because Moore has other experts who testify to the *Brady*-related issues

Monheim touches upon.[2] (*Id.* at PageID 12469-70.)

Moore argues that Monheim should not be excluded because his experience as a police officer is relevant and will assist the jury. (Doc. No. 351 at PageID 12549.) Moore further argues that Monheim's references to case law simply seek to explain to the jury the guiding principles of law that are relevant to police procedures. (*Id.* at PageID 12550.) Moore also argues that Monheim's testimony regarding the victims' credibility, e.g. the victims' "discerning eye," and the prosecutor's decision to move forward with the case to grand jury are simply based on his experience as a police officer. (*Id.* at PageID 12551.) Finally, Moore states that Gillispie's move to exclude Monheim's testimony to the extent it is duplicative **[*19]** of Moore's other expert, John Ryan, is without merit. (*Id.* at PageID 12552.)

Regarding Gillispie's argument that portions of Monheim's testimony should be excluded because it consists of legal determinations and explanations of case law (Doc. No. 342 at PageID 12464-66), an expert's opinions on questions of law are impermissible. *Chavez v. Carranza, 559 F.3d 486, 498 (6th Cir. 2009)*; Hobart Corp. v. Dayton Power & Light Co., 407 F. Supp. 3d 732, 736 (S.D. Ohio Sept. 23, 2019). Courts have consistently held that expert testimony on police standards and procedures are admissible, "so long as the expert refrains from expressing legal conclusions." *United States v. Hanshaw, No. 1:14-cr-120, 2015 U.S. Dist. LEXIS 199190, at *16 (S.D. Ohio Sep. 9, 2015)*; *Alvarado v. Oakland Cnty., 809 F. Supp. 2d 680, 690 (E.D. Mich. 2011)*; *King v. Taylor, 944 F. Supp. 2d 548, 555 (E.D. Ky. 2013)*. It is the duty of the Court, and no one else, to instruct the jury on the law. Therefore, Monheim is barred from opining on court precedents or the meaning of case law.

---

[2] Gillispie also argues that Monheim's opinions regarding Judge Porter's decisions during the original suppression hearing should be excluded. (Doc. No. 342 at PageID 12467-69.) The Court will address this argument in Section e below.

Next, Monheim may testify to the general policies and procedures police follow while conducting an investigation, but he is barred from drawing any conclusions specific to the facts of this case. It is ultimately the jury's responsibility to determine whether Moore acted in accordance with the relevant procedures in this case. For instance, Monheim may not testify "that the photographic line-ups and the identification procedures used by Detective Moore were appropriate, legally sufficient, properly conducted, and consistent **[*20]** with all generally accepted and established investigative practices in place in 1990." (Doc. No. 342-1 at PageID 12483.) Nor may he testify that "the totality of the circumstances renders both identifications reliable." (*Id.* at PageID 12494.) Whether the photo lineups were reliable, appropriate, or unduly suggestive is within the province of the trier of fact in this case. Those opinions, and any similar opinions contained within his report, are barred.

Regarding Gillispie's next argument that Monheim should be barred from commenting on the criminal justice system (Doc. No. 342 at PageID 12466), Moore does not address this point and Moore does not demonstrate the purpose of Monheim's testimony regarding the criminal court process. Indeed, Monheim makes statements such as, "[t]he Courts are fully aware of how difficult an undertaking the identification process can be and have consistently ruled accordingly. The Courts have long held that it is the 'totality of the circumstances' that dictates whether, or not, an eyewitness identification is acceptable." (Doc. No. 342-1 at PageID 12493.) Again, Monheim should not testify to his interpretation of court precedent or what he believes court **[*21]** practices are. Monheim is certainly capable of testifying to the general policies and procedures police follow and how that relates to their role in the criminal justice process, but Monheim is barred from testifying to his understanding and belief of court practices and precedents.

Gillispie's next argument is that Monheim's testimony should be excluded to the extent he testifies to the credibility of other witnesses, (Doc. No. 342 at PageID 12468-69), Moore argues that Monheim's testimony regarding the victims' "discerning eye" and the prosecutor's decision to move forward with the case to grand jury is simply based on his experience as police officer. (Doc. No. 351 at PageID 12551.) As with the preceding witnesses, Monheim may not testify to the credibility of either the prosecutor or the witnesses in this case. *Greenwell, 184 F.3d at 496*; *Korpan, 973 F. Supp. 2d at 787*; *Hobart Corp., 2019 U.S. Dist. LEXIS 162467, at \*79-80*. For instance, Monheim may not testify: "Prosecutor Paul Folfas would never have agreed to present the case in Montgomery County Common Pleas Court if he did not believe the line-up to be legally sound." (Doc. No. 342-1 at PageID 12495.) This section, and those following it, not only improperly comment on Folfas' credibility, but also lack any semblance of personal knowledge **[\*22]** as to what Folfas would or would not do. This is equally true for Monheim's testimony regarding whether Moore had the "intent" to frame Gillispie. (Doc. No. 342 at PageID 12501.) Such opinions improperly comment on the credibility of Moore. Those opinions, and any similar opinions contained within his report, are barred.

Finally, regarding Gillispie's argument that Monheim's testimony should be excluded to the extent it is cumulative (Doc. No. 342 at PageID 12469-70), relevant evidence may be excluded by the court "if its probative value is substantially outweighed by a danger of. . . needlessly presenting cumulative evidence." *Fed. R. Evid. 403*. Under *Rule 403*, a district court is free to exclude any expert testimony which is determined to be cumulative or redundant. *Bowman v. Corrs. Corp. of America, 350 F.3d 537, 547 (6th Cir. 2003)* (citing *In re Air Crash, 86 F.3d 498, 527 (6th Cir. 1996)*). However, "expert testimony is not rendered cumulative simply based on the number of witnesses who offer evidence at a trial." *Piskura v. Taser Int'l, No. 1:20-cv-248, 2012 U.S. Dist. LEXIS 52534, at \*7, 2012 WL 1267990 (S.D. Ohio Apr. 13, 2012)* (citing *Adams v. Cooper Indus., 2006 U.S. Dist. LEXIS 75565, at \*33, 2006 WL 2983054 (E.D. Ky. Oct. 17, 2006)*).

Gillispie has not shown at this point that Monheim and Ryan's testimony will be unnecessarily cumulative. *Piskura, 2012 U.S. Dist. LEXIS 52534, at \*8*. The fact that both experts will touch on *Brady*-related issues to some extent seems fairly unremarkable given the subject of this trial. Moreover, the Court retains the authority to limit testimony **[\*23]** at trial if it proves necessary. *Universal Surveillance Corp. v. Checkpoint Sys., No. 5:11-cv-1755, 2015 U.S. Dist. LEXIS 147105, at \*58, 2015 WL 6561241 (S.D. Ohio Oct. 19, 2015)* (citing *Fed. R. Evid. 611(a)* (directing the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time")).

Therefore, Plaintiff's Motion in Limine No. 8 to Exclude Certain Testimony from Defense Expert Anthony Monheim (Doc. No. 342) is **GRANTED IN PART** and **DENIED IN PART**.

### d. Ryan's Expert Reports

John Ryan ("Ryan") is a former police officer who spent 20 years in law enforcement, including a period of time as the Captain of the Providence Police Department in Providence, Rhode Island. (Doc. No. 329-1 at PageID 11719.) Ryan currently teaches courses on police policy and procedure and currently serves as the co-director of the Legal and Liability Risk Management Institute. (*Id.* at PageID 11717, 19.) Ryan's expert report generally discusses police policies and practices regarding police investigations and photographic lineups. (*Id.* at PageID 11774-86.) Ryan further opines on whether certain pieces of evidence exist and various legal standards. (*Id.*)

Gillispie argues that Ryan's expert report should be

excluded for three reasons. First, Ryan's report contains "secret opinions" in the fact section [*24] that should be excluded. (Doc. No. 375 at PageID 12739.) Second, Ryan's opinions exceed his role as an expert and impermissibly state legal conclusions. (*Id.* at PageID 12739-41.) Third, Ryan's opinions are cumulative as they address some of the same issues as Monheim. (*Id.* at PageID 12741.)

In opposition, Moore argues that Gillispie has failed to adequately identify what the supposed "secret opinions" are or why they should be excluded. (Doc. No. 380 at PageID 12818-19.) Moore further argues that all of Ryan's opinions are within the realm of his experience and expertise in police procedure and investigations. (*Id.* at PageID 12819-21.) Finally, Moore argues that Gillispie has failed to provide any evidence that Ryan and Monheim's testimony would be duplicative or cumulative. (*Id.* at PageID 12821.)

Regarding Gillispie argument that Ryan's "secret opinions" should be excluded, these "secret opinions" simply note that most police departments did not have certain policies in the 1990s. Gillispie does not identify anything legally objectionable in the substance of these statements and clearly Gillispie will not be surprised by these statements at trial. There is no reason to exclude these [*25] "secret opinions."

Regarding Gillispie's argument that Ryan's opinions should be excluded to the extent they go beyond his role as an expert and that he impermissibly states legal conclusions, Gillispie specifically argues that Ryan improperly opines on investigators' motives and the criminal justice system generally. (Doc. No. 175 at PageID 12740.) Ryan is certainly capable of testifying to general police policies and procedures. *Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908-09 (6th Cir. 2004)*. This would include explaining the general process of how a case goes from the preliminary investigation to its ultimate conclusion at trial. However, Ryan opines that there is nothing in the material to suggest "that exculpatory evidence existed." (Doc. No. 329-1 at PageID 11782.) Ryan cannot categorically state that no exculpatory evidence exists. Ryan's testimony goes beyond an opinion that "suggest[s] the answer to the ultimate issue" and simply instructs the jury on how to resolve a key issue of fact in this case. *DeMerrell v. City of Cheboygan, 206 Fed. App'x 418, 426 (6th Cir. 2006)* (*Berry, 25 F.3d at 1353*)). The existence of these reports is a fact issue that must be determined by the jury.

Moreover, Ryan states several more opinions that simply tell the jury how to decide the ultimate issues in this case. For instance, Ryan opines in two [*26] separate paragraphs that there is no evidence to suggest the police destroyed hair samples or that there was a failure to turn over evidence to the defense. (Doc. No. 329-1 at PageID 11785.) Again, these opinions stray too far beyond the acceptable bounds and invade the jury's role as the ultimate trier of fact.

Ryan further testifies to law enforcement's role in providing evidence as part of the prosecution's duties under *Brady* and states that, "[o]ne factor law enforcement considers is whether the evidence is already known to the defendant." (Doc. No. 329-1 at PageID 11782-83.) Ryan then goes on state a lengthy factual recitation of what Detectives Fritz and Bailey did during and after the investigation. (*Id.*) This testimony cuts too close to the ultimate issue in this case, i.e. whether the supplemental reports existed. Ryan is barred from presenting such testimony, but he may testify to the police's role in providing Brady material to the prosecutor as part of their general duties during an investigation.

Finally, regarding Gillispie's argument that Ryan should be prevented from offering cumulative testimony, as explained in the prior section, Gillispie has not demonstrated that [*27] Ryan and Monheim's testimony will be cumulative. Moreover, the Court retains the authority to limit

testimony at trial if it proves necessary. *Universal Surveillance Corp.*, 2015 U.S. Dist. LEXIS 147105, at *58 (citing Fed. R. Evid. 611(a)).

Therefore, Plaintiff's Motion in Limine No. 9 to Exclude Certain Testimony from Defense Expert John Ryan (Doc. No. 375) is **GRANTED IN PART** and **DENIED IN PART**.

### e. References to State Trial Court Decisions

Gillispie also asks the Court to exclude any references to Judge Porter's ruling during his prior criminal trials. (Doc. No. 339.) This concern is also reflected in Gillispie's motion to exclude parts of Monheim's testimony where he discusses Judge Porter's order on the motion to suppress the photo lineup. (Doc. No. 342 at PageID 12467.) Moore counters that Gillispie's argument that the law of the case deprives Judge Porter's order of any effect is incorrect because this Court's summary judgment order relied on the *Rooker-Feldman* doctrine, which is inapplicable here. (Doc. No. 348 at PageID 12529.) He additionally argues that the outcome of the suppression hearing should not be excluded because Gillispie's experts cite to evidence from the suppression hearing as part of their expert reports. (*Id.* at PageID 12530.) Moore further argues **[*28]** that the jury is entitled to take into consideration whether the photo lineups were considered overly suggestive in the 1990s and how the court resolved those questions at the time. (*Id.* at PageID 12531-32.)

As this Court held in its summary judgment order, the applicable state court judgments have been vacated and, consequently, have no practical effect. (Doc. No. 298 at PageID 10865-66.) While Moore is correct that the context of this discussion was related to the *Rooker-Feldman* doctrine, it does not negate the fact that the state court judgments are no longer valid, including the order on suppression. Indeed, as other courts have recognized, a state court's judgement that has no preclusive effect is not only irrelevant, but the "prejudicial effect substantially outweighs any probative value." *Hurt v. Vantlin*, No. 3:14-cv-92, 2019 U.S. Dist. LEXIS 214976, at *6, 2019 WL 6828153 (S.D. Ind. Dec. 13, 2019) (citing *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1032 (N.D. Ill. 2011)).

Moreover, Moore's argument that Gillispie's expert's reliance on parts of the suppression hearing should allow Judge Porter's legal conclusions to come in is misplaced and unsupported. Moore will certainly be able to cross-examine Gillispie's experts if the facts or testimony they cite are incorrect or do not support their opinion. However, this does not render Judge Porter's ultimate **[*29]** decision on suppression relevant or admissible.[3]

Moore further fails to cite any legal justification for allowing the jury to consider Judge Porter's decision on the suppression of the photo lineup. It is the jury's responsibility in this case to determine, in part, whether the identification was unduly suggestive. *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007). To allow the jury to hear that another court had evaluated this issue in some form and come to a legal conclusion would clearly invade the jury's role as the finder of fact in this case. Moreover, the effects of the jury hearing the legal ruling of another judicial official, evaluating a

---

[3] To the extent Moore's argument implicates the doctrine of issue preclusion, the order of the state court would still be barred. Ohio law would determine whether issue preclusion applies to orders issued by Ohio state courts. *Donovan v. Thames*, 105 F.3d 291, 294 (6th Cir. 1997) ("issues actually litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where the judgment was rendered"); *Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005) ("because [plaintiff] would have us give preclusive effect to an Ohio state-court determination, we look to Ohio's law of issue preclusion to resolve this question"). The Sixth Circuit has held that issue preclusion would not apply in this case such as this because, "the general rule in Ohio is that a judgment in a criminal proceeding cannot operate as res judicata, or collateral estoppel, in a civil action to establish any fact determined in the criminal proceeding." *Knott*, 418 F.3d at 568 (citing *State ex rel. Ferguson v. Court of Claims of Ohio Victims of Crime Div.*, 98 Ohio St. 3d 399, 2003- Ohio 1631, 786 N.E.2d 43 (Ohio 2003)).

different and potentially more limited set of evidence, would be substantially more prejudicial than probative. *Hurt, 2019 U.S. Dist. LEXIS 214976, at \*6* (citing *Betts, 784 F. Supp. 2d at 1032*); *Fed. R. Evid. 403*.

Finally, Gillispie argues that Monheim's testimony should be excluded to the extent he testifies to Judge Porter's decisions in the original criminal action. (Doc. No. 342 at PageID 12467.) Moore does not seem to dispute this point as he states, "the outcome of the suppression hearing is not the primary focus of Mr. Monheim's testimony and this Court is very capable of limiting Mr. Monheim to the core and substance of his opinion without any references to Judge **[*30]** Porter." (Doc. No. 348 at PageID 12531.) The Court finds it is necessary, for the reasons stated above, to limit Monheim's testimony and bar him from testifying to Judge Porter's decision on the suppression in the original criminal action.

Therefore, Plaintiff's Motion *in Limine* No. 5 to Exclude References to the Trial Court's Rulings in the Criminal Case (Doc. No. 339) is **GRANTED**. Plaintiff's Motion *in Limine* No. 8 to Exclude Certain Testimony from Defense Expert Anthony Monheim is **GRANTED** to the extent it seeks to exclude any references to Judge Porter's criminal trial rulings.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

> 1. Defendant Matthew Scott Moore's Motion in Limine No. 1 — to Exclude Testimony of Plaintiff's Expert Jennifer Dysart (Doc. No. 324) is **GRANTED IN PART** and **DENIED IN PART**;
>
> 2. Plaintiff's Motion *in Limine* No. 5 to Exclude References to the Trial Court's Rulings in the Criminal Case (Doc. No. 339) is **GRANTED**;
>
> 3. Plaintiff's Motion in Limine No. 7 to Exclude Certain Testimony from Rebuttal Expert John Wixted (Doc. No. 341) is **GRANTED**;
>
> 4. Plaintiff's Motion in Limine No. 8 to Exclude Certain Testimony from Defense Expert Anthony Monheim (Doc. **[*31]** No. 342) is **GRANTED IN PART** and **DENIED IN PART**; and,
>
> 5. Plaintiff's Motion in Limine No. 9 to Exclude Certain Testimony from Defense Expert John Ryan (Doc. No. 375) is **GRANTED IN PART** and **DENIED IN PART**.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, October 26, 2022.

/s/ Thomas M. Rose

THOMAS M. ROSE

UNITED STATES DISTRICT JUDGE

**End of Document**