PAMELA A. BAKER V. LEON LOTT, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RICHLAND COUNTY SHERIFF'S OFFICE, ET AL.
CASE NO. 3:24-CV-04303-JDA

# EXHIBIT 30
## TO PLAINTIFF'S OPPONENT'S STATEMENT OF MATERIAL FACTS

***30(B)(6) DEPOSITION OF RICHLAND COUNTY SHERIFF'S DEPARTMENT – DOMINICK PAGANO***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
C.A. No.: 3:24-cv-04303-JDA

PAMELA BAKER,

PLAINTIFF,

vs.

LEON LOTT, individually and in his official capacity as the Sheriff of Richland County; THE RICHLAND COUNTY SHERIFF'S DEPARTMENT; and DEPUTIES MATTHEW SMITH, MICHAEL DILLARD, and BRYAN HODGE,

DEFENDANTS.

30(b)(6) D E P O S I T I O N

WITNESS: DOMINICK PAGANO
DATE: NOVEMBER 19, 2025
TIME: 2:36 P.M.
LOCATION: BURR & FORMAN, LLP
1221 MAIN STREET, SUITE 1800
COLUMBIA, SOUTH CAROLINA 29201

REPORTED BY: AMBER SOMERO

LEGAL EAGLE
Post Office Box 5682
Greenville, South Carolina 29606
864-467-1373
depos@legaleagleinc.com

A. So we do report. We are accredited, but I cannot answer that question because I don't know if that's something that reports to accreditation. So I'm not over that portion of -- for accreditation, but our policies are always reviewed internally as well.

Q. Well, I want to ask you about the accreditation.

What accreditations are held by the officers at the Richland County Sheriff's Department?

A. So they hold a class one -- so we have class one certified officers, and we also have class three certified officers, and then we also have reserve officers. All of their accreditation, their training, everything is tied to the academy. Ultimately, the academy, the state Academy, is the governing body for certification.

Q And so every law enforcement officer at the Richland County Sheriff's Department has to be accredited by the South Carolina Criminal Justice Academy; is that correct?

A. Yes.

MR. GARFIELD: And I'm just going to insert just an objection that all the line of questioning about the South Carolina Criminal Justice Academy is beyond the scope of this particular witness.

BY MS. JONES:

into a populated area or a convenience store or something like that and cause death or great bodily harm to someone else.

Q. What I want you to confirm, yes or no, is, are there internal practices, policies, or whatever you want to call them, that are different from what's contained in Exhibit 36 in front of you?

A. Based on their subject matter, yes.

Q. If a police officer with the sheriff's department, or deputy, violates the policy set forth in Exhibit 36, what are the consequences?

A. Exhibit 36? So you're talking about the manual itself, ma'am?

Q. Yes, sir.

A. So once again, the policy is just a general guideline. It's not law. So what's looked at, obviously, was their malice. We have to have open leeway because the policy is not all end all. There's a lot of situations where the policy does not apply and the officers, based on their experience and training, have to make split-minute decisions -- or split-second decisions, I should say.

So this policy is not all-encompassing. If I had to go through 23 years of law enforcement experience and then another 10 years of military experience and put it into a manual, this table's not even big enough.

Q. That's not my question. My question is, if a deputy, a police officer with the sheriff's department, violates the policy set forth in Exhibit 36, what are the consequences?
A. So the consequences would be the -- it would -- their actions would be reviewed to determine if there was any malice or wrongdoing on the officer, and then appropriate action would be dictated. Ultimately, the sheriff is the final disciplinary person. So he will make that decision.
Q. And if a violation occurred, would an investigation be undertaken?
A. So once again, our professional standards would handle that.
Q. But would an investigation be undertaken, or do you know?
A. Well, you're saying -- you're saying -- it would definitely be looked into, yes.
Q. And when you say, be looked into, what do you mean? Would there be an investigation, is my question.
A. In the terms of definition of investigation, it would be turned over to our professional standards, and yes, they would -- your definition of investigation, yes, they would look into it.
Q. If a police officer violated the provisions in policy

802, would that police officer be subject to disciplinary action?

MR. GARFIELD: Object to the form. Asked and answered. Go ahead.

BY MS. JONES:

A. The sheriff determines that.

Q. Do you know what factors would be involved in making such a decision?

A. Totality of the circumstances, so everything involved. One -- once again, what was the subject's actions? What was the officer's actions? Was there any malice? What was going through the officer's mind? So just like we're taught at the academy, what's known as the reasonable man theory or the reasonable officer theory, what would another officer with the same knowledge, same level of experience have done? So once again, this is just a policy. It's not law for us.

Q. Who makes the determination to terminate a pursuit?

A. So the determination to end a pursuit can be done either by the officer or any supervisor.

Q. And who was the supervisor for Officer Smith?

A. My understanding at the time was you had a corporal and a lieutenant.

Q. Who were they?

A. I believe it was Corporal Smith, Rebecca Smith, I