IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Pamela A. Baker, | ) | Civil Action No.: 3:24-cv-04303-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Leon Lott, individually and in his official | ) | **RESPONSE IN OPPOSITION TO** |
| capacity as the Sheriff of Richland County; the | ) | **PLAINTIFF'S MOTION TO EXCLUDE** |
| Richland County Sheriff's Department; and | ) | **THE REPORT AND TESTIMONY OF** |
| Deputies Matthew Smith, Michael Dillard and | ) | **JOHN J. RYAN** |
| Bryan Hodge, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants submit the following response in opposition to Plaintiff's Motion to Exclude the Report and Testimony of John J. Ryan ("Ryan") pursuant to Rules 702, 703, and 704 of the Federal Rules of Evidence (ECF No. 58). For the reasons set forth below, Plaintiff's Motion should be denied because Ryan is qualified, and his testimony is both relevant and reliable.

## BACKGROUND

Ryan has been actively involved in police practices and law enforcement since 1981, including serving for 20 years as an active police officer and Captain of the Providence Police Department in Providence, Rhode Island. (Ryan Report, ECF No. 58-2, p. 2[1], ¶ 1). He has a bachelor's and master's degree in Administration of Justice, as well as a juris doctor degree. (*Id.*, ¶ 2). He has also served as an adjunct professor, teaching graduate level courses relating to various aspect of policing. (*Id.*, ¶ 3). For over thirty years, he has conducted countless policy training, and

---

[1] References to the Report are to the ECF page numbers since the full document has already been filed as an exhibit to Plaintiff's instant motion.

1

operations reviews for law enforcement agencies across the country. (*Id.*, p. 3, ¶ 5). During this time, he has also conducted numerous training sessions for law enforcement officers across the country. (*Id.*, ¶ 6; pp. 51-67 (listing presentations/training sessions)). He has likewise written extensively in the area of law enforcement policies and procedures over many years. (*Id.*, pp. 59-62). This has included writing various policies for law enforcement in 23 or 24 states across the country, including in the area of police pursuits. (Ryan Dep. Excerpts, p. 18[2], filed as an exhibit hereto; Ryan Report, ECF No. 58-2, p. 5, ¶ 12). He has also been writing pursuit policies for law enforcement agencies in South Carolina for over 20 years, which he updates every two years. (Ryan Dep. Excerpts, pp. 36-39 (describing policies that he has written for law enforcement agencies in South Carolina as provided to the South Carolina Municipal Association for the benefit of its members, which he incorrectly recalls as the Municipal League)). Ryan also performs agency audits for law enforcement agencies at a rate of several per year. (Ryan Report, ECF No. 58-2, p. 5, ¶ 13). In addition to writing about law enforcement issues across a broad spectrum of topics; writing policies, including pursuit policies, for law enforcement agencies; conducting training for law enforcement officers and agencies; and conducting annual audits of law enforcement agencies across the country, he has also been working as an expert witness in the law enforcement arena since 2001 (Ryan Dep. Excerpts, p. 7, ln. 14-18; Ryan Report, ECF No. 58-2, pp. 33-41 (limited to cases in the last 10 years)).

In the present case, Ryan reviewed the Pleadings, the parties' written discovery responses; thousands of pages of document production, including the Incident Report, the full MAIT file, the policy and procedure manual of the Richland County Sheriff's Department, and training materials

---

[2] References to the deposition page numbers are to the transcript page numbers since some, but not all, of the deposition pages referenced herein were previously filed by Plaintiff.

regarding driving; all available body cam and dash cam videos; Plaintiff's Expert Report; and the full transcripts and accompanying exhibits for the depositions of Michael Dillard, Bryan Hodge, Loenn Lott, Matthew Smith, and Zaid Abdullah. (Ryan Report, ECF No. 58-2, pp. 68-70 (listing the items reviewed))[3]. As outlined in his Expert Report, Ryan followed his methodology of reviewing these materials to "develop[e] a sense of the underlying facts as reported by all parties and witnesses without making credibility determinations with response to statement and testimony." (*Id.*, p. 6, ¶ 17). Ryan outlines his summary of the underlying facts in his Report. (*Id.*, pp. 7-18, ¶¶ 19-87).

Per his methodology, Ryan then utilized his "nearly 45 years of law enforcement raining, experience, specialized background, education as well as my auditing, authoring, researching and consulting on law enforcement practices nationwide to the developed facts." (*Id.*, p. 6, ¶ 17). Ryan applied "policies, practices, training and industry standards to the applicable facts in arriving at my opinions." (*Id.*). Ultimately, Ryan proffered his opinion that the "decision to initiate and continue the pursuit [at issue] was consistent with generally accepted polices, practices, training and industry standard." (*Id.*, pp. 18-19, ¶ 88). In reaching this opinion, Ryan not only opines on the applicable policies, practices, and standards, but also applies them to the facts of this case. (*Id.*, pp. 19-31, ¶¶ 89-110).

---

[3] Based on the list of items Ryan reviewed, which constitutes all of the many thousands of pages of discovery in this case as of the time the report was written, Plaintiff's assertion that counsel somehow "cherry-picked" certain selected materials on which Ryan would base his decisions is wholly baseless and misleading to the Court. (Ryan Dep. Excerpts, p. 24 (confirming that he reviewed all of the materials listed in Schedule D of the report). Indeed, Plaintiff has failed to identify a single shred of record evidence that she contends was not reviewed and considered by Ryan in compiling the report or how such evidence would have or should have impacted the analysis.

<u>**ARGUMENT**</u>

Expert testimony is admissible if (1) the expert is qualified; (2) the testimony is relevant; and (3) the testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "In *Daubert,* the Supreme Court radically changed the standard for admissibility of scientific testimony … [and] set out a looser, two-step gatekeeping function that a trial court must perform when evaluating the admissibility of all [qualified] expert testimony. The trial judge must ensure that the evidence is … reliable, and ensure that the evidence will assist the trier of fact, or is relevant." *United States v. Barnette*, 211 F.3d 803, 815-16 (4th Cir. 2000) (internal citations omitted). Plaintiff has challenged the wholesale admissibility of Ryan's testimony pursuant to each of these three (3) requirements. (ECF No. 58). However, as discussed below, Plaintiff's challenge falls short as to each prong such that this Court, in exercising its gate-keeping function imposed by Daubert and its progeny, should admit the testimony of Ryan and deny Plaintiff's Motion. *See Joaquim v. Buzzuro*, No. CV 1:22-0050-CDA, 2024 WL 3936925, at *10 (D. Md. Aug. 26, 2024) ("Under the Federal Rules of Evidence, a district court is required to be a gatekeeper, but a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.") (internal citations omitted). *See also, e.g.*, *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (holding "the rejection of expert testimony is the exception rather than the rule")

a.  <u>**RYAN IS A QUALIFIED EXPERT**</u>

Pursuant to Rule 702, to qualify as an expert, a witness must have the requisite "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Ryan has almost 45 years of relevant law enforcement experience and training. In recognition of his vast experience, Ryan has regularly testified in state and federal courts on police policies and practices.

4

Plaintiff asserts that Ryan's "qualifications" are deficient because he "has not been a sworn officer for nearly twenty-five (25) years." (ECF No. 58-1 at pp. 1-2). Ryan's retirement as an active police officer in 2002 is the sole basis that Plaintiff offers as to why Ryan in not a qualified expert. Plaintiff does not explain why retirement disqualifies Ryan as an expert witness, let alone why retirement would negate his entire 45 years of extensive law enforcement experience and training. Moreover, Plaintiff ignores Ryan's experiences since 2002, which includes writing extensively in the law enforcement arena, writing policies for law enforcement agencies, conducting training seminars, conducting audits of law enforcement agencies, and staying abreast of changes in the field through his work as an expert witness, all of which he has been doing throughout the United States prior to and since his retirement.

Federal courts around the country have recognized that Ryan's qualifications as an expert on police practices and/or training. *See Sterusky v. Cooper*, No. 3:22-CV-00218-GNS-LLK, 2024 WL 4009668, at *7 (W.D. Ky. Aug. 30, 2024), *aff'd*, No. 24-5820, 2025 WL 2058797 (6th Cir. July 23, 2025) ("Ryan … is eminently qualified to opine regarding police practices and training, and Plaintiff has lodged no objection to his qualifications."). Even in cases where Ryan's testimony may have been limited in part and as cited in Plaintiff's Motion, the Southern District of Ohio recognized Ryan's extensive credentials in concluding that Ryan was qualified as an expert and "certainly capable of testifying to general police policies and procedures:"

> John Ryan ("Ryan") is a former police officer who spent 20 years in law enforcement, including a period of time as the Captain of the Providence Police Department in Providence, Rhode Island. Ryan currently teaches courses on police policy and procedure and currently serves as the co-director of the Legal and Liability Risk Management Institute.

*Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2022 WL 14758379, at *9 (S.D. Ohio Oct. 26, 2022).

As the Fourth Circuit has noted, an expert's qualifications to render an expert opinion are "liberally judged" by Rule 702. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). A person may qualify to render expert testimony in any one of five ways: knowledge, skill, experience, training, or education." *Id.* Importantly, "[w]here the expert's qualifications are challenged, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." *Id.*

As repeatedly recognized by both federal and state courts, Ryan is qualified—on several independent bases under Rule 702 (knowledge, skill, experience, training, and education), any one of which is sufficient—to offer testimony on police policies and practices, specifically including the vehicular pursuit at issue in the present case. Ryan's retirement from active service does not disqualify him, and Plaintiff has offered no support for this position. *Cf., e.g.*, *Summers v. Cnty. of Charleston*, No. 2:10-CV-3291-RMG, 2012 WL 3867108, at *3 (D.S.C. June 13, 2012) (holding that an expert otherwise qualified on the basis of education and professional experience, including extensive experience as a testifying expert, in law enforcement practices is not disqualified based on outdated and brief experience as a police officer; those factors go to weight, not admissibility).

### b.     RYAN'S OPINIONS ARE RELIABLE

"The *Daubert* test's gatekeeping requirement is to ensure that the expert witness in question in the courtroom employs the same level of intellectual vigor that characterizes the practice of an expert in the relevant field." *United States v. Barnette*, 211 F.3d 803, 815-16 (4th Cir. 2000) (internal citations omitted). "The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy." *Higginbotham v. KCS Int'l, Inc.*, 85 F. App'x 911, 913-14 (4th Cir. 2004)

"Although reliability of an expert's principles and methods, as well as the application of the facts to such methods, must be examined by the district court, the court need not determine that the proffered expert testimony is irrefutable or certainly correct, since, like all forms of testimony, expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 451-52 (4th Cir. 2010) (internal citations omitted). "Neither FRE 702 nor case law establish a mechanistic test for determining the reliability of an expert's proffered testimony; on the contrary, the test of reliability is flexible … [and] the focus of the inquiry should be on the principles and methodology employed by the expert, *not on the conclusions reached*." *Id.* (*citing Moreland Casualty Co. v. Therm-O-Disc.*, Inc., 137 F.3d 780, 784 (4th Cir. 1998) (emphasis added)).

Ryan's Expert Report sets out both the principles and methodology he employed and applied to the underlying facts of this case in reaching his opinions.[4] Therefore, Ryan is not only qualified to testify in this case, but his opinion and testimony "rest[s] on a reliable foundation." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). However, Plaintiff's Motion seeks to prohibit all of Ryan's opinions without even a clear argument as to the purported flaw in Ryan's methodology that would render every one of his opinions unreliable and beyond the testing available to all forms of testimony, such as cross-examination. *See Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) ("[I]n addition to prescribing fluid and general standards for the admission of scientific testimony, *Daubert* also

___

[4] To the extent the complained of methodology somehow renders Ryan's opinion unreliable, this infirmity would apply to Plaintiff's expert as well as he employed the same methodology. (Taylor Report, p. 3). Thus, if this methodology is fatal to reliability, Taylor should similarly be excluded from testifying.

described the trial court's role as that of a 'gatekeeper' who should exercise broad discretion in admitting scientific testimony that could later be tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.").

While disjointed, Plaintiff's only cognizable argument regarding Ryan's methodology appears to be Ryan's opinions are not reliable because their "basis ... is that there are no recognized, uniform standards for pursuit practices of law enforcement." (ECF No. 58-1 at pp. 1-2). This characterization is disingenuous. As Ryan sets forth in his Report and testified, while there is no nationwide one-size-fits-all standard across the country, there is a generally accepted practice across the country for pursuit policies, which generally fall into three categories. (Ryan Dep. Excerpts, pp. 35-39; Ryan Report, ECF No. 58-2, pp. 19-20, ¶¶ 89-92). Ryan then characterizes and assesses the two most dominant types of pursuit policies for agencies across the country, including thoroughly assessing the pursuit policy of the Richland County Sheriff's Department. (*Id.*, ¶ 92). Consequently, Plaintiff's related argument, that Ryan did not apply and/or consider the Richland County Sheriff Department's policies and procedures also fails. As a preliminary and fundamental matter, Ryan's methodology *does* include a thorough analysis and application of the policies and procedures of the Richland County Sheriff's Department vis-à-vis the generally accepted standards for law enforcement agencies across the country.[5] Not only is the discussion of various categories of pursuit policies across the country, and an explanation of where the Richland County Sheriff's Department's policy falls on that spectrum, a proper subject for expert testimony—it is also necessary to rebut the opinion and repeated references offered by Plaintiff's

---

[5] Plaintiff makes repeated reference to S.C. Code Ann. § 23-23-85 as establishing the minimum standard for pursuit policies in South Carolina. A plain reading of the statute shows that it applies to the Law Enforcement Training Council and requires that Council to establish minimum standards for certain topics, including police pursuits. However, the statute itself does not contain any minimum standards.

own police practices expert that there exists a nationwide "best practice" or some governing national standard. (Taylor Report, p. 5, ¶ 11; p. 5, ¶ 2a; p. 6, ¶ 3a; p. 6, ¶ 4; p. 7, ¶ 6a, b (filed as an exhibit hereto)). *See, e.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (noting that proper functions of rebuttal testimony from an expert include "to explain, repel, counteract or disprove evidence of the adverse party.").

Additionally, Plaintiff has not offered any evidence of or cited to any source indicating that any of the additional authorities relied upon by Ryan, specifically including a 2019 survey by IACP (International Association of Chiefs of Police), have not been accepted by the law enforcement community.[6] *Beard v. Palmetto Health,* No. 3:17-cv-00727-JFA, 2020 U.S. Dist. LEXIS 150493, at *5 (D.S.C. July 27, 2020) ("In its gatekeeper role, the district court analyzes the proposed expert testimony using several factors, including… whether the expert's methods and conclusions have been generally accepted by his or her respective communities.").

Instead, Plaintiff makes an additional, summary equivocation, asserting that Ryan's opinions are not reliable because they are based on factual and legal opinions. (ECF No. 58-1 pp. 13). Plaintiff does not identify and/or make arguments as to any specific, purported factual conclusions or legal opinions in Ryan's Expert Report and fails to specifically explain how or why any such opinions merit exclusion.

While Ryan's written report does contain references to certain cases like *Scott v. Harris*, 550 U.S. 372 (2007) and *Barnes v. Felix*, 605 U.S. 73 (2025), these references do not merit wholesale exclusion of Ryan as an expert for several reasons. First, Defendants have not proffered the report for this Court's consideration or reliance (other than in responding to the instant motion)

---

[6] Plaintiff refers to the 2019 IACP survey as "old" but has not otherwise pointed to any infirmity in the survey. Taylor likewise makes reference to IACP materials in rendering his opinions. (*e.g.*, Taylor Report, p. 5, ¶ 2a).

and do not intend to offer the report as an exhibit in any trial of this matter. An expert's report is merely used to educate the opposing party about the expert's qualifications and background as well as his opinions and the grounds for them. *See, e.g.*, *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) ("The purpose of a detailed and complete expert report as contemplated by Rule 26(a), Fed.R.Civ.P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial."). There is no requirement that the entire report itself be admissible at trial (if such admission is even sought). The references to certain cases in the report also does not require exclusion of the opinions themselves because those references do nothing more than illustrate the unexceptional fact that law enforcement officers are trained, in part, based on governing legal decisions and demonstrate a judicial recognition of the factors and tough decisions law enforcement officers face (and are trained to face) in a situation such as this. (Ryan Report, ECF No. 58-2, pp. 24-27, ¶¶ 99-100). Even absent the references to case law, that does not change how and on what basis law enforcement officers are trained. Again, this objection need not detain the Court long because Defendants are not seeking the report's admission into evidence.[7]

In support of the reliability argument, Plaintiff generally points to factual recitations Ryan gathered from the evidence reviewed and included in his Expert Report to support his opinions. This is the same methodology employed by similar experts in the field as discussed above. This is because "[e]xpert testimony *must* be based on sufficient facts or data." *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 480 (4th Cir. 2018). The inclusion and review of facts are, therefore,

---

[7] Of course, Plaintiff cannot manufacture an objection simply because Ryan responded to questioning concerning these cases in his deposition. (Ryan Dep. Excerpts, pp. 56-57). As this questioning shows, Ryan is obviously aware that matters of law are for the Court.

necessary to Ryan's methodology and a formation of reliable opinions. Plaintiff will have the opportunity to cross-examine Ryan on the basis of his opinions and present contrary evidence. Therefore, Plaintiff's challenge regarding reliability lacks merit. *See Sterusky*, No. 3:22-CV-00218-GNS-LLK, 2024 WL 4009668, at *7 ("Legal actions that go to trial contain contested issues of fact, and … Plaintiff will have the opportunity to cross-examine Ryan on the bases for his opinions. Accordingly, this argument is not well-taken."). Plaintiff also offers no explanation of or authority supporting what alternative methodology could have or should have been employed by Ryan. *Cf., e.g.*, *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 801-02 (D. Md. 2022) (finding expert's testimony reliable where "he reviewed the Complaint, depositions, the PTS Basic Transport Officer Course, employee records, PTS policy, PTS transport logs, and pepper spray decontamination procedures"); *Slaton v. Correct Care Solutions, LLC*, No. 3:15-00627-JMC, 2016 WL 3257660, * (D.S.C. June 14, 2016) (allowing expert's report to be admitted where expert had reviewed regulatory texts, the defendant's policies and procedure, video footage, report, and medical records).

In a related argument, Plaintiff asserts that Ryan's "proffered testimony" should be excluded entirely because it amounts to improper testimony of "legal standards." *See* ECF No. 58-1 at pp. 7. Aside from the discussion above concerning references to certain cases, Plaintiff has not identified which of Ryan's opinions specifically contain impermissible opinions on legal standards let alone why. Instead, Plaintiff cites to other cases where Ryan's testimony has been limited, at least in part, for allegedly containing legal opinions. *Id*. As discussed above, these handful of cases—in comparison to the more than eight (8) pages of depositions and testimonies identified in Schedule A comprising only the last 10 years—do not stand for the supposition that Ryan is not qualified as an expert and/or that he is even routinely excluded and should be excluded

in the present case from testifying completely because his offers only opinions on legal standards.[8] Instead, these cases demonstrate that Ryan routinely has been admitted to testify regarding law enforcement policies and procedures, even if that testimony has been limited by a few courts on a few topics.

For example, the Plaintiff points to the case of *Sterusky v. Cooper*, in which the district court most recently excluded one of Ryan's eleven proffered opinions. 2024 WL 4009668, at *7. Contrary to Plaintiff's characterization, the *Sterusky* court did not exclude "all of Ryan's testimony." (ECF No. 58-1 at pp. 8). Instead, the court considered that "most of Ryan's opinions are couched in terms of what was appropriate considering 'generally accepted policies, practices, training and industry standards in law enforcement.'" *Id*. Therefore, the court only excluded one of Ryan's eleven total opinions, holding, as the Plaintiff quoted in part, that Ryan was precluded only "from offering testimony about when an officer may use deadline force as a general matter, as opposed to in the context of generally accepted policies, practices, training, and industry standards." *Id*. Consequently, reviewing Ryan's ten (10) remaining opinions, the court found that "[p]laintiff has failed to specifically explain how or why the identified opinions merit exclusion. Reviewing each, the Court is satisfied that they are premised upon Ryan's expertise in police practices and do not express legal conclusions." *Id*.

Similarly, Ryan's Expert Report in the present matter assesses not only generally accepted practices across the country but also a compares the Richland County Sheriff's Department's pursuit policy to such practices. (Ryan Report, ECF No. 58-2, pp. 19-22, ¶¶ 91-93, ¶¶ 95-96). As compared to the single excluded topic in the *Sterusky* case, Ryan's opinions enumerated in his

---

[8] Although Plaintiff cites to FRE Rule 704, she does not identify any of Ryan's opinions that should be excluded because they embrace an ultimate issue of law.

Expert Report are not general recitations of law, such as to when an officer may initiate or continue a pursuit. Instead, Ryan offers opinions, based on his specialized background and expertise, as to not only applicable standards but also whether law enforcement's actions were consistent with generally accepted policies, practices, training, and industry standards. (*e.g.*, *id.*, p. 18, ¶ 88; p. 28, ¶ 104; p. 30, ¶ 107; p. 31, ¶ 110). Plaintiff makes no argument as to why any specific opinion merits exclusion. Consequently, Plaintiff's Motion should be denied as Ryan's reliable, expert opinions are not simple recitations of law or legal conclusions.

c.     **RYAN'S OPINIONS ARE RELEVANT**

In the final prong of for evaluating Ryan's proposed expert testimony pursuant to Rule 702 and Daubert, is the "implicit" requirement that Ryan's opinions are also "relevant to the task at hand." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017). "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (*citing Daubert* at 592, 113 S.Ct. 2786). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795. *See also Joaquim*, 2024 WL 3936925, at *10 (recognizing the presumption that expert testimony to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror). There is no doubt that Ryan's proffered opinions and testimony relate to the issues in the present case, specifically regarding and applying police practices and training for pursuits.

Plaintiff makes a throw-away, conclusory argument that Ryan's testimony is "irrelevant and unhelpful" to the jury. (ECF No. 58-1 at pp. 14). Plaintiff offers no supporting argument or analysis to support this assertion, which, on its fact, cannot overcome the presumption that Ryan's reliable expert testimony is relevant and helpful.

Instead, Plaintiff's argument is premised on the conclusory assertion that Ryan's report is simply a recitation of his "version of the facts." *Id*. As discussed above, Ryan's Expert Report does contain and apply relevant facts because "[e]xpert testimony *must* be based on sufficient facts or data." *Hickerson*, 882 F.3d at 480. Inclusion of such facts is, therefore, necessary and, consequently, cannot render Ryan's testimony irrelevant. Indeed, Plaintiff will be able to cross-examine Ryan on any such relevant factual issues. *Compare, Sterusky*, No. 3:22-CV-00218-GNS-LLK, 2024 WL 4009668, at *7 ("Legal actions that go to trial contain contested issues of fact, and … Plaintiff will have the opportunity to cross-examine Ryan on the bases for his opinions. Accordingly, this argument [to exclude such testimony] is not well-taken.").

Moreover, while Plaintiff may assert that a jury does not require the assistance of expert testimony to understand and apply applicable policies and procedures, including of Richland County Sheriff's Department, such an assertion is not support and is belied by Plaintiff's own identification of an expert witness on related topics and the routine admission of Ryan—and other experts—to testify of law enforcement policies and procedures. See *Gillispie*, 2022 WL 14758379, at *9 (asserting that Ryan is "certainly capable of testifying to general police policies and procedures"). "A review of cases in this circuit demonstrates that, as a general matter, expert testimony in excessive force cases is likely admissible where a witness addresses police practices and standards of care. This trend aligns with the role of expert witnesses in providing helpful testimony concerning specialized knowledge and experience." *Joaquim*, 2024 WL 3936925, at *11. While there is no bright line rule, an expert opinion "frame[d] … in terms of the propriety or impropriety of [d]efendants' conduct from the perspective of a reasonably well-trained and experienced officer" is admissible and helpful concerning specialized knowledge and experience. *Id*. at *12. *See also, e.g.*, *United States v. Hunt*, 99 F.4th 161, 181 (4th Cir. 2024) ("Thus, even

14

shaky but admissible evidence should be addressed through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, not through wholesale exclusion by the trial judge.")

Ryan's opinions satisfy this standard. Not only are they relevant but they are, by presumption, helpful in establishing the standard and applicable policies and procedures for the use of a specialized tool of law enforcement, vehicular pursuits. *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir.1993) (holding that the district court abused its discretion in excluding expert testimony "as to the prevailing standard of conduct for the use … [of] specialized tool[s]" of police work). Plaintiff offers no basis to contradict this assumption or to support her argument otherwise. Indeed, she cannot as Plaintiff's own expert proffers a recitation of facts and resulting opinions regarding purported "national law enforcement standards," agency policy, and whether Defendants' actions comported with such standards. (Taylor Report, p. 8, ¶ 9). Even if there is some variation in the view of the facts between the parties, this does not impact admissibility. *See Bewley v. Turpin*, No. 120CV00386TWPDML, 2022 WL 2317426, *12 (S.D. Ind. June 27, 2022) ("Defendants would be well within their rights to highlight any erroneous facts underlying [the expert's] opinions at trial. However, these alleged errors and inconsistencies do not affect . . . admissibility, and Defendants have not cited any caselaw to the contrary.").

Likewise, even if a few portions of his testimony (which Defendants have yet to proffer) may be found to be properly excluded on the basis that they go to the ultimate issue, "that does not necessarily banish him from the stand altogether." *Id.* at 378. Rather, "[a]n expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." *Id.*

To the extent Plaintiff challenges the factual basis for and/or the comparative opinions of the two experts, such challenge is not the basis for a motion to exclude pursuant to *Daubert* and/or FRE Rule 702, and Plaintiff's present motion should be denied. *See Pugh*, 361 F.App'x at 452 ("[T]he court need not determine that the proffered expert testimony is irrefutable or certainly correct, since, like all forms of testimony, expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.") (internal citations omitted).

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that this Court deny Plaintiff's present Motion to Exclude the Report and Testimony of John J. Ryan.

Respectfully submitted,

GARFIELD SPREEUWERS LAW GROUP


 s/Steven R. Spreeuwers
Robert D. Garfield, Fed Bar # 7799
Steven R. Spreeuwers, Fed Bar # 11766
1220 Pickens Street
Columbia, South Carolina 29201
T: 803.830.5496
robert@gslawsc.com
steve@gslawsc.com

*Counsel for Defendants*

Columbia, South Carolina
April 23, 2026

16