IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Pamela A. Baker, | ) | Civil Action No.: 3:24-cv-04303-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' RESPONSE** |
| Leon Lott in his official capacity as the | ) | **IN OPPOSITION TO PLAINTIFF'S** |
| Sheriff of Richland County Sheriff's Office; | ) | **MOTION FOR PARTIAL SUMMARY** |
| the Richland County Sheriff's Office; and | ) | **JUDGMENT** |
| Deputies Matthew Smith, Michael Dillard | ) | |
| and Bryan Hodge, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants submit the following discussion in opposition to Plaintiff's Motion for

Summary Judgment. Defendants submit that, based on the following discussion

## LEGAL ANALYSIS

I.    **Plaintiff is not entitled to partial summary judgment as to liability because she failed to seek summary judgment as to the Defendants' affirmative defenses, including their qualified immunity defense.**

As a threshold procedural issue, the Defendants submit that the Plaintiff's motion for partial

summary judgment on the issue of liability should be denied because the Plaintiff does not move

on the Defendants' affirmative defenses, including qualified immunity.  There is no mention of the

qualified immunity defense in the Plaintiff's motion.

The procedural aspects of the Plaintiff's motion, including the initial burden of production,

are governed by the seminal case of *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In *Celotex*, the

Court held that summary judgment is proper if, after an adequate time for discovery, the non-

movants fail to make a sufficient showing of an essential element of their case with respect to

which they bear the burden of proof at trial.  477 U.S. at 323.  While the Defendants would bear

1

the burden of proof on their affirmative defenses at trial, the Supreme Court was clear in *Celotex*

that the non-movant is only required to produce evidence *after* the movant demonstrates the lack

of a genuine factual issue. The Court explained:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. Although this initial showing does not require the movant to produce evidence that would

negate the non-movant's claims, she must at least point out "that there is an absence of evidence

to support the [non-movant's] case." 477 U.S. at 325.

Consequently, *Celotex* requires a plaintiff moving for summary judgment to address any

affirmative defenses raised by the defendant and demonstrate that there is no genuine issue of

material fact on those defenses. Other federal courts have ruled that if the plaintiff's motion for

partial summary judgment does not address the affirmative defenses, a court is not in the position

to grant summary judgment as to liability. For instance, in *Stillman v. Traveler's Ins. Co.*, 88 F.3d

911 (11th Cir. 1996), the Eleventh Circuit recognized that the district court may not enter summary

judgment against a non-movant defendant if its affirmative defenses have not been addressed in

the plaintiff's motion. *See also*, *United States v. Innovative BioDefense, Inc.*, 2019 WL 7195332,

*8 (C.D. Cal. 2019) ("to prevail at summary judgment, Plaintiff has the burden of point[ing] out

to the Court that there is an absence of evidence to support the non-moving party's affirmative

defense"); *Navistar International Transportation Corp. v. Freightliner Corp.*, 1998 WL 786388,

*1-2 (N.D. Ill. 1998) (recognizing that a movant at summary judgment has the burden of showing

an absence of a genuine issue of material fact on a non-movant's affirmative defense and may not

prevail by "simply ignoring [a non-movant's] defenses"); *Amwest Surety Ins. Co. v. Szabo*, 2001

WL 1230643, *4 (N.D. Ill. 2001) (explaining that "a moving party cannot simply ignore an affirmative defense; it must initially demonstrate the lack of a genuine issue of material fact as to that defense"); *Books A Millions, Inc. v. H&N Enterprises, Inc.*, 140 F.Supp.2d 846, 851 (S.D. Ohio 2001) (same).

In sum, in the case at bar, the Plaintiff has not moved for summary judgment on any affirmative defense asserted by the Defendants, including primarily the qualified immunity defense. On that procedural basis alone, the Plaintiff's motion seeking partial summary judgment on the issue of liability should be denied.

## II. Plaintiff is not entitled to partial summary judgment on the substantive due process claim.

The Plaintiff alleges that the Defendants Smith, Hodge, and Dillard engaged in "conscious-shocking" conduct in violation of substantive due process during the vehicular pursuit occurring on December 29, 2023.[1] "To establish a substantive due process violation, the plaintiff must show that [defendant's] behavior was so egregious, so outrageous that may fairly be said to shock the contemporary conscious." *Dean v. McKinney*, 976 F.3d 407. 413 (4th Cir. 2020), *citing County of Sacramento v. Lewis*, 523 U.S. 833, 847, n.8 (1998). *See also*, *Temkin v. Frederick County Commissioners,* 945 F.2d 716 (4th Cir. 1991)*.* As the Fourth Circuit further explained:

> The Supreme Court in *Lewis* described a "culpability spectrum" along which behavior may support a substantive due process claim. The Court rejected "customary tort liability as any mark of sufficiently shocking conduct" and held that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." At the other the end of the spectrum, the Court explains, is behavior "that would most probably support a

---

[1] The Defendants incorporate herein their previous discussion of the merits of the substantive due process claim and the authorities cited in their motion for summary judgment. (ECF #61, pp. 4-6). This discussion in response to the Plaintiff's motion for partial summary judgment, including her contention that a deliberate indifference standard applies, supplements the Defendants' prior analysis of the issues.

substantive due process claim; conduct intended to injure [that is] in some way unjustifiable by any government interest." "[This] sort of official action is most likely to rise to the conscience-shocking level." "[C]loser calls," however, are presented by conduct that is "something more than negligence but 'less than intentional.'" A determination as to which of these standards of culpability -- "intent to harm" or "deliberate indifference" -- applies requires "an exact analysis of context and circumstances before any abuse of power is condemned as conscience shocking."

*Dean*, 976 F.3d at 414. (Citations omitted). The Fourth Circuit explained that "the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." *Id.*, *citing Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005). The Fourth Circuit concluded that "under *Lewis*, the intent-to-harm culpability standard applies to officers responding to an emergency call." 976 F.3d at 415. *See also*, *Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998) (distinguishing between emergency action and actions taken after opportunity for reflection in assessing the constitutionality of law enforcement actions post-*Lewis,* and explaining that in emergency situations only conduct in which the government official intended to cause harm and in which the state lacks any justifiable interest will shock the conscience and result in constitutional liability). *See also*, *Eichman v. Rissanen*, 705 F.Supp.3d 528 (D.S.C. 2023).

In the case at bar, the parties agree that the "shocks the conscience" standard set forth in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), applies to § 1983 claims alleging violation of substantive due process based on alleged police driving. The parties disagree, however, as to the level of culpability that is required for the Defendants' conduct to be determined as "conscience-shocking." As the Fourth Circuit has explained, "[a] determination as to which of these standards of culpability -- 'intent to harm' or 'deliberate indifference' -- applies requires 'an exact analysis of context and circumstances before any abuse of power is condemned as conscience

4

shocking.'" *Dean*, 976 F.3d at 414. The Fourth Circuit also acknowledged that "the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation," including "officers responding to an emergency call." *Id*. In fact, as the *Dean* Court observed, "the police are often called to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance." *Id*.

In sharp contrast, the deliberate indifference standard applies "when an officer is able to make unhurried judgments with time to deliberate, such as in the case of a non-emergency." *Dean*, 976 F.3d at 415. "[U]nlike the intent-to-harm standard, this standard "is sensibly employed only when actual deliberation is practical." *Id*., *citing Lewis*, 523 U.S. at 851. Importantly, "liability for deliberate indifference … rests upon the luxury … of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Id*., *citing Lewis*, 523 U.S. at 851.

The case at bar, unlike *Dean*, involves a vehicular pursuit to apprehend a suspected felon and drug trafficker for whom there existed a bench warrant for his arrest. This scenario is no different from the high-speed pursuit in *Lewis*, wherein decisions were necessarily made "in haste, under pressure, and ... without the luxury of a second chance" than a situation that allowed sufficient time for actual deliberation. *See Lewis,* 523 U.S. at 853. *See also, Sitzes v. City of West Memphis*, 606 F.3d 461 (8th Cir. 2010) (substantive due process liability turns on the intent of the government actor). *Lewis* makes it clear that the intent-to-harm standard is appropriate for cases, as here, where "unforeseen circumstances demand an officer's instant judgment." *Lewis,* 523 U.S. at 853. As stated by the Eighth Circuit in *Terrell v. Larson*, 396 F.3d 975 (8th Cir. 2005), "to our

knowledge every circuit to consider the issue has applied the *Lewis* intent-to-harm standard to those myriad situations involving law enforcement and government workers deployed in emergency situations." *Id*. at 979.

In asserting that deliberate indifference is the appropriate standard, the Plaintiff contends, contrary to the record evidence, that there was no emergency. Quite to the contrary, Pringle was wanted on a bench warrant issued in Lexington County and was a known drug trafficker dealing such illegal narcotics as heroin and fentanyl. In fact, bags containing what was believed to be fentanyl were recovered from Pringle's vehicle after the accident. In initiating the pursuit when Pringle failed to stop, the Defendants reasonably believed that the threat posed by Pringle to the community by being loose on the streets was greater than the danger in attempting to apprehend him. The pursuit itself was brief in duration and short in distance, and there was no time for deliberation, reflection, or unhurried judgments. That is particularly true when the pursuit reached the interchange of Greystone Boulevard and I-126, where at the on-ramp, Pringle abruptly jumped the median and began driving the wrong way on I-126. The pursuing deputies made a judgment call to continue the pursuit on I-126. That wrong-way entry onto the highway did not allow for time for reflection nor an unhurried judgment. Clearly, at that inflexion point, there can be no reasonable question that the deputies were facing an emergent situation. The decision to continue the pursuit was objectively reasonable at that juncture for two principal reasons. First, Pringle posed a substantial risk of harm to the traveling public by driving against oncoming traffic on I-126 within a construction zone. The deputies, together with the supervising officer, recognized the need to stop Pringle by such means as a PIT maneuver to eliminate that risk. Second, and just as importantly, the deputies' continued pursuit with their blue lights and sirens provided warning to the oncoming traffic of the emergent situation that such traffic was approaching. The success

of those efforts in providing such warning is evident from the fact, as the Plaintiff points out, that at least 73 motorists were able to get by Pringle on I-126 with no harm. Frankly, if the deputies decided to terminate the pursuit when Pringle jumped the median and began driving against oncoming traffic on I-126, the deputies would have been subject to potential liability for failing to take action to stop Pringle and for failing to provide warning to the oncoming motorists. Clearly, they faced a dilemma in continuing the pursuit onto I-126, and their decision to do so cannot be viewed as objectively unreasonable and certainly not as "conscious-shocking." To do nothing but terminate the pursuit at that point would not have eliminated the risk of harm that Pringle posed to the oncoming traffic. He was driving the wrong way on a highway within a construction zone, and there is no evidence nor any reasonable factual basis for concluding that Pringle would have (or even feasibly could have) stopped his reckless driving at that instant.

Clearly, the factual scenario resulting from Pringle's entrance onto I-126 heading the wrong way was an emergent situation. The entirety of the preceding pursuit of Pringle, including the decision to pursue and then continue that pursuit prior to entering the on-ramp onto I-126, should be analyzed under the intent-to-harm standard. But there can be no reasonable dispute that once Pringle jumped the median and entered I-126, the deputies' actions are subject to analysis under that standard. In applying the intent-to-harm standard, the record evidence indisputably shows that there was no intent to harm exhibited by the deputies against the Plaintiff nor anyone else.

The Plaintiff attempts to argue that she is entitled to partial summary judgment on her substantive due process claim even under the intent-to-harm standard, but that is unavailing. She claims that the deputies had an "intent to harm" Pringle once he was on I-126 because the order was given to stop him using a PIT maneuver, and that such intent to stop Pringle is somehow imputable to the Plaintiff. Not surprisingly, no authority is cited for that proposition as it has no

basis in law or fact. The use of a PIT maneuver was to eliminate the threat that Pringle indisputably posed when driving the wrong way on I-126 and that presented no intent to harm the Plaintiff. The exact opposite is true. If Pringle could be stopped, that would have eliminated the threat he posed ultimately to the Plaintiff. The Plaintiff, nonetheless, challenges the decision to attempt a PIT maneuver as somehow "conscious-shocking" because stopping Pringle could have resulted in wrecking other vehicles. That supposition is meaningless to the analysis because the deputies never got close enough to Pringle to attempt a PIT maneuver before his collision with the Plaintiff, but that supposition also makes no sense from a purely logical standpoint for the reasons already stated. In effect, the Plaintiff was not injured by the use of a PIT maneuver because that never materialized, and hence, a contemplated use of a PIT maneuver does not evince any intent to harm the Plaintiff. For these reasons, the Plaintiff's substantive due process claim fails as a matter of law, and her motion for partial summary judgment as to liability should be denied.

### III.  Plaintiff is not entitled to partial summary judgment on a "*Monell* claim" against the Defendants Lott and Richland County Sheriff's Department.

The Plaintiff further contends that, separate from the liability of the individual Defendants, the Defendants Lott and Richland County Sheriff's Department ("RCSD") are liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Fifth Cause of Action in the Amended Complaint sets forth her claim as follows: "42 U.S.C. § 1983 – Fourth Amendment Claim of Violation of Unconstitutional seizure and Use of Excessive Force" against the Defendants Lott and RCSD. (ECF #26, p. 14). The Plaintiff apparently bases her purported *Monell* claim on this this Fourth Amendment cause of action. The Defendants disagree that any Fourth Amendment claim has been stated on these facts or that a *Monell* claim has been properly pled.

To succeed on a claim for *Monell* liability, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that

proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708. 712 (4th Cir. 1999). In her Amended Complaint, the Plaintiff pleads only as follows: "The Defendants RCSD and Sheriff Lott has allowed and condoned actual policies, customs and practices that ignore the RCSD written policies related to high-speed chases and vehicle pursuits." *See*, Amended Complaint, ¶ 85. That allegation does not adequately plead a "Monell claim." The Plaintiff certainly has not alleged a *Monell* failure to train claim.

Nonetheless, the Plaintiff's "*Monell* claim," even if pled in the Amended Complaint, fails for several reasons as a matter of law. First, under the precedent from this Court, the Fourth Circuit, and the South Carolina Supreme Court, a sheriff in South Carolina is considered an "arm of the state" and thus is not a "person" amenable to suit under 42 U.S.C. § 1983. Second, a *Monell* claim is not actionable against a state actor or state entity. Third, even if the Court considers the merits of her *Monell* claim, the Plaintiff is not entitled to partial summary judgment. Instead, summary judgment should be entered for the Defendants.

A.      **Sheriff Lott and RCSD are not "persons" amenable to suit under § 1983.**

Sheriff Lott in his official capacity and the RCSD are not "persons" amenable to suit under 42 U.S.C. § 1983 because they are an "arm of the state." Relying on *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), the Fourth Circuit has previously ruled that a sheriff in South Carolina is a state official. More recently, this Court recognized that "courts addressing this issue have concluded that sheriffs, in their official capacities, and sheriff's departments in South Carolina are arms of the state." *English v. Clarke*, 2021 WL 4398371, *4 (D.S.C. 2021).

*Cromer* addressed the question as to whether a South Carolina sheriff is an "arm of the state." While it found that "it is unclear whether the state treasury would be partially liable for a judgment in this case," the Fourth Circuit "considered the remaining factors relevant to the

9

immunity analysis and conclude[d] that, in his official capacity, Sheriff Brown is an arm of the state." 88 F.3d at 1332. Later, in *Wall v. Sloan*, 135 F.3d 771, 1998 WL 54938 (4th Cir. 1998) (table), the Fourth Circuit continued to follow the analysis from *Cromer* in ruling that "a South Carolina sheriff such as Sloan [Richland County] is a state official and therefore is not subject to suit for monetary damages in his official capacity." 1998 WL 54938 at *1. *See also*, *Brown v. Middleton*, 362 F. Appx. 340, 346, n.8 (4th Cir. 2010) (stating that "the District Court also correctly concluded that Sheriff Cannon cannot be held liable under Section 1983 in his official capacity").

In fact, it is well settled that South Carolina law treats a sheriff and a county as distinct and separate entities. In *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992), the South Carolina Supreme Court held that a sheriff and his deputies in South Carolina are state, rather than county, employees. The court in *Cone* examined and found persuasive prior federal court case law which had concluded that "in South Carolina sheriffs and deputies are state, not county, officials." 417 S.E.2d at 525, *citing Gulledge v. Smart,* 691 F. Supp. 947 (D.S.C. 1988), *aff'd* 878 F.2d 379 (4th Cir. 1989). As the *Cone* Court recognized, the federal district court in *Gulledge* had specifically found that "(1) the South Carolina constitution establishes the office of sheriff and the term of office, S.C. Const. art. V, § 24; (2) the duties and compensation of sheriffs and deputies are set forth by the General Assembly; (3) their arrest powers are related to state offenses; and (4) the Governor of South Carolina has the authority to remove a sheriff for misconduct and fill the vacancy." 417 S.E.2d at 525. The Supreme Court in *Cone* also looked at prior state court precedent including *Heath v. County of Aiken*, 295 S.C. 416, 368 S.E.2d 904 (1988), where the Supreme Court held that deputy sheriffs are not county employees and thus are not covered by county personnel policies. Based upon those factors, the Supreme Court agreed with the conclusion reached by the court in *Gulledge* that a sheriff and his deputies are state, not county, officials.

Since *Cone* was decided in 1992, it has been cited favorably in numerous state appellate decisions. For instance, in *Edwards v. Lexington County Sheriff's Department*, 386 S.C. 285, 688 S.E.2d 125 (2010), the Supreme Court, citing *Cone*, reaffirmed that "under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees." 688 S.E.2d at 127, n.1. The Supreme Court described this principle as "settled law" and declined to address what the Court described as "the legally settled distinction between a county government and a sheriff's office for liability purposes." *Id*. *See also*, *Lampley v. Hulon*, 432 S.C. 566, 854 S.E.2d 489 (Ct. App. 2021).

Moreover, to the extent the RCSD is even a proper party, which is denied per the discussion in the Defendants' motion for summary judgment, the *Cromer* line of decisions apply equally to the RCSD because a sheriff's office in South Carolina is a state agency entitled to the same immunity as the sheriff, as held in various cases noted by this Court. *See generally*, *Smith v. Cherokee County. Sheriff's Office*, 2023 WL 6466468, *2 (D.S.C. 2023) ("Cherokee County Sheriff's Office is considered a state agency under South Carolina law and is therefore entitled to sovereign immunity."), *report and recommendation adopted*, 2023 WL 6462871 (D.S.C. 2023); *Owens v. Gibson*, 2022 WL 2506908, *5 (D.S.C. 2022), *report and recommendation adopted*, 2022 WL 2155321 (D.S.C. 2022) ("Plaintiff's claim against the Aiken County Sheriff's Office also fails, as the Aiken County Sheriff's Office is entitled to immunity under the Eleventh Amendment and is not considered a "person" for purposes of § 1983"); *Brooks v. Berkeley County. Sheriff's Office*, 2022 WL 18635126, *3 (D.S.C. 2022) ("BCSO and OCSO are considered state agencies, and as such, they are entitled to sovereign immunity."), *report and recommendation adopted*, 2023 WL 142394 (D.S.C. 2023); *Hoover v. Horry County. Sheriff's Office*, 2022 WL 17543063, *2 (D.S.C. 2022) ("Horry County Sheriff's Office is considered a state agency, as such it is entitled to sovereign immunity."), *report and recommendation adopted*, 2022 WL 17542997 (D.S.C. 2022);

11

*Murray v. Greenville County. Sheriff's Office*, 2018 WL 5624162, at \*2 (D.S.C. 2018) ("[County] sheriff's departments in South Carolina are considered alter egos or arms of the state."), *report and recommendation adopted sub nom.*, 2018 WL 5617931 (D.S.C. 2018); *Wirtz v. Oconee County. Sheriff's Department*, 2013 WL 5372795, \*1 (D.S.C. 2013) ("Under South Carolina law, a sheriff's department is a state agency, not a department under the control of the county."); *Watts v. Lexington County. Police Department*, 2012 WL 6025771, \*4 (D.S.C. 2012) ("suing [Lexington County Sheriff's Department] is the same as suing the State"), *report and recommendation adopted*, 2012 WL 6024672 (D.S.C. 2012).

In sum, as a state constitutional officer, Sheriff Lott and his agency are not "persons" amenable to suit under § 1983, thereby warranting their dismissal from this action and certainly the denial of the Plaintiff's motion for partial summary judgment.

### B.     "*Monell* claim" may not be asserted against a state officer or a state entity.

Additionally, it is well settled that a *Monell* claim may only be asserted against a local governmental entity and not against the State or a state officer such as Sheriff Lott or the RCSD. In *Quern v. Jordan*, 440 U.S. 332, 338 (1979), the United States Supreme Court reaffirmed that "[t]his Court's holding in *Monell* was limited to local government units which are not considered part of the State for Eleventh Amendment purposes." 440 U.S. at 338. This Court has similarly applied that ruling from *Quern* in dismissing *Monell* claims alleged against state entities. *See*, *McElrath v. South Carolina Dept. of Corrections*, 2013 WL 1874852, \*3 (D.S.C. 2013); *Childress v. City of North Charleston*, 2021 WL 9553006, \*4 (D.S.C. 2021). *See also*, *Quillin v. Simon*, 2021 WL 1589274, \*4 (D.S.C. 2021) (finding that "any amendment of the *Monell* claim to add a state agency or employee would be futile, as those defendants are not subject to suit under § 1983/*Monell*").

Thus, for this additional reason, the Plaintiff's purported *Monell* claim should be dismissed as a matter of law and the Plaintiff's motion for partial summary judgment be denied.

### C.    "*Monell* claim" should be denied on the merits.

Even if this Court reaches the merits of the *Monell* municipal liability claim, the Defendants Lott and RCSD are entitled to summary judgment and the Plaintiff's motion should be denied.  As stated above, in her Amended Complaint, the Plaintiff pleads only as follows:  "The Defendants RCSD and Sheriff Lott has [sic] allowed and condoned actual policies, customs and practices that ignore the RCSD written policies related to high-speed chases and vehicle pursuits."  *See*, Amended Complaint, ¶ 85.  There are no allegations in the Amended Complaint alleging a failure to train the deputies involved in the pursuit as the Plaintiff now appears to be asserting.  It is well settled, however,  that a plaintiff cannot raise new claims or allegations at the summary judgment stage.  *See*, *Barclay White Skanska, Inc. v. Batelle Mem. Inst.*, 262 Fed. Appx. 556, 563 (4th Cir. 2008) (finding that a plaintiff cannot raise new claims in response to a motion for summary judgment, unless the plaintiff first amends his complaint); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment"); *Lyman v. CSX Transp., Inc.,* 364 Fed. Appx. 669, 701 (2d Cir. 2010) ("[a]n opposition to a summary judgment motion is not the place for a plaintiff to raise new claims").

As the Fourth Circuit has explained, "a municipality is only liable under section 1983 if it causes [a deprivation of federal rights] through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1998).  "Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights

of citizens." *Id*. [M]unicipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023). "This policymaker involvement is required because, as the Supreme Court has made clear, *Monell* liability is not respondeat superior liability under a different moniker." *Id*. "So, to hold a municipality liable for a constitutional violation under *Monell*, a plaintiff must prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Id*.

As the Fourth Circuit has further held, a policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). It is well settled that "isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." 326 F.3d at 473.

In her summary judgment memorandum, the Plaintiff concedes that she is not challenging the propriety or efficacy of the RCSD pursuit policy. Likewise, Roy Taylor, who is the Plaintiff's law enforcement expert witness, testified that he had no criticism of any policies issued by the RCSD. *See*, Taylor Dep., p. 120:18-20. The Plaintiff writes: "RCSD's written policies contain clear directives for sworn law enforcement officers engaging in vehicle pursuits. These directives

14

are uniformly disregarded in practice." (ECF #55-1, p. 23). The Plaintiff, however, presents no evidence to support that bald and conclusory assertion. Instead, the Plaintiff focuses on statistics showing the number of annual pursuits from 2018 to 2024. However, the Plaintiff presents no evidence of any pursuits pre-dating the one at issue whereby the RCSD pursuit policy was not strictly or even substantially followed. More to the point, the Plaintiff presents no evidence where a pursuit was continued when the suspect drove the wrong way on an interstate or other roadway, as what occurred in this case. As to the number of pursuits, Roy Taylor confirmed in his deposition testimony that all he has is a "personal opinion" that he is not intending to offer as an expert as to the reasons that the number of pursuits increased during the 2018 to 2024 time frame. *See*, Taylor Dep., pp. 89-90. Moreover, Taylor, by his own admission, employed no methodology in reaching any "personal opinion," did not evaluate the number of pursuits for any other law enforcement agency, and could not name a single agency that had a reduction in pursuits during the same time period. *See*, Taylor Dep., pp. 87-89.

To reiterate, the Plaintiff "supports" her purported "*Monell* claim" with statistics showing the number of pursuits for a seven-year time period. Vehicle pursuits, however are not *per se* unconstitutional, unlawful, or unreasonable. The necessity of pursuits is well established in the case law. *See*, *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Barnes v. Felix*, 605 U.S. 73 (2025). The mere number of the pursuits, as opposed to factual information related to policy violations, is not instructive to any *Monell* analysis. To that point, it is important to recognize, as the Fourth Circuit instructs, that prevailing on a *Monell* claim "is no easy task." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014). In fact, "[a] plaintiff must point to a 'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the

conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id*. And most critically, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." 767 F.3d at 403. The Plaintiff, however, has simply not shown any evidence of a "persistent and widespread" practice of conducting pursuits that are unlawful or even in contravention of the RCSD pursuit policy.

Moreover, to the extent that the Court finds that the Plaintiff has alleged a failure to train claim, that too fails as a matter of law. A failure to train can constitute a "policy or custom" actionable under § 1983 only where the Sheriff's failure to train his deputies in a relevant respect evidences a deliberate indifference to or reckless disregard for the constitutional rights of others. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The "deliberate indifference" standard requires that "the need for more or different training" be "so obvious," and "the inadequacy so likely to result in the violation of constitutional rights," that a municipality can reasonably "be said to have been deliberately indifferent to that need." *Semple v. City of Moundsville*, 195 F.3d 708, 713 (4th Cir. 1999), *citing Harris*, 489 U.S. at 387 (1989). "Moreover, neither a policy or custom of deficient training nor the required casual connection can be shown by proof of a single incident of unconstitutional activity alone." *Id.* The Plaintiff must show "a specific deficiency and not a generalized ineffectiveness of the training" and a "direct causal connection between specific deficiencies and a specific injury." 195 F.3d at 713–714. Mere negligence is insufficient to impose § 1983 liability on a municipality or a sheriff for an alleged failure to train. *Jordan v. Jackson*, 15 F.3d at 341, 341 (4th Cir. 1994).

In this case, the Plaintiff has failed to show a "direct causal link" between "a specific deficiency in training and the particular violation alleged." *Buffington v. Baltimore County*, 913 F.2d 113, 122 (4th Cir. 1990). It is insufficient to allege that an injury could have been avoided if

16

an officer had better or more training to equip him to avoid the particular injury-causing conduct. *Harris,* 489 U.S. at 391 (1989).  If this were allowed, such a claim could be made about almost any encounter with law enforcement.  *Id.*   Instead, the Plaintiff must demonstrate specific training deficiencies and either: (1) that inadequately trained employees engaged in a pattern of unconstitutional conduct; or (2) that a violation of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *See, e.g., Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407-409 (1997); *Harris,* 489 U.S. at 391.

In the present case, the Plaintiff has not identified any specific training deficiencies.  Roy Taylor did not opine that the training provided to Deputies Smith, Hodge, and Dillard was deficient or inadequate.  In fact, in response to the questions of whether he had any criticism of the training provided by the RCSD to any of deputies, he responded "no."  He saw nothing in their testimony that caused him to question the adequacy of the deputies' training.  *See*, Taylor Dep., p. 102:5-11.  As noted above, Taylor also has no criticism of any RCSD policies.  *See*, Taylor Dep., p. 102:18-20.  Nonetheless, the Plaintiff has moved for summary judgment suggesting that the training is constitutionally deficient, but she has no evidence of that.  In fact, the evidence reflects that the deputies, upon hiring, had eight weeks of in-house training, followed by an additional eight weeks at the South Carolina Criminal Justice Academy, and then the completion of two months of field training through the FTO process.  *See*, Smith Dep., p. 16.  The training at the Criminal Justice Academy includes a week-long course on pursuit driving.  *See*, Smith Dep. p. 21.  The deputies also undergo driving training at McIntrye Air Force Base and also at Denny Terrace, which is the RCSD annex.  *See*, Smith Depo., pp. 18, 20-21.  Despite this testimony, the Plaintiff represents to the Court that "the total amount of hands-on training these RCSD deputies received on pursuit

driving is less than a day." (ECF #55-1, p. 30). That is simply not supported by the record evidence. Not surprisingly, there is no citation to the record for that assertion.

In addition to blatantly misrepresenting the evidence on the issue of training, the Plaintiff has presented no expert testimony that the training is deficient in any respect. As indicated, Roy Taylor offered no criticisms related to the deputies' training, but he did describe more than one-day of training (contrary to the Plaintiff's inaccurate assertion). Taylor testified: "Throughout the year, there was testimony that they had pursuit training or emergency vehicle operation training, at least, on an annual basis. They had that below 100 training that was provided before this incident." *See*, Taylor Dep., p. 120:4-8.

Finally, as the Fourth Circuit has also held, "[a] claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised." *Temkin v. Frederick County Commissioners,* 945 F.2d 716, 724 (4th Cir. 1991). For the reasons discussed above and in the Defendants' motion for summary judgment, the Defendants Smith, Hodge, and Dillard are not liable for any constitutional deprivation, and on that basis, the Defendants Lott and RCSD cannot be held liable on a "*Monell* claim."

In sum, the Plaintiff cannot prevail on her motion for partial summary judgment on any "*Monell* claim," if even properly pled, for each of the reasons discussed herein. Thus, to the extent a "*Monell* claim" has been pled, the Defendants Lott and RCSD are entitled to summary judgment.

**IV.**     **The Plaintiff is not entitled to partial summary judgment because, at the very least, the individual Defendants are entitled to qualified immunity.**

As discussed above, the Plaintiff did not move for partial summary judgment on the individual Defendants' qualified immunity defense, and accordingly, the Court is precluded on that procedural basis alone from granting judgment as a matter of law for the Plaintiff. Nonetheless,

the Defendants Smith, Hodge, and Dillard do not waive their qualified immunity defense. Rather than re-arguing that defense here, the Defendants incorporate herein their arguments in their motion for summary judgment on qualified immunity. (ECF #61, pp. 21-25). Even if there was merit to the Plaintiff's constitutional claims, which is denied, the Defendants are entitled to qualified immunity for the reasons already argued in the record, and for that reason, the Plaintiff is not entitled to partial summary judgment as to liability.

## CONCLUSION

Based on the foregoing discussion and analysis, as well as the discussion and analysis set forth in the Defendants' motion for summary judgment, the Defendants respectfully request that the Court deny the Plaintiff's motion for partial summary judgment as to liability. The Court is further requested to grant the Defendants' pending motion for summary judgment thereby dismissing with prejudice the federal claims and the state law claim brought pursuant to S.C. Code Ann. § 23-13-10, while remanding the negligence and gross negligence claim to state court.

Respectfully submitted,

GARFIELD SPREEUWERS LAW GROUP

/s/ Robert D. Garfield
Robert D. Garfield, Fed. ID 7799
Steven R. Spreeuwers, Fed. ID 11766
1220 Pickens Street
Columbia, South Carolina 29201
T: 803.830.5496
robert@gslawsc.com
steve@gslawsc.com

*Counsel for the Defendants*

Columbia, South Carolina
April 23, 2026

19