IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Pamela A. Baker,<br><br>Plaintiff,<br><br>v.<br><br>Leon Lott, individually and in his official capacity as the Sheriff of Richland County; the Richland County Sheriff's Department; and Deputies Matthew Smith, Michael Dillard and Bryan Hodge,<br><br>Defendants. | Civil Action No.: 3:24-cv-04303-JDA<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS** |

On April 23, 2026, Plaintiff filed a Memorandum in Opposition to the Defendants' Motion for Summary Judgment [ECF 71] that warrants a reply on behalf of the Defendants.

## LEGAL ANALYSIS

### I. Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment is Incorporated as their Reply Memorandum

As a threshold point, the Defendants submit that the purpose and utility of a reply memorandum in support of their Motion for Summary Judgment is limited, given the procedural posture of this litigation, with the parties having filed cross motions. The Defendants recognize that their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment has already provided the opportunity to address and refute in detail Plaintiff's legal arguments. The Defendants thus rely on and incorporate herein the arguments contained in their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF #75) as reply arguments in support of the Defendants' Motion for Summary Judgment. Given the comprehensive briefings on the issues in their opening and opposition memoranda, the Defendants are endeavoring to avoid re-arguing points already made.

## II. Substantive Due Process

Plaintiff maintains that a deliberate indifferent standard should be used to analyze the Defendants' pursuit of Pringle. Nonetheless, Plaintiff has offered no rebuttal to the Defendants' argument that, at the very least, the nature of the pursuit changed when Pringle reached the interchange of Greystone Boulevard and I-126, where, at the on-ramp, he abruptly jumped the median and began driving the wrong way on I-126. As the Defendants argue, at that inflection point, there can be no reasonable question that the deputies were facing an emergent situation. The pursuing deputies made a judgment call to continue the pursuit on I-126. That wrong-way entry onto the highway did not allow for time for reflection nor an unhurried judgment. Plaintiff does not appear to disagree or counter that analysis.

Instead, Plaintiff argues that the intent to harm necessary to prevail on a substantive due process claim may be "inferred intent," meaning that an intent to harm the suspect being pursued may be inferred as intent to harm to an innocent motorist such as Plaintiff. For that proposition, Plaintiff notably cites no authority from the United States Supreme Court or the Fourth Circuit. Instead, she cites only to a single Ninth Circuit case of *Estate of Soakai v. Adbelaziz*, 137 F.4th 969 (9th Cir. 2025), which post-dates the December 29, 2023 events at issue in this litigation.[1] Thus,

[1] Plaintiff also cites a district court decision in *Johnson v. Baltimore Police Dept.*, 452 F.Supp.3d 283 (D. Md. 2020), which was decided on a pleading motion and not on the merits. The Fourth Circuit, however, rejects consideration of district court decisions in analyzing whether applicable law is clearly established for a second prong qualified immunity analysis. In *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533 (4th Cir. 2017), the Fourth Circuit explained:

> As the Supreme Court has remarked, "many Courts of Appeals [ ] decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity." The Court went on, "[o]therwise said, district court decisions -- unlike those from the courts of appeals -- do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." Given that published district court

the lack of clearly established law on this very point further confirms the Defendants' entitlement to qualified immunity.

Nonetheless, even if this Court accepts that proposition, the Defendants still are entitled to summary judgment on the merits of the substantive due process claim. Importantly, the Supreme Court has explained that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *County of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). There may, however, be an actionable claim "when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle." 523 U.S. at 854, n. 13. (Emphasis in original). In *Lewis*, the Supreme Court reinstated summary judgment in favor of the officers for a high-speed pursuit conducted in violation of department policy, since there was no showing of an intent to harm the suspects physically or to worsen their legal plight.

Plaintiff points to evidence that once Pringle entered I-126 heading the wrong way against the oncoming traffic, the deputies indicated in their radio transmissions the need to stop Pringle and that an order was given to use a PIT maneuver to eliminate the risk Pringle posed to the other motorists. As the record evidence shows, the PIT maneuver was never undertaken because the deputies were unable to get close enough to Pringle before the collision with Plaintiff occurred. Nonetheless, even if a PIT maneuver had been undertaken, that would not have constituted the intentional misuse of the vehicle that the Supreme Court explained was necessary for a conscious-shocking intent to harm. The intent to stop Pringle from proceeding the wrong way on the highway,

---

> opinions, like unpublished opinions from our Court, have no precedential value, it follows that we should not consider them.

855 F.3d at 545, *citing Camreta v. Greene*, 563 U.S. 692, 709, n. 7 (2011).

even if it required a PIT maneuver, was not an intent to cause him harm in a constitutional sense nor was it a worsening of his legal plight.

The recent decision by this Court in *Mathis v. Anderson County*, 2024 WL 4024019 (D.S.C. 2024), is instructive on this issue. In that case, a suspect was pursued by law enforcement officers. The factual circumstances of the pursuit were described by this Court as follows:

> The officers' pursuit of Mr. Mathis lasted approximately ten minutes, and Mr. Mathis traversed about fourteen miles. During his flight, Mr. Mathis drove in the wrong lane multiple times, had to swerve into the correct lane to avoid an oncoming car, crossed double yellow lines, ran multiple red lights, drove on the wrong side of the road several times, ran stop signs, forced cars onto the shoulder, and attempted to evade the officers by making a u-turn and swerving in and out of multiple parking lots. At one point, Mr. Mathis lost control of his vehicle and went off of the side of the road near a gas station parking lot. Mr. Mathis then spun back around onto the road and sped off from Officers Chapman and Lucas again. This pursuit occurred on mostly two-lane roads, and Mr. Mathis reached speeds of about 95 mph. Officers Chapman and Lucas also engaged in similar driving to keep up with Mr. Mathis. It is undisputed that Officers Chapman and Lucas violated the City of Anderson Police Department's policy multiple times during their pursuit of Mr. Mathis, including by driving on the wrong side of the road, failing to drive with due regard for the safety of all persons, and losing visual sight of the suspect vehicle at least twice.

*Mathis v. Anderson County*, 2024 WL 4486601, *2 (D.S.C. 2024) (Report and Recommendation). The pursuit ended when an Anderson County sheriff's deputy deployed stop strips. The suspect either struck the stop strips and crashed or swerved to avoid them and crashed. The evidence was in dispute as to which occurred, but as this Court determined, the use of the stop strips resulted in the suspect's crash and injuries. While the stop strips were deployed to bring the pursuit to an end and to stop the suspect's vehicle, this Court found that there was no evidence that deploying the stop strips were "intended to injure Mr. Mathis in some way unjustifiable by any government interest." 2024 WL 4024019, *6. In granting summary judgment, the Court further ruled that the deputy "acted in furtherance of a justifiable governmental interest in attempting to terminate Mr.

Mathis's dangerous driving at a time when Mr. Mathis posed a significant threat to the officers, pedestrians, and other motorists." *Id*.

*Mathis* highlights the key to the "intent to harm" analysis that Plaintiff in the case at bar overlooks. In responding to a motorist such as Mathis, or in this case Pringle, law enforcement has a "justifiable governmental interest" to take steps to stop the motorist who is driving recklessly and endangering the public. Those steps include the use of stop strips, as in *Mathis*, or a PIT maneuver, which was the directive in this case (although it was never carried out). The fact that the deputies endeavored to take steps to stop the fleeing motorist is not commensurate with an intent to harm the suspect in a constitutionally significant sense. Thus, while the evidence shows that the deputies were intending to stop Pringle's flight, even by use of a PIT maneuver, that conduct is not conscience-shocking and does not give rise to an actionable substantive due process claim under the reasoning of *Lewis* and its progeny.

For these reasons, the Defendants are entitled to summary judgment on the substantive due process claim on its merits and also based on qualified immunity.

**III. Claims against Sheriff Lott in his Individual Capacity**

The Defendant Lott moved for summary judgment on any claim of supervisory liability. Sheriff Lott does not read Plaintiff's Amended Complaint as alleging a supervisory liability claim, but to the extent the Court construed the allegations as asserting such a claim, Sheriff Lott demonstrated that such a claim has no merit. In her opposition memorandum, Plaintiff includes no discussion of a supervisory liability claim. She does not assert that such a claim was pled, nor does she address the elements of such a claim, nor does she point to record evidence to support such a claim.

Instead, Plaintiff purports to allege a "*Monell* claim" against Sheriff Lott in his individual capacity. (ECF #71, pp. 12-19). However, Plaintiff's allegations against Lott are premised on an

error of law. Courts in this District have consistently held that a municipal liability claim may not be brought against an individual defendant in his individual capacity. *See Hatter v. Hill*, 2026 WL 369932, *17-18 (W.D. Va. 2026) (collecting cases); *King v. Blackwood*, 2023 WL 4163141, *11 (M.D.N.C. 2023) (collecting cases). Instead, "municipal liability under § 1983 applies only to local governmental entities, including local government officials sued in their official capacity." *King*, 2023 WL 4163141 at *11.

In *Tarashuk v. Orangeburg County*, 2021 WL 12353001 (D.S.C. 2021), this Court ruled that "to the extent Plaintiff brings his claim against Sheriff Ravenell in his *individual* capacity -- which is unclear to the court -- it would still fail." 2021 WL 12353001 at *3. This Court cited to the case of *Pratt-Miller v. Arthur*, 701 Fed. Appx. 191 (4th Cir. 2017), for the following explanation:

> Whether a public entity has adopted an unconstitutional policy is relevant only when examining the basis for *municipal* liability under § 1983. This is, however, not the right question to ask when confronting a supervisor's potential liability in his individual capacity. Rather, where the only remaining claims are against a public official in [his] individual capacity, to hold the official liable for [his] subordinate's conduct, *that conduct must meet the test for supervisory liability*.

701 Fed. Appx. at 193. (Emphasis in *Tarashuk*).

Here, as in *Tarashuk*, Plaintiff has made no showing of a supervisory liability claim. Instead, she brings a "*Monell* claim" against Sheriff Lott in his individual capacity, but such a claim is not actionable. Like the sheriff in *Tarashuk*, Sheriff Lott is entitled to summary judgment for any claim brought against him in his individual capacity.

**IV. *Monell* Claims against Sheriff Lott and RCSD**

Plaintiff further argues that Sheriff Lott in his official capacity and the Richland County Sheriff's Department (RCSD) are not entitled to Eleventh Amendment immunity because they are

not an "arm of the state." Relying on this Court's decision in *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), and its extensive progeny as cited in the opposition memorandum (ECF #75, pp. 9-12), the Defendants have shown that existing precedent holds definitively that a sheriff in South Carolina is a state official.

In *Ram Ditta v. Maryland National Capital Park & Planning Commission*, 822 F.2d 456 (4th Cir. 1987), the Fourth Circuit described a four-factor analysis to apply to determine whether an entity is an alter ego of the state such that sovereign immunity applies:

> While many factors must be considered in determining whether an entity is the alter ego of the state, it is generally held that the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded. ... We agree that this is a most important consideration for "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest." Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law.

822 F.2d at 457–58. (Citation omitted).

In *Cromer*, *supra*, the Fourth Circuit explained "[i]f the state's treasury will not be affected by the judgment, we consider other factors, chief among which are whether the suit will jeopardize the integrity retained by the State in our federal system and whether the state possesses such control over the entity claiming Eleventh Amendment immunity that it can legitimately be considered an 'arm of the state.'" *Cromer* 88 F.3d at 1332, *citing Gray v. Laws*, 51 F.3d 426, 434 (4th Cir. 1995). While the Court in *Cromer* found that "it is unclear whether the state treasury would be partially liable for a judgment in this case," the Court nonetheless "considered the remaining factors relevant to the immunity analysis and conclude[d] that, in his official capacity, Sheriff Brown is an arm of the state." 88 F.3d at 1332.

The same is true in the case at bar. Plaintiff argues that Sheriff Lott is not an arm of the state because Richland County is self-insured, and there is no evidence that the state treasury will necessarily be impacted by any judgment in this case. However, the funding for the payment of judgments against the Sheriff notwithstanding, the other three factors conclusively demonstrate, as in *Cromer*, that a sheriff in South Carolina is properly treated as an "arm of the state."

In fact, it is well settled that South Carolina law treats a sheriff and a county as distinct and separate entities. In *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992), the South Carolina Supreme Court held that a sheriff and his deputies in South Carolina are state, rather than county, employees. The court in *Cone* examined and found persuasive prior federal court case law which had concluded that "in South Carolina sheriffs and deputies are state, not county, officials." 417 S.E.2d at 525, *citing Gulledge v. Smart,* 691 F. Supp. 947 (D.S.C. 1988), *aff'd* 878 F.2d 379 (4th Cir. 1989). As the *Cone* Court recognized, the federal district court in *Gulledge* had specifically found that "(1) the South Carolina constitution establishes the office of sheriff and the term of office, S.C. Const. art. V, § 24; (2) the duties and compensation of sheriffs and deputies are set forth by the General Assembly; (3) their arrest powers are related to state offenses; and (4) the Governor of South Carolina has the authority to remove a sheriff for misconduct and fill the vacancy." 417 S.E.2d at 525. The State Supreme Court in *Cone* also looked at prior state court precedent including *Heath v. County of Aiken*, 295 S.C. 416, 368 S.E.2d 904 (1988), where the Supreme Court held that deputy sheriffs are not county employees and thus are not covered by county personnel policies. Based on those factors, the State Supreme Court agreed with this Court's conclusion in *Gulledge* that a sheriff and his deputies are state, not county, officials.

Since *Cone* was decided in 1992, it has been cited favorably in numerous state appellate decisions. For instance, in *Edwards v. Lexington County Sheriff's Department*, 386 S.C. 285, 688 S.E.2d 125 (2010), the State Supreme Court, citing *Cone*, reaffirmed that "under South Carolina

law, the sheriff and sheriff's deputies are State, not county, employees." 688 S.E.2d at 127, n.1. The State Supreme Court described this principle as "settled law" and declined to address what the Court described as "the legally settled distinction between a county government and a sheriff's office for liability purposes." *Id*. *See also Lampley v. Hulon*, 432 S.C. 566, 854 S.E.2d 489 (Ct. App. 2021).

In sum, the overwhelming authority supports the conclusion that Sheriff Lott in his official capacity and the Richland County Sheriff's Department are an "arm of the state" and, as such, are properly entitled to Eleventh Amendment immunity. In effect, Plaintiff is asking this Court to overturn years of precedent, including Fourth Circuit authority, which the Court cannot do. Sheriff Lott, in his official capacity and RCSD, is, therefore, entitled to summary judgment on the "*Monell* claims."

**CONCLUSION**

Based on the foregoing, Plaintiff's evidence does not present a sufficient disagreement to require submission to a jury, and the Defendants should be dismissed as a matter of law.

Respectfully submitted,

GARFIELD SPREEUWERS LAW GROUP

*/s/ Robert D. Garfield*
Robert D. Garfield, Fed. ID 7799
Steven R. Spreeuwers, Fed. ID 11766
1220 Pickens Street
Columbia, South Carolina 29201
T: 803.830.5496
robert@gslawsc.com
steve@gslawsc.com

*Counsel for the Defendants*

Columbia, South Carolina
May 15, 2026